# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------- x

In re:                       :    Chapter 11

                         :

    YUETING JIA,            :    Case No. 19-[_____]

                         :

             Debtor.     :

-------------------------------------------------------------------- x

## DEBTOR'S PREPACKAGED PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PACHULSKI STANG ZIEHL & JONES LLP**

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
Wilmington, Delaware 19801
Tel:   (302) 652-4100
Fax:  (302) 652-4400
E-mail: rpachulski@pszjlaw.com
       jdulberg@pszjlaw.com
       mpagay@pszjlaw.com
       joneill@pszjlaw.com

Proposed Attorneys for Debtor
and Debtor in Possession

**O'MELVENY & MYERS LLP**

Suzzanne Uhland (NY Bar No. 5359328)
Diana M. Perez (NY Bar No. 4636403)
Times Square Tower
7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061
Email:  suhland@omm.com
        dperez@omm.com

Proposed Special Corporate, Litigation, and
International Counsel for Debtor and
Debtor in Possession

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS AND INTERPRETATION ......................................................... 1

    1.1.   *Definitions.* .................................................................................................. 1

    1.2.   *Interpretation, Application of Definitions, and Rules of Construction.* ............ 7

ARTICLE II UNCLASSIFIED CLAIMS ............................................................................ 7

    2.1   *Administrative Expense Claims.* ................................................................... 8

    2.2   *Professional Fees.* ....................................................................................... 8

    2.3   *Priority Tax Claims.* .................................................................................... 9

    2.4   *Domestic Support Obligations.* .................................................................... 9

ARTICLE III CLASSIFICATION OF CLAIMS ................................................................ 9

    3.1   *Class Identification.* .................................................................................... 10

ARTICLE IV TREATMENT OF CLAIMS ...................................................................... 10

    4.1   *Priority Non-Tax Claims (Class 1).* ............................................................ 10

    4.2   *U.S. Secured Claims (Class 2).* .................................................................. 10

    4.3   *Debt Claims (Class 3).* ............................................................................... 11

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS ................................................ 11

    5.1   *Class Acceptance Requirement.* .................................................................. 11

    5.2   *Deemed Acceptance by Non-Voting Classes.* ............................................... 11

    5.3   *Elimination of Vacant Classes.* .................................................................. 11

    5.4   *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.* ............ 11

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN ................................. 11

    6.1   *Compromise of Controversies* ................................................................... 11

    6.2   *The Trust.* ................................................................................................. 12

    6.3   *Cancellation of Liens.* ............................................................................... 16

ARTICLE VII PLAN DISTRIBUTIONS ......................................................................... 17

    7.1   *Plan Distributions.* .................................................................................... 17

    7.2   *Allocation of Plan Distributions Between Principal and Interest* ................. 17

    7.3   *No Postpetition Interest on Claims.* ............................................................ 17

**TABLE OF CONTENTS**
**(continued)**

                                                                        **Page**

7.4     *Date of Plan Distributions.* ............................................................17

7.5     *Distribution Record Date.* ..............................................................17

7.6     *Delivery of Plan Distribution.* ........................................................17

7.7     *Unclaimed Property.* ......................................................................18

7.8     *Satisfaction of Claims.* ...................................................................18

7.9     *Manner of Payment Under Plan.* .....................................................18

7.10    *No Distribution in Excess of Amount of Allowed Claim.* ................18

7.11    *Setoffs and Recoupments.* ...............................................................19

7.12    *Withholding and Reporting Requirements.* ......................................19

7.13    *Claims Paid by Third Parties.* .........................................................19

ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS .........................20

8.1     *Objections to Claims; Estimation of Claims.* ..................................20

8.2     *Payments and Distributions on Disputed Claims.* ...........................21

8.3     *Preservation of Claims and Rights to Settle Claims.* ......................21

8.4     *Expenses Incurred On or After the Effective Date.* .........................22

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................22

9.1     *Assumption of Contracts and Leases* ..............................................22

9.2     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* ....................22

9.3     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.* ..................23

9.4     *Insurance Policies* ..........................................................................23

9.5     *Reservation of Rights.* ....................................................................23

9.6     *Pre-existing Obligations to Debtor Under Executory Contracts and Unexpired Leases* ............................................................................24

9.7     *Contracts and Leases Entered into After the Petition Date.* ...........24

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ............................................................................24

10.1    *Conditions Precedent to Confirmation.* ..........................................24

10.2    *Conditions Precedent to the Effective Date.* ...................................24

**TABLE OF CONTENTS**
**(continued)**

10.3  *Waiver of Conditions Precedent.* ........................................................25

10.4  *Effect of Non-Occurrence of the Effective Date* ................................25

ARTICLE XI EFFECT OF CONFIRMATION .................................................25

11.1  *Vesting of Assets.* ...............................................................................25

11.2  *Binding Effect.* ...................................................................................25

11.3  *Discharge of Claims.* ..........................................................................26

11.4  *Releases.* .............................................................................................26

11.5  *Exculpation and Limitation of Liability.* ............................................28

11.6  *Injunction.* ..........................................................................................29

11.7  *Term of Bankruptcy Injunction or Stays.* ...........................................30

11.8  *Termination of Subordination Rights and Settlement of Related Claims.* ...............30

11.9  *Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code.* ..............30

11.10 *Reservation of Rights.* .........................................................................30

ARTICLE XII RETENTION OF JURISDICTION .........................................31

ARTICLE XIII MISCELLANEOUS PROVISIONS .......................................33

13.1  *Payment of Statutory Fees.* .................................................................33

13.2  *Exemption from Securities Laws.* .......................................................33

13.3  *Exemption from Certain Transfer Taxes.* ...........................................33

13.4  *Dissolution of Statutory Committees and Cessation of Fee and Expense Payment.* .......33

13.5  *Substantial Consummation.* ................................................................34

13.6  *Expedited Determination of Postpetition Taxes.* ...............................34

13.7  *Modification and Amendments* ...........................................................34

13.8  *Additional Documents.* ........................................................................34

13.9  *Effectuating Documents and Further Transactions* ............................34

13.10 *Plan Supplement.* .................................................................................34

13.11 *Entire Agreement.* ...............................................................................35

13.12 *Revocation or Withdrawal of the Plan.* ..............................................35

**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| 13.13 | *Severability.* | 35 |
| 13.14 | *Solicitation.* | 35 |
| 13.15 | *Governing Law.* | 36 |
| 13.16 | *Compliance with Tax Requirements.* | 36 |
| 13.17 | *Successors and Assigns.* | 36 |
| 13.18 | *Closing of Chapter 11 Case.* | 36 |
| 13.19 | *Document Retention.* | 36 |
| 13.20 | *Conflicts.* | 36 |
| 13.21 | *Service of Documents.* | 37 |
| 13.22 | *Deemed Acts.* | 38 |
| 13.23 | *Waiver or Estoppel.* | 38 |

## INTRODUCTION

Yueting Jia as a debtor and debtor in possession (the "<u>Debtor</u>" or "<u>YT</u>") proposes, and is the proponent of, this chapter 11 plan of reorganization. The Plan[1] provides for the reorganization of the Debtor under chapter 11 of the Bankruptcy Code. As set forth below and described in the Disclosure Statement, under the Plan:

- Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and U.S. Secured Claims are paid in full;
- Holders of Allowed Debt Claims receive their Pro Rata distribution of the Trust Interests;
- the Debtor and the Reorganized Debtor will irrevocably and unconditionally release, waive, and discharge any Claims or Causes of Action that they have, had, or may have that are based on sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code and analogous non-bankruptcy law for all purposes; and
- the Debtor and certain Persons and Entities (the Releasing Parties) release certain Persons and Entities (the Released Parties).

**Holders of Claims should refer to the Disclosure Statement for a discussion of the Debtor's history, business interests, assets, financial information, as well as a summary and description of the Plan. Before voting to accept or reject the Plan, holders of Claims entitled to vote on the Plan are encouraged to read carefully the Plan, the Disclosure Statement, and their respective exhibits and schedules in their entirety. These are the only materials approved for use in soliciting acceptances or rejections of the Plan.**

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

### 1.1.   *Definitions.*

As used in this Plan, capitalized terms have the meanings set forth in this Article I (such meanings applicable to the singular and plural):

1.    *2019 Equity Incentive Plan* has the meaning set forth in Article 6.2(j) of the Plan.

2.    *Additional Trust Expenses* has the meaning set forth in Article 6.2(g) of the Plan.

3.    *Administrative Expense Claim* means a Claim for a cost or expense of administration of the Estate under sections 503(b) (including Claims arising under section 503(b)(9)), 507(a)(2), or 507(b) of the Bankruptcy Code, including (a) any actual and necessary cost and expense of preserving the Estate incurred after the Petition Date and through the Effective Date; (b) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date and through the Effective Date; (c) any Allowed compensation for professional services rendered, and Allowed reimbursement of expenses incurred, by a Professional retained by order of the Bankruptcy Court or otherwise Allowed pursuant to section 503(b) of the Bankruptcy Code; and (d) all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code.

4.    *Administrative Expense Claim Bar Date* means the first Business Day that is 30 days after the Effective Date.

---

[1] Capitalized terms are as defined in Article 1 below.

