IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING JIA,[1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |

**OMNIBUS DECLARATION OF YUETING JIA IN SUPPORT OF (A) DEBTOR'S APPLICATION PURSUANT TO SECTION 327(A) OF THE BANKRUPTCY CODE, RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE; (B) DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE; AND (C) APPLICATION OF DEBTOR FOR ENTRY OF ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE**

I, Yueting Jia, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am the debtor and debtor in possession (the "Debtor"), that has filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned bankruptcy case (the "Chapter 11 Case").

2. I submit this declaration (the "Omnibus Declaration") in support of (a) *Debtor's Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession*

---

[1] The last four digits of the Debtor's federal tax identification number is 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

*Nunc Pro Tunc to the Petition Date* (the "PSZ&J Application"); (b) *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Epiq Corporate Restructuring, LLC as Administrative Advisor for the Debtor, Nunc Pro Tunc to the Petition Date* (the "Administrative Advisor Application"); and (c) *Application of Debtor for Entry of Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "Claims Agent Motion" and, collectively, with the PSZ&J Application and Administrative Advisor Application, the "Applications"), and, since this is my first declaration to be filed, to provide the Court, the Office of the United States Trustee and other parties in interest with an introduction to my prepetition business activities, the reasons for commencing my Chapter 11 Case and the proposed restructuring of my assets and liabilities.

3. I am familiar with the contents of each Application and, to the best of my knowledge after reasonable inquiry, believe that the relief sought in each Application: (a) is necessary to enable me to administer my Chapter 11 Case with minimal disruption; (b) is critical to my efforts to preserve value and maximize creditor recoveries through the restructuring proposed in the *Debtor's Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code* (the "Plan"), filed on the Petition Date; and (c) best serves my estate's and creditors' interests..

4. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of books and records, relevant documents and other information prepared or collected by my employees, advisors and representatives, or my opinion based on my experience. In making my statements based on my review of books and records, relevant documents and other information prepared or collected by my professionals, advisors and employees, I have relied upon these professionals, advisors and employees accurately

recording, preparing or collecting such documentation and other information. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

5.      I am not fluent in English. Accordingly, in the ordinary course of my business and personal affairs that require me to communicate in English either orally or in writing, I employ interpreters/translators who are fluent in both English and Chinese. I am utilizing such interpreters/translators in connection with matters that arise in connection with my Chapter 11 Case and intend to continue to do so. I have reviewed the Applications and reviewed and revised this Omnibus Declaration, as necessary, with the assistance of such interpreters/translators.

6.      Part I of this Declaration describes my business activities and financial condition and that of Faraday Future (the "Company"), and the developments that led to my filing for relief under chapter 11 of the Bankruptcy Code. Part II sets forth the relevant facts in support of the Applications. Capitalized terms not defined herein have the meanings ascribed to them in the Applications.

## PART I

### BACKGROUND

**A.     Background and General Description of the Debtor and Faraday Future**

7.      I am the founder of several technology companies. I am the current CEO and majority shareholder of the Company, an American start-up technology company focused on the development of electric vehicles.

8.      The majority of my indebtedness stems from personal guarantees or money I borrowed personally on behalf of companies that I founded or led. I am now trying to

fashion a trust, backed by my ownership interests in the Company, to satisfy creditors, while still fulfilling the aspirations for the Company. My proposal, in short, is to align the interests of my creditors with the future of the Company, as I endeavor to bring the Company to its success while repaying my debt in full.

9. I previously founded LeEco, the first internet-based TV streaming service in China. As founder of LeEco (formerly LeTV), I built a global technology company and led its expansion to include LeshiZhiXin, Le Vision Pictures, Le Sports, LeMobile, LeTV, and other companies. I took LeTV to a successful initial public offering on the Growth Enterprise Market (or "GEM") of the Shenzhen Stock Exchange in 2010, and in 2014, Forbes China ranked me as the "No. 1 CEO" in the country. To meet the capital demands for such expansion, I relied heavily on borrowing from commercial banks and other financial institutions, as it was relatively difficult for a publicly-traded company to issue new shares in China at that time.

10. However, my businesses, including LeEco, required substantial investment in R&D and business expansion and hence never generated positive cash flows. I sold some of my businesses to an investor in early 2017 to generate cash and repay certain corporate debts. Afterward, as bank financing became increasingly difficult to obtain, in July 2017, one of my lenders, China Merchant Bank, issued a letter to LeEco demanding payment of nearly RMB30 million in interest, although LeEco had already paid more than half of the borrowed amount. When LeEco did not make the payment by the date demanded, China Merchant Bank froze my and LeEco's assets. Media coverage of LeEco's financial challenges negatively impacted discussions I was having with other equity and debt investors, and creditors sued to recover the unpaid balance of their loans. The stock price of LeTV dropped severely, which significantly impacted the collateral value of my LeTV shares for my personal borrowing

and guarantees. Some of my creditors have received judgments against me and my business ventures and are now seeking to recover on those judgments.

