IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING JIA,[1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |

**NOTICE OF FILING OF CHINESE TRANSLATION OF 2019 CREDITOR TRUST NON-BINDING TERM SHEET**

        **PLEASE TAKE NOTICE** that Yueting Jia, debtor and debtor in possession in

the above-captioned bankruptcy case, hereby files a certified Chinese translation of the 2019

Creditor Trust Non-Binding Term Sheet, a true and correct copy of which is attached hereto as

Exhibit "A".

Dated: October 18, 2019

PACHULSKI STANG ZIEHL & JONES LLP

__*/s/ James E. O'Neill* _____
Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Tel:    (302) 652-4100
Fax:    (302) 652-4400
Email:  rpachulski@pszjlaw.com
       jdulberg@pszjlaw.com
       mpagay@pszjlaw.com
       joneill@pszjlaw.com

Proposed Attorneys for Debtor and Debtor in
Possession

---

[1] The last four digits of the Debtor's federal tax identification number are 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA  90275.

**EXHIBIT A**

DOCS_DE:225860.1

## DECLARATION AND CERTIFICATION

We, <u>Ko & Martin - Certified Interpreters and Translators</u>, declare that we are

( ✓ )    Licensed Court Interpreters for the State of California

We are certified to interpret and translate <u>from the Chinese language to the English language and from the English language to the Chinese language.</u>

We further declare that we have reviewed and edited the attached document <u>from the English language to the Chinese language.</u>

We declare to the best of our abilities and belief, that this is a true and accurate translation of the <u>English</u> language text of <u>2019 Creditor Trust Non-Binding Term Sheet.</u>

### Specific Description of the Document

<u>2019 Creditor Trust Non-Binding Term Sheet</u>

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration is signed this <u>16th day of October, 2019</u> in <u>Los Angeles</u>, California.

<u>Lingling Men Martin</u>
President of Ko & Martin - Certified Interpreters
Toll Free: 1-888-696-7068
www.komartin.com

*//Lingling Martin//*
Signature

## 2019 债权人信托不具约束力的条款清单

　　　　贾跃亭（简称"YT"）打算在他的个人重组生效后，且相应限制解除后，立即将下述两项转至 2019 债权人清算信托（「债权人信托」）及逾期提交债务索赔池（定义见下文）（二者统称为"信托"），以管理并解决 YT 债权人的索赔：（a）West Coast LLC 这个特拉华州有限责任公司（简称"West Coast"）中的 90,588,235 股（占 100% 已发放的流通股份）（简称"West Coast 权益"）的经济权益，以及（b）Smart King Ltd. 中的 147,058,823 股 B 类优先股，该公司（「Smart King」）依据开曼群岛法律建立，上述 B 类优先股在转让时将自动以一比一的比例转为 B 类普通股（「Smart King 股份」）。 截至本条款清单（本"条款清单"）之日，本信托资产（定义见下文）受以下限制：（i）有管辖权法院所发放的临时禁令、冻结令和/或类似命令，目前有管辖权的法院包括英属维尔京群岛法院以及位于加利福尼亚州的美国联邦法院（统称为"禁令"）（ii）于 2019 年 5 月 15 日通过的 Smart King 第四修订重述备忘录及公司章程（「SK M & A」）及（iii）于 2018 年 12 月 31 日生效的、在 Smart King，YT 时颖有限公司（根据英属维尔京群岛法律成立的公司）及其他各方之间所签订的重组协议（"重组协议"）。

　　　　在本条款清单生效日前，YT 和依据英属维尔京群岛法律成立的 FF Top Holding Ltd.公司（"FF Top"）签订了一份承诺书，依据该契约，上述两方同意，在禁令被取消或解除后，并且 SK M & A 和重组协议中所规定的所有其他条件都满足以后，将 West Coast 的权益和 Smart King 股份转至本信托。

| 信托目的 | 本次重组后，批准债务索赔持有人（定义见下文）或逾期提交债务索赔持有人（定义见下文）依据本文中的计算公式获得债权人信托或逾期提交债务索赔池（如适用）中的实益权益。<br><br>本信托会保存，持有，管理和最大化信托资产，并在以下两种情况下触发对持有人索赔的偿付（以较早发生的时间点为准）（a）变现事件（定义见下文）或分配事件（定义见下文）的完成和（b）根据最终信托协议（"信托协议"）所规定的条款和条件终止信托。 |
|---|---|
| 信托资产 | 本信托资产构成如下：<br><br>a.　　　　West Coast 所有股权，即 30.8% Smart King 股权的优先分配权（该笔股权由 YT 和 Faraday Future 管理层共同持有），在资本分配给管理层以后，YT 可优先分配到最多$8.157 亿美金（可能有调整），以及享有之后剩余金额 10%的特殊分配权和 Pacific Technology Holding LLC 账上余额的 20%的普通分配权；<br><br>b.　　　　Smart King 的$147,058,823 股;及 |

| | |
|---|---|
| | C.　　　由破产贷款方注入信托用于信托开支的金额。以上统称为"<u>信托资产</u>"。<br><br>受托人须聘请独立估值公司对信托资产（信托费用部分除外）在注入信托当日进行价值评估。 |
| **债务索赔** | "债务索赔"是指任何对 YT 主张的索赔（定义见《破产法》第 101（5）条），（a）不包含行政费用索赔，优先欠款索赔，优先非税款索赔或美国担保索赔（每项都在 YT 所提交的第 11 章预打包重组计划中有所定义（"计划"））或（b）遵循破产法院在计划中对债务索赔的定义。<br><br>"获准债务索赔额"（Allowed Debt Claim Allocation Amount）指获准的（定义见"计划"）债务索赔金额，不包括未付利息、任何罚息、任何花费及其他相关费用。<br><br>"获准债务索赔净值"(Allowed Debt Claim Distribution Amount)指获准债务索赔减去以下三项的总和之所得金额：1.主要债务人未来将偿付的部分；2. 债务索赔人在变现以下资产后将会收到的金额（a.已被 YT 或其他个人或实体抵押资产；b. 已被 YT 或其他个人或实体质押资产；c.由 YT 和妻子甘薇或任何个人或实体持有、但已被中国司法机关没收、扣押或冻结的资产）3.如果主要债务已经在任一辖区通过转股清偿，则应在此债务索赔中相应减去已转股部分。<br><br>"逾期提交债务索赔"指晚于破产法院所规定的第 11 章案件中债务索赔申报截止日期，但早于分配事件（时间由 YT 自行决定）发生前所提出的债务索赔主张，其金额应由受托人核实（定义如下）。<br><br>若获准债务索赔持有人对除 YT 或其妻子甘薇以外的其他个人或实体继续主张债务索赔，尽管有本文所述交易，此笔债务将仍属未偿状态（受以下但书制约）；若债务索赔持有人（基于本条款清单所述条款）获得该债务索赔的完全清偿，则该笔债务将被视作（且事实上）已完全清偿。 此外，若任何债务索赔持有人保有或持有 YT 或任何个人或实体所抵押或质押的任何财产或资产，则在该笔债务索赔偿付后，此债务索赔持有人须向 YT 或相关个人或实体释放且/或归还前述财产或资产。<br><br>若任何债权人的债务索赔依据本条款清单所述条款得到部分偿付，则该债权人须从中国已冻结或查封的资产变现所得款项中减去其在本信托中已受偿的部分。 |

