# **Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING JIA,[1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### APPLICATION OF DEBTOR FOR ENTRY OF ORDER
### APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS
### CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

Yueting Jia, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), hereby submits this application (this "Section 156(c) Application"),[2] pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), appointing Epiq Corporate Restructuring, LLC ("Epiq") as the claims and noticing agent in the Debtor's chapter 11 case effective as of the Petition Date (as defined below). In support of this Section 156(c) Application, the Debtor relies upon the *Declaration of Susan Persichilli in Support of Application of Debtor for Entry of Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "Persichilli Declaration"), a copy of which is attached hereto as **Exhibit B**. In further support of this Section 156(c) Application, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number is 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] The facts and circumstances supporting the relief requested herein are set forth in the Omnibus Declaration (as defined below), filed contemporaneously herewith and incorporated herein by reference. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Declaration.

## JURISDICTION

1.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order or judgment by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgements consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

## BACKGROUND

4.      On October 14, 2019 (the "Petition Date"), the Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to remain in possession of his property and continue managing his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in this chapter 11 case.

5.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the

2

omnibus declaration filed in support of this and other retention applications (the "Omnibus Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

6.    By this Section 156(c) Application, the Debtor seeks entry of the Order appointing Epiq to act as the claims and noticing agent in the Debtor's chapter 11 case (the "Claims and Noticing Agent") to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtor's chapter 11 case effective as of the Petition Date. The terms of Epiq's proposed retention are set forth in that certain Standard Services Agreement between Epiq and the Debtor, dated as of October 6, 2019 (the "Retention Agreement"),[3] a copy of which is attached hereto as **Exhibit C**. Notwithstanding the terms of the Retention Agreement, the Debtor is seeking to retain Epiq solely on the terms set forth in this Section 156(c) Application and the Order.

7.    By separate application, the Debtor will seek authorization to retain and employ Epiq as administrative advisor in this chapter 11 case, pursuant to section 327(a) of the Bankruptcy Code, as the administration of this chapter 11 case may require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

## EPIQ'S QUALIFICATIONS AND NEED FOR EPIQ'S SERVICES

8.    Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in

---

[3] Epiq has agreed to provide claims and noticing services to the Debtor at the rates stated on the pricing schedule attached to the Retention Agreement. Epiq may provide such services at the same rates to counsel for any official committee appointed in this chapter 11 case, and any other party in interest upon request.

numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[4]

9.      The appointment of Epiq as the Claims and Noticing Agent in this chapter 11 case will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of this chapter 11 case, and relieve the Clerk of these administrative burdens. Also, the claims administration and noticing functions in this case may be particularly challenging due to the large Chinese creditor base. The Debtor believes that the appointment of Epiq as the Claims and Noticing Agent will thus serve to maximize the value of the Debtor's estate for all stakeholders.

## SCOPE OF SERVICES

10.      This Section 156(c) Application pertains only to the services to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any services to be performed by Epiq that are set forth in the Retention Agreement but outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application or by the Order. Specifically, Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"), to the extent requested by the Debtor:

    a.      Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including, if

---

[4] *See, e.g., In re RUI Holding Corp.,* Case No. 19-11509, (JTD) (Bankr. D. Del. Jul. 7, 2019); *In re THG Holdings LLC,* Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re HDR Holding, Inc.,* Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns WoundCo Holdings, Inc.,* Case No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys Therapeutics, Inc.,* Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re Kona Grill, Inc.,* Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); *In re WMC Mortgage, LLC,* Case No. 19-10879 (CSS) (Bankr. D. Del. Apr. 23, 2019); *In re F+W Media, Inc.,* Case No. 19-10479 (KG) (Bankr. D. Del. Mar. 10, 2019); *In re Avadel Specialty Pharmaceuticals, LLC,* Case No. 19-10248 (CSS) (Bankr. D. Del. Feb 06, 2019); *In re HCR ManorCare, Inc.,* Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018); *In re Herald Media Holdings, Inc.,* Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); and *In re Maurice Sporting Goods, Inc.,* Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017).

