# **Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| YUETING JIA,[1] | ) Case No.: 19-12220 (KBO) |
| | ) |
| Debtor. | ) |
| | ) |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ CORPORATE
RESTRUCTURING, LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTOR,
*NUNC PRO TUNC* TO THE PETITION DATE**

Yueting Jia, the above-captioned debtor (the "Debtor") submits this application (this "Application"), pursuant to sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtor to retain and employ Epiq Corporate Restructuring, LLC ("Epiq") as the administrative advisor (the "Administrative Advisor") for the Debtor, effective *nunc pro tunc* to the Petition Date (as defined below).  In support of this Application, the Debtor submits the *Declaration of Susan Persichilli in Support of the Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Epiq Corporate Restructuring, LLC as Administrative Advisor for the Debtor, Nunc Pro Tunc to the Petition Date*, attached hereto as **Exhibit B** (the "Persichilli Declaration") and incorporated herein by reference.  In further support of this Application, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number is 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA  90275.

## STATUS OF THE CASES AND JURISDICTION

1.      On October 14, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  No party has requested the appointment of a trustee or examiner in this case, and no statutory committee has been appointed.

2.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this chapter 11 case is set forth in the omnibus declaration filed in support of this and other retention applications (the "Omnibus Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2]

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms his consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and other bases for the relief requested in this Application are sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

---

[2] The facts and circumstances supporting the relief requested herein are set forth in the Omnibus Declaration (as defined below), filed contemporaneously herewith and incorporated herein by reference.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Declaration.

2

**RELIEF REQUESTED**

6.     By this Application, the Debtor requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to retain and employ Epiq as the Administrative Advisor in the Debtor's chapter 11 case, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions of that certain Standard Services Agreement between Epiq and the Debtor, dated as of October 6, 2019 (the "Retention Agreement"), a copy of which is attached hereto as **Exhibit C**.[3]

**EPIQ'S QUALIFICATIONS**

1.     Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience providing services, including administrative services, in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District. See, e.g., *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) (Bankr. D. Del. Jul. 7, 2019); *In re THG Holdings LLC*, Case No. 19-11689 (JTD) (Bankr. D. Del. Jul 30, 2019); *In re: HDR Holding, Inc.*, Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019); *In re Joerns WoundCo Holdings, Inc.*, Case No. 19-11401 (JTD) (Bankr. D. Del. June 24, 2019); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In re: Kona Grill, Inc.*, Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); *In re WMC Mortgage, LLC*, Case No. 19-10879 (CSS) (Bankr. D. Del. Apr. 23, 2019); *In re F+W Media, Inc.*, Case No. 19-10479 (KG) (Bankr. D. Del. Mar. 10, 2019); *In re Avadel Specialty Pharmaceuticals, LLC*, Case No. 19-10248 (CSS)

---

[3] On the Petition Date, the Debtor filed an application under 28 U.S.C. § 156(c) to appoint Epiq as the claims and noticing agent in this chapter 11 case (the "Section 156(c) Application"). Given that the administration of this case will require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c), the relief requested in this Application supplements the scope of Epiq's services under the Section 156(c) Application.

(Bankr. D. Del. Feb 06, 2019); *In re HCR ManorCare, Inc.*, Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018); *In re Herald Media Holdings, Inc.*, Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); and *In re Maurice Sporting Goods, Inc.*, Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017).

7.     The Debtor selected Epiq to perform the Administrative Services (as defined below) because of Epiq's experience, reputation, and the competitiveness of its fees. The Debtor submits that using Epiq to provide the Administrative Services has provided and will continue to provide the most cost-effective and efficient administration of this case. Further, retaining Epiq to perform the Administrative Services has allowed, and will continue to allow, the Debtor and his professionals to focus on key aspects of the Debtor's restructuring efforts. Accordingly, the Debtor believes that Epiq is qualified to provide the Administrative Services and that Epiq's retention in such capacity is in the best interests of the Debtor's estate, his creditors and other parties in interest.

