IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YUETING JIA,[1]<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 19-12220 (KBO) |

Objection Deadline: December 11, 2019 at 4:00 p.m. (ET)
Hearing Date: December 18, 2019 at 10:00 a.m. (ET)

**DEBTOR'S MOTION TO (I) RETAIN PQBDN LLC
TO PROVIDE THE DEBTOR A CHIEF RESTRUCTURING OFFICER AND (II)
DESIGNATE ROBERT MOON AS CHIEF RESTRUCTURING OFFICER FOR THE
DEBTOR *NUNC PRO TUNC* TO NOVEMBER 17, 2019**

The above-captioned debtor and debtor in possession (the "Debtor") hereby files this motion (the "Motion") for the entry of an order approving the letter agreement (the "Engagement Agreement"),[2] by and between the Debtor and PQBDN LLC ("PQBDN"), *nunc pro tunc* to November 17, 2019. Pursuant to the Engagement Agreement, Robert Moon ("Moon") will serve as the Chief Restructuring Officer ("CRO") of the Debtor. In support of this Motion, the Debtor submits the declaration of Robert Moon (the "Moon Declaration") annexed hereto as **Exhibit B**, and further represents as follows:

**Jurisdiction**

1.　　The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] A true and correct copy of the Engagement Agreement is attached hereto as **Exhibit A**.

*Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtor confirms his consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## Background

3. On October 14, 2019 (the "Petition Date"), the Debtor commenced this case (the "Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of his property and manages his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 25, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this Case.

5. The factual background regarding the Debtor, including the events precipitating the chapter 11 filing, is set forth in detail in *Omnibus Declaration of Yueting Jia in Support of Various Requests for Relief* [Docket No. 19].

## Relief Requested

6. By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor requests the entry of an order, substantially in the form of **Exhibit C** (the "Proposed Order") attached hereto, authorizing the Debtor to (a) retain and employ PQBDN to

provide the Debtor with a CRO and (b) designate Moon as CRO, *nunc pro tunc* to November 17, 2019.

7. Based on the complexities associated with administering the Case, the Debtor has determined that he requires the assistance of a CRO with specialized experience in bankruptcy and financial advisory services. Accordingly, the Debtor seeks to retain Moon as CRO because, among other things, the Debtor understands Moon has substantial experience in providing financial consulting services in distressed scenarios and enjoys an excellent reputation for services he has rendered in complex chapter 11 cases on behalf of debtors and creditors.

8. The Debtor has determined that the retention of Moon as CRO is necessary and appropriate, and is in the best interests of the Debtor's estate due to Moon's expertise and qualifications in performing the analyses required in this particular Case and for the reasons enumerated herein. In selecting Moon as CRO, the Debtor sought an advisor with experience in providing similar services in complex chapter 11 cases. In addition, Moon is conversant in Mandarin, making Moon well-suited to serve as the Debtor's CRO. As such, the Debtor believes that Moon is well qualified to assist the Debtor in a cost-effective, efficient and timely manner.

9. Because PQBDN only recently began providing services to the Debtor under its Engagement Agreement dated November 17, 2019, PQBDN will continue to coordinate with the other professionals retained in this Case.

### Robert Moon's Qualifications

10. Mr. Moon has more than 25 years of financial consulting and management experience, including financial and operational restructuring, loan workouts, asset disposition, corporate, strategic, financing and M&A advisory, and business planning. Moon has served as

CRO for Suntech Group which includes Suntech America, Inc., Case No. 15-10054 (KBO) pending in this Court ("Suntech") and currently serves as the Plan Administrator in the Suntech case. He has also been involved in a number of international insolvency proceedings. Prior to serving as Suntech's CRO, Moon worked with various clients to provide financial and strategic advisory services. He also served as CRO for Advantage Rent-a-Car in its chapter 11 proceeding and served as the chief financial officer for Global Lighting Technologies.

11. Mr. Moon has considerable experience working with senior management teams in the areas of financial and operational restructuring, loan workouts, insolvency recovery, asset disposition, business acquisition, and business planning. In bankruptcy cases, he has created, directed and implemented insolvency recoveries, overseen restructurings, and overseen the Bankruptcy Code section 363 sale process.

12. Moon holds an M.B.A. in Finance/Accounting from Columbia University Business School and a B.A. in Economics from Brigham Young University.

### Scope of Services

13. Subject to approval by the Court, the Debtor proposes to retain PQBDN to provide Moon as CRO on the terms and conditions set forth in the Engagement Agreement, except as otherwise explicitly set forth herein or in any order granting this Motion.

