**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------- x

In re:

YUETING JIA,[1]

Debtor.

-------------------------------------------------------------- x

: Chapter 11
:
: Case No. 19-12220 (KBO)
:
: Re: Docket No. 94
:
: **Objection Deadline:  December 13, 2019 at 4:00 p.m. (ET)**
: **Hearing Date:  December 18, 2019 at 10:00 a.m. (ET)**

**DEBTOR'S MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT,
(II) APPROVING VOTING AND TABULATION PROCEDURES, (III) SETTING
CONFIRMATION HEARING AND RELATED DEADLINES AND
(IV) GRANTING RELATED RELIEF**

Yueting Jia ("YT" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), respectfully requests entry of an order, substantially in the form attached as **Exhibit A** (the "Disclosure Statement Order"), (i) approving the *Amended Disclosure Statement with Respect to Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 94] (as may be amended, modified, or supplemented, the "Amended Disclosure Statement");[2] (ii) approving the Voting Procedures and Tabulation Procedures (each as defined herein); (iii) setting the date and time for the hearing on confirmation (the "Confirmation Hearing") of the *Debtor's Prepackaged Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 4] (as may be amended, modified, or supplemented, the "Plan"), and related deadlines; and (iv) granting related relief. In support of this motion, the Debtor respectfully states as follows.

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

[2] Capitalized terms not otherwise defined in this motion shall have the meanings used in the Amended Disclosure Statement.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtor confirms his consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested are sections 105(a), 502, 1123(a), 1124, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3003, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 3003-1, and 3017-1.

## BACKGROUND

**A.      General Background**

3.      On October 14, 2019 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues in the possession of his property and continues to manage his affairs as a debtor in possession pursuant to section 1107(a) of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

4.      On October 25, 2019, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee") [Docket No. 45]. The members of the

OMM_US:77293343.8

Committee are: Ping An Bank, Ltd. Beijing Branch, China Minsheng Trust Co., Ltd., Shanghai Leyu Chuangye Investment Management Center LP, Jiangyin Hailan Investment Holding Co., Ltd., and Shanghai Qichengyueming Investment Partnership Enterprise.

**B.      The Plan and Amended Disclosure Statement**

5.      Faced with approximately $3.7 billion in claims asserted against him and competing lawsuits from creditors in the People's Republic of China ("PRC") and the United States, prior to the Petition Date, YT commenced an out-of-court exchange offer backed by a prepackaged plan of reorganization. Due to increased pressure by a small minority of creditors and to avoid a race to the courthouse, YT determined it was in the best interests of all his creditors to terminate the exchange offer and file the Chapter 11 Case to implement a "prepackaged" restructuring through the Plan and continue solicitation of votes on the Plan during the Chapter 11 Case. In connection therewith, on the Petition Date, YT filed the Plan and the *Confidential Offering Memorandum, Disclosure Statement and Consent Solicitation Statement* [Docket No. 5]. The deadline to submit votes on the Plan in connection with the prepackaged restructuring was November 8, 2019.

6.      As set forth in the *Chapter 11 Status Report and Notice of Termination of Plan Voting Deadline* [Docket No. 73], after discussions with the Committee and certain individual creditors, YT determined that it was in the best interests of his creditors to pursue a more traditional process for confirmation of the Plan. Accordingly, YT terminated the November 8, 2019 voting deadline in connection with the prepackaged restructuring and filed the Amended Disclosure Statement on November 15, 2019. Additionally, on November 15, 2019, YT filed the *Notice of Hearing to Consider Approval of Debtor's Proposed Amended Disclosure Statement for Debtor's Plan of Reorganization* [Docket No. 96] (the "Disclosure Statement Notice"), which set (i) a deadline of December 13, 2019 at 4:00 p.m. (EST) for objections to the approval of the Amended

Disclosure Statement and (ii) December 18, 2019 at 10:00 a.m. (EST) as the hearing to consider

approval of the Amended Disclosure Statement.