**5.**     *Allowed* means, with respect to any Claim, such Claim or portion thereof against or in the Debtor: (a) that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (b) as to which the deadline for objecting or seeking estimation has passed, and no objection or request for estimation has been filed; (c) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn, or denied by a Final Order; or (d) that is allowed pursuant to the terms of (i) a Final Order, (ii) an agreement by and among the holder of such Claim and the Debtor or the Reorganized Debtor, as applicable, or (iii) the Plan.

**6.**     *Allowed Debt Claim Allocation Amount* means the Allowed amount of a Debt Claim excluding the amount of any unpaid interest, penalty interest, expenses, and any other fees related thereto.

**7.**     *Allowed Debt Claim Distribution Amount* means the amount of an Allowed Debt Claim Allocation Amount *minus* the sum of (a) the amount the holder of such Allowed Debt Claim will receive from the primary obligor of such Claim *plus* (b) the amount such holder will receive upon the disposition of any assets in any jurisdiction that (i) have already been collateralized by the Debtor or any other Person or Entity, (ii) have already been pledged by the Debtor or any other Person or Entity, and (iii) the Debtor, his wife Wei Gan, or any other Person or Entity own that have been seized, attached, or frozen by Chinese judiciary authorities *plus* (c) if the primary debt obligation is satisfied by conversion to equity in any jurisdiction, the corresponding reduction in the amount of the holder's Allowed Debt Claim on account of such conversion.

**8.**     *Ballot* means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan, on which such holder shall indicate acceptance or rejection of the Plan.

**9.**     *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

**10.**     *Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

**11.**     *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, or the local rules of the Bankruptcy Court.

**12.**     *Bar Date* means the deadline to be set by the Bankruptcy Court to file proofs of claim against the Debtor in the Chapter 11 Case.

**13.**     *Business Day* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**14.**     *Cash* means legal tender of the United States of America and equivalents thereof.

**15.**     *Causes of Action* means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any equitable remedy, including, without limitation, any claim for equitable

2

subordination, equitable disallowance, or unjust enrichment; (e) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any cause of action or claim arising under any state or foreign fraudulent transfer law.

16.     *Chapter 11 Case* means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

17.     *Claim* means a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

18.     *Class* means a category of Claims established under Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

19.     *Confirmation Date* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

20.     *Confirmation Hearing* means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

21.     *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and granting other related relief.

22.     *Creditor Extension Term* has the meaning set forth in Article 6.2(f) of the Plan.

23.     *Creditor Trust* has the meaning set forth in Article 6.2 of the Plan.

24.     *Creditor Trust Committee* has the meaning set forth in Article 6.2(e) of the Plan.

25.     *Cure Amount* has the meaning set forth in Article 9.3(a) of this Plan.

26.     *Cure Dispute* has the meaning set forth in Article 9.3(c) of this Plan.

27.     *Cure Schedule* has the meaning set forth in Article 9.3(b) of this Plan.

28.     *Debt Claim* means any Claim against the Debtor that is (a) not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim or (b) otherwise determined by the Bankruptcy Court to be a Debt Claim.

29.     *Debtor* has the meaning set forth in the Introduction.

30.     *Disallowed* means, with respect to any Claim, a Claim or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no proof of claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

31.     *Discharge Date* means the date upon which the Court grants the Debtor a discharge upon the earlier of: (i) distribution of the Trust Interests to the holders of Allowed Debt Claims and (ii) all Allowed Claims shall have been paid under the Plan.

**32.** *Disclosure Statement* means that written disclosure statement, dated October 10, 2019, relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, modified, or supplemented from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.

**33.** *Disputed Claim* means a Claim that is not yet Allowed.

**34.** *Distribution Record Date* means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the date of the commencement of the Confirmation Hearing.

**35.** *Distribution Waterfall* means the distribution waterfall set forth in Article 6.2(i) of this Plan.

**36.** *Domestic Support Obligations* means a domestic support obligation, as defined in section 101(14A) of the Bankruptcy Code, as such obligations may be modified from time to time by a court of competent jurisdiction.

**37.** *Effective Date* means, with respect to the Plan, the Business Day selected by the Debtor on which (a) no stay of the Confirmation Order is in effect, (b) the conditions to the effectiveness of the Plan specified in Article 10.2 have been satisfied or waived (in accordance with Article 10.3), and (c) the Debtor declares the Plan effective.

**38.** *Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

**39.** *Estate* means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**40.** *Final Order* means an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has expired and no appeal, motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which an appeal has been taken, a motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal, motion for leave to appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which leave to appeal, certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal (in the event leave is granted), appeal further or seek leave to appeal, certiorari, further review, reargument, stay, or rehearing has expired and no such appeal, motion for leave to appeal, or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code, rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be filed with respect to such order or judgment.

**41.** *Funding Source* has the meaning set forth in Article 6.2(a) of the Plan.

**42.** *Impaired* means, with respect to a Class of Claims, a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**43.** *Initial Term* has the meaning set forth in Article 6.2(f) of the Plan.

44.     *Initial Trust Expenses* has the meaning set forth in Article 6.2(g) of the Plan.

45.     *IPO* has the meaning set forth in Article 6.2(h) of the Plan.

46.     *Late Filed Debt Claim* means a Debt Claim filed after the Bar Date but before the occurrence of a Distribution Event that is recognized by YT, in his sole discretion, and in an amount to be verified by the Trustee.

47.     *Late Filed Debt Claims Reserve* has the meaning set forth in Article 6.2 of the Plan.

48.     *Lien* means a lien as defined in section 101(37) of the Bankruptcy Code.

49.     *Liquidity Event* has the meaning set forth in Article 6.2(f) of the Plan.

50.     *Marketable Securities* has the meaning set forth in Article 6.2(h) of the Plan.

51.     *Person* means person as defined in section 101(41) of the Bankruptcy Code.

52.     *Petition Date* means the date on which the Debtor filed his petition for relief commencing the Chapter 11 Case.

53.     *Plan* means this prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code, including the exhibits and schedules hereto and the Plan Supplement, as may be amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof.

54.     *Plan Distribution* means a payment or distribution under the Plan to holders of Allowed Claims or other eligible Entities.

55.     *Plan Supplement* means the compilation of documents (or forms or summary of material terms thereof), schedules, and exhibits to the Plan (in each case as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules) to be filed no later than five (5) days before the Voting Deadline or such later date as the Bankruptcy Court may approve, including: (a) form and/or definitive agreements and related documents with respect to the Trust Agreement; and (b) the Schedule of Rejected Contracts and Leases.

56.     *Priority Non-Tax Claim* means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

57.     *Priority Tax Claim* means any Claim entitled to priority in payment as specified in section 507(a)(8) of the Bankruptcy Code.

58.     *Pro Rata* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

59.     *Professional* means an Entity (a) employed in the Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, or (b) seeking or awarded compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

60.    *Released Parties* means, collectively, (a) the Debtor and the Estate; (b) the Debtor's wife, Wei Gan; (c) all Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (d) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such).

61.    *Releasing Parties* means, collectively, and each solely in its capacity as such: (a) each Released Party; (b) each holder of a Claim that either (i) votes to accept the Plan or (ii) is conclusively deemed to have accepted the Plan; and (c) all other holders of Claims to the extent permitted by law.

62.    *Reorganized Debtor* means the Debtor as reorganized under the Plan, and any successor thereto on or after the Effective Date.

63.    *Retained Actions* has the meaning set forth in Article 8.3 of the Plan.

64.    *Schedule of Rejected Contracts and Leases* means a schedule of the executory contracts and unexpired leases to be rejected pursuant to section 365 of the Bankruptcy Code and Article 9.1 hereof.

65.    *Schedules* means the schedules of assets and liabilities to be filed by the Debtor on or after the Petition Date as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

66.    *Securities Act* means the Securities Act of 1933, and all rules and regulations promulgated thereunder.

67.    *Smart King* has the meaning set forth in Article 6.2 of the Plan.

68.    *Smart King Shares* has the meaning set forth in Article 6.2 of the Plan.

69.    *Trust* has the meaning set forth in Article 6.2 of the Plan.

70.    *Trust Agreement* means that certain Trust Agreement, by and among, the Debtor and the Trustee, on substantially similar terms as described in the Trust Agreement Term sheet. A form of the Trust Agreement will be included in the Plan Supplement.

71.    *Trust Agreement Term Sheet* means that certain Trust Agreement Term Sheet attached as Exhibit A to the Disclosure Statement.

72.    *Trust Assets* has the meaning set forth in Article 6.2(a) of the Plan.

73.    *Trust Election* means the election by a holder of an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim to receive their pro rata share of the Trust Assets pursuant to the Distribution Waterfall in lieu of their assigned recoveries under the Plan.

74.    *Trust Expense Funded Amount* has the meaning set forth in Article 6.2(g) of the Plan.

75.    *Trust Interest* has the meaning set forth in Article 6.2 of the Plan.

76.    *Trustee* has the meaning set forth in Article 6.2(d) of the Plan.

*77.* ***Unimpaired*** means, with respect to any Claim, or a Class of Claims, that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

*78.* ***U.S. Secured Claim*** means a Claim against the Debtor that is secured by a valid, unavoidable, perfected, and enforceable Lien on, or security interest in, property of the Debtor located in the United States, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the holder's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, the value of which shall be determined as provided in section 506 of the Bankruptcy Code.