11. Three creditors who have taken court action against me are Shanghai Lan Cai Asset Management Co., Ltd. ("Shanghai Lan Cai"), Shanghai Qichengyueming Investment Partnership Enterprise ("Shanghai Qichengyueming"), and Jinan Rui Si Le Enterprise Management Consulting Partnership ("Jinan Rui Si Le"). The Beijing Arbitration Commission issued an award in favor of Shanghai Lan Cai, which a U.S. federal district court judge in California subsequently confirmed. The federal district court issued a writ of execution in Shanghai Lan Cai's favor and issued an injunction restraining me from taking any action to transfer, conceal, reduce, or encumber personal assets, including my beneficial ownership interest in the Company held through FF Top Holding Ltd., a British Virgin Islands Company, and my alleged beneficial interest in certain real estate owned by Ocean View Drive, Inc. I am appealing the federal district court's judgment to the U.S. Court of Appeals for the Ninth Circuit. Shanghai Qichengyueming is also seeking to enforce a foreign arbitral award issued against me and Leview Holding Limited by the China International Economic and Trade Arbitration Commission. In July 2019, a federal district court in Los Angeles entered a consent judgment confirming the arbitral award entered in favor of Shanghai Qichengyueming. A motion to amend the consent judgment is currently pending, and the court has not yet issued a writ of execution. Jinan Rui Si Le has commenced litigation in the Superior Court for the State of California, County of Los Angeles to enforce a judgment entered against me and various affiliated entities in China by Intermediate People's Court of Jinan City, Shandong Province. The case is currently pending and the superior court has not entered judgment.

**B.     The Company**

12.     Established in 2014, the Company is headquartered in Los Angeles, California, with additional development activities and operations in China.  The Company designs and manufactures next-generation, zero-emission smart electric vehicles with a view to carving out a dual-market strategy and having manufacturing capabilities and operations in both the U.S. and China, the two largest electric vehicle markets.  The Company has designed a new mobility platform that integrates clean energy, intelligent design, internet vehicle connectivity and artificial intelligence functionality to create a seamless user experience, and has assembled a global team of automotive and technology experts and innovators to achieve its goal of redefining mobility.

13.     Over the last four years, the Company has developed a portfolio of intellectual property, established its proposed supply chain and completed several pre-production vehicles for its first vehicle model, the FF 91.  To date, significant capital has been deployed for research and development associated with its electric vehicles; corporate planning, administration and development; and investment in key property and equipment.  The Company is endeavoring to complete the testing and validation, and begin the manufacture and delivery of the FF 91 to the market.

14.     A diagram showing the simplified organizational and capital structure surrounding the Company is attached as **Exhibit "A"**.

15.     The Company has received approximately US$1.7 billion in funding—US$900 million from me and other sources, and US$800 million from Season Smart Limited ("Season Smart"), an affiliate of Evergrande Health Industry Group ("Evergrande").  After a restructuring agreement with Evergrande, Season Smart owns 32% of the Company on a fully

diluted basis.  Evergrande had committed to inject another US$1.2 billion over the next two years, but on December 31, 2018, Evergrande and the Company reached a settlement and Evergrande was released from its obligation to make additional investments in the Company.  As of December 31, 2018, the Company had cash and restricted cash of approximately US$7.4 million, and a working capital deficit of US$579.1 million.

16. To launch the FF 91 and prepare for future expansion, the Company will need further financing.  In April 2019, the Company entered into an agreement with Birch Lake Fund Management LP ("Birch Lake"), with US$15 million in the first tranche and US$45.0 million in the second.  The Company intends to use a combination of equity financing and bridge debt financing to sustain and continue its operation and development, including (a) paying off its existing debts, many of which will mature soon, (b) launching production of the FF 91 and further developing the FF 81, and (c) preparing for future financings, which may include an initial public offering.

**C.**     **The Plan**

17. Since China Merchants Bank froze all of my Chinese assets and operating accounts and those of LeEco group (which were worth, at the time, substantially more than the default amount) that directly led to the cash crunch and collapse of LeEco group, I have repaid over US$3 billion worth of my debts, with remaining assets that are yet to be disposed of and are estimated to be valued around US$1 billion.