2

| | |
|---|---|
| 逾期提交债务索赔池 | 在计划生效日当天，YT 将：（a）建立一个单独的信托（"逾期提交债务索赔池"），来处理任何逾期提交的债务索赔主张。本预留池将持有 West Coast 权益及 Smart King 股份（待法律认定），由 YT 全权决定，债权金额须经受托人确认；（b）把 West Coast 权益的 10%和 Smart King 股份的 10%分别转至本逾期提交债务索赔池。本逾期提交债务索赔池除给此类债务索赔持有人分配权益以外不经营其他业务，本预留池的权益分配先后顺序如附件 A 所示（"分配先后顺序"）并且基于单独的信托协议（治理条款与信托协议相似）由受托人进行管理。

受托人将有权自行决定：（a）将逾期提交债务索赔池里存有的 West Coast 权益及 Smart King 股份与债权人信托中的直接信托权益进行交换，此操作将为逾期提交债务索赔池的受益人提供他们本来在分配先后顺序中会享受到的同等分配额，且（b）将此类信托权益分配给逾期提交债务索赔池的受益人，以交换其在逾期提交债务索赔池中的受益权。

逾期提交债务索赔池的债权人若想获得权益分配，必须签订一份在所有辖区完全解除对 YT 和妻子甘薇所有个人责任的协议。逾期提交债务索赔池的任何权益分配须由该预留池中分出，本池中的债务索赔人对债权人信托或 YT 无追索权。 |
| 关于信托资产的投票权 | 受托人须按照 FF Top 的指示行使有关 Smart King 股份的所有投票权；但该等投票权的行使应符合（a）Smart King 的组织及治理文件（如适用），及（b）在信托协议生效日当天仍有效力的其他协议（包括 SK M&A 及重组协议）（如适用）。 |
| 期限 | 本信托的期限将直至信托协议生效日后的第六（6）周年（前6年为本信托的"初始期限"）。 债权信托委员会（定义见后文）可在初始期限到期前九十（90）天之前向受托人发出书面通知，选择将初始期限延长1年，最多可延3次（每次延长都称作"债权人延期期限"），以允许任何剩余信托资产进行有序清算。 在符合上述限制的情况下，债权人信托委员会可在债权人延期期限到期前九十（90）天以前向受托人发出书面通知，选择延长债权人期限。

如果在初始期限间，Smart King或其他相关实体（如适用）在纽约证券交易所，纳斯达克，香港联合交易所，伦敦证券交易所或任何其他国际认可的证券交易所完成首次公开发行股票（IPO）（"首次公开发行"），YT可全权通过在初始期限到期前九十（90）天以前向受托人和债权人委员会发出书面通知，选择延长初始期限，以便清算截至初始期限届满尚未售出的任何Smart King股份，此等 |

3

| | |
|---|---|
| | 延期最多可延长[三（3）]个额外的一（1）年期间（每个期间被称为"YT延长期限"）。<br><br>若（a）初始期限到期后未行使YT延期或债权人延期，或（b）YT延期或债权人延期的有效期届满，则受托人将完成信托资产分配，解散并结束本信托。<br><br>如果以下情况发生，受托人可以在初始期限、任何债权人延期期限或任何YT延长期限结束前解散本信托：（1）全部获准债权净值都得到完全偿付，YT也已批准解散信托；或（2）发生变现事件。<br><br>信托终止后，受托人应获得信托资产在终止日时的估值（由受托人选定并经债权信托委员会和YT批准的独立估值公司进行评估），并应在独立估值完成后尽快分配先后顺序以实物形式向债权人分配信托资产。 |
| 受托人 | 应根据《信托协议》任命一（1）名受托人（"受托人"）。 信托协议应规定对受托人经验和独立性的要求。如果信托是根据计划设立的，则在确认计划之前将确定受托人。受托人应以受信人身份行事，不对信托事务或任何个人承担个人责任，除非有管辖权的法院判定受托人的行为或疏忽构成欺诈，故意行为不当或重大过失。此外，受托人无需为信托负法律责任，若因信托协议或信托相关事宜而引起针对受托人的诉讼、官司、程序或调查，从而导致对受托人的任何损失，索赔，损害，责任或费用（包括但不限于律师费，支出和相关费用），则信托应为受托人全权承担（除非具有管辖权的法院判定受托人的行为或疏忽构成欺诈、故意不当行为或重大过失）。 受托人有权获得惯常的受信人和/或错误及疏忽责任险，并聘请独立的法律顾问和财务顾问协助其评估与信托有关的任何事项，包括变现事件。<br><br>受托人应从本信托获得每年不超过$100,000美元的赔偿（除非得到债权人信托委员会的批准）。 若受托人在遵守信托协议的情况下，针对受托人在行使其受托人权力和义务期间产生的任何个人垫付的现金支出，以及受托人在其行使受托人权力和义务期间本着诚意的宗旨（而非故意不当行为、重大过失或欺诈）遭受的任何和所有损失，责任，费用或损害，受托人均有权从本信托的任何可用现金中对以上情况进行报销。<br><br>只要指定了受托人替代人选，受托人可在提前六十（60）天书面通知债权人信托委员会后辞职。 |