4

applicable, (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as applicable), (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the a plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

b.    If applicable, maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

c.    Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

d.    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

e.    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.    Maintain an electronic platform for purposes of filing proofs of claim;

i.    Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim

5

number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

j.  Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.  Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

l.  Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.  Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

n.  Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

p.  Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.  Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

r.  Monitor the Court's docket in this chapter 11 case and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

s.  If this chapter 11 case is converted to chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to Epiq of entry of the order converting the case;

t.  Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services

6

in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

u.      Within seven (7) days of notice to Epiq of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case; and

v.      At the close of this chapter 11 case, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

11.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

## COMPENSATION

12.     The Debtor is proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Retention Agreement. The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

13.     Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtor, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet

7

and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

14. Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $15,000.00. Epiq seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $15,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

15. Additionally, under the terms of the Retention Agreement, the Debtor has agreed, subject to certain exceptions, to indemnify, defend, and hold harmless Epiq and its affiliates, parent, officers, members, directors, agents, representatives, managers, consultants, and employees, under certain circumstances specified in the Retention Agreement, except in circumstances resulting from Epiq's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement or the Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this chapter 11 case.

### EPIQ'S DISINTERESTEDNESS

16. Although the Debtor does not propose to employ Epiq under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Persichilli Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

8

17.    Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Persichilli Declaration, among other things, that:

a.    Epiq is not a creditor of the Debtor;

b.    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.    By accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.    In its capacity as the Claims and Noticing Agent in this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.    Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.    In its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h.    Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.    Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    None of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

18.    Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## BASIS FOR RELIEF REQUESTED

19.    The Court is permitted to appoint Epiq as Claims and Noticing Agent in this chapter 11 case.  Pursuant to 28 U.S.C. § 156(c), the Court is authorized to utilize agents and

9

facilities other than the Clerk for the administration of bankruptcy cases. Specifically, 28 U.S.C.

§ 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to parties
> in cases filed under the provisions of title 11, United States Code,
> where the costs of such facilities or services are paid for out of the
> assets of the estate and are not charged to the United States.

11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be

provided to creditors and other parties in interest in a bankruptcy case, provides that the Court

may direct that a person other than the Clerk give notice of the various matters described therein.

*See* Fed. R. Bankr. P. 2002. In addition, Local Rule 2002-1(f) provides that "[u]pon motion of

the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention

of a notice and/or claims clerk under 28 U.S.C. § 156(c)." Del. Bankr. L.R. 2002-1(f).

20.    The appointment of Epiq as Claims and Noticing Agent will help to

expedite and more efficiently facilitate the administration of this chapter 11 case, and will relieve

the Clerk's office of administrative burdens. For these reasons, the Debtor respectfully submits

that Epiq's appointment as Claims and Noticing Agent is necessary and in the best interests of

the Debtor and his estate and will serve to maximize the value of the Debtor's estate for all

stakeholders.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

21.    The Debtor's selection of Epiq to act as the Claims and Noticing Agent

has satisfied the Claims Agent Protocol, in that the Debtor has obtained and reviewed

engagement proposals from at least two other court-approved claims and noticing agents to

ensure selection through a competitive process. Moreover, the Debtor submits, based on all

10

engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

**RELIEF AS OF PETITION DATE IS APPROPRIATE**

22.    In accordance with the Debtor's request, Epiq has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention, effective as of the Petition Date, so that Epiq can be compensated for services rendered before approval of this Section 156(c) Application. The Debtor believes that no party in interest will be prejudiced by the granting relief as of the Petition Date as proposed in this Section 156(c) Application, because Epiq has provided and continues to provide valuable services to the Debtor's estate during the interim period.

23.    Accordingly, the Debtor respectfully requests entry of the Order authorizing the Debtor to retain and employ Epiq as Claims and Noticing Agent effective as of the Petition Date.

**NOTICE**

24.    Notice of this Section 156(c) Application will be provided to (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). As this Section 156(c) Application is seeking "first day" relief, the Debtor will serve copies of this Section 156(c) Application and any order entered in respect of this Section 156(c) Application as required by Local Rule 9013-1(m). The Debtor believes that no further notice is required.