## SCOPE OF SERVICES

8.     Pursuant to the Retention Agreement, the Debtos proposes that Epiq provide certain bankruptcy professional services that may be outside the scope of 28 U.S.C. § 156(c) (the "Administrative Services"), including, without limitation, the following:

<blockquote>

a.     assisting with, among other things, solicitation, balloting, tabulation, and calculation of votes, if necessary, as well as preparing any appropriate reports, as required in furtherance of confirmation of any chapter 11 plan;

b.     generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results for any chapter 11 plan(s) in this case;

c.     providing assistance with preparation of the Debtor's schedules of assets and liabilities and statements of financial affairs, if necessary; and

d.     providing such other claims processing, noticing, solicitation, balloting, and administrative services described in the Retention Agreement, but not

</blockquote>

4

included in the Section 156(c) Application, as may be requested by the Debtor from time to time.

## COMPENSATION

11.    The Debtor has agreed to compensate Epiq for the Administrative Services described above in accordance with the pricing schedule attached to the Retention Agreement. The Debtor respectfully submits that Epiq's rates are competitive and comparable to the rates that Epiq's competitors charge for similar services. Furthermore, the Debtor believes that Epiq's rates are reasonable given the quality of Epiq's services and its prior bankruptcy expertise. In connection with providing the Administrative Services, Epiq will seek reimbursement from the Debtor for reasonable expenses in accordance with the terms of the Retention Agreement.

12.    Notwithstanding anything to the contrary in this Application or the Retention Agreement, Epiq will apply for compensation and reimbursement of expenses incurred in connection with the services it provides pursuant to this Application as the Administrative Advisor in this case, subject to Court approval and in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy code, applicable Bankruptcy Rules, applicable Local Rules, any guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and further orders of this Court.

13.    Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $15,000.00. Epiq seeks to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred pursuant to the Retention Agreement.

14.    Additionally, under the terms of the Retention Agreement, the Debtor has agreed, subject to certain exceptions, to indemnify, defend and hold harmless Epiq and its affiliates, parent, officers, members, directors, agents, representatives, managers, consultants and employees, under certain circumstances specified in the Retention Agreement, except in

5

circumstances resulting from Epiq's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement and the Proposed Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of an Administrative Advisor in this chapter 11 case.

## EPIQ'S DISINTERESTEDNESS

15.     Epiq has represented to the Debtor that, to the best of his knowledge, and except as set forth in the Persichilli Declaration, neither Epiq nor any of its professional personnel have any relationship with the Debtor that would impair Epiq's ability to serve as the Administrative Advisor. To the extent that Epiq or its personnel have, or may have had, relationships with certain of the Debtor's creditors, as described in the Persichilli Declaration, Epiq has represented to the Debtor that those matters are completely unrelated to this chapter 11 case.

16.     Moreover, in connection with its retention as the Administrative Advisor, Epiq represents in the Persichilli Declaration, among other things, that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that Epiq and its professional personnel:

     a.    are not creditors, equity security holders, or insiders of the Debtor;

     b.    are not, and were not, within two years before the date of the filing of this chapter 11 case, directors, officers, or employees of the Debtor; and

     c.    do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

17.     Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional assistance.

6

**BASIS FOR RELIEF**

18.    Section 327(a) of the Bankruptcy Code provides, in relevant part, that a debtor, "with the court's approval, may employ . . . professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in fulfilling its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

19.    Bankruptcy Rule 2014(a) requires, in relevant part, that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

20.    The Debtor selected Epiq to perform the Administrative Services because of Epiq's experience, reputation, and the competitiveness of its fees.  The Debtor submits that using Epiq to provide the Administrative Services has provided and will continue to provide for the cost-effective and efficient administration of this case.  Further, retaining Epiq to perform the Administrative Services has allowed—and will continue to allow—the Debtor and his professionals to focus on key aspects of the Debtor's restructuring efforts.  Accordingly, the Debtor believes that Epiq is qualified to provide the Administrative Services and that Epiq's retention in such capacity is in the best interests of the Debtor's estate, his creditors and other parties in interest.