14. Moon will have the powers and responsibilities necessary to perform his duties as CRO and such other duties as those set forth therein.[3] Such duties may include:

---

[3] The summaries of the Engagement Agreement contained in this Motion are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Agreement, the terms of the Engagement Agreement shall control unless otherwise set forth herein.

(a) Assisting the Debtor in reviewing and negotiating any debtor in possession financing;

(b) Reviewing the Debtor's statement of financial affairs and schedules of assets and liabilities and, if necessary, assisting with the preparation of any amendments to such statements and schedules;

(c) Serving as the Debtor's foreign representative in any judicial or other proceedings in the British Virgin Islands or the Cayman Islands;

(d) Assisting the Debtor with any reporting required by the U.S. Trustee's office, including monthly operating reports;

(e) Investigating acts, conduct, assets, liabilities and financial condition of the Debtor, any other matter relevant to the Case or to the formulation and confirmation of a plan;

(f) Preparing a liquidation analysis in connection with any plan of reorganization proposed in the Case. Such liquidation analysis may be used in a disclosure statement or referenced in any declarations and related matters.

(g) As necessary, provide expert advice, analysis, evidence, and testimony (including valuation testimony) regarding financial matters related to the Case;

(h) Meeting with creditor groups, official constituencies, and other interested parties as the Debtor and PQBDN may mutually agree;

(i) Providing such other financial advisory and restructuring services in connection with the Case as PQBDN and the Debtor may mutually agree.

15. The Debtor submits that the foregoing services are necessary to enable him to maximize the value of his estate.

### PQBDN's Disinterestedness

16. Because Moon is being approved to render the services described in the Engagement Agreement under section 363 of the Bankruptcy Code, the Debtor submits that the

---

Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Agreement.

employment requirements of section 327(a) applicable to retained estate professionals are not applicable in this situation. However, as more fully set forth in the Moon Declaration, PQBDN undertook efforts to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor. To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Moon Declaration, PQBDN and Moon: (a) have no connection with the Debtor, his creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (b) does not hold any interest adverse to the Debtor's estate; and (c) each believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

17. In the ninety (90) days prior to the Petition Date, PQBDN received no payments for professional services performed for the Debtor. As set forth in the Debtor's Schedules, an affiliate of PQBDN owned by Moon received a $20,000 retainer in anticipation of Moon's retention as CRO. However, such amount is in the process of being returned.

18. In addition, as set forth in the Moon Declaration, if any new material facts or relationships are discovered or arise, PQBDN will provide the Court with a supplemental declaration.

### Terms of Retention

19. In accordance with the terms of the Engagement Agreement, the Debtor will pay PQBDN a monthly Service Fee (the "Service Fee"). The initial Service Fee (the "Initial Service Fee") will be $90,000.00 and will cover the period November 17, 2019, through

November 30, 2019. Thereafter, the Service Fee will be as follows: (a) for the month of December 2019 the Service Fee will be $50,000.00; (c) for the month of January 2020, the Service Fee will be $40,000.00; (c) for February through the Termination Date, the Service Fee will be $25,000.00, provided, however, that with respect to Service Fees for March 2020 and thereafter, the Debtor and PQBDN may mutually agree to a different amount. The first three months of Service Fees shall be payable by the Debtor upon Bankruptcy Court approval of this retention.

20. PQBDN is seeking a limited waiver from maintaining time records as set forth in Local Rule 2016-2 in connection with the services to be rendered pursuant to the Engagement Agreement to permit Moon to record his time in one-hour increments.

21. In addition, as set forth in the Engagement Agreement, the Debtor will reimburse PQBDN for its reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under the Engagement Agreement. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, lodging and meals, pre-approved computer and research charges, and reasonable attorney fees.

22. To the best of Debtor's knowledge, the compensation arrangement reflected in the Engagement Agreement is consistent with, and typical of, arrangements entered into by PQBDN and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtor.

## Indemnification

23. As a material part of the consideration for which the PQBDN has agreed to provide the services described herein, pursuant to the Engagement Agreement, the Debtor has agreed to indemnify and hold harmless Moon.[4] The rights to indemnification shall survive the termination or expiration of the Engagement Agreement.