7.      Since the Petition Date, YT has engaged with the Committee and its

representatives, as well as other creditors, including holding two well-attended creditor meetings

in California to discuss the terms of the Plan and the proposed restructuring. YT believes that the

Plan offers his best available restructuring opportunity, maximizes recoveries to his creditors, and

will restructure YT's Debt Claims in order to eliminate uncertainty about the ownership of the

Smart King Ltd. ("Smart King"), the parent company of Faraday & Future Inc. ("FF" and

collectively with the other operational entities owned and/or controlled by Smart King and together

with Smart King, the "FF Group") with the goal of placing the FF Group in a stronger position to

obtain financing for future competitive and strategic initiatives.

8.      The Plan and the Amended Disclosure Statement describe in detail the

transactions contemplated by the Plan and the recoveries provided for holders of claims against

YT. The Plan contemplates classifying holders of claims against YT into three classes for all

purposes, including the procedures for voting on the Plan, under section 1126 of the Bankruptcy

Code. The following chart lists the Plan's classes of claims:

| CLASS | DESCRIPTION | VOTING STATUS |
|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired – not entitled to vote |
| Class 2 | U.S. Secured Claims | Unimpaired – not entitled to vote |
| Class 3 | Debt Claims | Impaired – entitled to vote |

9.      As the above table demonstrates, only holders of claims in Class 3 (Debt

Claims) are entitled to vote on the Plan. Holders of claims in Class 1 (Priority Non-Tax Claims)

and Class 2 (U.S. Secured Claims) lack voting rights because those claims shall be paid in full and

in cash unless the holders of such claims agree to a less favorable treatment or make an election to

4

participate in the liquidating trust established for holders of Debt Claims, and are thus unimpaired

under the Plan.

**RELIEF REQUESTED**

10.     In seeking entry of the Disclosure Statement Order, the Debtor requests that

this Court (i) approve the Amended Disclosure Statement as containing "adequate information"

under section 1125 of the Bankruptcy Code; (ii) set a date and time in late February 2020 for the

Confirmation Hearing, which date shall be determined by the Debtor and the Court and included

in the Confirmation Hearing Notice; (iii) set the deadline for parties in interest to object to

confirmation of the Plan; (iv) approve the Confirmation Hearing Notice; (v) approve the Voting

Procedures; and (vi) approve the Tabulation Procedures.

11.     In the table below, the Debtor proposes dates relating to confirmation of the

Plan:

| Proposed Timeline | |
|---|---|
| **Deadline to Object to the Disclosure Statement** | December 13, 2019 at 4:00 p.m. (EST) |
| **Disclosure Statement Hearing** | December 18, 2019 at 10:00 a.m. (EST) |
| **Voting Record Date** | December 18, 2019 |
| **Solicitation Mailing Date** | January 2, 2020 |
| **3018 Motion Deadline** | January 31, 2020 at 4:00 p.m. (EST) |
| **Voting Deadline** | February 7, 2020 at 5:00 p.m. (Beijing Time) |
| **Deadline to Object to Confirmation of the Plan** | February 7, 2020 at 5:00 p.m. (EST) |
| **3018 Objection Deadline** | February 10, 2020 at 4:00 p.m. (EST) |
| **Deadline for Briefing in Support of Confirmation of the Plan** | February 18, 2020 at 4:00 p.m. (EST) |
| **Confirmation Hearing** | To be determined by the Debtor and the Court |

OMM_US:77293343.8

**ARGUMENT**

**A.      The Amended Disclosure Statement Should Be Approved as Containing Adequate Information.**

12.      Under section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically, section 1125 of the Bankruptcy Code states:

> (a)(1) "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

13.      A disclosure statement is designed to provide information material to creditors and interest holders as they evaluate whether to accept or reject a plan. *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."). Congress intended that informed judgments would be

6

needed to both negotiate the terms of, and vote on, a plan of reorganization. *Century Glove, Inc.*, 860 F.2d at 100.

14.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case. *See* 11 U.S.C. § 1125(a)(1); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.3d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 (indicating that "the information required will necessarily be governed by the circumstances of the case").

15.    The bankruptcy court, in its broad discretion, determines whether the information provided by the plan proponent is adequate under section 1125 of the Bankruptcy Code. *See, e.g.*, *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D. N.J. 2005) (indicating the determination should be made case by case and according to the discretion of the bankruptcy court); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (suggesting the court has substantial discretion in making such a determination).