79. ***U.S. Trustee*** means the United States Trustee for the District of Delaware.

80. ***Voting Agent*** means Epiq Corporate Restructuring LLC.

81. ***Voting Deadline*** means 5:00 p.m. (Beijing Time) on November 8, 2019.

82. ***West Coast*** has the meaning set forth in Article 6.2 of the Plan.

83. ***West Coast Interests*** has the meaning set forth in Article 6.2 of the Plan.

84. ***YT Extension Expenses*** has the meaning set forth in Article 6.2(g) of the Plan.

85. ***YT Extension Term*** has the meaning set forth in Article 6.2(f) of the Plan.

**1.2.** ***Interpretation, Application of Definitions, and Rules of Construction.***

(a)     For purposes of the Plan and unless otherwise specified herein (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ii) any term that it not defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, shall have the meaning given to the term in the Bankruptcy Code or Bankruptcy Rules, as applicable; (iii) any reference in the Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) any reference to an Entity as a holder of a Claim includes that Entity's permitted successors and assigns; and (v) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Case, unless otherwise stated.

(b)     In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)     All references in the Plan to monetary figures refer to currency of the United States of America.

## ARTICLE II
## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, and Domestic Support Obligations have not been classified for purposes of voting or receiving distributions. Rather, all such Claims are treated separately as unclassified Claims as set forth in this Article II, and the holders thereof are not entitled to vote on the Plan.

**2.1**    *Administrative Expense Claims.*

(a)    <u>Filing Administrative Expense Claims</u>.  The holder of an Administrative Expense Claim, other than (i) a Claim covered by Article 2.2, (ii) a liability incurred and payable in the ordinary course of business by the Debtor after the Petition Date, (iii) timely filed and Allowed Claims arising under section 503(b)(9) of the Bankruptcy Code; or (iv) an Administrative Expense Claim that has been Allowed on or before the Administrative Expense Claim Bar Date, must file and serve on the Reorganized Debtor a request for payment of such Administrative Expense Claim so that it is received no later than the Administrative Expense Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date.  **Holders required to file and serve, who fail to file and serve, a request for payment of Administrative Expense Claims by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor or Reorganized Debtor and their property, and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article 11.6 hereof.**  Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no governmental unit shall be required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

(b)    <u>Allowance of Administrative Expense Claims</u>.  An Administrative Expense Claim, with respect to which a request for payment has been properly and timely filed pursuant to Article 2.1(a) shall become an Allowed Administrative Expense Claim if no objection to such request is filed with the Bankruptcy Court and served on the Debtor and the requesting party on or before the one-hundred twentieth (120th) day after the Effective Date, as the same may be modified or extended by order of the Bankruptcy Court.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved pursuant to Article 8.3.

(c)    <u>Payment of Allowed Administrative Expense Claims</u>.  Except to the extent that an Administrative Expense Claim has already been paid during the Chapter 11 Case, the holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, or the Holder of an Allowed Administrative Expense Claim makes a Trust Election, and except as provided in Article 2.2, each holder of an Allowed Administrative Expense Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Claim, Cash equal to the unpaid amount of such Allowed Administrative Expense Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) 30 days after the date on which such Administrative Expense Claim becomes Allowed; (iii) the date on which such Administrative Expense Claim becomes due and payable in the ordinary course of the Debtor's business in accordance with the terms and subject to the conditions of any agreements or understandings governing, or other documents relating to, such Allowed Administrative Expense Claim; and (iv) such other date as may be agreed to by such holder and the Debtor or Reorganized Debtor.

**2.2**    *Professional Fees.*

(a)    <u>Final Fee Applications</u>.  Each Professional requesting compensation pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case before the Effective Date shall (i) file with the Bankruptcy Court, and serve on the Reorganized Debtor, an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the forty-fifth (45th) day following the Effective Date, and (ii) after notice and a hearing in accordance with the procedures established by the

Bankruptcy Code and Bankruptcy Rules and any prior orders of the Bankruptcy Court in the Chapter 11 Case, be paid in full, in Cash, in such amounts as are Allowed.

(b) <u>Ordinary Course Professional Fees and Expenses</u>. The immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and the Debtor is permitted to pay, without seeking further authority from the Bankruptcy Court, compensation for services and reimbursement of professional fees and expenses in the ordinary course of business (and in accordance with any relevant prior order of the Bankruptcy Court), the payments for which may continue notwithstanding the occurrence of confirmation of the Plan.

(c) <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Reorganized Debtor may, upon submission of appropriate documentation and in the ordinary course of business, pay the post-Effective Date charges incurred by the Reorganized Debtor for any Professional's fees, disbursements, expenses, or related support services without application to or approval from the Bankruptcy Court. On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional for fees and charges incurred from and after the Effective Date in the ordinary course of business without any notice to or approval of the Bankruptcy Court.

**2.3** *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Claim, Cash equal to the unpaid amount of such Allowed Priority Tax Claim on the latest of (a) the Effective Date or as soon thereafter as reasonably practicable; (b) 30 days after the date on which such Priority Tax Claim becomes Allowed; (c) the date on which such Priority Tax Claim becomes due and payable; and (d) such other date as may be mutually agreed to by and among such holder and the Debtor or Reorganized Debtor; *provided, however*, that the Reorganized Debtor shall be authorized, at his option, and in lieu of payment in full, in Cash, of an Allowed Priority Tax Claim as provided above, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

**2.4** *Domestic Support Obligations.*

On the Effective Date, the Debtor shall make any payments to comply with any postpetition unfunded obligations on account of any Domestic Support Obligations, if any such obligations exist, as may be required for the Debtor to be current with respect to such Domestic Support Obligations as of the Effective Date pursuant to section 1129(a)(14) of the Bankruptcy Code. After the Effective Date, the Debtor shall timely make all payments on account of Domestic Support Obligations to the parties entitled to receive such payments, if any such obligations exist, in each case at the times and in the amounts required by the agreements and orders evidencing such Domestic Support Obligations, as such agreements may from time to time be modified in accordance with applicable law.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS**

The following table designates the Classes of Claims against the Debtor, and specifies which Classes are (a) Impaired or Unimpaired; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) deemed to accept the Plan. A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof

qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

**3.1** *Class Identification.*

Claims against the Debtor are classified as follows:

| Class | Description | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non- Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | U.S. Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Debt Claims | Impaired | Yes |

**ARTICLE IV**
**TREATMENT OF CLAIMS**

**4.1** *Priority Non-Tax Claims (Class 1).*

(a)    Classification. Class 1 consists of all Priority Non-Tax Claims.

(b)    Treatment. Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment or makes a Trust Election, on the Effective Date or as soon thereafter as practicable, each holder of an Allowed Priority Non-Tax Claim shall receive, at the option of the Debtor and in full and complete settlement, release, and discharge of, and in exchange for, such Claim (i) payment in full in Cash; or (ii) other treatment rendering such Claim Unimpaired. Any Allowed Class 1 Claim not due and owing on the Effective Date shall be paid in full, in Cash, when it becomes due and owing.

(c)    Impairment and Voting. Class 1 is Unimpaired. Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

**4.2** *U.S. Secured Claims (Class 2).*

(a)    Classification. Class 2 consists of all U.S. Secured Claims.

(b)    Treatment. Except to the extent that a holder of an Allowed U.S. Secured Claim agrees to less favorable treatment or makes a Trust Election, on the Effective Date or as soon thereafter as practicable, each holder of an Allowed U.S. Secured Claim shall receive, at the option of the Debtor and in full and complete settlement, release, and discharge of, and in exchange for, such Claim (i) payment in full in Cash; (ii) delivery of collateral securing any such Claim; (iii) reinstatement pursuant to section 1124 of the Bankruptcy Code; or (iv) other treatment rendering such Claim Unimpaired.

(c)    Impairment and Voting. Class 2 is Unimpaired. Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and accordingly, are not entitled to vote to accept or reject the Plan.

**4.3**     *Debt Claims (Class 3).*

    (a)     <u>Classification</u>. Class 3 consists of all Debt Claims.

    (b)     <u>Treatment</u>. Except to the extent that a holder of an Allowed Debt Claim agrees to less favorable treatment, each holder of an Allowed Debt Claim shall receive, in full and complete settlement, release, and discharge of, and in exchange for, such Claim, its Pro Rata share of the Trust Interests, which distribution shall be made in accordance with Article 6.2 of the Plan.

    (c)     <u>Impairment and Voting</u>. Class 3 is Impaired.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1**     *Class Acceptance Requirement.*

    Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if it is accepted by at least two thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims in such Class that have voted on the Plan.