18. I am proposing to satisfy my remaining debts on the terms set forth in a Plan, through which I will contribute all of my legally recognized personal assets (other than those assets that have been frozen or seized in China) to a liquidating trust (the "Trust").  The assets of the Trust will include, among other things, my economic rights to 40.8% of my equity

in the Company (consisting of 147,048,823 Class B ordinary shares currently owned by affiliate FF Top Holding Ltd., a British Virgin Islands Company, representing 10% of the Company's equity interest; and a preferred distribution right in connection with 30.8% of the Company's equity interest (owned through Pacific Technology Holding LLC ("Pacific Technology")) collectively beneficially owned by me and the Company's management.

## PART II

## THE APPLICATIONS[2]

19. In order to address various matters relating to the administration of my Chapter 11 Case and pursuit of confirmation of the Plan, I have requested various types of relief in the Applications filed simultaneously with this Omnibus Declaration. I believe that the retentions sought in the Applications are necessary to meet the goals described above, are in the best interests of my bankruptcy estate and creditors, and will enable me to effectively administer my Chapter 11 Case.

20. A summary of the relief sought in each Application is set forth below.

---

[2] Unless otherwise noted, capitalized terms used in this Part II have the meanings ascribed in the relevant Application.

A.     **The PSZ&J Application**

21.    Through the PSZ&J Application, I request authority to retain and employ Pachulski Stang Ziehl & Jones LLP ("PSZ&J") as general bankruptcy counsel *nunc pro tunc* to the Petition Date.  In support of the PSZ&J Application, I am relying on (a) the *Statement Under Rule 2016 of the Federal Rules of Bankruptcy Procedure*, and (b) the *Declaration of Richard Pachulski in Support of Debtor's Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to the Petition Date* (the "Pachulski Declaration"), which are being submitted concurrently with the PSZ&J Application.

22.    I seek to retain PSZ&J as counsel because of PSZ&J's extensive experience and knowledge in the field of debtors' and creditors' rights and reorganizations under chapter 11 of the Bankruptcy Code.

23.    To the best of my knowledge, except as otherwise disclosed in the Pachulski Declaration, PSZ&J has not represented me, my creditors, or any other parties in interest, or their respective attorneys, in any other matter relating to me or my estate.  Further, to the best of my knowledge, PSZ&J does not hold or represent any interest adverse to my estate, and PSZ&J's employment is necessary and in my best interests and that of my bankruptcy estate.

24.    I understand that PSZ&J hereafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court for all services performed and expenses incurred after the Petition Date.

25. Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and further orders of this Court, I propose to pay PSZ&J its customary hourly rates for services rendered that are in effect from time to time and to reimburse PSZ&J according to its customary reimbursement policies, and submit that such rates are reasonable.

### B.     The Administrative Advisor Application

26. I request entry of the Proposed Order authorizing me to retain and employ Epiq as the Administrator Advisor in my Chapter 11 Case, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions of that certain Standard Services Agreement between Epiq and the Debtor, dated as of October 6, 2019.

27. I understand that Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.  I selected Epiq to perform the Administrative Services because of Epiq's experience, reputation, and the competitiveness of its fees.  I believe that using Epiq to provide the Administrative Services has provided and will continue to provide the most cost-effective and efficient administration of my Chapter 11 Case.  Further, retaining Epiq to perform the Administrative Services has allowed, and will continue to allow, me, my advisors and professionals to focus on key aspects of my restructuring efforts.  Accordingly, I believe that Epiq is qualified to provide the Administrative Services and that Epiq's retention in such capacity and approval of the Administrative Advisor Application is in the best interests of my estate, my creditors and other parties in interest.

## C. The Claims Agent Motion

28. I also request authority to appointing Epiq to act as the claims and noticing agent in my chapter 11 case (the "Claims and Noticing Agent") to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the chapter 11 case, effective as of the Petition Date. The terms of Epiq's proposed retention are set forth in that certain Standard Services Agreement, dated as of October 6, 2019.

29. I understand that Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. I have been advised that Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.

30. I have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Based on all engagement proposals obtained and reviewed, I believe that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

31. I believe that the appointment of Epiq as the Claims and Noticing Agent in this chapter 11 case will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of this chapter 11 case, and relieve the Clerk of these administrative burdens. Also, the claims administration and noticing functions in this case may be particularly challenging due to the large Chinese creditor base. I believe that the appointment of Epiq as the Claims and Noticing Agent will thus serve to maximize the value of the estate for all stakeholders.

For all of the foregoing reasons, I respectfully request that the Court grant the relief requested in each of the Motions.

I declare under penalty of perjury under the United States of America that the foregoing is true and correct.

Executed this 16th day of October 2019.

                                                                           Yueting Jia
                                                                          Debtor and Debtor in Possession