4

| | |
|---|---|
| | 若受托人的行为或疏忽构成欺诈，违反受信义务，故意不当行为或重大过失，则债权人信托委员会可以撤销受托人。 在前句所规定的受托人撤销后，债权人信托委员会有权指定受托人替代人选，但须经 YT 批准。 |
| 信托费用 | 在《信托协议》生效之日，"资金来源"应向信托基金提供 $600,000 美元的即时可用资金（作为信托资产的一部分），以在初始期限的前三（3）年为信托管理提供资金，包括聘用独立的第三方顾问（法律顾问，独立的注册会计师事务所和独立的评估公司等），给受托人提供报酬以及支付在信托资产管理期间与信托资产管理相关的其他费用和支出。从初始期间内第四年起的每一年，不得晚于该年年初之后的三十（30）天，资金来源应向本信托注入 $200,000 美元的即时可用资金（作为信托资产的一部分），用于为信托在该年度的管理（本段中提到的费用在本文中称为"初始信托费用"）。为澄清起见，在任何情况下，在初始期限内都不得要求资金来源向信托注资超过$1,200,000 美元（作为信托资产的一部分）。<br><br>若 YT 选择根据"YT 展期条款"将信托的期限延长至初始限期以后，资金来源应向信托提供$200,000 美元的即时可用资金，作为信托资产的一部分，支付该"YT 展期"内的行政管理费用（此类费用被称为"YT 展期费用"）。<br><br>若债权人信托委员会选择将信托的期限延长到初始期限之后，债权人应在每个"债权人延长期限"内为该信托获得总计$200,000 美元的资金（每个债权人都应按比例承担）（简称"其他信托费用"，与"初始信托费用"和"YT 展期费用"一起统称为"信托管理费用"），为本信托提供管理资金。 |
| 变现事件 | "变现事件"是指Smart King的清算、解散或清盘。 |
| <u>清偿分配；分配先后顺序</u> | 在 IPO 完成之时或之后，本信托从（i）处置 Smart King 股份或（ii）Smart King 股份或 West Coast 的权益所得股息或分红（上述两项均属"分配事件"）中收到的权益，将在以下情况中根据分配先后顺序进行分配（孰早）：（a）发生此类分配事件后 60 天，以及（b）信托终止。<br><br>如果受托人确定延迟或延期分配符合债权人的最佳利益，则受托人可将受托人收到的与信托资产有关的任何收益（现金，证券或其他财产）的分配延迟或延期分配给债权人（包括（a）信托或信托资产受强制令，冻结令，判决、类似法令或影响该分配的法律程序的约束，或（b）此类分配违反适用法律）。 |

| | |
|---|---|
| <u>IPO 后 Smart King 的股份处置</u> | 首次公开募股后何时处置多少信托资产的决定应按照本文所附的附件 B 进行管理，受托人应按照附件 B 的指示通过一次或多次公开市场交易、私募或衍生产品交易对列出的任何证券（"有价证券"）进行出售、转让或处置。收益应按照分配先后顺序进行分配。<br><br>根据 YT 的要求，在任何时候，在遵守适用证券法的前提下，受托人均应将有价证券以实物形式分配给债权人，以代替任何现金分配。有价证券的价值应为分配前五（5）个连续交易日的平均收盘交易价格。 |
| 债权人信托委员会 | 债权人应由一个委员会（"债权人信托委员会"）代表，该委员会应由不超过五（5）个持有获准债务索赔的债权人组成。债权人信托委员会的成员应对信托受益人履行受信义务，而不是为了他们的个人利益行事。债权人信托委员会的成员必须持有超过$2500 万美元的获准债务索赔，并已投票接受本计划。 如果希望在债权人信托委员会中任职的债权人超过五（5）个，那么 YT 有权选择两（2）名成员，而受托人有权选择其余成员。 如果受托人基于某位债权人的经济利益或其他利益，确定其无法为所有债权人履行受信义务，则该债权人不得在债权人信托委员会中任职。 债权人信托委员会应以少数服从多数（超过 50%）的投票方式行事。<br><br>债权人信托委员会的成员不得获得任何报酬，但应得到所有合理自付费用的报销，但债权人信托委员会成员各自的律师费用除外。债权人信托委员会可以为特定目的雇用顾问，而受托人可以向债权人信托委员会选择的顾问支付费用。<br><br>未经债权人信托委员会的同意，受托人不得采取以下任何行动：<br><br><ul><li>代表本信托产生超过$50,000 美元的费用；但若没有在受托人提出书面请求后 10 个工作日内明确拒绝，则应视为已批准；</li><li>聘用并支付某些顾问，包括法律顾问、独立会计师事务所、估值公司和其他第三方，以协助管理信托资产；但若没有在受托人提出书面请求后 10 个工作日内明确拒绝，则应视为已批准；</li><li>在信托协议的规定之外出售或转让任何信托资产；</li><li>投资信托基金持有的任何资金；但若没有在受托人提出书面请求后 10 个工作日内明确拒绝，则应视为已批准；</li></ul> |

| | |
|---|---|
| | <ul><li>和解或妥协超过$500万美元的任何诉讼索赔；但若没有在受托人提出书面请求后10个工作日内明确拒绝，则应视为已批准；</li><li>采取任何使信托成为《1940年投资公司法》（经修订）的"投资公司"的行动；或</li><li>以任何不利于债权人的方式修改《信托协议》。</li></ul> |
| 知情权 | 受托人应准备并分发给债权人信托委员会（以进一步分发给债权人）如下信息：<ul><li>在每个日历季度结束后的四十五（45）天内和每个日历年结束后的九十（90）天内（i）信托的净资产表，（ii）信托净资产的变动表；（iii）信托的现金流量表；（iv）按投资和资产类型汇总的明细表，注明收购和处置，以及（v）涉及信托或任何信托资产（如有）的债权解决状态摘要清单；及</li><li>在每个日历年结束后的九十（90）天内，Smart King 的审计后合并财务报表，前提是该报表向本信托开放权限。</li></ul> |
| 信托权益的可转让性 | 除非获得受托人事先书面同意（不得无理地扣留，加附带条件或延迟），否则不得转让信托权益。<br><br>尽管有上述规定，如有以下情况出现，则不得进行信托权益的转让：（a）根据信托律师的建议，此等转让会对本信托税务情况带来重大负面影响；（b）此等转让使得本信托受制于影响信托和信托资产正常管理的任何政府控制或法律法规；（c）违反适用的法律（包括任何证券法）或违反对本信托有约束力的相关协议；或（d）使信托成为《1940年投资公司法》中所定义的"投资公司"。 |
| 管理层激励计划 | 为了使利益一致并对 YT 和其他关键管理人员为实现 Smart King 的战略目标进行激励，预计 Smart King 将在重组完成后采用管理层激励计划。 |
| 适用法 | 本《条款清单》和《信托协议》应根据特拉华州法律进行管辖和解释，不管选择何种法律原则。 |
| 《信托协议》 | 《信托协议》未经债权人信托委员会的批准不得修改。 |
| 后续股权投资 | 本条款清单中的任何内容均不得解释为以任何方式禁止或限制任何人对 Smart King 或其任何子公司的任何后续股权投资。 |
| 解除追索 | 在适用法律允许的最大范围内，每个债务索赔持有人应被视为已在每个司法管辖区将 YT 及其妻子甘薇免除个人责任（如适用）；但 |