25.    A copy of this Section 156(c) Application is available the website maintained by Epiq, at https://dm.epiq11.com/case/YT1

11

WHEREFORE the Debtor respectfully requests entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 16, 2019          PACHULSKI STANG ZIEHL & JONES LLP
Wilmington, Delaware

                                 _/s/ James E. O'Neill_____
                                 Richard M. Pachulski (CA Bar No. 90073)
                                 Jeffrey W. Dulberg (CA Bar No. 181200)
                                 Malhar S. Pagay (CA Bar No. 189289)
                                 James E. O'Neill (DE Bar No. 4042)
                                 919 N. Market Street, 17th Floor
                                 PO Box 8705
                                 Wilmington, DE 19801-8705 (Courier 19801)
                                 Telephone: 302-652-4100
                                 Facsimile: 302-652-4400
                                 Email: rpachulski@pszjlaw.com
                                        jdulberg@pszjlaw.com
                                        mpagay@pszjlaw.com
                                        joneill@pszjlaw.com

                                 *[Proposed] Counsel for Debtor and Debtor in Possession*

## EXHIBIT A

**Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING, JIA, [1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS
### CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

Upon the application (the "Section 156(c) Application")[2] of Yueting Jia, as debtor

and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), for entry of an

order, pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule

2002 and Local Rule 2002-1(f), appointing Epiq Corporate Restructuring, LLC ("Epiq") as the

Claims and Noticing Agent in the Debtor's chapter 11 case effective as of the Petition Date, to,

among other things, (a) distribute required notices to parties in interest, (b) receive, maintain,

docket, and otherwise administer the proofs of claim filed in the Debtor's chapter 11 case, and

(c) provide such other administrative services as required by the Debtor that would fall within

the purview of services to be provided by the Clerk's office, all as more fully set forth in the

Section 156(c) Application; and this Court having jurisdiction to consider the Section 156(c)

Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012; and consideration of the Section 156(c) Application and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

---

[1] The last four digits of the Debtor's federal tax identification number is 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

Section 156(c) Application having been provided to the Notice Parties under the circumstances, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Section 156(c) Application (the "Hearing"); and upon the First Day Declaration and the Persichilli Declaration, the record of the Hearing, and all proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT

1. The Section 156(c) Application is granted as set forth herein.

2. Notwithstanding the terms of the Retention Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order and solely with respect to the Claims Management and Noticing services set forth in the Services Schedule attached to the Retention Agreement.

3. Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), the Debtor is authorized to retain Epiq as Claims and Noticing Agent in this chapter 11 case, effective as of the Petition Date, under the terms of the Retention Agreement, and Epiq is authorized and directed to perform the Claims and Noticing Services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case, and perform all related tasks as set forth in the Section 156(c) Application.

4. Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case, and is authorized and directed to maintain the official Claims Register for the Debtor, to provide public access to

every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5.    Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.    Epiq is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.    Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.    Without further order of this Court, the Debtor is authorized to compensate Epiq in accordance with the terms and conditions of the Retention Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.    Epiq shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.

10.    The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Retention Agreement or monthly invoices, and the parties may seek resolution of the matter from this Court if resolution is not achieved.

DOCS_DE:225760.2 46353/001

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Epiq's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtor's chapter 11 estate.

12.     Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $15,000.00 and thereafter Epiq may hold the retainer during this chapter 11 case as security of payment of Epiq's final invoice for services rendered and expenses incurred under the Retention Agreement.

13.     The Debtor is authorized to indemnify Epiq under the terms of the Retention Agreement, subject to the following modifications:

    a.     Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Retention Agreement for services other than the Claims and Noticing Services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

    b.     Notwithstanding anything to the contrary in the Retention Agreement, the Debtor shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified by this Order;

    c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Epiq believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtor

may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

14.     In the event Epiq is unable to provide the Claims and Noticing Services, Epiq shall immediately notify the Clerk and the Debtor's counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

15.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by Epiq but are not specifically authorized by this Order.