7

## *NUNC PRO TUNC* RELIEF IS APPROPRIATE

21.     In accordance with the Debtor's request, Epiq has agreed to serve as the Administrative Advisor on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention, *nunc pro tunc* to the Petition Date, so that Epiq may be compensated for services rendered before approval of this Application.  The Debtor believes that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment as proposed in this Application.  Moreover, courts in this District routinely approve *nunc pro tunc* employment similar to that requested herein.[4]

22.     Accordingly, the Debtor requests entry of the Proposed Order authorizing the Debtor to retain and employ Epiq as the Administrative Advisor, *nunc pro tunc* to the Petition Date.

### NOTICE

23.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known to (a) the Office of the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.     No prior request for the relief sought in this application has been made to this or any other court.

---

[4]     See, e.g., In re Triangle USA Petroleum Corp., Case No. 16-11566 (MFW) (Bankr. D. Del. Aug. 1, 2016) (approving *nunc pro tunc* employment of an administrative agent to perform administrative services); In re ESML Holdings, Inc., Case No. 16-11626 (BLS) (Bankr. D. Del. Jul. 8, 2016) (same); In re Seventy Seven Fin. Inc., Case No. 16-11409 (LSS) (Bankr. D. Del. June 7, 2016) (same); In re Source Home Entm't, LLC, Case No. 14-11553 (KG) (Bankr. D. Del. July 18, 2014).

WHEREFORE, the Debtor respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated: October 16, 2019                    PACHULSKI STANG ZIEHL & JONES LLP
Wilmington, Delaware

                                        */s/ James E. O'Neill*

                                        Richard M. Pachulski (CA Bar No. 90073)
                                        Jeffrey W. Dulberg (CA Bar No. 181200)
                                        Malhar S. Pagay (CA Bar No. 189289)
                                        James E. O'Neill (DE Bar No. 4042)
                                        919 N. Market Street, 17th Floor
                                        PO Box 8705
                                        Wilmington, DE  19801-8705 (Courier 19801)
                                        Telephone: 302-652-4100
                                        Facsimile: 302-652-4400
                                        Email: rpachulski@pszjlaw.com
                                            jdulberg@pszjlaw.com
                                            mpagay@pszjlaw.com
                                            joneill@pszjlaw.com

                                        *[Proposed] Counsel for Debtor and Debtor in Possession*

**Exhibit A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING JIA, [1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Application")[2] of Yueting Jia. the "Debtor") for entry of an order (this "Order"), pursuant to sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, authorizing the Debtor to retain and employ Epiq Corporate Restructuring, LLC ("Epiq") as the administrative advisor in the Debtor's chapter 11 case (the "Administrative Advisor"), *nunc pro tunc* to the Petition Date; and this Court being satisfied, based on the representations made in the Application and the Persichilli Declaration, that (a) Epiq does not hold or represent an interest adverse to the Debtor's estate and (b) Epiq is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United

---

[1] The last four digits of the Debtor's federal tax identification number is 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA  90275.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

States Constitution; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the opportunity for a hearing on the Application having been given; and the relief requested in the Application being in the best interests of the Debtor's estate, his creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Application is GRANTED as set forth herein.

2.    Notwithstanding the terms of the Retention Agreement attached to the Application, the Application is granted solely as set forth in this Order.

3.    The Debtor is authorized, but not directed, to retain Epiq as the Administrative Advisor in accordance with the terms and conditions set forth in the Application and under the terms of the Retention Agreement relating to such services, *nunc pro tunc* to the Petition Date, and Epiq is authorized to perform such services as set forth in the Application and under the terms of the Retention Agreement relating to such services.

4.    Epiq may hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Administrative Services.

5.    Notwithstanding anything to the contrary in the Application or the Retention Agreement and solely with respect to the Administrative Services, Epiq will apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, applicable Local Rules, the U.S. Trustee Guidelines, and such other procedures that have been or may be fixed by order of this Court.

2

6.      Notwithstanding anything to the contrary in the Application or the Retention Agreement, Section 8 of the Retention Agreement shall have no force or effect.