24. The Debtor believes the indemnity provisions are reasonable, a customary term in the retention of a CRO, a condition of PQBDN's engagement and were, along with all terms of the Engagement Agreement, negotiated by the Debtor and PQBDN at arm's-length and in good faith. PQBDN and the Debtor believe that the indemnification provisions are comparable to those indemnification provisions generally obtained by crisis management firms and for comparable engagements, both in and out of court. The Debtor respectfully submits that the indemnification provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of PQBDN's proposed retention, are reasonable and in the best interests of the Debtor, his estate and creditors.

## Reporting Requirements

25. To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtor under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol" or the "Protocol"), PQBDN intends to

---

[4] As fully set forth in section 10 of the Engagement Agreement, the indemnification provision generally provides that the Debtor will indemnify and keep indemnified Moon without limit in point of time from and against any and all liabilities, losses, damages, claims, actions, proceedings, cost and expenses (including legal costs and expenses on a full indemnity basis) suffered or incurred by the Moon in connection with or arising directly or indirectly from the performance by Moon of the Services or of his obligations under the Engagement Agreement (but excluding any such liabilities, losses, or damages arising directly from the gross negligence or willful deceit of Moon).

file with the Court and serve on the Debtor, the U.S. Trustee and the Official Committee of Unsecured Creditors appointed in this Case (collectively, the "Committee" and, together with the Debtor and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 30th of each month for the previous month. The Staffing Report would be subject to review by the Court in the event so requested by any of the Notice Parties.

26. In addition, PQBDN will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses incurred (the "Compensation Reports") on at least a quarterly basis. The Compensation Reports will summarize the service provided, identify the compensation earned, itemize expenses incurred, and provide for an objection period of at least twenty-one (21) days. All such compensation will be subject to review by this Court if an objection is filed.

**Basis for Relief Requested**

27. The Debtor seeks approval of the employment of PQBDN pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to November 17, 2019. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28. Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable

DOCS_LA:324928.1 46353/001

business judgment on the part of the debtor, such use should be approved. *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29.  The retention of PQBDN is a sound exercise of the Debtor's business judgment. Moon has experience as a senior officer, as a fiduciary, and as an advisor for many troubled companies. The Debtor believes that PQBDN will provide services that benefit the Debtor's estate and creditors. In light of the foregoing, the Debtor believes that the retention of PQBDN is appropriate and in the best interests of the Debtor and his estate and creditors.

30.  Courts recognize the applicability of section 363(b) of the Bankruptcy Code to the use of estate property to compensate individuals employed outside the ordinary course of business. *See, e.g., In re Nine W. Holdings, Inc.*, 2018 Bankr. LEXIS 1998 (Bankr. D. Del. 2018); *In re The Weinstein Company Holdings*, Case No. 18-10601 (MWF) (Bankr. D. Del. Apr. 24, 2018); *In re VRG Liquidating, LLC*, Case No. 16-10971 (LSS) (Bankr. D. Del. Sept. 2016); *In re Fresh & Easy, LLC*, Case No. 15-12220 (BLS) (Bankr. D. Del. 2015); *In re Landauer Healthcare Holdings, Inc.*, Case No. 13-12098 (LSS) (Bankr. D. Del. 2013); *In re*

*Spheris Inc.*, Case No. 10-10352 (KG) (Bankr. D. Del. 2010). To the extent such approval is required here, it should be granted for the reasons set forth above.

31. The indemnification provisions are reasonable under the circumstances and reflect market conditions, and accordingly should be approved under section 328 of the Bankruptcy Code. *See, e.g., In re United Artists Theatre Co. v. Walton*, No. 01-1351, 315 F.3d 217 (3rd Cir. 2003) (approving indemnification for investment banker and financial advisor where the indemnity clause, including a carve out for gross negligence, was "reasonable" and therefore, permissible under the Bankruptcy Code). Courts in this jurisdiction have approved similar provisions to the indemnification provisions in other chapter 11 cases. *See, e.g., In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, No. 13-11565 (LSS) (Bankr. D. Del. July 15, 2013); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011); *In re Int'l Aluminum Corp.*, No. 10-10003 (MFW) (Bankr. D. Del. Jan. 27, 2010).

32. Based upon the foregoing, the Debtor submits that the retention of PQBDN and the designation of Moon as CRO on the terms set forth herein and in the Engagement Agreement is appropriate and in the best interest of the Debtor's estate, creditors, and other parties in interest and should be granted in this Case.

**Notice**

33. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) proposed counsel to the Committee and (c) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

34. No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully request the entry of the Proposed Order granting the relief requested and any other relief as is just and proper.

Dated: November 27, 2019

_____
Yueting Jia