16.    The Debtor submits, and will demonstrate at the Disclosure Statement Hearing (as defined below), that the proposed Amended Disclosure Statement addresses each of the salient types of information necessary to provide holders of Debt Claims in Class 3, the only class of claims entitled to vote on the Plan, with "adequate information" for making an informed judgment about the Plan. *See In re Source Enters. Inc.*, 2007 Bankr. LEXIS 4770, at *7–8 (Bankr.

OMM_US:77293343.8

S.D.N.Y. July 31, 2007); *In re Scioto Valley Mort. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio

1988). Specifically, the Amended Disclosure Statement includes:

a) *Introduction.* An overview of the material terms of the Plan, voting requirements, and the deadline to object to the Plan (Article I);

b) *General Information.* An overview of the Debtor's background, liabilities, the Debtor's interest in the FF Group, other assets, and certain relationships (Article II);

c) *The Chapter 11 Case.* An overview of the significant events that have occurred during the Chapter 11 Case (Article III);

d) *The Plan.* A description of the classification and treatment of claims under the Plan, the acceptance or rejection of the Plan, Plan distributions, and the discharge and releases under the Plan (Article IV);

e) *The Trust.* A description of various aspects of the Creditor Trust, including creation of the trust, trust assets, appointment of the trustee, and distributions under the trust (Article V);

f) *Hypothetical Scenarios.* An illustration of creditor recoveries under the Plan in connection with different valuation scenarios of Smart King (Article VI);

g) *Certain Risk Factors to be Considered.* Identification of risks associated with the Plan, the confirmation process, the Creditor Trust, FF Group, the automotive industry, and other matters (Article VII);

h) *Confirmation of the Plan.* A description of the voting procedures, the solicitation of votes, the confirmation hearing, and requirements for plan confirmation (Article VIII);

i) *Alternatives to Confirmation and Consummation of the Plan.* A discussion of the alternatives to confirmation, including conversion to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Case, and confirmation of another chapter 11 plan (Article IX);

j) *Certain United States Federal Income Tax Consequences of the Plan.* A description of certain U.S. federal income tax law consequences of the Plan (Article X); and

k) *Exhibits.* Exhibits include the Plan (Exhibit A), Trust Agreement Term Sheet (Exhibit B), Management's Discussion and Analysis of Financial Condition and Results of Operations of Smart King (Exhibit C), and Summary of Selected Financial Information of Smart King (Exhibit D).

Based on the foregoing, the Debtor submits that the Amended Disclosure Statement satisfies all

requirements of section 1125 of the Bankruptcy Code and provides adequate information to

holders of Debt Claims to vote to accept or reject the Plan.

**B.      The Disclosure Statement Provides Sufficient Notice of Injunction, Exculpation, and Release Provisions in the Plan.**

17.      Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined, and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

18.      Article X of the Plan and Article IV.H of the Amended Disclosure Statement describe in detail the discharge, release, injunctive, and exculpatory provisions of the Plan, including identifying the entities subject to an injunction under the Plan and the acts they are enjoined from pursuing. Further, the language in Article X of the Plan and Article IV.H of the Amended Disclosure Statement appears in boldface text, making it conspicuous to anyone who reads it. *See* Fed. R. Bankr. P. 3016(c) ("If a plan provides for an injunction . . . the plan and disclosure statement shall describe in specific and conspicuous language (bold, italics, or underline text) all acts to be enjoined and identify the entities that would be subject to the injunction."). Accordingly, the Debtor submits that the Amended Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties the Plan enjoins.

**C.      Notice of the Disclosure Statement Hearing.**

19.      Local Rule 3017-1 requires that the "hearing to consider the disclosure statement shall be at least 35 days following service of the disclosure statement and the objection deadline shall be at least twenty-eighty (28) days from service of the disclosure statement." Further, as provided under Local Rule 3017-1, "[u]pon the filing of a disclosure statement, the [Debtor] shall obtain hearing and objection dates from the Court and shall provide notice of those dates in accordance with [Bankruptcy Rule] 3017."

OMM_US:77293343.8

20.     As set forth in the Disclosure Statement Notice, the hearing to consider the relief requested in this motion, including the approval of the Amended Disclosure Statement as containing adequate information (the "Disclosure Statement Hearing"), will be held on December 18, 2019 at 10:00 a.m. (EST), and objections, if any, to the relief requested in this motion must be filed and served so as to be received by December 13, 2019 at 4:00 p.m. (EST).