**5.2**     *Deemed Acceptance by Non-Voting Classes.*

    If a Class contains Claims eligible to vote and no holder of a Claim eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

**5.3**     *Elimination of Vacant Classes.*

    Any Class of Claims that does not have at least one holder of an Allowed Claim or a Claim temporarily Allowed as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

**5.4**     *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.*

    Section 1129(b) of the Bankruptcy Code provides for confirmation (or "cram-down") of a plan of reorganization even if the plan is not accepted or deemed accepted by all impaired classes of claims, as long as at least one impaired class of claims has voted to accept the plan and certain other requirements are met. Subject to Article 13.7 of the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan or any related document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code.  The Debtor also reserves the right to request confirmation of the Plan, as it may be modified, supplemented, or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1**     *Compromise of Controversies.*

    In consideration for the Plan Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan constitute a good faith compromise and

settlement of all Claims and controversies relating to any Allowed Claim or any Plan Distribution to be made on account thereof or otherwise resolved under the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and his Estate. All Plan Distributions made in accordance with the Plan are intended to be, and shall be, final.

**6.2    *The Trust.***

On or after the Effective Date, the Debtor or the Reorganized Debtor shall (a) transfer the economic interests in 90,588,235 units (representing 100% of the issued and outstanding units) of West Coast LLC ("West Coast"), a Delaware limited liability company (the "West Coast Interests") and (b) cause to be transferred 147,058,823 Class B Preferred Shares of Smart King Ltd. ("Smart King"), a company formed under the laws of the Cayman Islands, which, upon transfer, will automatically convert into Class B Ordinary Shares on a one-to-one basis (the "Smart King Shares") to (i) the 2019 Creditor Liquidating Trust for the benefit of holders of Allowed Debt Claims (the "Creditor Trust") and (ii) a trust for the benefit of holders of Late Filed Debt Claims (the "Late Filed Debt Claims Reserve" and together with the Creditor Trust, the "Trust").

Each holder of an Allowed Debt Claim or Late Filed Debt Claim shall receive a beneficial interest (a "Trust Interest") in the Creditor Trust or the Late Filed Debt Claims Reserve, as applicable, based on the formulas set forth below. The Trust will preserve, hold, manage, and maximize the Trust Assets (as defined below) for use in paying and satisfying the holders' Claims upon the earlier to occur of (x) the consummation of a Liquidity Event or Distribution Event and (y) the termination of the Trust in accordance with the Trust Agreement.

(a)    Trust Assets.

The assets of the Trust shall consist of the following: (i) the economic interest in 90,588,235 units of West Coast (representing 100% of the issued and outstanding units of West Coast); (ii) 147,058,823 Smart King Shares; and (iii) the Trust Expense Funded Amount contributed to the Trust by a postpetition lender (the "Funding Source") as provided in the Trust Agreement Term Sheet (collectively, the "Trust Assets").

(b)    Voting Rights With Respect to the Trust Assets.

The Trustee will exercise all voting rights with respect to the Smart King Shares as directed by FF Top Holding Ltd.; *provided* that the exercise of such voting rights shall be in accordance with (i) the organizational and governing documents of Smart King, (ii) such other agreements that are in effect as of the date of the Trust Agreement (including the certain *Fourth Amended and Restated Memorandum and Articles of Association of Smart King* adopted as of May 15, 2019), and (iii) that certain Restructuring Agreement, dated as of December 31, 2018, by and among Smart King, YT Season Smart Limited, a company formed under the laws of the British Virgin Islands, and the other parties thereto, in each case, to the extent applicable.

(c)    Late Filed Debt Claims Reserve.

On the Effective Date, the Debtor shall transfer 10% of the West Coast Interests and

Smart King Shares respectively to the Late Filed Debt Claims Reserve for the benefit of holders of Late Filed Debt Claims. The Late Filed Debt Claims Reserve will have no operations other than to make distributions to holders of Late Filed Debt Claims in accordance with the Distribution Waterfall and will be managed by the Trustee pursuant to a separate trust agreement with substantially similar governance terms as the Trust Agreement.

The Trustee shall have the right in its discretion to (i) exchange the Late Filed Debt Claims Reserve's portion of the West Coast Interests and Smart King Shares for direct Trust Interests in the Creditor Trust, which shall provide the beneficiaries of the Late Filed Debt Claims Reserve with the same share of distributions they are otherwise entitled to receive under the Distribution Waterfall, and (ii) distribute such Trust Interests to the beneficiaries of the Late Filed Debt Claims Reserve in exchange for their beneficial interests in the Late Filed Debt Claims Reserve.

In order for a holder of a Late Filed Debt Claim to receive a distribution from the Late Filed Debt Claims Reserve, such holder must execute a full release of the Debtor and his wife Wei Gan from personal liability on all claims in every jurisdiction. Any distribution to a Late Filed Debt Claim shall be from the Late Filed Debt Claims Reserve and holders of Late Filed Debt Claims shall have no recourse against the Creditor Trust or the Debtor.

(d)     Appointment of the Trustee.

On or after the Effective Date, one (1) trustee (the "Trustee") shall be appointed in accordance with the Trust Agreement, the identity of which shall be disclosed prior to confirmation of the Plan. The Trust Agreement shall set forth certain experience and independence criteria for the Trustee. The Trustee shall act as a fiduciary and shall not be personally liable in connection with the affairs of the Trust or to any person except for such of the Trustee's acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction. In addition, the Trustee shall be indemnified by the Trust against and held harmless by the Trust from any losses, claims, damages, liabilities, or expenses (including without limitation, attorneys' fees, disbursements, and related expenses) to which the Trustee may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Trustee in connection with any matter arising out of or related to the Trust Agreement or the affairs of the Trust (other than in respect of acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction). The Trustee shall be entitled to obtain customary fiduciary and/or errors and omissions liability insurance and engage independent legal counsel and financial advisors to assist with its evaluation of any matters with respect to the Trust, including any Liquidity Event.

The Trustee shall be compensated by the Trust in an amount not to exceed $100,000 per annum (unless approved by the Creditor Trust Committee). The Trustee shall be entitled to reimburse itself out of any available cash in the Trust, for its actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage, which the Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Trustee under the Trust Agreement.

The Trustee may resign upon sixty (60) days' advance written notice to the Creditor Trust Committee so long as a replacement trustee has been appointed.

(e)     Creditor Trust Committee.

Holders of Trust Interests will be represented by a committee that shall consist of a number of holders of Allowed Debt Claims (the "Creditor Trust Committee"), the responsibilities and governance of which are set forth in the Trust Agreement Term Sheet.

(f)    Term of the Trust.

The term of the Trust will extend until the sixth (6th) anniversary of the effective date of the Trust Agreement (such six (6)-year period, the "Initial Term"). The Creditor Trust Committee may, upon delivery of written notice to the Trustee not later than ninety (90) days prior to the expiration of the Initial Term, elect to extend the Initial Term for up to three (3) additional one (1)-year periods (each, a "Creditor Extension Term") to allow for orderly liquidation of any remaining Trust Assets. Subject to the limitations set forth above, the Creditor Trust Committee may, upon delivery of written notice to the Trustee not later than ninety (90) days prior to the expiration of the then-current Creditor Extension Term, elect to extend such Creditor Extension Term.

If the completion of an IPO occurs during the Initial Term, the Debtor may, upon delivery of written notice to the Trustee and the Creditor Trust Committee not later than ninety (90) days prior to the expiration of the Initial Term, elect to extend the Initial Term for up to three (3) additional one (1)-year periods (each, a "YT Extension Term") in his sole discretion to liquidate any Smart King Shares that remain unsold as of the expiration of the Initial Term.

The Trustee shall dissolve and wind up the Trust and distribution the Trust Assets upon the expiration of (i) the Initial Term if no YT Extension Term or Creditor Extension Term is exercised or (ii) the expiration of the applicable YT Extension Term or Creditor Extension Term, as applicable. The Trustee may dissolve the Trust before the end of the Initial Term, any Creditor Extension Term, or any YT Extension Term if: (x) all Allowed Debt Claim Distribution Amounts are fully paid and satisfied and the Debtor has approved the dissolution of the Trust or (y) upon the liquidation, dissolution, or winding up of Smart King (a "Liquidity Event"). Upon termination of the Trust, the Trustee will obtain a valuation of the Trust Assets as of the termination date (performed by an independent valuation firm selected by the Trustee and approved by the Creditor Trust Committee and the Debtor) and shall, as promptly as practicable following the completion of the independent valuation, distribute the Trust Assets in kind to the holders of Allowed Debt Claims in accordance with the distribution waterfall set forth on Exhibit A to the Trust Agreement Term Sheet.

(g)    Expenses of the Trust.

On the effective date of the Trust Agreement, the Funding Source will contribute to the Trust as part of the Trust Assets $600,000 in immediately available funds for the purposes of funding the Trust's administration during the first three (3) years of the Initial Term, including for retaining independent third party advisors (legal counsel, an independent registered accounting firm, and an independent valuation firm, among others), compensating the Trustee, and paying such other fees and expenses incidental to the management and administration of the Trust Assets during the first three (3) years of the Initial Term. For each year during the Initial Term thereafter, no later than thirty (30) days following the beginning of such year, the Funding Source shall contribute to the Trust as part of the Trust Assets $200,000 in immediately available funds for the purposes of funding the Trust's administration during such year (the expenses referred to in this paragraph are referred to herein as the "Initial Trust Expenses"). For purposes of clarification, in no event shall the Funding Source be required during the Initial Term to contribute to the Trust as part of the Trust Assets more than $1,200,000.