| | |
|---|---|
| | 是，前提是该债务索赔持有人应继续通过中国内地司法机关和各方商定的机制处置以下资产，以满足债权人索赔：（a）YT 或任何其他个人或实体已抵押的资产；（b）YT 或任何其他个人或实体已质押的资产；（c）YT，其妻子甘薇或任何其他个人或实体拥有的已被中国司法机关扣押，扣留或冻结的资产或权益。<br><br>在计划生效之日起的三十（30）天内，每位债务索赔持有人都有义务（i）从法院或所有辖区的司法机关处（包括但不限于中国大陆在）撤回对 YT 及其妻子甘薇的任何诉讼、执行程序、仲裁等，，或向司法机关承诺或确认 YT 或其妻子甘薇已履行其所有债务义务或法律责任，且（ii）提交并签署 YT 所要求的任何文件以证明上述追索的解除。除非且直到债务索赔持有人遵守上述规定以及其在《信托协议》下的所有义务，否则该持有人无权对信托行使任何投票权或从信托获得任何分配。 |
| **各方费用** | 各方应自付在本《条款清单》和《信托协议》的准备及谈判工作中所产生的相关费用。 |

### 附件 A

### 分配先后顺序

债权人信托的信托资产和逾期提交债务索赔池应按如下分配给债权人、"资金来源"、以及 YT：

（a）首先，按比例从债权人信托和逾期提交债务索赔池向"资金来源"按比例分配，该金额等于初始期限内"资金来源"为以下目的提供的金额：（i）初始信托费用和 （ii） YT 展期费用（如有）；

（b）其次，从债权人信托和逾期提交债务索赔池中按比例向每位债权人分配与额外信托费用（如有）金额相等的金额；

（c）第三，从债权人信托和逾期提交债务索赔池中，按比例向已选择接收信托权益并同意完全解决、释放和解除其对 YT 的追索的所有人所产生的行政费用索赔、优先税索赔、优先非税索赔或美国有担保索赔，金额等于该索赔的获准金额；

（d）第四，从逾期提交债务索赔池的剩余信托资产向逾期提交债务索赔的债权人进行支付，金额等于该债权人按比例应占逾期提交债务索赔池中其余信托资产的部分（计完上述（a）至（c）条款的分配之后），直至该债权人根据本条（d）所收到的总计分配（现金或实物）达到以下两种情况中较低的那个金额为止：（i）该债权人按比例分配的剩余信托资产可用于满足所有获准债权索赔和逾期提交债权索赔；（ii）经受托人核实的逾期提交债权索赔的全额。

（e）第五，将逾期提交债务索赔池中剩余的信托资产金额的 100％（在扣除了根据上述（a）至（d）条款分配的款项之后）（如果有）付给债权人信托基金。

（f）第六，从上述（a）至（c）条款进行分配后剩余在债权人信托中的信托资产和上述（e）条款对获准债务索赔持有人进行支付，其金额等于该债权人按比例在债权人信托剩余收益中所占的份额（如有），直到该债务索赔持有人根据本条（f）规定的总计（现金或实物）分配收到的金额等于该债务索赔持有人的获准债务索赔净值；

（g）第七，将除上述（a），（b），（c），（d）和（f）款规定的分配款外剩余收益的 100％ （如有）分配给 YT。

附件 **B**

| 计划生效日（T）+X 年（计划生效日后 12 个日历月） | 在 Smart King（公司）完成 IPO 后 36 个日历月以内 _____ *债权人信托委员会* | 相同 _____ *YT* | IPO 之后的 36 个日历月之后 _____ *债权人信托委员会* | 相同 _____ *YT* |
|---|---|---|---|---|
| 少于 T+3 | 不适用 | 可引起处置债权人信托或逾期申请债务索赔池拥有的多至 100%的公司股份 | 如果在 IPO 后 36 个日历月内未出售，可引起处置由债权人信托或逾期申请债务索赔池拥有的剩余的公司股份 | 不适用 |
| 超过 T+3; ≤ T+4 | 可引起处置债权人信托或逾期申请债务索赔池拥有的多至 5%的公司股份 | 可引起处置债权人信托或逾期申请债务索赔池拥有的剩余的公司股份 | 如果在 IPO 后 36 个日历月内未出售，可引起处置由债权人信托或逾期申请债务索赔池拥有的剩余的公司股份 | 不适用 |
| 超过 T+4; ≤ T+5 | 可引起处置债权人信托或逾期申请债务索赔池拥有的多至 10%的公司股份 | 可引起处置债权人信托或逾期申请债务索赔池拥有的剩余的公司股份 | 如果在 IPO 后 36 个日历月内未出售，可引起处置债权人信托或逾期申请债务索赔池拥有的剩余的公司股份 | 不适用 |
| 超过 T+5; ≤ T+6 | 可引起处置债权人信托或逾期申请债务索赔池拥有的多至 20%的公司股份 | 可引起处置债权人信托或逾期申请债务索赔池拥有的剩余的公司股份 | 如果在 IPO 后 36 个日历月内未出售，可引起处置债权人信托或逾期申请债务索赔池 | 不适用 |

|  |  |  | 拥有的剩余的公司股份 |  |
|---|---|---|---|---|
| 超过 T+6 | 可引起处置债权人信托或逾期申请债务索赔池拥有的全部的公司股份 | 不适用 | 不适用 | 不适用 |