16.     Epiq shall not cease providing Claims and Noticing Services during this chapter 11 case for any reason, including nonpayment, without an order of the Court.

17.     In the event of any inconsistency between the Retention Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

18.     The Debtor and Epiq are authorized to take all action necessary to effectuate the relief granted in this Order.

5

19.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Dated: _____, 2019
          Wilmington, Delaware


                                        _____
                                        Honorable Karen B. Owens
                                        United States Bankruptcy Judge

6

## EXHIBIT B

**Persichilli Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING JIA, [1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### DECLARATION OF SUSAN PERSICHILLI IN SUPPORT
### OF APPLICATION OF DEBTOR FOR ENTRY OF ORDER
### APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS
### CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

I, Susan Persichilli, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.      I am a Consultant with Epiq Corporate Restructuring, LLC ("Epiq"), with offices located at 777 3rd Ave., 12th Floor, New York, NY 10017. I am authorized to submit this declaration (this "Declaration") in support of the *Application of Debtor for Entry of Order Appointing Epiq Corporate Restructuring, LLC as Claims and Noticing Agent Effective as of Petition Date* (the "Section 156(c) Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including the following recent cases filed in this District: *In re   RUI Holding Corp.,* Case No. 19-11509 (JTD) (Bankr. D. Del. Jul. 7,

---

[1]  The last four digits of the Debtor's federal tax identification number is 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

2019); *In re THG Holdings LLC,* Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re: HDR Holding, Inc.,* Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns WoundCo Holdings, Inc.,* Case No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys Therapeutics, Inc.,* Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re: Kona Grill, Inc.,* Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); *In re WMC Mortgage, LLC,* Case No. 19-10879 (CSS) (Bankr. D. Del. Apr. 23, 2019); *In re F+W Media, Inc.,* Case No. 19-10479 (KG) (Bankr. D. Del. Mar. 10, 2019); *In re Avadel Specialty Pharmaceuticals, LLC,* Case No. 19-10248 (CSS) (Bankr. D. Del. Feb 06, 2019); *In re HCR ManorCare, Inc.,* Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018); *In re Herald Media Holdings, Inc.,* Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); and *In re Maurice Sporting Goods, Inc.,* Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017).

3.     As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Clerk's office, the noticing and claims services specified in the Section 156(c) Application and Retention Agreement.    In addition, at the Debtor's request, Epiq will perform such other claims and noticing services specified in the Section 156(c) Application.   For the avoidance of doubt, pursuant to the Retention Agreement, Epiq will perform the Claims and Noticing Services for the Debtor in this chapter 11 case.

4.     Subject to Court approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with this chapter 11 case according to the terms and conditions of the Retention Agreement.    Payments are to be based upon the submission of a billing statement by Epiq to the Debtor after the end of each calendar month which includes a detailed listing of services and expenses. Epiq has received a $15,000.00 retainer from the Debtor and will first apply the retainer to all prepetition invoices,

2

which retainer shall be replenished to the original retainer amount of $15,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

5.    Epiq represents, among other things, the following:

a.    Epiq is not a creditor of the Debtor;

b.    Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.    By accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d.    In its capacity as the Claims and Noticing Agent in this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e.    Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.    Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.    In its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h.    Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.    Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.    None of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

6.    Although the Debtor does not propose to retain Epiq under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names

3

of identified potential parties in interest (the "Potential Parties in Interest") in this chapter 11

case. The list of Potential Parties in Interest was provided by the Debtor and is attached hereto

as Schedule 1. Epiq is not aware of any relationship that would present a disqualifying conflict

of interest. To the extent that Epiq's conflicts check has revealed that certain Potential Parties in

Interest were current or former clients of Epiq within the past three years, these parties have been

identified on a list annexed hereto as Schedule 2 (the "Client Match List"). However, given

Epiq's neutral position as claims and noticing agent or administrative advisor for any parties

listed on the Client Match List, Epiq does not view such relationships as real or potential

conflicts. Further, to the best of my knowledge, any such relationship between Epiq and any

parties on the Client Match List is completely unrelated to this chapter 11 case.