7.      Except to the extent set forth below, the Debtor is authorized to indemnify Epiq under the terms of the Retention Agreement as follows:

(a)     Epiq shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Retention Agreement for services other than the services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b)     The Debtor shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to United Artists Theatre Co. v. Walton, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified by this Order; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), or (ii the entry of an order closing this chapter 11 case, Epiq believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtor may not pay any such amounts to Epiq before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

3

8.     Epiq shall not cease providing the Administrative Services during this chapter 11 cases for any reason, including nonpayment, without an order of the Court.

9.     In the event of any inconsistency between the Retention Agreement, the Application, and this Order, this Order shall govern.

10.     Notice of the Application as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2019        _____
Wilmington, Delaware                          Honorable Karen B. Owens
                                                            United States Bankruptcy Judge

4

**Exhibit B**

**Persichilli Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YUETING JIA, [1] | ) | Case No.: 19-12220 (KBO) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF SUSAN PERSICHILLI IN SUPPORT OF THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS ADMINISTRATIVE ADVISOR FOR THE DEBTOR, *NUNC PRO TUNC* TO THE PETITION DATE**

I, Susan Persichilli, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.    I am a Consultant with Epiq Corporate Restructuring, LLC ("Epiq"), with offices located at 777 3rd Avenue, 12th Floor, New York, NY 10017.  I am authorized to submit this declaration (this "Declaration") in support of the *Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Epiq Restructuring, LLC as Administrative Advisor for the Debtor, Nunc Pro Tunc to the Petition Date* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.    Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has substantial experience providing services, including administrative services substantially similar to the Administrative Services, to chapter

---

[1] The last four digits of the Debtor's federal tax identification number is 8972.  The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

11 debtors in other cases. See, e.g., *In re RUI Holding Corp.*, Case No. 19-11509 (JTD) (Bankr.

D. Del. Jul. 7, 2019); *In re THG Holdings LLC*, Case No. 19-11689 (JTD) (Bankr. D. Del. Jul

30, 2019); *In re: HDR Holding, Inc.*, Case No. 19-11396 (MFW) (Bankr. D. Del. Jun. 24, 2019);

*In re Joerns WoundCo Holdings, Inc.*, Case No. 19-11401 (JTD) (Bankr. D. Del. June 24,

2019); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Jun 10, 2019); *In

re: Kona Grill, Inc.*, Case No. 19-10953 (CSS) (Bankr. D. Del. Apr. 30, 2019); *In re WMC

Mortgage, LLC*, Case No. 19-10879 (CSS) (Bankr. D. Del. Apr. 23, 2019); *In re F+W Media,

Inc.*, Case No. 19-10479 (KG) (Bankr. D. Del. Mar. 10, 2019); *In re Avadel Specialty

Pharmaceuticals, LLC*, Case No. 19-10248 (CSS) (Bankr. D. Del. Feb 06, 2019); *In re HCR

ManorCare, Inc.*, Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 6, 2018); *In re Herald Media

Holdings, Inc.*, Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); and *In re Maurice

Sporting Goods, Inc.*, Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017). Accordingly, I

believe that Epiq is qualified to act the Administrative Advisor in this chapter 11 case.

3.    Epiq is a "disinterested person" as that term is defined in section 101(14) of the

Bankruptcy Code, in that Epiq and its professional personnel:

      a.    are not creditors, equity security holders, or insiders of the Debtor;

      b.    are not, and were not, within two years before the date of the filing of this
chapter 11 case, directors, officers, or employees of the Debtor; and

      c.    do not have an interest materially adverse to the interests of the Debtor's
estate or any class of creditors or equity security holders, by reason of any
direct or indirect relationship to, connection with, or interest in, the
Debtor.

4.    If Epiq's proposed retention is approved by the Court, Epiq will not accept any

engagement or perform any service for any entity or person related to this case, other than the

Debtor, without the prior approval of the Court.    Epiq may, however, provide professional

2

services to entities or persons that may be creditors or parties in interest in this case, which

services do not relate to, or have any direct connection with, this case or the Debtor.