21.     In accordance with Bankruptcy Rule 3017(a), the Debtor distributed (via first-class U.S. mail) the Disclosure Statement Notice to (a) all persons or entities listed on the Debtor's Schedules of Assets and Liabilities [Docket No. 28] (the "Schedules") and Creditor Matrix [Docket No. 1]; and (b) all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1 (the "2002 List"). The Disclosure Statement Notice sets forth: (a) the deadline and procedures for filing objections to approval of the Amended Disclosure Statement; (b) the date and location of the Disclosure Statement Hearing; and (c) instructions for obtaining copies of the Amended Disclosure Statement and the Plan. The Debtor submits that such service comports with the requirements of Bankruptcy Rule 3017(a) and Local Rule 3017-1.

**D.     The Bankruptcy Court Should Set the Confirmation Hearing Date and Related Deadlines and Approve the Form of Notice.**

22.     Bankruptcy Rule 2002(b) and (d) require that all creditors, indenture trustees, and equity security holders be given not less than 28 days' notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to a plan's confirmation must be filed and served "within a time fixed by the Court."

23.     In accordance with the Bankruptcy Rules, the Debtor proposes to provide all persons or entities listed on the Schedules, the Creditor Matrix, and the 2002 List with notice of the Confirmation Hearing and related objection deadline, in the form attached as **Exhibit B**

(the "Confirmation Hearing Notice"). The Debtor will also post the Confirmation Hearing Notice electronically on the Debtor's case website at *https://dm.epiq11.com/yt1*.

24.     The Debtor intends to work with the Court to obtain a date and time for the Confirmation Hearing in late February 2020, subject to the granting of this motion. In connection with the Confirmation Hearing, the Debtor requests that the Bankruptcy Court set February 7, 2020 at 4:00 p.m. (EST) as the deadline for parties in interest to object to confirmation of the Plan (the "Plan Objection Deadline"). *See* Fed. R. Bankr. P. 2002(b). Setting the Plan Objection Deadline at least 36 days following the service of the Confirmation Hearing Notice will provide parties in interest with sufficient time to consider whether to interpose any objections to the Plan, while providing the Court, the Debtor, and all parties in interest with sufficient time to consider any objection before the Confirmation Hearing. The Debtor further requests that the Court set February 18, 2020 at 4:00 p.m. (EST) as the deadline for the Debtor and other parties in interest to file and serve briefing in support of the Plan's confirmation, and if applicable, responses to any objections to the Plan.

**E.     The Bankruptcy Court Should Approve the Voting Procedures.**

25.     The Debtor also requests that the Bankruptcy Court approve (i) the Voting Record Date; (ii) the Voting Deadline; (iii) the briefing deadlines for any motion brought pursuant to Bankruptcy Rule 3018(a); (iv) the Debtor's transmittal of the Solicitation Packages to holders of Debt Claims in Class 3; and (v) the form of Ballot (collectively, the "Voting Procedures").

(a)     *Voting Record Date.*

26.     Bankruptcy Rule 3017(d) provides that on approval of a disclosure statement, unless the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders, a debtor shall mail to all creditors in Class 3, as well as the United States Trustee, a copy of the plan, the disclosure statement, notice of the voting deadline,

11

and such other information as the court may direct. For purposes of soliciting votes in connection

with the confirmation of a plan, "creditors and equity security holders shall include holders of

stocks, bonds, debentures, notes and other securities of record on the date the order approving the

disclosure statement is entered or another date fixed by the Court, for cause, after notice and a

hearing." Fed. R. Bankr. P. 3017(d). Additionally, Bankruptcy Rule 3018(a) provides, in relevant

part, that:

> An equity security holder or creditor whose claim is based on a
> security of record shall not be entitled to accept or reject a plan
> unless the equity security holder or creditor is the holder of record
> of the security on the date the order approving the disclosure
> statement is entered or on another date fixed by the court, for cause,
> after notice and a hearing.