In the event that the Debtor elects to extend the duration of the Trust beyond the Initial Term pursuant to a YT Extension Term, the Funding Source will contribute to the Trust as part of the Trust Assets $200,000 in immediately available funds for the purposes of funding the Trust's administration during such YT Extension Term (such expenses, the "YT Extension Expenses"). In the event that the Creditor Trust Committee elects to extend the duration of the Trust beyond the Initial Term, the holders of Trust Interests shall obtain financing for the Trust in the amount of $200,000 in the

14

aggregate for each Creditor Extension Term (with each holder bearing his, her, or its pro rata share of such amount) for the purposes of funding the Trust's administration (the "Additional Trust Expenses" and, together with the Initial Trust Expenses and the YT Extension Expenses the "Trust Expense Funded Amount").

        (h)     Distribution of Trust Assets.

On or after the completion of an initial public offering on the New York Stock Exchange, Nasdaq, the Hong Kong Stock Exchange, the London Stock Exchange, or any other internationally recognized stock exchange with respect to the shares of outstanding capital stock of Smart King or such other relevant listing vehicle, as applicable (an "IPO"), the proceeds received by the Trust from (i) any disposition of Smart King Shares or (ii) dividends or distributions in respect of the Smart King Shares or the interest in West Coast (each, a "Distribution Event") will be distributed in accordance with the Distribution Waterfall upon the earlier of (i) sixty (60) days following the occurrence of such Distribution Event, and (ii) the termination of the Trust.

The Trustee may delay or defer the distribution of any proceeds (whether cash, securities, or other property) received by the Trustee in respect of the Trust Assets if the Trustee determines that such deferral or delay is in the best interests of the holders of Trust Interests (including if (i) the Trust or the Trust Assets are bound by an injunction, freeze order, judgment, or similar order or proceeding affecting such distribution or (ii) such distribution would violate applicable law).

The decision as to when and how much of the Trust Assets to dispose of after an IPO will be governed in accordance with the schedule attached as Exhibit B to the Trust Agreement Term Sheet, and the Trustee will, in accordance with instructions in compliance with such schedule, sell, transfer, or otherwise dispose of any securities that are listed (the "Marketable Securities") in one or more open market transactions, private placement, or derivative transactions. The proceeds shall be distributed in accordance with the Distribution Waterfall.

At any time upon the Debtor's request, the Trustee will distribute the Marketable Securities in kind to the holders of Trust Interests in lieu of any cash distribution. The value of the Marketable Securities will be the average closing trading price for the five (5) consecutive trading days immediately prior to the distribution.

        (i)     Distribution Waterfall.

The Trust Assets of the Creditor Trust and the Late Filed Debt Claims Reserve shall be distributed to the Funding Source, holders of eligible Claims that made a Trust Election, holders of the Trust Interests, and the Debtor as follows:

        (i)     First, pro rata from the Creditor Trust and the Late Filed Debt Claims Reserve, to the Funding Source, an amount equal to the amount contributed by the Funding Source during the Initial Term to provide for (x) the Initial Trust Expenses and (y) the YT Extension Expenses, if any;

        (ii)    Second, pro rata from the Creditor Trust and the Late Filed Debt Claims Reserve, to each holder of Trust Interests, an amount equal to such holder's pro rata share of the Additional Trust Expenses, if any;

        (iii)   Third, pro rata from the Creditor Trust and the Late Filed Debt Claims Reserve, to each holder of an Administrative Expense Claim, Priority

Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim that has made a Trust Election, equal to the Allowed amount of such Claim;

(iv)    Fourth, the remaining Trust Assets of the Late Filed Debt Claims Reserve, to holders of Late Filed Debt Claims, an amount equal to such holder's pro rata share of the remaining Trust Assets held in the Late Filed Debt Claims Reserve (after accounting for the distributions pursuant to clauses (i) through (iii) above, if any), until such holder has received aggregate distributions (in cash or in kind) pursuant to this clause (iv) equal to the lessor of (x) such holder's pro rata share of remaining Trust Assets that would be available to satisfy all Allowed Debt Claims and Late Filed Debt Claims; and (y) the full amount of such Late Filed Debt Claim as verified by the Trustee;

(v)    Fifth, to the Creditor Trust, 100% of the amount of the remaining Trust Assets held in the Late Filed Debt Claims Reserve (after accounting for the distributions pursuant to clauses (i) through (iv) above), if any;

(vi)    Sixth, the Trust Assets remaining in the Creditor Trust after distributions pursuant to clauses (i) through (iii) above and contributions from clause (v) above, to holders of Allowed Debt Claims, an amount equal to such holder's pro rata share of the remaining proceeds held in the Creditor Trust, if any, until such holder has received aggregate distributions (in cash or in kind) pursuant to this clause (vi) equal to the amount of such holder's Allowed Debt Claim Distribution Amount; and

(vii)    Seventh, to the Debtor, 100% of the amount of the remaining proceeds (after accounting for the distributions pursuant to clauses (i), (ii), (iii), (iv), and (vi) above), if any.

(j)    <u>2019 Equity Incentive Plan</u>.

In order to align incentives and reward the Debtor and other key members of management in achieving Smart King's strategic goals, it is anticipated that Smart King will adopt a management incentive equity plan subject to the consummation of the restructuring (the "<u>2019 Equity Incentive Plan</u>"). The board of directors of Smart King may grant certain stock-based awards upon the achievement of financial targets upon a Distribution Event. The total available equity awards under the 2019 Equity Incentive Plan will be as follows:

| Smart King Value (in thousands) | $5,000 | $10,000 | $21,000 |
|---|---|---|---|
| Dilution | 2% (Post series B) | Additional 3% (Post IPO) | Additional 3% (Post IPO) |

### 6.3 *Cancellation of Liens.*

Except as provided otherwise in this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens on assets located in the United States that secure any U.S. Secured Claim shall be fully released, settled, discharged, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Reorganized Debtor and his

16

successors and assigns, and the holder of such U.S. Secured Claim shall be authorized and directed, at the sole cost and expense of the Reorganized Debtor, to release any collateral or other property of the Debtor (including any cash collateral and possessory collateral) held by such holder, and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The filing of the Confirmation Order with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## ARTICLE VII
## PLAN DISTRIBUTIONS

### 7.1   *Plan Distributions.*

The Debtor shall make all Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan.

### 7.2   *Allocation of Plan Distributions Between Principal and Interest.*

The aggregate consideration to be distributed to the holders of Allowed Claims under the Plan shall be treated as first satisfying an amount equal to the stated principal amount of the Allowed Claims of such holders, as determined for federal income tax purposes, and any remaining consideration as satisfying accrued, but unpaid, interest, if any.

### 7.3   *No Postpetition Interest on Claims.*

Other than as specifically provided in the Plan, Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claim, and no holder of a prepetition Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 7.4   *Date of Plan Distributions.*

Except as otherwise provided herein, any distributions and deliveries to be made under the Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.5   *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtor, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date. The Debtor shall have no obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date. The Debtor and the Reorganized Debtor, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 7.6   *Delivery of Plan Distribution.*

Subject to the provisions contained in this Article VII and subject to Bankruptcy Rule 9010, the Debtor shall make all Plan Distributions or payments to any holder of an Allowed Claim as and

when required by this Plan at: (a) the address of such holder on the books and records of the Debtor or his agents; or (b) the address in any written notice of address change delivered to the Debtor, including any addresses included on any filed proofs of claim or transfers of claim filed with the Bankruptcy Court. In the event that any Plan Distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; *provided, however*, such Plan Distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date.

### 7.7    *Unclaimed Property.*

Except with respect to the Trust Interests held in the Trust, one (1) year from the later of: (a) the Effective Date, and (b) the date that a Claim is first Allowed, all unclaimed property or interests in property distributable hereunder on account of such Claim shall revert to the Reorganized Debtor or the successors or assigns of the Reorganized Debtor, and any claim or right of the holder of such Claim to such property or interest in property shall be discharged and forever barred. The Reorganized Debtor shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtor's books and records, the proofs of Claim filed against the Debtor, as reflected on the claims register maintained by the Voting Agent, and any change of address reflected on the docket of the Chapter 11 Case.

### 7.8    *Satisfaction of Claims.*

Unless otherwise provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction, and discharge of such Allowed Claims.

### 7.9    *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or the Reorganized Debtor.

### 7.10    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim plus any postpetition interest on such Claim, to the extent such interest is permitted by Article 7.3 of this Plan.

To the extent any holder of an Allowed Debt Claim continues to have claims against any other Person or Entity (other than the Debtor or his wife Wei Gan), subject to the following proviso, such claims will remain outstanding notwithstanding the transactions contemplated hereby; *provided, however*, if on and after the date on which the claims of any holder of an Allowed Debt Claim is paid in full in accordance with the terms of this Plan, any such Allowed Debt Claims shall thereafter be deemed to be and in fact, paid in full in their entirety. Furthermore, to the extent any holder of an Allowed Debt Claim has security or possession of any property or assets of the Debtor or any other Person or Entity, after such Claims are paid in full, such holder shall release and/or return any such property or assets to the Debtor or such other Person or Entity.