## 2019 Creditor Trust Non-Binding Term Sheet

Yueting Jia ("<u>YT</u>") intends, immediately following the effectiveness of his individual restructuring and lifting of any applicable limitations, to (a) transfer the economic interests in 90,588,235 units (representing 100% of the issued and outstanding units) of West Coast LLC ("<u>West Coast</u>"), a Delaware limited liability company (the "<u>West Coast Interests</u>"), and (b) cause to be transferred 147,058,823 Class B Preferred Shares of Smart King Ltd., a company formed under the laws of the Cayman Islands ("<u>Smart King</u>"), which, upon transfer, will automatically convert into Class B Ordinary Shares on a one-to-one basis (the "<u>Smart King Shares</u>"), to the 2019 Creditor Liquidating Trust[1] (the "<u>Creditor Trust</u>") and the Late Filed Debt Claims Reserve (as defined below) (collectively, the "<u>Trust</u>") for the purposes of administering and settling certain claims against YT. As of the date of this term sheet (this "<u>Term Sheet</u>"), the Trust Assets (as defined below) are subject to certain limitations and prohibitions imposed by (i) preliminary injunctions, freezing orders and/or similar orders from courts of competent jurisdiction, which currently include courts of the British Virgin Islands and the United States federal courts situated in the state of California (collectively, the "<u>Injunctions</u>"), (ii) that certain Fourth Amended and Restated Memorandum and Articles of Association of Smart King adopted as of May 15, 2019 (the "<u>SK M&A</u>"), and (iii) that certain Restructuring Agreement, dated as of December 31, 2018, by and among Smart King, YT Season Smart Limited, a company formed under the laws of the British Virgin Islands, and the other parties thereto (the "<u>Restructuring Agreement</u>").

Prior to the date of this Term Sheet, YT and FF Top Holding Ltd., a company formed under the laws of the British Virgin Islands ("<u>FF Top</u>"), entered into a deed of undertaking, pursuant to which they agreed, after the Injunctions are lifted or discharged and all other conditions set forth in the SK M&A and the Restructuring Agreement are satisfied, to transfer the West Coast Interests and the Smart King Shares to the Trust.

| | |
|---|---|
| **Purpose** | The restructuring will, among other things, grant each holder of an Allowed Debt Claim (as defined below) or Late Filed Debt Claim (as defined below) a beneficial interest (a "<u>Trust Interest</u>") in the Creditor Trust or the Late Filed Debt Claims Reserve, as applicable, based on the formula set forth herein.<br><br>The Trust will preserve, hold, manage and maximize the Trust Assets for use in paying and satisfying the holders' claims upon the earlier to occur of (a) the consummation of a Liquidity Event (as defined below) or Distribution Event (as defined below) and (b) the termination of the Trust in accordance with the terms and conditions set forth in the definitive trust agreement (the "<u>Trust Agreement</u>"). |
| **Assets of the Trust** | The assets of the Trust shall consist of the following: |

---

[1] *Note*: The Late Filed Debt Claims Reserve mechanism to be confirmed.

|  |  |
|---|---|
|  | (a) all of the West Coast Interests, which represents a preferred distribution right in connection with 30.8% of Smart King's equity interest (collectively owned by YT and the management of Faraday Future), which will entitle YT to a priority distribution of up to US$815.7 million (subject to certain adjustment), right after the return of capital to the management, a special distribution of 10% of the remaining amounts and thereafter, a normal distribution of 20% of the balance owned by Pacific Technology Holding LLC;<br><br>(b) 147,058,823 Smart King Shares; and<br><br>(c) the Trust Expense Funded Amount contributed to the Trust by a postpetition lender (the "Funding Source") as provided herein (collectively, the "Trust Assets").<br><br>The Trustee shall engage an independent valuation firm to conduct a valuation of the Trust Assets (other than the Trust Expense Funded Amount) as of the date of their contribution to the Trust. |
| **Debt Claims** | "Debt Claim" means any claim (as defined in section 101(5) of the Bankruptcy Code) against YT that is (a) not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim (each as defined in the prepackaged chapter 11 plan of reorganization filed by YT (the "Plan") or (b) otherwise determined by the Bankruptcy Court (as defined in the Plan) to be a Debt Claim.[2]<br><br> "Allowed Debt Claim Allocation Amount" means the Allowed (as defined in the Plan) amount of a Debt Claim *excluding* the amount of any unpaid interest, any penalty interest, any expenses and any other fees related thereto.<br><br> "Allowed Debt Claim Distribution Amount" means the Allowed Debt Claim Allocation Amount *minus* the sum of (i) the amount the holder of such Debt Claim will receive from the primary obligor of such debt *plus* (ii) the amount such holder will receive upon the disposition of any assets that (a) have already been collateralized by YT or any other person or entity, (b) have already been pledged by YT or any other person or entity, and (c) YT, his wife Wei Gan, or any other person or entity own that have been seized, attached, or frozen by Chinese judiciary authorities *plus* (iii) if the primary debt obligation is satisfied by conversion to equity in any jurisdiction, the corresponding reduction in the amount of the Debt Claim on account of such conversion. |

---

[2] ***Note***:  If the Trust is established pursuant to a consensual restructuring, the definitions in the Trust Agreement will be modified accordingly.

|  | "Late Filed Debt Claim" means a Debt Claim filed after the deadline set by the Bankruptcy Court to file claims in the chapter 11 case but before the occurrence of a Distribution Event that is recognized by YT, in his sole discretion, and in an amount to be verified by the Trustee (as defined below).<br><br>To the extent any holder of an Allowed Debt Claim continues to have claims against any other person or entity (other than YT or his wife Wei Gan), subject to the following proviso, such claims will remain outstanding notwithstanding the transactions contemplated hereby; *provided*, *however*, if on and after the date on which the claims of any holder of a Debt Claim is paid in full in accordance with the terms of this Term Sheet, any such Debt Claims shall thereafter be deemed to be and in fact, paid in full in their entirety.  Furthermore, to the extent any holder of a Debt Claim has security or possession of any property or assets of YT or any other person or entity, after such claims are paid in full, such holder shall release and/or return any such property or assets to YT or such other person or entity.<br><br>If on and after the date on which the Debt Claims of any creditor are paid in part in accordance with the terms of this Term Sheet, then the aggregate amount distributed to such creditor from the disposition of Chinese frozen or secured assets shall be equal to the proceeds received from the disposition of such frozen or secured assets less the partial payments that have been made to such creditor through the Trust. |
| **Late Filed Debt Claims Reserve** | On the effective date of the Plan, YT shall (a) establish a separate trust (the "Late Filed Debt Claims Reserve") to hold West Coast Interests and Smart King Shares pending the recognition, in YT's sole discretion, but subject to verification of the amount of such claim by the Trustee, of any Late Filed Debt Claims and (b) transfer 10% of the West Coast Interests and Smart King Shares respectively to the Late Filed Debt Claims Reserve. The Late Filed Debt Claims Reserve will have no operations other than to make distributions to holders of Late Filed Debt Claims in accordance with the distribution waterfall set forth on **Exhibit A** attached hereto (the "Distribution Waterfall") and will be managed by the Trustee pursuant to a separate trust agreement with substantially similar governance terms as the Trust Agreement.<br><br>The Trustee shall have the right in its discretion to (a) exchange the Late Filed Debt Claims Reserve's portion of the West Coast Interests and Smart King Shares for direct Trust Interests in the Creditor Trust, which shall provide the beneficiaries of the Late Filed Debt Claims Reserve with the same share of distributions they are otherwise entitled to receive under the Distribution Waterfall, and (b) distribute such Trust Interests to the beneficiaries of the Late Filed Debt Claims Reserve in |