       7.     In addition, to the best of my knowledge, none of Epiq's employees are

related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3,

any attorney known by Epiq to be employed in the Office of the United States Trustee serving

the District of Delaware or are equity security holders of the Debtor.

       8.     To the best of my knowledge, and based solely upon information provided

to me by the Debtor, and except as provided herein, neither Epiq, nor any of its professionals,

has any materially adverse connection to the Debtor, his creditors or other relevant parties. Epiq

may have relationships with certain of the Debtor's creditors as vendors or in connection with

cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent and/or

administrative advisor for another chapter 11 debtor.

       9.     Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is

corporate parent to certain companies that provide integrated technology products and services to

the legal profession for electronic discovery, class action settlements, financial transactions,

4

chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10.    Epiq Systems, Inc., is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("DTI Topco"). DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("OAC"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("OPE", which together with OAC are referred to as "OMERS"), and funds managed by Harvest Partners, LP, ("Harvest") a leading private equity investment firm.

11.    Neither OMERS nor Harvest are currently identified on the Potential Parties in Interest list. However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

12.    Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("Parent Board Designees"). No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI. Further, Epiq has the following restrictions in place (collectively, the "Barrier"):  (i) prior to the Debtor commencing this case, Epiq did not share the names or any other information identifying the Debtor with OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material nonpublic information about the Debtor to OMERS, Harvest, or the Parent Board Designees; (iii) no OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel;

5

(iv) no OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than the Parent Board Designees).

13.    Epiq has searched the names of OMERS and Harvest against the Debtor and the Potential Parties in Interest list provided by the Debtor. Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no material connections that require disclosure. Because of any applicable securities laws and the fact that Epiq operates independently from OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtor and the potential parties in interest.

14.    Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this chapter 11 case. Epiq has represented, and will continue to represent, clients in matters unrelated to this chapter 11 case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to this chapter 11 case.

15.    Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this chapter 11 case. If Epiq's proposed

6

retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this chapter 11 case.

16.     Based on the foregoing, I believe Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge, neither Epiq nor any of its partners or employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which Epiq is to be engaged.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: <u>October 14, 2019</u>
      New York, New York

                                                 */s/ Susan Persichilli*
                                                 Susan Persichilli
                                                 Consultant

## SCHEDULE 1

### Potential Parties in Interest

1. **Debtor**

Yueting Jia

2. **Restructuring Professionals**

Pachulski Stang Ziehl & Jones LLP
O'Melveny & Myers LLP
Epiq Corporate Restructuring, LLC

3. **Potential Creditors**

Beijing Baiding New Century Business Management Co., Ltd.
Beijing Bairui Culture Media Co, Ltd
Beijing Blue Giant Real Estate Invest.
Beijing Century Ruike Sys. Tech Co Ltd
Beijing Chuangjin Xingye Investment Ctr
Beijing Deheng (Hangzhou) Law Office
Beijing DongFang CheYun Information Tech
Beijing Fortune Times Properties Co. Ltd
Beijing Haidian Tech Fin Cap Hld Grp Co
Beijing Hongcheng Xintai Properties Ltd
BEIJING HUAXING MOBILE ASSET MGT CTR LLP
Beijing Jiaxin Tengda Inf Consulting Co
Beijing Siwei Equity Investment Mgmt Ctr
Beijing Yingda Capital Management Co Ltd
Changjiang SecuritiesShanghaiAssetMgtLtd
China CITC Bank Co Ltd Head Ofc Sales
CHINA CONSUMER CAPITAL FUND II, L.P.
China Evergrande Group
China Merchants Bank Co., Ltd. Shanghai
China Minsheng Trust Co., Ltd.
China Soft Growing Invest Wuxi Partshp.
CHINA ZHESHANG BANK CO., LTD. Beijing Br
Chongqing Strategic Emerging Ind LeEco
Chongqing Yingfei Hengxin Inv Mgt Co Ltd
Dentons LLP
E-TOWN INT'L HOLDING (HONG KONG) CO LTD
Everbright Xinglong Trust Co., Ltd.
Guotai Junan Securities Co., Ltd
Haixia Bank of Fujian
Han's San Jose Hospitality
Hong Liu
Honghu Da
Huafu Securities Co., Ltd.
Huarong Securities Co., Ltd.