5.    Epiq represents that:

(a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Administrative Advisor;

(b)    by accepting employment in this chapter 11 case, Epiq waives any right to receive compensation from the United States government in its capacity as the Administrative Advisor;

(c)    in its capacity as the Administrative Advisor, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d)    Epiq will not employ any past or present employees of the Debtor in connection with its work as the Administrative Advisor in this chapter 11 case.

6.    In connection with the preparation of this Declaration, I caused to be submitted

for review by Epiq's conflicts system the names of all known potential parties in interest (the

"Potential Parties in Interest") in this chapter 11 case. The list of Potential Parties in Interest was

provided by the Debtor and included, among other parties, the Debtor, non-debtor affiliates,

current and former directors and officers of the Debtor, significant stockholders, secured

creditors, and the top 20 unsecured creditors of the Debtor and attached as **Schedule 1**. The

results of the conflict check were compiled and reviewed by employees of Epiq, under my

supervision.    At this time, Epiq is not aware of any relationship that would present a

disqualifying conflict of interest. Epiq currently serves, or in the past may have served, in a

neutral capacity as claims, noticing, balloting and/or solicitation agent for these parties or related

parties.    However, given Epiq's neutral position as claims and noticing agent or administrative

advisor in its cases, the Debtor's case, or any other cases, Epiq does not view such relationship as

a real or potential conflict. Accordingly, to the best of my knowledge, Epiq and each of its

3

employees are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and neither Epiq nor any of its employees hold or represent an interest adverse to the Debtor's estate related to any matter for which Epiq will be employed.

7.    To the best of my knowledge, neither Epiq nor any of its personnel have any relationship with the Debtor that would impair Epiq's ability to serve as the Administrative Advisor. Epiq may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor. To the best of my knowledge, such relationships are completely unrelated to this chapter 11 case. Epiq's personnel may have had relationships with some of the Debtor's creditors or other parties in interest. To the best of my knowledge, however, such relationships, to the extent they exist, are of a personal financial nature and completely unrelated to this chapter 11 case. Epiq has, and will continue to represent clients in matters unrelated to this case. In addition, Epiq has had, and will continue to have, relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtor's chapter 11 case in matters unrelated to this case.

8.    Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

9.     Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("DTI Topco"). DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("OAC"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("OPE," which together with OAC are referred to as "OMERS"), and funds managed by Harvest Partners, LP, ("Harvest") a leading private equity investment firm.

10.    Neither OMERS nor Harvest are currently identified on the Potential Parties in Interest list. However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

11.    Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco ("Parent Board Designees"). No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI.  Further, Epiq has the following restrictions in place (collectively, the "Barrier"): (a)  prior to the Debtor commencing this case, Epiq did not share the names or any other  information identifying the Debtor with OMERS, Harvest, or the Parent Board Designees; (b) Epiq has not  and will not furnish any material nonpublic information about the Debtor to OMERS, Harvest, or the Parent Board Designees; (c) no OMERS or Harvest personnel, including the Parent Board Designees,  work on Epiq client matters or have access to Epiq client information, client files  or client personnel; (d) no  OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's  offices; (e) other than the Parent Board Designees, Epiq operates independently from  OMERS and Harvest, including that it does not share any employees, officers or other  management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and

5

(f) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa other than  the Parent Board Designees).

12.     Epiq has searched the names of OMERS and Harvest against the Debtor and the list of Potential Parties in Interest provided by the Debtor.  Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no material connections that require disclosure.  Because of any applicable securities laws and the fact that Epiq operates independently from OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtor and the potential parties in interest.

13.     In addition, after the Petition Date, Epiq requested that both OMERS and Harvest search the names of the Debtor against OMERS' and Harvest's respective private equity investments.  Based solely on the foregoing searches, Epiq has determined, to the best of its knowledge, that there are no material connections that require disclosure.  To the extent Epiq learns of any material connections involving such entities and/or such investments with the Debtor, Epiq will promptly file a supplemental disclosure.