27.      Accordingly, the Debtor requests that the Bankruptcy Court establish

December 18, 2019, the same date as the Disclosure Statement Hearing, as the voting record date

(the "Voting Record Date") for purposes of determining which holders of Debt Claims are entitled

to receive the Solicitation Package and to vote on the Plan.

(b)      *Voting Deadline.*

28.      Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the

disclosure statement, the court shall fix a time within which the holders of claims and interests

may accept or reject the plan." Fed. R. Bankr. 3017(c).

29.      The Debtor requests that the Bankruptcy Court exercise its authority under

Bankruptcy Rule 3017(c) and set February 7, 2020 at 5:00 p.m. (Beijing Time) as the Voting

Deadline. Any Ballot (as defined below) received after the Voting Deadline would not be counted

(except in the sole discretion of the Debtor). The Voting Deadline provides holders of Debt Claims

in Class 3 with at least 36 days to analyze the Plan and Amended Disclosure Statement, consult

OMM_US:77293343.8

with their legal and financial advisors, and return their Ballots. Accordingly, the Debtor requests that the Bankruptcy Court approve the Voting Deadline.

(c)     *Temporary Allowance of Claims for Voting Purposes.*

30.     Bankruptcy Rule 3018(a) provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purposes of accepting or rejecting a plan." Fed. R. Bankr. 3018(a). Under the Tabulation Procedures (as defined below), the Debtor will not count for voting purposes any Ballot cast for a claim, on account of which a proof of claim was filed before the Voting Record Date that is the subject of a pending objection (except to the extent provided in such pending objection). Additionally, if a (a) claim is identified in the Schedules as disputed, contingent, or unliquidated or (b) proof of claim is marked on its face as wholly contingent, unliquidated, or disputed or if no claim amount is specified on such proof of claim, such claim shall be entitled to vote only in the amount of $1.00. The Debtor respectfully requests that the Bankruptcy Court set the deadline for filing and serving any motion seeking to have a claim temporarily allowed for voting purposes (any such motion, a "3018 Motion") as January 31, 2020 at 4:00 p.m. (EST) (the "3018 Motion Deadline"). The Debtor further requests that the Court set February 10, 2020 at 4:00 p.m. (EST) as the deadline by which the Debtor or other parties in interest must object to any 3018 Motion.

(d)     *Solicitation of Class 3.*

31.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to creditors and equity security holders upon approval of a disclosure statement. In accordance with this rule, the Debtor proposes to transmit to holders of Debt Claims in Class 3, by no later than January 2, 2020 (the "Solicitation Mailing Date"), a solicitation package containing (i) the

OMM_US:77293343.8

Confirmation Hearing Notice; (ii) the Ballot (including a pre-paid, pre-addressed return envelope); (iii) the Amended Disclosure Statement, Plan, and Disclosure Statement Order, each of which may (but is not be required to) be in electronic format (either CD-ROM or flash drive); and (iv) such other information as the Court may direct or approve (collectively, the "Solicitation Package"). The Debtor submits that the proposed Solicitation Package and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

32.     With respect to any transferred claim in Class 3, the Debtor proposes that the transferee be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred claim only if all actions necessary to effect the transfer of the claim pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date and a notice of transfer has been filed and appears in the docket by that date. If a claim is transferred after the transferor has completed a Ballot, the transferee of that claim will be bound by any vote the transferor made on the Ballot.

33.     The Debtor will also serve the Confirmation Hearing Notice and a notice of non-voting status, a form of which is attached as **Exhibit C** (the "Notice of Non-Voting Status"), on the holders of unclassified claims and the holders of claims in Class 1 (Priority Non-Tax Claims) and Class 2 (U.S. Secured Claims). The Notice of Non-Voting Status will set forth (i) the non-voting classes; (ii) a summary of the treatment of claims under the Plan; (iii) the date and time of the Confirmation Hearing; (iv) the deadline and procedures for filing objections to the Plan; and (v) extensive disclosure regarding the release and injunctive provisions of the Plan. The Notice of Non-Voting Status will also indicate how parties can obtain a copy of the Plan and Amended Disclosure Statement.

14

(e)    *Ballots*.