If on and after the date on which a holder of an Allowed Debt Claim is paid in part in

accordance with the terms of this Plan, then the aggregate amount distributed to such holder from the disposition of Chinese frozen or secured assets will be equal to the proceeds received from the disposition of such frozen or secured assets less the partial payments that have been made to such holder through the Trust.

### 7.11   *Setoffs and Recoupments.*

(a)      Except as expressly provided in this Plan, the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the relevant Reorganized Debtor(s) and holder of Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder. For the avoidance of doubt, nothing in this Plan shall affect the right of any holder of a Claim against the Debtor that is evidenced by a timely filed proof of claim to seek an order of the Bankruptcy Court authorizing such holder to set off such Claim against any claim, right, or Cause of Action of the Debtor that arose prior to the Petition Date.

(b)      In no event shall any holder of Claims against the Debtor be entitled to recoup any such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor in accordance with Article 13.21 of the Plan on or before the Effective Date, notwithstanding any indication in any proof of claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### 7.12   *Withholding and Reporting Requirements.*

In connection with this Plan and all Plan Distributions hereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtor or Reorganized Debtor believe are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications. Notwithstanding any other provisions of this Plan: (a) each holder of an Allowed Claim that is to receive a Plan Distribution shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations on account of such distribution; and (b) no distribution shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to the Reorganized Debtor for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtor's satisfaction, established an exemption therefrom.

### 7.13   *Claims Paid by Third Parties.*

(a)      <u>Claims Paid by Third Parties</u>.  Except as otherwise provided in the Plan, the Debtor or Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without an objection having to be filed and without any further notice to, or action, order, or

approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party that is not the Debtor or Reorganized Debtor.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or Reorganized Debtor on account of such Claim, such holder shall, within ten (10) days of receipt thereof, repay or return the distribution to the Debtor or Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan.  In the event such holder fails to timely repay or return such distribution, the Debtor, the Reorganized Debtor, or the Trustee, as applicable, may pursue any rights and remedies against such holder under applicable law.

> (b)    *Applicability of Insurance Policies.*  Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Pursuant to section 524(e) of the Bankruptcy Code, nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor, the Reorganized Debtor, or any Entity may hold against any other Entity under any insurance policies, including against insurers, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### ARTICLE VIII
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**8.1**    *Objections to Claims; Estimation of Claims.*

> Except insofar as a Claim is Allowed under the Plan, the Debtor or the Reorganized Debtor, as applicable, shall be entitled to object to Claims.  No other Entity shall be entitled to object to Claims after the Effective Date.  Any objections to Claims shall be served and filed on or before (a) the one-hundred eightieth (180th) day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as may be fixed by the Bankruptcy Court.

> The Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, except that the Reorganized Debtor may not request estimation of any non-contingent or liquidated Claim if the Debtor's objection to such Claim was previously overruled by a Final Order, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**8.2** *Payments and Distributions on Disputed Claims.*

If an objection to a Claim is filed as set forth in Article 8.1, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

At such time as a Disputed Claim becomes an Allowed Claim or as soon as practicable thereafter, the Debtor shall distribute to the holder of such Allowed Claim the property distributable to such holder pursuant to Article IV of the Plan; *provided, however*, that the timing of distributions to holders of Claims in Class 3 shall be governed in all respects by Article 6.2 of the Plan. To the extent that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed. Notwithstanding any other provision of the Plan, no interest shall accrue or be Allowed on any Claim during the period after the Petition Date, except to the extent that section 506(b) of the Bankruptcy Code permits interest to accrue and be Allowed on such Claim.

**8.3** *Preservation of Claims and Rights to Settle Claims.*

Except as otherwise provided in the Plan, or in any contract, instrument, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss all Claims, rights, Causes of Action, suits, and proceedings, including those described in the Plan Supplement (collectively, the "Retained Actions"), whether at law or in equity, whether known or unknown, that the Debtor or his Estate may hold against any Entity (other than Claims, rights, Causes of Action, suits, and proceedings released pursuant to Article 11.4 below), without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. For the avoidance of doubt, Retained Actions do not include any Claim or Cause of Action released pursuant to Article 11.4 and 11.9 below. The Reorganized Debtor or his successor(s) may pursue such Retained Actions, as appropriate, in accordance with the best interests of the Reorganized Debtor or his successor(s) that hold such rights.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Action against it as any indication that the Reorganized Debtor will not, or may not, pursue any and all available Retained Actions against it. The Reorganized Debtor expressly reserves all rights to prosecute any and all Retained Actions against any Entity. Unless any Retained Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Retained Actions for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Action upon, after, or as consequence of, confirmation or consummation of the Plan. For the avoidance of doubt, all Claims, Causes of Action, suits, and proceedings of the Debtor that are not Retained Actions are waived as of the Effective Date.

**8.4**     *Expenses Incurred On or After the Effective Date.*

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Reorganized Debtor, the amount of reasonable expenses incurred by any Professional or the Voting Agent on or after the Effective Date in connection with implementation of this Plan, including, without limitation, reconciliation of, objection to, and settlement of claims, shall be paid in Cash by the Reorganized Debtor.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1**     *Assumption of Contracts and Leases.*

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtor shall be deemed assumed except that: (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases, shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions and rejections described in this Article 9.1 pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to this Article 9.1 shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law. The pendency of any motion to assume or reject executory contracts or unexpired leases shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Unless otherwise provided in the Plan, each executory contract and unexpired lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect.  Modifications, amendments, supplements, and restatements to prepetition executory contracts or unexpired leases that have been executed by the Reorganized Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease.

**9.2**     *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to all Claims arising from the rejection of Executory Contracts must be filed within sixty (60) days after the later of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date.  Any Claims not filed within such times shall be forever barred from assertion against the Debtor, the Reorganized Debtor, the Estate, and the property thereof.  Unless otherwise ordered by the Bankruptcy Court, all such Claims shall be allowed in accordance with provisions of the Bankruptcy Code, including section 502(b)(6), and shall, following their allowance and payment pursuant to the terms of the Plan, be Unimpaired and be treated as Allowed Claims in Class 3.

**9.3** *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(a) Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "Cure Amount") in full in Cash on the later of thirty (30) days after: (i) the Effective Date or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

(b) No later than ten (10) calendar days prior to the commencement of the Confirmation Hearing, the Debtor shall file a schedule (the "Cure Schedule") setting forth the Cure Amount, if any, for each executory contract and unexpired lease to be assumed pursuant to Article 9.1 of the Plan, and serve such Cure Schedule on each applicable counterparty. Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within ten (10) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.

(c) In the event of a dispute (each, a "Cure Dispute") regarding: (i) the Cure Amount; (ii) the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption in accordance with Article 9.3(a). To the extent a Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that the Debtor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined against the Debtor or Reorganized Debtor, as applicable, the Debtor or Reorganized Debtor, as applicable, may reject the applicable executory contract or unexpired lease within ten (10) Business Days after such determination by filing and serving upon the counterparty a notice of rejection, and the counterparty may thereafter file a proof of claim in the manner set forth in Article 9.2 hereof.

**9.4** *Insurance Policies.*

All insurance policies pursuant to which the Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Debtor (and assigned to the Reorganized Debtor if necessary to continue such insurance policies in full force) pursuant to section 365 of the Bankruptcy Code and shall continue in full force and effect.

**9.5** *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease on any exhibit to the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any agreement, contract, or lease is an executory contract or unexpired lease subject to Article IX of the Plan, as applicable, or that the Debtor or Reorganized Debtor has any liability thereunder.

The Debtor and Reorganized Debtor, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Contracts and Leases until and including the Effective Date or as otherwise provided by Bankruptcy Court order; *provided, however*, that if there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, assumption and assignment, or with respect to the asserted Cure Amount, then the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to amend the decision to assume, or assume and assign, such executory contract or unexpired lease.

**9.6    *Pre-existing Obligations to Debtor Under Executory Contracts and Unexpired Leases***

Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtor under such contracts or leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtor contracting from non-Debtor counterparties to rejected executory contracts or unexpired leases.

**9.7    *Contracts and Leases Entered into After the Petition Date.***

Contracts and leases entered into after the Petition Date by the Debtor in the ordinary course of business or following approval pursuant to a Bankruptcy Court order, including any executory contracts and unexpired leases assumed by the Debtor, shall be performed by the Debtor or Reorganized Debtor, as the case may be, in the ordinary course of business.  Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) shall survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE X**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

**10.1    *Conditions Precedent to Confirmation.***

It shall be a condition to confirmation of this Plan that the following conditions shall have been satisfied in full or waived in accordance with Article 10.3 of the Plan:

(a)    The Disclosure Statement shall have been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code; and

(b)    The Confirmation Order shall have been entered on the docket for the Chapter 11 Case and be in full force and effect.

**10.2    *Conditions Precedent to the Effective Date.***

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full or waived in accordance Article 10.3 of the Plan:

(a)    The Confirmation Order shall have become a Final Order in full force and effect;

(b)    The documents comprising the Plan Supplement, including the Trust Agreement, shall, to the extent applicable, have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith;

(c)    All necessary actions, documents, certificates, and agreements necessary to implement the Plan on the Effective Date shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws; and

(d)    All applicable governmental authorities shall have granted any necessary consents and approvals required for the Debtor to emerge from chapter 11 pursuant to the Plan and any statutory waiting periods shall have expired.