| | |
|---|---|
| | exchange for their beneficial interests in the Late Filed Debt Claims Reserve.<br><br>In order for a holder of a Late Filed Debt Claim to receive a distribution from the Late Filed Debt Claims Reserve, such holder must execute a full release of YT and his wife Wei Gan from personal liability on all claims in every jurisdiction. Any distribution to a Late Filed Debt Claim shall be from the Late Filed Debt Claims Reserve and holders of Late Filed Debt Claims shall have no recourse against the Creditor Trust or YT. |
| **Voting Rights with respect to Trust Assets** | The Trustee shall exercise all voting rights with respect to the Smart King Shares as directed by FF Top; *provided* that the exercise of such voting rights shall be in accordance with (a) the organizational and governing documents of Smart King and (b) such other agreements that are in effect as of the date of the Trust Agreement (including the SK M&A and the Restructuring Agreement), in each case, to the extent applicable. |
| **Term** | The term of the Trust will extend until the sixth (6th) anniversary of the effective date of the Trust Agreement (such six (6)-year period, the "Initial Term"). The Creditor Trust Committee (as defined below) may, upon delivery of written notice to the Trustee not later than ninety (90) days prior to the expiration of the Initial Term, elect to extend the Initial Term for up to three (3) additional one (1)-year periods (each, a "Creditor Extension Term") to allow for orderly liquidation of any remaining Trust Assets. Subject to the limitations set forth above, the Creditor Trust Committee may, upon delivery of written notice to the Trustee not later than ninety (90) days prior to the expiration of the then-current Creditor Extension Term, elect to extend such Creditor Extension Term.<br><br>If the completion of an initial public offering on the New York Stock Exchange, Nasdaq, the Hong Kong Stock Exchange, the London Stock Exchange, or any other internationally recognized stock exchange with respect to the shares of outstanding capital stock of Smart King or such other relevant listing vehicle, as applicable (an "IPO"), occurs during the Initial Term, YT may, upon delivery of written notice to the Trustee and the Creditor Trust Committee not later than ninety (90) days prior to the expiration of the Initial Term, elect to extend the Initial Term for up to three (3) additional one (1)-year periods (each, a "YT Extension Term") in his sole discretion in order to liquidate any Smart King Shares that remain unsold as of the expiration of the Initial Term.<br><br>The Trustee shall dissolve and wind up the Trust and distribute the Trust Assets upon the expiration of (a) the Initial Term, if no YT Extension |

4

| | |
|---|---|
| | Term or Creditor Extension Term is exercised, or (b) the expiration of the applicable YT Extension Term or Creditor Extension Term, as applicable.<br><br>The Trustee may dissolve the Trust before the end of the Initial Term, any Creditor Extension Term or any YT Extension Term if: (i) all of the Allowed Debt Claim Distribution Amounts are fully paid and satisfied and YT has approved the dissolution of the Trust; or (ii) a Liquidity Event has occurred.<br><br>Upon termination of the Trust, the Trustee shall obtain a valuation of the Trust Assets as of the termination date (performed by an independent valuation firm selected by the Trustee and approved by the Creditor Trust Committee and YT) and shall, as promptly as practicable following the completion of the independent valuation, distribute the Trust Assets in kind to the creditors in accordance with the Distribution Waterfall. |
| **Trustee** | There shall be one (1) trustee (the "Trustee") who shall be appointed in accordance with the Trust Agreement.  The Trust Agreement shall set forth certain experience and independence criteria for the Trustee. If the Trust is established pursuant to the Plan, the Trustee will be identified prior to confirmation of the Plan. The Trustee shall act as a fiduciary and shall not be personally liable in connection with the affairs of the Trust or to any person except for such of the Trustee's acts or omissions that constitute fraud, willful misconduct or gross negligence as determined by a court of competent jurisdiction.  In addition, the Trustee shall be indemnified by the Trust against and held harmless by the Trust from any losses, claims, damages, liabilities, or expenses (including without limitation, attorneys' fees, disbursements, and related expenses) to which the Trustee may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against the Trustee in connection with any matter arising out of or related to the Trust Agreement or the affairs of the Trust (other than in respect of acts or omissions that constitute fraud, willful misconduct, or gross negligence, as determined by a court of competent jurisdiction). The Trustee shall be entitled to obtain customary fiduciary and/or errors and omissions liability insurance and engage independent legal counsel and financial advisors to assist with its evaluation of any matters with respect to the Trust, including any Liquidity Event.<br><br>The Trustee shall be compensated by the Trust in an amount not to exceed US$100,000 per annum (unless approved by the Creditor Trust Committee).  The Trustee shall be entitled to reimburse itself out of any available cash in the Trust, for its actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Trustee may sustain in good faith and without willful misconduct, |

|  | gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Trustee under the Trust Agreement.<br><br>The Trustee may resign upon sixty (60) days' advance written notice to the Creditor Trust Committee so long as a replacement trustee has been appointed.<br><br>The Creditor Trust Committee may remove the Trustee in the event the Trustee commits any act or omission that constitutes fraud, breach of fiduciary duty, willful misconduct, or gross negligence.  Upon the removal of the Trustee as set forth in the immediately preceding sentence, the Creditor Trust Committee shall have the right to appoint a replacement trustee, subject to approval by YT. |
|---|---|
| **Expenses of the Trust** | On the effective date of the Trust Agreement, the Funding Source shall contribute to the Trust as part of the Trust Assets US$600,000 in immediately available funds for the purposes of funding the Trust's administration during the first three (3) years of the Initial Term, including for retaining independent third party advisors (legal counsel, an independent registered accounting firm, and an independent valuation firm, among others), compensating the Trustee, and paying such other fees and expenses incidental to the management and administration of the Trust Assets during the first three (3) years of the Initial Term.  For each year during the Initial Term thereafter, no later than thirty (30) days following the beginning of such year, the Funding Source shall contribute to the Trust as part of the Trust Assets US$200,000 in immediately available funds for the purposes of funding the Trust's administration during such year (the expenses referred to in this paragraph are referred to herein as the "<u>Initial Trust Expenses</u>").  For purposes of clarification, in no event shall the Funding Source be required during the Initial Term to contribute to the Trust as part of the Trust Assets more than US$1,200,000.<br><br>To the extent YT elects to extend the duration of the Trust beyond the Initial Term pursuant to a YT Extension Term, the Funding Source shall contribute to the Trust as part of the Trust Assets US$200,000 in immediately available funds for the purposes of funding the Trust's administration during such YT Extension Term (such expenses, the "<u>YT Extension Expenses</u>").<br><br>To the extent the Creditor Trust Committee elects to extend the duration of the Trust beyond the Initial Term, the creditors shall obtain financing for the Trust in the amount of US$200,000 in the aggregate for each Creditor Extension Term (with each creditor bearing his, her, or its pro rata share of such amount) for the purposes of funding the Trust's administration (the "<u>Additional Trust Expenses</u>" and, together with the |