Huaxia Life Insurance Co. Ltd.
Huaxin International Trust Co., Ltd.
Huitian Network Technology Co., Ltd.
Huizhou Speed & Second Curve Cap Mgt Psh
Jiangsu Hongtu Venture Cap Mgmt Co Ltd
Jiangyin Hailan Investment Holding Co.,
Jiaxing Haiwen Investment Partnership
Jilin Jiutai Rural Commercial Bank
Jinan Rui Si Le Enters Mgt Consulting LP
Jinhua Zumo Network Technology Co., Ltd.
Justin C. Hsiang
Kobre and Kim LLP
Latham & Watkins LLP
Le Holdings (Beijing) Co. Ltd.
Lean Yingyun (Tianjin) Culture
Lepu Yingtian (Tianjin) Culture
Lesai Mobile (Beijing) Co Ltd
Lesai Mobile HK Limited
Leshi Internet Information & Technology
Leshi Mobile Intelligent Info Technology
Leshi Zhixin Electronic Technology
LeTV Film (Beijing) Co., Ltd.
LETV Sports Culture Industry Development
Leview Mobile HK Limited
Lewis & Llewellyn LLP
Lezheng Rongtong (Tianjin) Culture
Lijie Yang
Linfen Investment Group Co. Ltd
Macrolink Group Holdings Co., Ltd.
Marvel Best Technology Limited
MengWu
Nanjing Dejin Investment Management Co.
Nanjing Kaen Industry and Trade Co., Ltd
Nelson Wilson Goodell
Ningbo Hangzhou Bay New Area Leran Inves
Ocean View Drive Inc.
O-Film Global (HK) Trading Limited &
Orient Securities Co., Ltd.
Oriental Light Consulting Limited
Pacific Technology Holding LLC
Paul David Murphy
Peng Shi
Ping An Bank Co. Ltd. - Shenzhen Branch
Ping An Bank Co., Ltd. Beijing Branch
Ping An Securities Co., Ltd
Ping An Securities Co., Ltd.

2

Qingdao Huanghai Pharm Football Club Co
Quanzhou Ding's Investment Mgmt Co Ltd
SANPOWER (HONG KONG) COMPANY LIMITED
Sanya Shuguang Real Estate Dev Co Ltd
Shanghai Biaopu Investment Mgmt Co Ltd
Shanghai Chunhua Jingli Investment Ctr
Shanghai Haiyue Investment Mgmt Co Ltd
Shanghai Junying Asset Mgt Partnership
Shanghai Lan Cai Asset Management
Shanghai Lan Cai Asset Management Co Ltd
Shanghai Leyu Chuangye Inv. Mgmt. Ctr
Shanghai Leyu Investment Center (LP)
Shanghai Qichengyueming Invt Partnership
Shenzhen Jincheng Com. Factoring Co Ltd
Shenzhen Jincheng Commer. Factoring Co.
Shenzhen Letv xingen M&A Fund Invest Mgt
Shenzhen Letv xingen No.1 Invest Mgt
Shenzhen Qianhai Anxing
Shenzhen Winzhongtong NonFin Guar Co Ltd
Shenzhen Yingda Capital Management Co.,
Sichuan Xunling Technology Co. Ltd.
Smart King Ltd.
Smart Technology Holdings Ltd.
Sunflower Asset Management
Swift Talent Investments Limited
The Goodell Law Firm
Tianjin Nord Investment Co., Ltd.
TWC Group Co., Ltd.
Walker Stevens Cannom LLP
Warm Time Inc.
Wei Gan
Weidong Zhu
Weihua Qiu
Western Securities Co., Ltd
Wuhan Credit Loan Co., Ltd.
Wuxi Leyike Electric Vehicle Inv Entprs
WUXI PULEYONGHUI INVESTMENT ENTERPRISE
Xiamen Octupus Int. Network Tech
Xiamen Zejin Fangfu Investment P'shp
Xinyu Dingfeng Yingtong Investment Manag
Xizang Jinmeihua Investment Co., Ltd.
Yongqiang Yang
Yuanxin Xu
Yuefang Jia
Yuemin Jia
Zhejiang Zhongtai Chuangzhan Entrs Mgmt