14.     Other than as specifically noted herein, OMERS and Harvest may, in the ordinary course and from time to time, hold, control and/or manage loans to,  or investments in, the Debtor and/or potential parties in interest and/or may trade debt and/or  equity securities in the Debtor and/or potential parties in interest.  In addition, other than as  specifically noted herein, OMERS and Harvest also may have had, currently have, or may in the  future have business relationships or other connections with the Debtor or other potential parties  in interest.   Other than as specifically noted herein as to OMERS and Harvest, Epiq has not undertaken to  determine the

6

existence, nature and/or full scope of any business relationships or other connections that any OMERS or Harvest entity may have with the Debtor and his affiliates or the potential parties in interest in this chapter 11 case.

15.    Based on, among other things, the business separation between Epiq, OMERS and Harvest, and in light of the administrative nature of the services proposed to be performed by Epiq for the Debtor, Epiq believes that it does not hold or represent an interest adverse to the Debtor with respect to its engagement.

16.    If any new facts or relationships are discovered, Epiq will supplement its disclosure to the Court.

17.    Subject to the Court's approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to section 327(a) of the Bankruptcy Code in connection with this case according to the terms and conditions of the Retention Agreement. As referenced in the Application and the Retention Agreement, the Debtor and Epiq have agreed to a pricing schedule, which is attached to the Retention Agreement. Payments are to be based upon the submission of Epiq's relevant applications in accordance with the U.S. Trustee Guidelines.

18.    Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $15,000.00. Epiq seeks to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred pursuant to the Retention Agreement.

19.    The services provided by Epiq will be administrative in nature, and Epiq will not provide services in the nature of legal representation and/or advice to the Debtor.

*[Remainder of Page Intentionally Left Blank]*

7

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge after reasonable inquiry, the foregoing is true and correct.

Executed on this 14th day of October, 2019

/s/ Susan Persichilli
SUSAN PERSICHILLI
Consultant

## Schedule 1

**Potential Parties in Interest**

1. **Debtor**

Yueting Jia

2. **Restructuring Professionals**

Pachulski Stang Ziehl & Jones LLP
O'Melveny & Myers LLP
Epiq Corporate Restructuring, LLC

3. **Potential Creditors**

Beijing Baiding New Century Business Management Co., Ltd.
Beijing Bairui Culture Media Co, Ltd
Beijing Blue Giant Real Estate Invest.
Beijing Century Ruike Sys. Tech Co Ltd
Beijing Chuangjin Xingye Investment Ctr
Beijing Deheng (Hangzhou) Law Office
Beijing DongFang CheYun Information Tech
Beijing Fortune Times Properties Co. Ltd
Beijing Haidian Tech Fin Cap Hld Grp Co
Beijing Hongcheng Xintai Properties Ltd
BEIJING HUAXING MOBILE ASSET MGT CTR LLP
Beijing Jiaxin Tengda Inf Consulting Co
Beijing Siwei Equity Investment Mgmt Ctr
Beijing Yingda Capital Management Co Ltd
Changjiang SecuritiesShanghaiAssetMgtLtd
China CITC Bank Co Ltd Head Ofc Sales
CHINA CONSUMER CAPITAL FUND II, L.P.
China Evergrande Group
China Merchants Bank Co., Ltd. Shanghai
China Minsheng Trust Co., Ltd.
China Soft Growing Invest Wuxi Partshp.
CHINA ZHESHANG BANK CO., LTD. Beijing Br
Chongqing Strategic Emerging Ind LeEco
Chongqing Yingfei Hengxin Inv Mgt Co Ltd
Dentons LLP
E-TOWN INT'L HOLDING (HONG KONG) CO LTD
Everbright Xinglong Trust Co., Ltd.
Guotai Junan Securities Co., Ltd
Haixia Bank of Fujian
Han's San Jose Hospitality
Hong Liu
Honghu Da