34.    Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting the Plan should conform substantially to Official Form No. 14. The Debtor proposes to distribute the ballots to holders of Debt Claims in Class 3 (each a "Ballot" and collectively, the "Ballots") substantially in the form attached as **Exhibit D**. The form of Ballot will be served on holders of Debt Claims in Class 3 entitled to vote on the Plan. The proposed Ballot is based on Official Form No. 14 but modified to meet the particular requirements of the Chapter 11 Case and the Plan. The Ballot (i) provides holders of Debt Claims with clear instructions on how to complete and return a Ballot; (ii) prominently features the Voting Deadline; (iii) clearly and unequivocally states that Ballots received after the Voting Deadline will not be counted; and (iv) contains extensive disclosure regarding the release and injunctive provisions of the Plan.

**F.    The Bankruptcy Court Should Approve the Proposed Tabulation Procedures.**

35.    The Debtor proposes to employ the following rules in tabulating votes to accept or reject the Plan (collectively, the "Tabulation Procedures"), and respectfully requests that the Tabulation Procedures be approved:

(a)    Unless otherwise provided in these Tabulation Procedures, a claim will be deemed temporarily allowed for voting purposes only in an amount equal to: (i) the liquidated, non-contingent, undisputed amount of such claim as set forth in the Schedules if no proof of claim was filed by the Voting Record Date; (ii) the liquidated, non-contingent, undisputed amount of such claim as set forth on a proof of claim filed by the Voting Record Date, (iii) the amount of such claim as set forth in any stipulation allowing such claim or settlement agreement resolving disputes related to such claim filed with the Court before the Voting Deadline, whether or not the Court has approved the stipulation or agreement as of the Voting Deadline.

(b)    If a claim for which no proof of claim has been filed by the Voting Record Date is listed in the Schedules but listed as contingent, unliquidated, or disputed, and the applicable bar date has not occurred, such claim will be entitled to vote only in the amount of $1.00 for voting purposes unless a stipulation allowing such claim or settlement agreement resolving disputes related to such claim has been filed, as set forth above.

15

(c)     If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim will be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, subject to the other Tabulation Procedures.

(d)     If a claim for which a proof of claim has been filed by the Voting Record Date and has not been disallowed and is not subject to a pending objection or adversary proceeding as of the Voting Record Date, and is marked or otherwise referenced on its face as wholly contingent, unliquidated, or disputed, or if no claim amount is specified on such proof of claim, such claim will be temporarily allowed solely for voting purposes in the amount of $1.00, irrespective of how such claim may or may not be set forth in the Schedules; *provided*, *however*, that any undisputed, non-contingent, or liquidated portion of such claim will be deemed temporarily allowed for voting purposes, subject to the other Tabulation Procedures.

(e)     If the Debtor has served an objection or request for estimation as to a claim at least ten (10) business days before the Voting Deadline, such claim shall be temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline.

(f)     If any creditor seeks to challenge the allowance of its claim for voting purposes in accordance with the above procedures, the Debtor requests the Court direct such claimant to serve on counsel for the Debtor and file with the Court a 3018(a) Motion temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan on or before January 31, 2020 at 4:00 p.m. (EST).

(g)     When serving the Solicitation Packages, the Voting Agent will include individualized Ballots for the holders of Debt Claims in Class 3 and identify the allowed amount of the claim held by such Holder for voting purposes only pursuant to subsection (a) above.

(h)     If a proof of claim has been amended by a later proof of claim that is filed on or prior to the Voting Record Date, the later filed amending claim shall be entitled to vote in a manner consistent with these Tabulation Procedures, and the earlier filed claim shall be disallowed for voting purposes, regardless of whether the Debtor has objected to such amended claim. Except as otherwise ordered by the Court, any amendments to proofs of claim filed after the Voting Record Date shall not be considered for purposes of these tabulation rules.

(i)     Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate claims within Class 3 shall be provided with only one Solicitation Package and one ballot for voting a single claim, regardless of whether the Debtor has objected to such duplicate claims.

OMM_US:77293343.8

(j)   The voter must complete each section of the Ballot, including, without limitation, certifying the amount of its claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot. If the party executing the Ballot is signing as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation, or is acting in a fiduciary or representative capacity, he or she must indicate that capacity when signing and, if required or requested by the Voting Agent, the Debtor, or the Bankruptcy Court, must submit evidence satisfactory to the requesting party to so act on behalf of the holder of the claim.