**10.3**    *Waiver of Conditions Precedent.*

Each of the conditions precedent in Articles 10.1 and 10.2 of the Plan may be waived, in whole or in part, by the Debtor in writing, without notice to any other third parties or order of the Bankruptcy Court or any other formal action.

**10.4**    *Effect of Non-Occurrence of the Effective Date.*

If the conditions listed in Articles 10.1 and 10.2 are not satisfied or waived in accordance with Article 10.3, then (a) the Confirmation Order shall be of no further force or effect; (b) the Plan shall be null and void in all respects; (c) no distributions under the Plan shall be made; (d) no executory contracts or unexpired leases that were not previously assumed, assumed and assigned, or rejected shall be deemed assumed, assumed and assigned, or rejected by operation of the Plan; (e) the Debtor and all holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date; and (f) nothing contained in the Plan or the Disclosure Statement shall (i) be deemed to constitute a waiver or release of (x) any Claims by any creditor or the Debtor or (y) any Claims against the Debtor, (ii) prejudice in any manner the rights of the Debtor or any other Entity, or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtor in any respect.

**ARTICLE XI**
**EFFECT OF CONFIRMATION**

**11.1**    *Vesting of Assets.*

Except as otherwise provided in the Plan, as of the Effective Date, all property of the Estate, and any property acquired by the Debtor or Reorganized Debtor under the Plan, shall vest in the Reorganized Debtor, free and clear of all Claims, liens, charges, other encumbrances and interests.  On and after the Effective Date, the Debtor may use, acquire, and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**11.2**    *Binding Effect.*

Subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, on and after the Confirmation Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any holder of a Claim against the Debtor, and such holder's respective successors and assigns, (whether or not the Claim of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor counterparties to executory contracts, unexpired leases, and

any other prepetition agreements. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

### 11.3   *Discharge of Claims.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtor that arose before the Effective Date. Except as expressly provided in the Plan, on the Discharge Date (and subject to its occurrence), and pursuant to section 1141(d)(5) of the Bankruptcy Code, entry of the Confirmation Order shall be deemed to act as a discharge and release under section 1141(d)(1)(A) of the Bankruptcy Code of all Claims against the Debtor and his assets, arising at any time before the Effective Date, regardless of whether a proof of Claim was filed, whether the Claim is Allowed, or whether the holder of the Claim votes to accept the Plan or is entitled to receive a distribution under the Plan; *provided, however,* that in no event shall occurrence of the Discharge Date discharge the Debtor from any obligations remaining under the Plan as of the Discharge Date. Any default by the Debtor with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Discharge Date.

No later than five (5) business days after the occurrence of the Discharge Date, the Debtor or Reorganized Debtor, as applicable, shall file with the Bankruptcy Court a notice of the occurrence of the Discharge Date, and serve such notice on all creditors. In addition, following the occurrence of the Discharge Date, the Debtor or Reorganized Debtor, as applicable, shall file a motion seeking entry of an order of discharge after notice and a hearing, which motion (and the discharge) shall be granted upon a showing that the Debtor has made all payments required under the Plan. Except as expressly provided in the Plan, any holder of a discharged Claim will be precluded from asserting against the Debtor or any of his assets any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Except as expressly provided in the Plan, and subject to the occurrence of the Discharge Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtor to the extent allowed under section 1141 of the Bankruptcy Code, and the Debtor will not be liable for any Claims and will only have the obligations that are specifically provided for in the Plan. Notwithstanding the foregoing, nothing contained in the Plan or the Confirmation Order shall discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code by a Final Order.

### 11.4   *Releases.*

(a)   **Releases by the Debtor.** Upon the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in his individual capacity and as debtor in possession, shall be deemed forever to release, waive, and discharge (x) the Estate; (y) all Persons engaged or retained by the Debtor in connection with the Chapter 11 Case (including in connection with the preparation of and analyses relating to the Disclosure Statement and the Plan); and (z) any and all advisors, attorneys, actuaries, financial advisors, accountants, investment bankers, agents, professionals, and representatives of each of the foregoing Persons and Entities (whether current or former, in each case in his, her, or its capacity as such), from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws (other than the rights of the Debtor or Reorganized

26

Debtor to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, or agent of, or advisor to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released Party; (vi) the restructuring of Claims before or during the Chapter 11 Case; and (vii) the negotiation, formulation, preparation, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, or related agreements, instruments, or other documents, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence. The Reorganized Debtor shall be bound, to the same extent the Debtor is bound, by the releases and discharges set forth above.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(a) by the Debtor, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Article 11.4(a) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(b)    **Releases by Holders of Claims and Other Entities**. Upon the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party, in consideration for the obligations of the Debtor and the Reorganized Debtor under the Plan, and the Trust Interests and Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive, and discharge the Released Parties from personal liability in every jurisdiction from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, actions, Causes of Action, and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtor, whether for tort, fraud, contract, recharacterization, subordination, violations of federal or state securities laws or laws of any other jurisdiction or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then-existing or thereafter arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or other occurrence, or circumstances taking place on or before the Effective Date, in any way relating to (i) the Debtor or the Chapter 11 Case; (ii) any action or omission of any Released Party with respect to any indebtedness under which the Debtor is or was a borrower or guarantor; (iii) any Released Party in any such Released Party's capacity as an employee, agent of, or advisor to, the Debtor; (iv) the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan; (v) the business or contractual arrangements between the Debtor and any Released Party; (vi) the restructuring of Claims before or during the Chapter 11 Case and the solicitation of votes with respect to the Plan; and (vii) the negotiation, formulation, preparation, entry into, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement

and all documents contained or referred to therein), the Disclosure Statement, or related agreements, instruments, or other documents; *provided, however*, that the Releasing Parties shall continue to dispose of the following assets through judicial authorities in the People's Republic of China to satisfy such Releasing Party's Claim through a mechanism that will be mutually agreed to by the parties: (x) assets that have already been collateralized by the Debtor or any other Person or Entity; (y) assets that have already been pledged by the Debtor or any other Person or Entity; and (z) assets or interests that the Debtor, his wife Wei Gan, or any other Person or Entity own that have been seized, attached, or frozen by Chinese judiciary authorities. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Within thirty (30) days of the Effective Date, each holder of a Debt Claim is obligated to (i) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against the Debtor and his wife Wei Gan from the court or judicial authorities in all jurisdictions, including, but not limited to, the People's Republic of China, or commit or confirm with the judicial authorities that the Debtor or his wife Wei Gan have fulfilled all their debt obligations or legal responsibilities and (ii) file and execute any documents requested by the Debtor to evidence the above release. Unless and until a holder of a Debt Claim complies with the preceding sentence and all of their obligations under the Trust Agreement, such holder shall not be entitled to exercise any rights with respect to the Trust or receive any distributions from the Trust; *provided, however*, that the Debtor reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein, and the Chinese judicial authorities shall have jurisdiction to enforce such rights.

In connection with the releases described in this Article 11.4(b), each Releasing Party shall waive all rights conferred by the provisions of section 1542 of the California Civil Code and/or any similar state or federal law. Section 1542 of the California Civil Code provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article 11.4(b), which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in Article 11.4(b) is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtor and all holders of Claims; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Releasing Parties asserting any Claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

11.5    *Exculpation and Limitation of Liability.*

None of the Debtor or Reorganized Debtor, or the direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents, or other professionals (whether current or former, in each case, in his, her, or its capacity as such) of the Debtor or the Reorganized Debtor, or the Released Parties shall have or incur any liability to, or be subject to any right of action by, any holder of a Claim, or any other party in interest in the

Chapter 11 Case, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or direct or indirect affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulation, negotiation, preparation, dissemination, confirmation, solicitation, implementation, or administration of the Plan, the Plan Supplement and all documents contained or referred to therein, the Disclosure Statement, any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other pre- or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor or confirming or consummating the Plan (including the distribution of any property under the Plan); *provided, however*, that the foregoing provisions of this Article 11.5 shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined by a Final Order to have constituted willful misconduct, fraud, or gross negligence and shall not impact the right of any holder of a Claim, or any other party to enforce the terms of the Plan and the contracts, instruments, releases, and other agreements or documents delivered in connection with the Plan. Without limiting the generality of the foregoing, the Debtor and the Debtor's direct or indirect affiliates, employees, advisors, attorneys, financial advisors, accountants, investment bankers, agents and other professionals (whether current or former, in each case, in his, her, or its capacity as such) shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. The exculpated parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such exculpating parties from liability.

### 11.6    *Injunction.*

(a)    <u>General</u>. All Persons or Entities who have held, hold, or may hold Claims (other than Claims that are reinstated under the Plan), and all other parties in interest in the Chapter 11 Case, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates, are permanently enjoined, from and after the Effective Date, from, in respect of any Claim or Cause of Action released or settled hereunder, (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against the Released Parties, the Debtor, or the Reorganized Debtor, or in respect of any Claim or Cause of Action released or settled hereunder; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Released Parties, the Debtor, or the Reorganized Debtor; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties, the Debtor, or the Reorganized Debtor; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from the Released Parties, the Debtor, or the Reorganized Debtor, or against the property or interests in property of the Debtor or Reorganized Debtor, on account of such Claims; or (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims released or settled pursuant to the Plan; *provided, however*, that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms hereof and the contracts,

instruments, releases, and other agreements and documents delivered under or in connection with the Plan.