| | |
|---|---|
| | Initial Trust Expenses and the YT Extension Expenses the "<u>Trust Expense Funded Amount</u>"). |
| **Liquidity Event** | The term "<u>Liquidity Event</u>" means the liquidation, dissolution or winding up of Smart King. |
| **Distributions; Creditor Claims Waterfall** | On or after the completion of an IPO, the proceeds received by the Trust from (i) any disposition of Smart King Shares or (ii) dividends or distributions in respect of the Smart King Shares or the interest in West Coast (each, a "<u>Distribution Event</u>") will be distributed in accordance with the Distribution Waterfall upon the earlier of (a) 60 days following the occurrence of such Distribution Event, and (b) the termination of the Trust.<br><br>The Trustee may delay or defer the distribution of any proceeds (whether cash, securities, or other property) received by the Trustee in respect of the Trust Assets to the creditors if the Trustee determines that such deferral or delay is in the best interests of the creditors (including if (a) the Trust or the Trust Assets are bound by an injunction, freeze order, judgment or similar order or proceeding affecting such distribution or (b) such distribution would violate applicable law). |
| **Disposition of Smart King Shares after the IPO** | The decision as to when and how much of the Trust Assets to dispose of after an IPO shall be governed in accordance with **Exhibit B** attached hereto, and the Trustee shall, in accordance with instructions in compliance with such Exhibit B, sell, transfer, or otherwise dispose of any securities that are listed (the "<u>Marketable Securities</u>") in one or more open market transactions, private placement, or derivative transactions. The proceeds shall be distributed in accordance with the Distribution Waterfall.<br><br>At any time upon YT's request, and subject to applicable securities law, the Trustee shall distribute the Marketable Securities in kind to the creditors in lieu of any cash distribution. The value of the Marketable Securities shall be the average closing trading price for the five (5) consecutive trading days immediately prior to the distribution. |
| **Creditor Trust Committee** | The creditors shall be represented by a committee (the "<u>Creditor Trust Committee</u>"), which shall consist of no more than five (5) creditors holding Allowed Debt Claims. The members of the Creditor Trust Committee shall serve as fiduciaries to the beneficiaries of the Trust and not act in their individual interests. Members of the Creditor Trust Committee must hold Allowed Debt Claims in excess of US$25 million and have voted to accept the Plan. If more than five (5) such creditors desire to serve on the Creditor Trust Committee, then YT has the right to select two (2) of the members and the Trustee has the right to select the remaining members. No creditor may serve on the Creditor Trust |

| | |
|---|---|
| | Committee if the Trustee determines that such creditor is not in a position to serve as a fiduciary for all creditors based on such creditor's economic or other interests.  The Creditor Trust Committee shall act by the vote of a majority (over 50%) of the members thereof.<br><br>The members of the Creditor Trust Committee shall not be compensated, but shall be reimbursed for all reasonable out-of-pocket expenses, other than the fees and expenses of counsel to individual members of the Creditor Trust Committee. The Creditor Trust Committee may employ advisors for specified purposes, and the Trustee may pay the fees and expenses of such advisors selected by the Creditor Trust Committee.<br><br>The Trustee shall not take any of the following actions without the consent of the Creditor Trust Committee:<br><br><ul><li>incur expenses on behalf of the Trust in excess of US$50,000; *provided*, *however*, that such approval shall be deemed granted if not specifically denied within 10 business days after a written request from the Trustee;</li><li>retain and pay certain advisors, including legal counsel, independent accounting firms, valuation firms, and other third parties to assist with the administration of the Trust Assets; *provided*, *however*, that such approval shall be deemed granted if not specifically denied within 10 business days after a written request from the Trustee;</li><li>except as provided in the Trust Agreement, sell or transfer any Trust Assets;</li><li>invest any moneys held by the Trust; *provided*, *however*, that such approval shall be deemed granted if not specifically denied within 10 business days after a written request from the Trustee;</li><li>settle or compromise any litigation claim in excess of US$5 million; *provided*, *however*, that such approval shall be deemed granted if not specifically denied within 10 business days after a written request from the Trustee;</li><li>take any action that would result in the Trust becoming an "investment company" within the meaning of the Investment Company Act of 1940, as amended; or</li><li>amend the Trust Agreement in any manner that is adverse to the creditors.</li></ul> |
| **Information Rights** | The Trustee shall cause to be prepared and distributed to the Creditor Trust Committee (for further distribution to the creditors):<br><br><ul><li>within forty-five (45) days after the end of each calendar quarter and within ninety (90) days after the end of each calendar year</li></ul> |