3

Zhijian Dong
Zhongtai Venture Capital (Shenzhen) Co.
Zhongying (Tianjin) Supply Chain Mgmt
Zhuhai Rongle Equity Investment LP

4. **Taxing and Other Significant Governmental Authorities**

California Franchise Tax Board
Internal Revenue Service
Los Angeles County Tax Collector

5. **United States Bankruptcy Judges in the District of Delaware**

The Honorable Brendan L. Shannon
The Honorable Christopher S. Sontchi, Chief Judge
The Honorable John T. Dorsey
The Honorable Karen B. Owens
The Honorable Kevin Gross
The Honorable Kevin J. Carey
The Honorable Laurie Selber Silverstein
The Honorable Mary F. Walrath

6. **United States Trustee for the District of Delaware (and Key Staff Members)**

| | |
|---|---|
| Andrew Vara, Acting US Trustee | Jeffrey Heck, Bankruptcy Analyst |
| Benjamin Hackman, Trial Attorney | Juliet Sarkessian, Trial Attorney |
| Brya Keilson, Trial Attorney | Karen Starr, Bankruptcy Analyst |
| Christine Green, Paralegal Specialist | Linda Casey, Trial Attorney |
| David Buchbinder, Trial Attorney | Linda Richenderfer, Trial Attorney |
| Diane Giordano, Bankruptcy Analyst | Lauren Attix, OA Assistant |
| Dion Wynn, Paralegal Specialist | Michael Panacio, Bankruptcy Analyst |
| Edith A. Serrano, Paralegal Specialist | Michael West, Bankruptcy Analyst |
| Hannah M. McCollum, Trial Attorney | Ramona Vinson, Paralegal Specialist |
| Holly Dice, Auditor (Bankruptcy) | Richard Schepacarter, Trial Attorney |
| Jaclyn Weissgerber, Trial Attorney | Shakima L. Dortch, Paralegal Specialist |
| James R. O'Malley, Bankruptcy Analyst | T. Patrick Tinker, Assistant U.S. Trustee |
| Jane Leamy, Trial Attorney | Timothy J. Fox, Jr., Trial Attorney |

7. **Clerk of Court and Deputy for the District of Delaware**

Stacey Drechsler, Chief Deputy Clerk
Una O'Boyle, Clerk of Court

4

## SCHEDULE 2

**Client Match List**

NONE

## EXHIBIT C

**Retention Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a potential restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1  For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2  Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2020. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3 Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $15,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4. Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

epiq

## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7. Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs

3



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "<u>Losses</u>"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. <u>Limitation of Liability</u>

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



**9. Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**10. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**11. General**

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

epiq

11.10  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq</u>:

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Robert A. Hopen

<u>If to Client</u>:

_____
_____
_____
_____

<u>With a copy to</u>:

Diana Perez, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036

11.11  Invoices sent to Client should be delivered to the following address:

_____
_____
_____

Email:          _____

11.12  The "Effective Date" of this Agreement is October 6, 2019.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Robert A. Hopen
Title:   President

**CLIENT**

By:
Name:
Title:

epiq

# SERVICES SCHEDULE

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from credtitors regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.

9

- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

10

➤ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➤ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➤ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➤ Update claim database to reflect undeliverable or changed addresses.

➤ Coordinate publication of certain notices in periodicals and other media.

➤ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## CALL CENTER

➤ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

**MISCELLANEOUS**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

**epiq**

# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|-------|-------|
| Clerical/Administrative Support | $25.00 – $45.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $70.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $190.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|-------|-------|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|-------|-------|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|-------|-------|
| On-Line Claim Filing | NO CHARGE |

---

[1]   Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors

**epiq**

## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER SERVICES RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Depositions/Court Reporting | Quoted at time of request, bundled pricing available |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |

14