Huafu Securities Co., Ltd.
Huarong Securities Co., Ltd.
Huaxia Life Insurance Co. Ltd.
Huaxin International Trust Co., Ltd.
Huitian Network Technology Co., Ltd.
Huizhou Speed & Second Curve Cap Mgt Psh
Jiangsu Hongtu Venture Cap Mgmt Co Ltd
Jiangyin Hailan Investment Holding Co.,
Jiaxing Haiwen Investment Partnership
Jilin Jiutai Rural Commercial Bank
Jinan Rui Si Le Enters Mgt Consulting LP
Jinhua Zumo Network Technology Co., Ltd.
Justin C. Hsiang
Kobre and Kim LLP
Latham & Watkins LLP
Le Holdings (Beijing) Co. Ltd.
Lean Yingyun (Tianjin) Culture
Lepu Yingtian (Tianjin) Culture
Lesai Mobile (Beijing) Co Ltd
Lesai Mobile HK Limited
Leshi Internet Information & Technology
Leshi Mobile Intelligent Info Technology
Leshi Zhixin Electronic Technology
LeTV Film (Beijing) Co., Ltd.
LETV Sports Culture Industry Development
Leview Mobile HK Limited
Lewis & Llewellyn LLP
Lezheng Rongtong (Tianjin) Culture
Lijie Yang
Linfen Investment Group Co. Ltd
Macrolink Group Holdings Co., Ltd.
Marvel Best Technology Limited
MengWu
Nanjing Dejin Investment Management Co.
Nanjing Kaen Industry and Trade Co., Ltd
Nelson Wilson Goodell
Ningbo Hangzhou Bay New Area Leran Inves
Ocean View Drive Inc.
O-Film Global (HK) Trading Limited &
Orient Securities Co., Ltd.
Oriental Light Consulting Limited
Pacific Technology Holding LLC
Paul David Murphy
Peng Shi
Ping An Bank Co. Ltd. - Shenzhen Branch
Ping An Bank Co., Ltd. Beijing Branch

2

Ping An Securities Co., Ltd
Ping An Securities Co., Ltd.
Qingdao Huanghai Pharm Football Club Co
Quanzhou Ding's Investment Mgmt Co Ltd
SANPOWER (HONG KONG) COMPANY LIMITED
Sanya Shuguang Real Estate Dev Co Ltd
Shanghai Biaopu Investment Mgmt Co Ltd
Shanghai Chunhua Jingli Investment Ctr
Shanghai Haiyue Investment Mgmt Co Ltd
Shanghai Junying Asset Mgt Partnership
Shanghai Lan Cai Asset Management
Shanghai Lan Cai Asset Management Co Ltd
Shanghai Leyu Chuangye Inv. Mgmt. Ctr
Shanghai Leyu Investment Center (LP)
Shanghai Qichengyueming Invt Partnership
Shenzhen Jincheng Com. Factoring Co Ltd
Shenzhen Jincheng Commer. Factoring Co.
Shenzhen Letv xingen M&A Fund Invest Mgt
Shenzhen Letv xingen No.1 Invest Mgt
Shenzhen Qianhai Anxing
Shenzhen Winzhongtong NonFin Guar Co Ltd
Shenzhen Yingda Capital Management Co.,
Sichuan Xunling Technology Co. Ltd.
Smart King Ltd.
Smart Technology Holdings Ltd.
Sunflower Asset Management
Swift Talent Investments Limited
The Goodell Law Firm
Tianjin Nord Investment Co., Ltd.
TWC Group Co., Ltd.
Walker Stevens Cannom LLP
Warm Time Inc.
Wei Gan
Weidong Zhu
Weihua Qiu
Western Securities Co., Ltd
Wuhan Credit Loan Co., Ltd.
Wuxi Leyike Electric Vehicle Inv Entprs
WUXI PULEYONGHUI INVESTMENT ENTERPRISE
Xiamen Octupus Int. Network Tech
Xiamen Zejin Fangfu Investment P'shp
Xinyu Dingfeng Yingtong Investment Manag
Xizang Jinmeihua Investment Co., Ltd.
Yongqiang Yang
Yuanxin Xu
Yuefang Jia

Yuemin Jia
Zhejiang Zhongtai Chuangzhan Entrs Mgmt
Zhijian Dong
Zhongtai Venture Capital (Shenzhen) Co.
Zhongying (Tianjin) Supply Chain Mgmt
Zhuhai Rongle Equity Investment LP