(k)   Ballots received after the Voting Deadline will not be counted (except as permitted by the Debtor in his sole discretion). The voter may choose the method of delivery of its Ballot to the Voting Agent at its own risk. A Ballot will be deemed delivered only when the properly executed Ballot is actually received by the Voting Agent. Ballots delivered by fax will *not* be counted.

(l)   The voter must vote all its Debt Claims to either to accept or reject the Plan. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

(m)   If a claimant holds more than one Debt Claim in Class 3, that claimant must submit a separate Ballot for each such claim arising under a separate debt instrument and will be entitled to a separate vote for numerosity purposes in respect of each such claim.

(n)   If multiple Ballots are received from the same voter with respect to the same claim before the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect the voter's intent and will supersede and revoke any prior Ballot received.

(o)   The Debtor further proposes that, subject to any contrary order of the Court and except as otherwise set forth herein, he may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the voting report filed with this Court by the Voting Agent, the deadline for which is no later than seven days before the Confirmation Hearing. A defective or irregular Ballot will not be deemed delivered until such defect or irregularity has been cured or the Debtor has waived it. Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

(p)   In addition, the following Ballots will not be counted in determining the acceptance or rejection of the Plan:

(i)   any Ballot that is illegible or contains insufficient information to permit the identification of the holder;

17

(ii)      any Ballot that (x) does not indicate an acceptance or rejection of the Plan, (y) indicates both an acceptance and rejection of the Plan, or (z) partially accepts and partially rejects the Plan;

(iii)     any Ballot cast by a person who does not hold, or does not represent a person who holds, a Debt Claim;

(iv)      any Ballot cast on account of a claim that has not been allowed for voting purposes as set forth in subparagraphs (a) through (d) above;

(v)       any Ballot sent to a person other than the Voting Agent; and

(vi)      any Ballot not bearing an original signature; *provided*, *however*, that any Ballot submitted via the Voting Agent's online balloting platform (as further described below), or via email, will be deemed to be an original signature.

36.      In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Debtor requests authorization to accept Ballots via electronic, online transmissions through either (i) the customized online balloting portal on the Debtor's case website or (ii) email. Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing the online balloting portal (which allows a holder to submit an electronic signature) or emailing the Ballot to the Voting Agent by sending a copy of the Ballot to tabulation@epiqglobal.com with a reference to "YT Vote" in the subject line. Instructions for electronic, online transmission of Ballots are set forth on the form of Ballot. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. For the avoidance of doubt, Ballots submitted via the customized online balloting portal or email shall be deemed to contain an original signature.

## **NOTICE**

37.      The Debtor will provide notice of motion to the following parties, or their counsel, if known: (a) the U.S. Trustee for the District of Delaware; (b) the Committee; (c) the parties included on the Debtor's list of the twenty (20) largest unsecured creditors; and (d) all

parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. A copy of the motion is also available on the Debtor's case website at https://dm.epiq11.com/YT1. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice of this motion is required.

## NO PRIOR REQUEST

38.     The Debtor has not made any prior motion for the relief sought in this motion to this Court or any other.

*Remainder of Page Intentionally Left Blank*

OMM_US:77293343.8

The Debtor respectfully requests that this Court enter the Disclosure Statement Order granting the relief requested in its entirety and any other relief as is just and proper.

Dated:    December 4, 2019          PACHULSKI STANG ZIEHL & JONES LLP
          Wilmington, Delaware

                                    */s/ James E. O'Neill*
                                    Richard M. Pachulski (CA Bar No. 90073)
                                    Jeffrey W. Dulberg (CA Bar No. 181200)
                                    Malhar S. Pagay (CA Bar No. 189289)
                                    James E. O'Neill (DE Bar No. 4042)
                                    919 N. Market Street, 17th Floor
                                    Wilmington, DE 19801
                                    Tel:    (302) 652-4100
                                    Fax:    (302) 652-4400
                                    Email: rpachulski@pszjlaw.com
                                            jdulberg@pszjlaw.com
                                            mpagay@pszjlaw.com
                                            joneill@pszjlaw.com

OMM_US:77293343.8