(b)    <u>Injunction Against Interference With the Plan</u>.    Upon entry of the Confirmation Order, all holders of Claims and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article 11.6 of the Plan.

11.7    *Term of Bankruptcy Injunction or Stays.*

All injunctions or stays (excluding any injunctions or stays contained in the Plan or the Confirmation Order) in effect in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or any order of the Bankruptcy Court or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the Effective Date.

11.8    *Termination of Subordination Rights and Settlement of Related Claims.*

The classification and manner of satisfying all Claims under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. All subordination rights that a holder of a Claim may have with respect to any distribution to be made under the Plan, shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under the Plan to holders of Allowed Claims shall not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

11.9    *Waiver of Actions Arising Under Chapter 5 of the Bankruptcy Code.*

Without limiting any other applicable provisions of, or releases contained in, this Plan, each of the Debtor, the Reorganized Debtor, their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, throughf, for, or because of the foregoing entities, hereby irrevocably and unconditionally release, waive, and discharge any and all Claims or Causes of Action that they have, had or may have that are based on section 544, 547, 548, 549, and 550 of the Bankruptcy Code and analogous non-bankruptcy law for all purposes; *provided, however*, that notwithstanding this or any other provision of the Plan, the Debtor and Reorganized Debtor, as the case may be, retain all such Claims or Causes of Action against any holder of a putative U.S. Secured Claim. For the avoidance of doubt, none of the Claims or Causes of Action referenced in this Article 11.9, except as excluded herein, shall constitute Retained Actions.

11.10    *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Effective Date. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party, including the Released Parties, with respect to any Claims or any other matter.

## ARTICLE XII
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, to the fullest extent permitted by law, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or out of, or related to, the Chapter 11 Case, the Plan, or the Confirmation Order, including jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b)     Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is party to or with respect to which the Debtor or Reorganized Debtor may be liable, and hear, determine, and, if necessary, liquidate, any Claims arising therefrom;

(c)     Determine any and all motions, adversary proceedings, applications, contested matters, or other litigated matters pending on the Effective Date;

(d)     Ensure that Plan Distributions to holders of Allowed Claims are accomplished pursuant to the terms of the Plan;

(e)     Adjudicate any and all disputes arising from or relating to Plan Distributions;

(f)     Enter, implement, or enforce such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)     Enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(h)     Issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)     Modify the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(j)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code incurred prior to the Confirmation Date;

31

(k)     Hear and determine any rights, Claims, or Causes of Action held or reserved by, or accruing to, the Debtor or the Reorganized Debtor pursuant to the Bankruptcy Code, the Confirmation Order, or, in the case of the Debtor, any other applicable law;

(l)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(m)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions contemplated thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing, or the effect of the Plan under any agreement to which the Debtor, the Reorganized Debtor, or any affiliate thereof are party;

(n)     Hear and determine any issue for which the Plan or a related document requires a Final Order of the Bankruptcy Court;

(o)     Issue such orders as may be necessary or appropriate to aid in execution of the Plan or to maintain the integrity of the Plan following consummation, to the extent authorized by section 1142 of the Bankruptcy Code;

(p)     Determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(q)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(r)     Enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(s)     Hear and determine all disputes involving the existence, scope, and nature of the discharges, releases, or injunctions granted under the Plan and the Bankruptcy Code;

(t)     Hear and determine all disputes involving or in any manner implicating the exculpation or indemnification provisions contained in the Plan;

(u)     Hear and determine any matters arising under or related to sections 1141 and 1145 of the Bankruptcy Code;

(v)     Recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

(w)     Enter an order of discharge, upon request of the Debtor or Reorganized Debtor, as applicable;

(x)     Enter a final decree closing the Chapter 11 Case; and

(y)     Hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.1**    *Payment of Statutory Fees.*

On the Effective Date, all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code shall be paid by the Debtor. Following the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor and Reorganized Debtor shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**13.2**    *Exemption from Securities Laws.*

To the maximum extent provided by section 1145(a) of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, or distribution of the Trust Interests, shall be exempt from, among other things, section 5 of the Securities Act, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code.

**13.3**    *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the transfer of title to or ownership of any of the Debtor's interests in any property; or the making or delivery of any instrument of transfer in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the foregoing, any issuance, transfer, or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including, without limitation, any and all stamp taxes or similar taxes and any interest, penalties, and addition to the tax that may be required to be paid in connection with the consummation of the Plan) pursuant to sections 106, 505(a), 1141, and 1146(a) of the Bankruptcy Code. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

**13.4**    *Dissolution of Statutory Committees and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee(s) appointed in the Chapter 11 Case shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Case. The Reorganized Debtor shall not be responsible for paying any fees and expenses incurred after the Effective Date, if any, by the professionals retained by any such committee, other than for the reasonable fees and expenses for the services authorized to be provided pursuant to this Article 13.4.

**13.5    *Substantial Consummation.***

On the Discharge Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.6    *Expedited Determination of Postpetition Taxes.***

The Reorganized Debtor shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtor for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

**13.7    *Modification and Amendments.***

Subject to the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor may alter, amend, or modify the Plan at any time prior to the Effective Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification complies with the requirements of this Article 13.7 and does not materially and adversely change the treatment of the Claim of such holder; *provided, however,* that any holders of that were deemed to accept the Plan because such Claims were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims continue to be Unimpaired.

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**13.8    *Additional Documents.***

On or before the Effective Date, the Debtor may enter into any agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Reorganized Debtor, as applicable, and all holders of Claims receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**13.9    *Effectuating Documents and Further Transactions.***

On and after the Effective Date, the Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan.

**13.10    *Plan Supplement.***

All exhibits and documents included in the Plan Supplement are incorporated into, and are a part of, the Plan as if set forth in full in the Plan, and any reference to the Plan shall mean the Plan and the Plan Supplement. Upon its filing, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours, at the Bankruptcy Court's website at www.deb.uscourts.gov, and at the website of the Voting Agent at https://dm.epiq11.com/YT1. The

documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### 13.11   *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 13.12   *Revocation or Withdrawal of the Plan.*

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Debtor takes such action, the Plan shall be deemed null and void in its entirety and of no force or effect, and any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void. In such event, nothing contained in the Plan shall (a) constitute or be deemed to be a waiver or release of any Claim against the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any Entity in further proceedings involving the Debtor; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

### 13.13   *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan; and (c) non-severable and mutually dependent.

### 13.14   *Solicitation.*

Upon entry of the Confirmation Order, the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(e) and (g) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation. The Debtor, the Reorganized Debtor, and each of their respective employees, agents, representatives, advisors, attorneys, accountants, and professionals shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered or sold under the Plan, and therefore, are not, and on account of such offer, issuance, sale, solicitation, or purchase shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of any securities offered or sold under the Plan.

### 13.15　*Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

### 13.16　*Compliance with Tax Requirements.*

In connection with the Plan and all instruments issued in connection herewith and distributed hereunder, any Entity issuing any instruments or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Any Entity issuing any instruments or making any distribution under the Plan to a holder of an Allowed Claim has the right, but not the obligation, not to make a distribution until such holder has provided to such Entity the information necessary to comply with any withholding requirements of any such taxing authority, and any required withholdings (determined after taking into account all information provided by such holder pursuant to this Article 13.16) shall reduce the distribution to such holder.

### 13.17　*Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

### 13.18　*Closing of Chapter 11 Case.*

The Reorganized Debtor shall, as promptly as practicable after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, Del. Bankr. L.R. 3022-1, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

### 13.19　*Document Retention.*

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with his current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor without order of the Bankruptcy Court.

### 13.20　*Conflicts.*

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; *provided, however,* that in the event of a conflict between the Confirmation Order, on the one hand, and the Plan or the Plan Supplement, on the other hand, the Confirmation Order shall govern and control in all respects.

36

**13.21**   *Service of Documents.*

      After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to:

      the Debtor or the Reorganized Debtor, shall be served on:

> PACHULSKI STANG ZIEHL & JONES LLP
> 919 North Market Street
> 17th Floor
> Wilmington, Delaware 19801
> Attn: James E. O'Neill
> Email: joneill@pszjlaw.com
>
> - and -
>
> PACHULSKI STANG ZIEHL & JONES LLP
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, California 90067
> Attn: Richard M. Pachulski; Jeffrey W. Dulberg; Malhar S. Pagay
> Email: rpachulski@pszjlaw.com; jdulberg@pszjlaw.com; mpagay@pszjlaw.com
>
> - and -
>
> O'Melveny & Myers LLP
> Times Square Tower
> Seven Times Square
> New York, New York 10036
> Attn: Suzzanne Uhland; Diana Perez
> Email: suhland@omm.com; dperez@omm.com

      After the Effective Date, the Reorganized Debtor shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed a renewed request to receive documents pursuant to Bankruptcy Rule 2002.

**13.22** *Deemed Acts.*

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

**13.23** *Waiver or Estoppel.*

Each holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.