| | |
|---|---|
| | (i) a statement of net assets of the Trust, (ii) a statement of changes in net assets of the Trust, (iii) a statement of cash flows of the Trust, (iv) a schedule summarized by type of investments and assets, indicating acquisitions and dispositions, and (v) a summary listing of the status of the resolution of claims involving the Trust or any of the Trust Assets, if any; and<br>• within ninety (90) days after the end of each calendar year audited consolidated financial statements of Smart King, if they are made available to the Trust. |
| **Transferability of Trust Interests** | The Trust Interests may not be transferred except upon the prior written consent of the Trustee (not to be unreasonably withheld, conditioned, or delayed).<br><br>Notwithstanding the foregoing, the Trust Interests may not be transferred to the extent that such transfer would (a) based on the advice of counsel to the Trust, jeopardize the Trust's tax treatment; (b) cause the Trust to become subject to any governmental controls or regulations that affect the administration of the Trust and the Trust Assets; (c) violate applicable law (including any securities law) or any instrument to which the Trust is a party or by which it is bound; or (d) cause the Trust to become an "investment company" within the meaning of the Investment Company Act of 1940, as amended. |
| **Management Incentive Plan** | In order to align incentives and reward YT and other key members of management in achieving Smart King's strategic goals, it is anticipated that Smart King will adopt a management incentive equity plan subject to the consummation of the restructuring. |
| **Governing Law** | This Term Sheet and the Trust Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without regard to its choice of law principles. |
| **Amendments to Trust Agreement** | The Trust Agreement will not be amended without the approval of the Creditor Trust Committee. |
| **Subsequent Equity Investment** | Nothing in this Term Sheet shall be construed as to prohibit or restrict in any manner any subsequent equity investment in Smart King or any of its subsidiaries by any person. |
| **Release of Claims** | To the maximum extent permitted by applicable law, each holder of a Debt Claim shall be deemed to have released YT and his wife Wei Gan from personal liability (if applicable) in every jurisdiction; *provided, however*, that such holder shall continue disposing of the following assets through judicial authorities in the People's Republic of China to satisfy such Creditor's Claim through a mechanism that will be mutually agreed to by the parties: (a) assets that have already been |

| | |
|---|---|
| | collateralized by YT or any other person or entity; (b) assets that have already been pledged by YT or any other person or entity; (c) assets or interests that YT, his wife Wei Gan, or any other person or entity own that have been seized, attached, or frozen by Chinese judiciary authorities.<br><br>Within thirty (30) days of the effective date of the Plan, each holder of a Debt Claim is obligated to (i) withdraw or retract any litigations, enforcement actions, arbitrations, and any other proceedings against YT and his wife Wei Gan from the court or judicial authorities in all jurisdictions, including, but not limited to, the People's Republic of China, or commit or confirm with the judicial authorities that YT or his wife Wei Gan have fulfilled all their debt obligations or legal responsibilities and (ii) file and execute any documents requested by YT to evidence the above release. Unless and until a holder of a Debt Claim complies with the preceding sentence and all of their obligations under the Trust Agreement, such holder shall not be entitled to exercise any voting rights with respect to the Trust or receive any distributions from the Trust; provided, however, that YT reserves all rights to seek enforcement by the Chinese judicial authorities of the rights provided herein. |
| **Parties' Expenses** | Each party shall be responsible for its respective fees and expenses incurred in connection with the preparation and negotiation of this Term Sheet and the Trust Agreement. |

## Exhibit A

### Creditor Claims Waterfall

The Trust Assets of the Creditor Trust and the Late Filed Debt Claims Reserve shall be distributed to the creditors, the Funding Source, and YT as follows:

(a) First, pro rata from the Creditor Trust and the Late Filed Debt Claims Reserve, to the Funding Source, an amount equal to the amount contributed by the Funding Source during the Initial Term to provide for (i) the Initial Trust Expenses and (ii) the YT Extension Expenses, if any;

(b) Second, pro rata from the Creditor Trust and the Late Filed Debt Claims Reserve, to each creditor, an amount equal to such creditor's pro rata share of the Additional Trust Expenses, if any;

(c) Third, pro rata from the Creditor Trust and the Late Filed Debt Claims Reserve, to each holder of an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, or U.S. Secured Claim that has elected to receive Trust Interests in full and complete settlement, release, and discharge of their claim against YT, equal to the Allowed amount of such claim;

(d) Fourth, the remaining Trust Assets of the Late Filed Debt Claims Reserve, to holders of Late Filed Debt Claims, an amount equal to such holder's pro rata share of the remaining Trust Assets held in the Late Filed Debt Claims Reserve (after accounting for the distributions pursuant to clauses (a) through (c) above, if any), until such holder has received aggregate distributions (in cash or in kind) pursuant to this clause (d) equal to the lessor of (i) such holder's pro rata share of remaining Trust Assets that would be available to satisfy all Allowed Debt Claims and Late Filed Debt Claims; and (ii) the full amount of such Late Filed Debt Claim as verified by the Trustee;

(e) Fifth, to the Creditor Trust, 100% of the amount of the remaining Trust Assets held in the Late Filed Debt Claims Reserve (after accounting for the distributions pursuant to clauses (a) through (d) above), if any;

(f) Sixth, the Trust Assets remaining in the Creditor Trust after distributions pursuant to clauses (a) through (c) above and contributions from clause (e) above, to holders of Allowed Debt Claims, an amount equal to such holder's pro rata share of the remaining proceeds held in the Creditor Trust, if any, until such holder has received aggregate distributions (in cash or in kind) pursuant to this clause (f) equal to the amount of such holder's Allowed Debt Claim Distribution Amount; and

(g) Seventh, to YT, 100% of the amount of the remaining proceeds (after accounting for the distributions pursuant to clauses (a), (b), (c), (d), and (f) above), if any.

**Exhibit B**

| Effective date of the Plan (T) plus number of years (12 calendar months) after the effective date of the Plan | After Smart King ("Company") completes the IPO but up to 36 calendar months after IPO | Same | After IPO but more than 36 calendar months after IPO | Same |
|---|---|---|---|---|
| | _____ *Creditor Trust Committee* | _____ *YT* | _____ *Creditor Trust Committee* | _____ *YT* |
| Less than T+3 | N/A | Can cause disposition of up to 100% of Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | If not sold within 36 calendar months after the IPO, can cause disposition of remaining Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | N/A |
| More than T+3; ≤ T+4 | Can cause disposition of up to 5% of Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | Can cause disposition of remaining Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | If not sold within 36 calendar months after the IPO, can cause disposition of remaining Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | N/A |
| More than T+4; ≤ T+5 | Can cause disposition of up to 10% of Company shares owned by the Creditor Trust or the Late Filed | Can cause disposition of remaining Company shares owned by the Creditor | If not sold within 36 calendar months after the IPO, can cause disposition of remaining | N/A |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Debt Claims Reserve | Trust or the Late Filed Debt Claims Reserve | Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve |  |
| More than T+5; ≤ T+6 | Can cause disposition of up to 20% of Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | Can cause disposition of remaining Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | If not sold within 36 calendar months after the IPO, can cause disposition of remaining Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | N/A |
| More than T+6 | Can cause disposition of all Company shares owned by the Creditor Trust or the Late Filed Debt Claims Reserve | N/A | N/A | N/A |