4. **Taxing and Other Significant Governmental Authorities**

California Franchise Tax Board
Internal Revenue Service
Los Angeles County Tax Collector

5. **United States Bankruptcy Judges in the District of Delaware**

The Honorable Brendan L. Shannon
The Honorable Christopher S. Sontchi, Chief Judge
The Honorable John T. Dorsey
The Honorable Karen B. Owens
The Honorable Kevin Gross
The Honorable Kevin J. Carey
The Honorable Laurie Selber Silverstein
The Honorable Mary F. Walrath

6. **United States Trustee for the District of Delaware (and Key Staff Members)**

Andrew Vara, Acting US Trustee
Benjamin Hackman, Trial Attorney
Brya Keilson, Trial Attorney
Christine Green, Paralegal Specialist
David Buchbinder, Trial Attorney
Diane Giordano, Bankruptcy Analyst
Dion Wynn, Paralegal Specialist
Edith A. Serrano, Paralegal Specialist
Hannah M. McCollum, Trial Attorney
Holly Dice, Auditor (Bankruptcy)
Jaclyn Weissgerber, Trial Attorney
James R. O'Malley, Bankruptcy Analyst
Jane Leamy, Trial Attorney

Jeffrey Heck, Bankruptcy Analyst
Juliet Sarkessian, Trial Attorney
Karen Starr, Bankruptcy Analyst
Linda Casey, Trial Attorney
Linda Richenderfer, Trial Attorney
Lauren Attix, OA Assistant
Michael Panacio, Bankruptcy Analyst
Michael West, Bankruptcy Analyst
Ramona Vinson, Paralegal Specialist
Richard Schepacarter, Trial Attorney
Shakima L. Dortch, Paralegal Specialist
T. Patrick Tinker, Assistant U.S. Trustee
Timothy J. Fox, Jr., Trial Attorney

7. **Clerk of Court and Deputy for the District of Delaware**

Stacey Drechsler, Chief Deputy Clerk
Una O'Boyle, Clerk of Court

4

DOCS_DE:225758.1

**<u>Exhibit C</u>**

**Retention Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below.  In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.  Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the <u>Services Schedule</u> hereto (the "<u>Services</u>") in connection with a potential restructuring.  Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "<u>Pricing Schedule</u>").  The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service.  Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.  Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding.  The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.  Charges.**

3.1  For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable.  Epiq will bill Client monthly.  All invoices shall be due and payable upon receipt.

3.2  Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2020.  If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

1



3.3     Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4     Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5     Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6     In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7     To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $15,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.   Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

## 6. Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7. Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Limitation of Liability

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



## 9. Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11. General

11.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

epiq

11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

11.10  Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

    If to Epiq:

        Epiq Corporate Restructuring, LLC
        777 Third Avenue, 12th Floor
        New York, New York 10017
        Attn: Robert A. Hopen

    If to Client:

        _____
        _____
        _____
        _____

    With a copy to:

        Diana Perez, Esq.
        O'Melveny & Myers LLP
        7 Times Square
        New York, NY 10036

11.11 Invoices sent to Client should be delivered to the following address:

        _____
        _____
        _____

    Email:        _____

11.12  The "Effective Date" of this Agreement is October 6, 2019.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

Name:  Robert A. Hopen
Title:   President


**CLIENT**

By:_____

Name: _____

Title: _____



## SERVICES SCHEDULE

### BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from credtitors regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

### SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.

- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➢ Prepare and serve required notices in these Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

**epiq**

## PRICING SCHEDULE

### CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $25.00 – $45.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $70.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $190.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |

### CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

### DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

### ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors

epiq

## CALL CENTER RATES

Standard Call Center Setup                NO CHARGE

Call Center Operator                      $55 per hour
Voice Recorded Message                    $0.34 per minute

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources                      Quoted at time of request

Depositions/Court Reporting               Quoted at time of request, bundled pricing available

eDiscovery                                Quoted at time of request, bundled pricing available

Virtual Data Room --
Confidential On-Line Workspace            Quoted at time of request

Disbursements -- Check and/or Form 1099   Quoted at time of request

Disbursements -- Record to Transfer Agent Quoted at time of request

14