IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>YUETING JIA,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-12220 (KBO)<br><br>Related Docket No. 89 |

**Objection Deadline: December 5, 2019 at 4:00 p.m. (ET)**
**Hearing Date: December 18, 2019 at 10:00 a.m. (ET)**

**DEBTOR'S OPPOSITION TO SHANGHAI LAN CAI ASSET MANAGEMENT CO, LTD.'S MOTION (I) TO DISMISS THE DEBTOR'S CHAPTER 11 CASE OR, ALTERNATIVELY, (II) TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

Yueting Jia, the debtor and debtor in possession (the "Debtor" or "YT") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files his opposition ("Opposition") to *Shanghai Lan Cai Asset Management Co, Ltd.'s Motion (I) to Dismiss the Debtor's Chapter 11 Case or, Alternatively, (II) to Transfer Venue to the Central District of California* [Docket No. 89] (the "Motion"), and in support thereof states as follows:

## Introduction

1. YT's Chapter 11 Case is focused on the restructuring of over $3.5 billion in debt, the overwhelming majority of which arose from obligations he guaranteed to support his businesses, including Faraday Future ("Faraday"),[2] a global technology company engaged in the development of next-generation mobility ecosystems. To that end, he is pursuing court approval of a plan of reorganization ("Plan") that will allow him both to address creditors' claims and

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, California 90275.
[2] *See* https://www.ff.com/

eliminate uncertainty about the ownership of Faraday with the goal of placing the company in a stronger position to obtain financing for future competitive and strategic initiatives.

2. Since the commencement of his Chapter 11 Case seven weeks ago, among other actions, the Debtor has:

a. Prepared and filed a Plan, Disclosure Statement and Amended Disclosure Statement;

b. Filed his Schedules of Assets and Liabilities and Statement of Financial Affairs;

c. Sought authorization to employ general bankruptcy counsel and special corporate, litigation and international counsel;

d. Moved for approval to retain a chief restructuring officer;

e. Met with representatives of the Office of the United States Trustee at his initial debtor interview and participated in the formation meeting of the Official Committee of Unsecured Creditors (the "Committee");

f. Established and continues to populate a data room containing documents requested by the Committee;

g. Conducted an all-day meeting at Faraday with Faraday's management, thirteen Committee members, creditor representatives, and Committee professionals in order to provide an overview of Faraday's business operations and financial condition, and to discuss the Plan; and

h. Invited representatives of all creditors (nearly all of whom traveled from the People's Republic of China) to Faraday for a separate, full day of meetings that included comprehensive presentations regarding Faraday's business operations and financial condition and sessions allowing creditors to ask questions and voice concerns regarding the Debtor's proposed restructuring. Thirty-five creditor representatives and two representatives of the Committee participated in this meeting.

3. Against this backdrop, Shanghai Lan Cai Asset Management Co. ("SLC"), a lone creditor—alleging one of the smallest debts against YT (around $11 million)—seeks to

dismiss the Chapter 11 Case or, alternatively, to transfer it to the state of California where its attorneys maintain an office.[3]

4. As described in the *Debtor's Statement Regarding Shanghai Lan Cai Asset Management Co, Ltd.'s Response to the Debtor's Chapter 11 Filing* [Docket No. 66], prior to the commencement of the Chapter 11 Case, SLC sought to use its relatively small debt to seize control of YT's assets, including his indirect interests in Faraday, solely for its own benefit: SLC purported to serve on the Debtor an order requiring the Debtor to appear for a judgment debtor examination that, under California law, may result in a lien on the Debtor's personal property. *See* Cal. Civ Proc. Code § 708.110(d). In order to preserve his assets for the benefit of *all* of his creditors—not just SLC—YT commenced this Chapter 11 Case.

5. SLC's Motion, which is largely based on excerpted media statements and replete with inaccurate and inflammatory statements, belies SLC's true purpose: to seek dismissal of this Chapter 11 Case so that it may seize YT's assets for itself and obtain full repayment of its relatively small debt through a "fire sale" that would destroy the value of Faraday at the expense of all other creditors. YT vigorously opposes SLC's efforts to derail his reorganization and continues to diligently prosecute his restructuring for the benefit of all creditors of his bankruptcy estate.

## **Background**

6. On October 14, 2019 (the "Petition Date"), the Debtor commenced his Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy

---

[3] *See* https://kobrekim.com/locations/san-francisco.

Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The Debtor has continued in possession of his property and manages his affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On October 25, 2019, the Office of the United States Trustee appointed the Committee in this Chapter 11 Case.

8. The factual background regarding the Debtor, including the events precipitating his chapter 11 filing, is set forth in detail in *Omnibus Declaration of Yueting Jia in Support of Various Requests for Relief* [Docket No. 19].

**Discussion**

**A. The Debtor's Case Was Properly Filed in This District Because the Debtor's Principal Assets Are His Interests in Two Delaware LLCs**

9. Venue of a chapter 11 case is governed by 28 U.S.C. § 1408, which provides, in relevant part, as follows:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district**—**
>
> > (1) in which the domicile, residence, principal place of business in the United States, *or principal assets in the United States*, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district;

28 U.S.C. § 1408 (1) (emphasis added).

10. Section 1408 is phrased in the disjunctive. A debtor need only meet one of the four venue tests (domicile, residence, principal place of business in the United States, or principal assets in the United States). *See Broady v. Harvey (in re Broady)*, 247 B.R. 470, 472

(BAP 8th Cir. 2000) (citing *In re Gurley*, 215 B.R. 703, 707–08 (Bankr. W.D. Tenn. 1997)); *In re Miller*, 433 B.R. 205, 211 (Bankr. W.D. Mich. 2010). "'[T]he statute allows many possible locations where an entity or individual may file for bankruptcy protection.'" *See* 1 *Collier on Bankruptcy* ¶ 4.02[2][a] (16th ed. 2019) (quoting *Miller*, 433 B.R. at 211). Thus, for example, if a debtor has its principal place of business in one district and its principal assets in another, either district would be a proper venue. *See id. See also Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.),* 596 F.2d 1239, 1245 (5th Cir. 1979) ("*CORCO*") (interpreting former Bankruptcy Rule 116 to have made it clear that "a debtor's principal place of business is not necessarily at the same location as its principal assets," and that chapter 11 venue would properly lie in either place); *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (Section 1408 "is written in the disjunctive making venue proper in any of the listed locations."); *In re Peachtree Lane Assocs.*, 206 B.R. 913, 917 (N.D. Ill. 1997) (stating with respect to venue under 28 U.S.C. § 1408, "[s]ince the test is in the alternative, venue may properly lie in more than one district."). "As a result, a debtor may select from any one of the five options in selecting a venue for his bankruptcy filing." *In re Acor*, 510 B.R. 588, 591 (Bankr. W.D. Tenn. 2014)(including a fifth venue option arising from section 1408(2): "'the pendency of a bankruptcy case concerning the debtor's affiliate, general partner or partnership.'" (quoting *In re FRG, Inc.*, 107 B.R. 461, 468 (Bankr.S.D.N.Y.1989)).[4]

11. For purposes of establishing venue based on the location of a debtor's principal assets, the inquiry boils down to a "simple determination" of where the greater dollar

---

[4] Additionally, a debtor's choice of venue should be given deference by courts, as discussed in detail in section D below.

value of the debtor's U.S. assets are located. *See e.g., Frank v. Neufeld (In re Neufeld)*, 2012 Bankr. LEXIS 5430, *4 (Bankr. M.D. Pa. Nov. 16, 2012) ("Although the term 'principal asset' is not defined by the Bankruptcy Code for venue purposes under 28 U.S.C. § 1408, the term 'principal' refers to an item of the first, highest or foremost in importance, rank, worth, or degree. Therefore, the analysis required is a simple determination of where the greater dollar value of all property of the estate is located.").

12. The Debtor here is an individual whose principal asset in the U.S. is his interest in Pacific Technology Holding LLC ("Pacific Technology"), a portion of which is held through West Coast LLC ("West Coast" and, together with Pacific Technology, the "LLCs"). Pacific Technology was formed on July 26, 2018, and West Coast has existed on July 31, 2019.[5] The Debtor's current interests in the LLCs are valued at approximately $320 million and $862 million,[6] respectively, and, as reflected in the Schedules, are the Debtor's material U.S. assets.[7]

[5] True and correct copies of the Certificates of Formation for Pacific Technology and West Coast are attached hereto as **Exhibits "A"** and **"B,"** respectively. Contrary to SLC's assertions in the Motion, proper venue of the Debtor's bankruptcy case in Delaware is not solely based on the Debtor's interests in West Coast, but also on his interests in Pacific Technology, a Delaware entity that was in existence as of July 2018—well prior to the 180 days preceding the commencement of the Debtor's Chapter 11 Case in this Court. The case law cited by SLC in the Motion (¶ 27) for the proposition that the Debtor "manufactured" venue on the eve of commencing the Chapter 11 Case is, therefore, inapposite and clearly distinguishable. *See, e.g., In re Columbia Western, Inc.*, 183 B.R. 660, 661 (Bankr. D. Mass. 1995) (where a debtor conducted business in Oregon, its assets and many creditors were in Oregon, and an affiliate's case was pending in Oregon, the transfer of $10.7 million to a Massachusetts bank and execution of an unnecessary month-to-month lease of empty office space in Massachusetts two days prior to filing was insufficient to establish proper venue in Massachusetts). SLC's assumption that venue is improper based on the formation date of West Coast is factually erroneous. Pacific Technology was formed well outside the 180 days referenced in the venue statute.

[6] The values of the Debtor's interests in Pacific Technologies and West Coast are set forth in the Debtor's Schedules of Assets and Liabilities filed with the Court on October 17, 2019 [Docket No. 28] (the "Schedules"), and are based on the valuation of Smart King Ltd. ("Smart King") following a December 21, 2018, Restructuring Agreement with Evergrande Health Industry. West Coast holds a 6.16% interest in Smart King and Pacific Technology holds a 10% interest in Smart King.

[7] As reflected in the Schedules, with the exception of $2.1 million in prepaid rent and *de minimis* cash in deposit accounts at Wells Fargo Bank and Bank of America (totaling approximately $67,000), the Debtor's other assets are non-U.S. assets located in the People Republic of China ("PRC"). The Debtor's assets located in the PRC have been frozen. The Chapter 11 Case was commenced to implement a restructuring of the Debtor's U.S. assets and, as discussed below, is the appropriate forum in which to accomplish this legitimate purpose.

The Debtor's interests in the LLCs, therefore, constitute his principal assets for purposes of venue under section 1408.

13. For purposes of determining the location of principal assets as part of a venue determination, the location of a debtor's membership interests in a limited liability company is the state in which such limited liability company is registered which, with respect to the LLCs, is Delaware. *See e.g., Montana Dep't of Revenue v. Blixseth (In re Blixseth)*, 484 B.R. 360, 370-71 (BAP 9th Cir. 2012) (holding that, for venue purposes, a debtor's principal assets consisting of intangible equity interests in a limited liability company and limited liability limited partnership were located in the state where they were formed, not in the state of the debtor's residence). *See also In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000) (the owner of stock in a corporation incorporated in Delaware has property in Delaware for purposes of satisfying section 109(a) of the Bankruptcy Code).[8] *Accord, In re Silicon Valley Innovation Co.*, 2012 Bankr. LEXIS 4034 (Bankr. N.D. Cal. Aug. 30, 2012) (stock of corporation located in state of incorporation, not state where it had its headquarters).

---

[8] *Global Ocean* concerned the issue of whether Global Ocean, the debtor, was eligible to file a case under section 109(a) of the Bankruptcy Code. Section 109(a) provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109. The "property" referred to in section 109(a) constitutes "principal assets" under 28 U.S.C. § 1408. *See* Committee on Structured Finance and the Committee on Bankruptcy and & Corporate Reorganization of the Association of the Bar of the City of New York, *Special Report on the Preparation of Substantive Consolidation Opinions*, 64 Bus. Law. 411, 418–19 (2009) (citing to both 11 U.S.C. § 109(a) and 28 U.S.C. § 1408 for the rule that "[a]n entity may be a debtor under U.S. bankruptcy law if it has its domicile, a place of business, or assets in the United States."). Therefore, notwithstanding the court's determination in the context of section 109(a), the *Global Ocean* holding is applicable to determining whether venue is proper under 28 U.S.C. § 1408.

14. The Debtor's interests in the LLCs are his principal U.S. assets and these assets are located in the state in which the LLCs are registered—the State of Delaware. Consequently, venue of the Chapter 11 Case is proper in Delaware under 28 U.S.C. § 1408.

**B. <u>Because Delaware Is a Proper Venue, SLC's Argument for Dismissal of the Debtor's Bankruptcy Case Based on "Improper Venue" Fails as a Matter of Law</u>**

15. SLC argues that the Chapter 11 Case must be dismissed pursuant to 28 U.S.C. § 1406(a)[9] and Rule 1014(a)(2) of the Federal Rules of Bankruptcy Procedure ("<u>FRBP</u>")[10] as a result of the Debtor's case being filed "improperly" in this Court. Because venue of the Debtor's case in Delaware is *proper,* SLC's argument for dismissal on this ground is misplaced.

16. Both 28 U.S.C. § 1406(a) and FRBP 1014(a)(2) allow a court to either dismiss or transfer an *improperly* venued case. Dismissal, however, is only an appropriate remedy where a petition is filed in an improper venue. Where a bankruptcy case is filed in a

---

[9] Section 1406(a) (entitled "Cure or waiver of defects") provides as follows: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[10] Rule 1014(a)(2) of the Federal Rules of Bankruptcy Procedure provides as follows:

> **(a) Dismissal and Transfer of Cases.**
>
> (1) *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.
>
> (2) *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr. P. 1014(a).

proper venue (as is the case here), the relevant inquiry is only whether the Court should *retain or transfer* the case because venue is proper—the issue is *not* whether to *dismiss or transfer* because venue is improper. *See Acor,* 510 B.R. at 594; *In re Campbell*, 242 B.R. 740, 748 (Bankr. M.D. Fla. 1999). As set forth by the *Acor* court:

> Because the Court has concluded that venue of this case is proper . . . pursuant to 28 U.S.C. § 1408, it is unnecessary for the Court to address the Movants' alternative to motion to dismiss the case. Federal Rule of Bankruptcy Procedure 1014(a)(2) only allows for dismissal of a case "[i]f a petition is filed in an *improper* district . . . ." Fed. R. Bankr. P. 1014(a)(2) (emphasis added); *In re Campbell*, 242 B.R. 740, 748 (Bankr. M.D. Fla. 1999) (determining that because the 'Court finds venue in this district is proper, . . . the issue becomes whether to retain or transfer because venue is proper, rather than whether to dismiss or to transfer because venue is improper.

*Acor*, 510 B.R. at 594.[11]

17. Because venue in this Court is proper, SLC's demand that this Court dismiss the Chapter 11 Case on the grounds of improper venue must be denied.[12]

## C. <u>SLC Fails to Establish That Cause Exists to Dismiss the Chapter 11 Case Pursuant to Section 1112(b) or Section 305(a)(1) of the Bankruptcy Code</u>

18. In addition to claiming that this Court should dismiss the Chapter 11 Case based on its unfounded allegations of improper venue, SLC asserts that the Court should dismiss the case under section 1112(b) of the Bankruptcy Code because the Debtor's petition was filed in "bad faith." Pointing to the same alleged "grounds," SLC also asserts that the case should be

---

[11] None of the cases cited by SLC in the Motion (¶¶ 27-28) is to the contrary because these decisions uniformly address dismissal as a remedy for an *improperly* venued case and are therefore inapplicable here. *See e.g., Columbia Western*, 183 B.R. 660 (transfer or dismissal as a remedy for improper venue); *In re Sorrells*, 218 B.R. 580, 586 (BAP 10th Cir. 1998) (same); *In re Deabel, Inc*., 193 B.R. 739 (Bankr. E.D. Pa. 1996) (same); *In re Hall, Bayoutree Assoc., Ltd*., 939 F.2d 802, 806 (9th Cir. 1991) (same).

[12] Moreover, as discussed in detail below, SLC's alternative request that this Court transfer venue to a bankruptcy court in California is likewise without basis and should be denied.

dismissed under section 305(a)(1) of the Bankruptcy Code because the interests of creditors and the Debtor would be better served by dismissal. Both are extraordinary forms of relief, and SLC has failed to meet its considerable burden to demonstrate that dismissal under either section of the Bankruptcy Code is warranted.

19. As discussed herein, the Debtor had a valid bankruptcy purpose for filing his Chapter 11 Case—reorganizing his financial affairs to provide for the restructuring of over $3.5 billion in creditor claims. The case was not, contrary to SLC's assertions, commenced as a litigation tactic or to prejudice creditors' rights. To the contrary, had the Debtor not filed the Chapter 11 Case, SLC would have sought to enforce its lien and seize the Debtor's assets in order to repay its relatively small debt, and in the process destroy any value available for other creditors.

20. Instead, the Debtor commenced his bankruptcy case after considering the best interests of *all* parties. SLC is not the only party in interest in this Chapter 11 Case. There are numerous creditors holding billions of dollars of claims that will benefit from the Debtor's restructuring of his affairs for the purpose of satisfying his obligations. Indeed, chapter 11 of the Bankruptcy Code provides the most appropriate forum to achieve a successful restructuring of the Debtor's financial affairs.

21. Evidencing the Debtor's good faith, since the commencement of the Chapter 11 Case and the appointment of the Committee, the Debtor and his professionals have actively discussed and commenced negotiations with the Committee, its professionals, and other creditors concerning myriad issues affecting the restructuring of the Debtor's obligations,

including the Plan and the treatment of creditors' claims thereunder. For example, in response to the Committee's request for documents, the Debtor established and continues to populate a data room containing documents requested by the Committee. The Debtor conducted an all-day meeting at Faraday with Committee members, certain individual creditors, Committee and Debtor professionals, and members of Faraday's management in order to provide an overview of Faraday's business operations and financial condition and to discuss the Plan. The Debtor also invited representatives of all creditors (nearly all of whom traveled from the People's Republic of China) to Faraday for a separate, full day of meetings that included comprehensive presentations regarding Faraday's business operations and financial condition and sessions allowing creditors to ask questions and voice concerns regarding the Debtor's proposed restructuring. Thirty-five creditor representatives and two representatives of the Committee participated in these meetings.

22. Section 1112(b) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause …." 11 U.S.C. § 1112(b)(1). Significantly, "[t]he statute provides for dismissal for cause, if it is in the best interest of the creditors and the estate." *Official Comm. V. Nucor Corp. (In re SGL Carbon Corp.),* 200 F.3d 154, 159 (3d Cir. 1999). Courts have found that dismissal of a bankruptcy petition for lack of good faith should be done "only sparingly and with great caution." *See e.g., In re General. Growth, Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009)

(citing *Carolin Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989)); *In re G.S. Distrib.*,, 331 B.R. 552, 566 (Bankr. S.D.N.Y. 2005). Dismissal of a voluntary chapter 11 petition "is an extraordinary remedy that requires careful examination of the facts on a case-by-case basis." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997); *see also In re Marion Street Partnership,* 108 B.R. 218, 223 (Bankr. D. Minn. 1989) ("Dismissal of a bankruptcy case is the ultimate sanction; it should be used with caution."). "In enacting chapter 11, Congress determined that an otherwise eligible debtor is entitled to an opportunity to reorganize; the Code's policy is one of open access to the bankruptcy process." *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr. E.D. Pa. 1987).

23. Although section 1112(b)(4) of the Bankruptcy Code sets forth a list of examples that may constitute cause for dismissal, none is applicable here. Indeed, SLC does not allege otherwise. Instead, SLC contends that the Debtor's Chapter 11 Case should be dismissed because it was not filed in "good faith." In support, SLC asserts that "[i]nstead of serving any legitimate bankruptcy purpose, the petition was 'filed merely to obtain a tactical litigation advantage.'" *See* Motion ¶¶ 34-37.

24. The United States Court of Appeals for the Third Circuit has held that "[c]hapter 11 bankruptcy petitions ' are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in [good faith].'" *Cross-Appellees in 09-1432 v. BEPCO, LP (In re 15375 Mem'l Corp.),* 589 F.3d 605, 618 (3rd Cir. 2009) (quoting *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 118 (3d Cir. 2004)). "Whether the good faith requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances' and

determine where a 'petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'" *Integrated Telecom Express, Inc.,* 384 F.3d at 118 (quoting *SGL Carbon,* 200 F.3d at 162). Courts in the Third Circuit generally "focus[ ] on two inquiries that are particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *Id.* at 119-20 (citing *In re SGL Carbon,* 200 F.3d at 165).

25. Courts in the Third Circuit "consider various factors that indicate whether the case has been filed for a legitimate reorganization purpose or only as a litigation tactic or for some other improper purpose." *In re Jer/Jameson Mezz Borrower II,* 461 B.R. 293, 299 (Bankr. D. Del. 2011). *See also Primestone Inv. Parnters v. Vorando PS (In re Primestone Inv. Partners),* 272 B.R. 554, 557 (D. Del. 2002) (*citing SGL Carbon,* 200 F.3d at 165; *Phoenix Piccadilly, Ltd v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394-95 (11th Cir. 1988); *In re SB Props.,* 185 B.R. 198, 205 (E.D. Pa. 1995)). "The focus of the inquiry is whether the petitioner sought 'to achieve objectives outside the legitimate scope of the bankruptcy laws' when filing for protection under Chapter 11." *Primestone,* 272 B.R. at 557 (quoting *In re SGL Carbon Corp*., 200 F.3d at 165). "Therefore, no single factor is determinative of a lack of good faith in filing a petition." *Id.* at 558 (quoting *In re Tiffany Sq. Assoc.*, 104 B.R. 438, 441 (Bankr. M.D. Fla. 1989).

26. As described above, section 1112(b) of the Bankruptcy Code requires that, regardless of whether cause exists to dismiss a case (which cause is absent here here), a court

may only dismiss the case if doing so is in the best interests of creditors and the estate. *See* 11 U.S.C. § 1112(b). Similarly, section 305(a)(1) of the Bankruptcy Code grants courts the authority to forgo the exercise of appropriate jurisdiction and dismiss or suspend proceedings in a case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). The moving party bears the burden to demonstrate that dismissal or suspension benefits the debtor and its creditors. *See RHTC Liq. Co. v. Union Pac. R.R. (In re RHTC Liq. Co.),* 424 B.R. 714, 720-721 (Bankr. W.D. Pa. 2010); *In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 462-63 (Bankr. S.D.N.Y. 2008). However, given that dismissal or suspension under section 305(a)(1) of the Bankruptcy Code is an extraordinary remedy with limited appellate review, courts sparingly exercise such power. S*ee* 11 U.S.C. § 305(c); *In re Schur Mgmt. Co.,* 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005); *In re Corino,* 191 B.R. 283, 287 (Bankr. N.D.N.Y. 1995); *In re Luftek, Inc.,* 6 B.R. 539, 548 (Bankr. E.D.N.Y. 1980) ("There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the court such broad powers to refuse jurisdiction over a case.").

27. The statutory language and the legislative history make clear that "the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor *and* the creditors would be 'better served' by a dismissal." *Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 625 (BAP 9th Cir. 1995) (reversing order dismissing case under section 305(a)(1) of Bankruptcy Code because lower court employed balancing test and failed to determine that dismissal was in best interest of debtor as well as creditors). Given the

standard that must be met by a moving party under section 305(a) (1) of the Bankruptcy Code, it is not surprising that few fact patterns fall within such section. Indeed, the "legislative history indicates that the provision was designed to be utilized where, for example, a few recalcitrant creditors attempted to interfere with an out-of-court restructuring that had the support of a significant percentage of the debtor's creditors." *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486, 522 (Bankr. S.D.N.Y. 2004) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 325 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 35 (1979)); *In re Wine & Spirits Specialties of Kansas City, Inc.*, 142 B.R. 345, 346-47 (Bankr. W.D. Mo. 1992)). In fact, some courts have limited the application of section 305(a)(1) of the Bankruptcy Code to involuntary cases. *See Monitor Single Lift*, 381 B.R. at 464 (noting that section 305(a) case law is "dominated by cases concerning involuntary petitions filed by creditors"). Even if, however, section 305(a)(1) of the Bankruptcy Code were to apply here, SLC still has failed to satisfy its substantial burden of proving that the Debtor and his creditors' interests would be better served by the dismissal of the case.

28. SLC fails to demonstrate that (a) the Debtor did not have a valid bankruptcy purpose for commencing his Chapter 11 Case and (b) the Debtor filed his bankruptcy case merely to obtain a tactical litigation advantage. Further, SLC has failed to establish that dismissal of the case would benefit the Debtor and his creditor body. It is apparent that SLC is only considering its own self-interest in disregard for the best interests of the other creditors of the Debtor's estate.

**i. The Debtor Had Valid Bankruptcy Purposes for Commencing His Chapter 11 Case**

29. The Debtor had valid bankruptcy purposes for seeking to restructure pursuant to chapter 11 of the Bankruptcy Code—the need to restructure his financial affairs to provide for the repayment of creditor claims, which total in the billions, and to preserve the value of his principal asset—Faraday's business. Indeed, a cursory examination of the circumstances surrounding the filing of the Chapter 11 Case, and the events that led up to the filing, dispel any notion that the filing was made in bad faith. Rather, faced with over $3.5 billion in debt and competing lawsuits from creditors in the U.S. and the PRC, the Debtor was left with no viable alternative other than to seek a restructuring of his financial affairs under chapter 11 of the Bankruptcy Code. Had the Chapter 11 Case not been filed, SLC or another party asserting a lien on all of YT's personal property assets could have seized control of some of his assets solely for its benefit.[13]

**ii. SLC Fails to Prove That the Debtor Filed the Chapter 11 Case to Obtain a Litigation Advantage**

30. SLC contends that the Chapter 11 Case should be dismissed because the Debtor filed the case for the primary purpose of obtaining a tactical litigation advantage. SLC, however, offers no evidence to support this allegation.

31. A chapter 11 case may be subject to dismissal if it was commenced primarily or solely to obtain a tactical litigation advantage. Further, "[w]here 'the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed

[13] Shanghai Qichengyueming Investment Partnership also purported to serve a judgment debtor examination order on the Debtor prior to the Petition Date.

in good faith.'" *15375 Mem'l Corp.*, 589 F.3d at 625 (quoting *In re SGL Carbon Corp.*, 200 F.3d at 165).

32. In support of its allegations, SLC merely points to the timing of the bankruptcy filing in response to SLC's aggressive enforcement actions and its frustration in having to comply with the "automatic stay" provisions of the Bankruptcy Code to which all creditors are subject as a matter of law.[14]

33. SLC's assertions that the Debtor was not in need of "breathing room" is absurd in light of his enormous debt burden and SLC's actions prior to the Petition Date to impose a lien over the Debtor's personal property assets. The Debtor faces billions of dollars in personal obligations and enforcement actions; he needs to restructure his financial affairs to provide for the repayment of creditor claims. Filing this Chapter 11 Case to fulfill these legitimate purposes under the supervision of this Court was undertaken in good faith to benefit all parties.

34. Moreover, SLC's allegations that the Debtor commenced this Chapter 11 Case to avoid disclosing information regarding his assets and liabilities are nonsense: The chapter 11 bankruptcy process is predicated upon disclosure and transparency. The Debtor has filed his Schedules under penalty of perjury, as well as a Plan, Disclosure Statement, and Amended Disclosure Statement setting forth his financial information in detail. The Debtor has

---

[14] Contrary to the allegations in the Motion (¶¶ 36-37), the Debtor is not using the automatic stay as a "sword." Rather, the Debtor and his counsel have advised SLC as to the scope of the automatic stay and the consequences of a willful violation of the stay provisions in connection with ongoing enforcement proceedings by SLC, notwithstanding the commencement of the Chapter 11 Case. To the extent that SLC does not believe that the stay applies or that relief from the automatic stay is appropriate, it is entitled to seek such a determination from this Court. Invoking the breathing-spell provisions of the automatic stay, however, is not a prohibited "litigation tactic." This circumstance is wholly distinguishable from the "litigation tactic" cases cited by SLC in the Motion.

not in any way sought to use this proceeding as a means of hiding information from this Court or creditors; any statement to the contrary is baseless.

35. SLC is severely misguided in its characterization of the Debtor's motives behind filing the Chapter 11 Case, and its effort to paint this case as a "two-party" dispute. This case involves billions of dollars of creditor claims—with SLC's $11 million judgment representing only a fraction of the total claim pool. The Debtor's need to reorganize his financial affairs to provide for the payment of creditor claims under the circumstances is beyond question, and the Debtor's negotiations with the Committee and creditors regarding the terms of his Plan and the treatment of creditor claims thereunder is further evidence of the Debtor's good faith dealings with his creditors.

36. For the reasons set forth above, SLC's allegation that the Chapter 11 Case was filed primarily as a litigation tactic is, frankly, frivolous. The Debtor had valid bankruptcy purposes for commencing his case and the "totality of the circumstances" surrounding this case categorically demonstrate that the Debtor should be permitted to avail himself of the benefits of the Bankruptcy Code to restructure his financial affairs for the benefit of all his creditors.[15]

[15] SLC's unfounded accusations regarding the Debtor's chapter 11 filing being done for tactical litigation purposes are ironic given that the Motion appears to have been filed for that very purpose. Indeed, as is evident from its actions and arguments in the Motion, SLC seeks the dismissal of the Debtor's case to further its own interests and not those of other creditors. The Motion is a thinly disguised effort to do away with the provisions of the automatic stay. If the Court were to dismiss the case and eliminate the Debtor's protections and safeguards provided by the Bankruptcy Code, SLC would be free to continue its enforcement actions against the Debtor's U.S. assets to the detriment of other creditors.

**iii. The Bankruptcy Case Is Appropriate to Resolve Creditors' Claims Against the Debtor's U.S. Assets**

37. In the Motion, SLC next asserts that the Chapter 11 Case should be dismissed under sections 1112 and 305(a)(1) based on principles of "comity," asserting that this Court should be prohibited from exercising jurisdiction over foreign creditors' claims against a debtor's U.S. assets and must, therefore, simply dismiss the U.S. bankruptcy proceeding. Notably, SLC is unable to point to any authorities standing for such a sweeping proposition, and the cases cited by SLC are fundamentally distinguishable from the situation presented here.

38. The Chapter 11 Case is not intended to resolve creditors' claims against the Debtor's non-U.S. (PRC) assets. Unless the Debtor and his creditors come to a different arrangement, SLC and other creditors may pursue the Debtor's non-U.S. (PRC) assets under applicable law.[16] The purpose of the Chapter 11 Case *in this Court* is to restructure the Debtor's U.S. holdings and to provide for the payment of creditors' claims (wherever they are based) from the Trust established pursuant to the Plan. The fact that the holders of claims against U.S. assets are predominantly Chinese is of no import. There can be no dispute that this Debtor has valuable U.S. assets, and that the existence of these assets establish his eligibility as a chapter 11 debtor under Bankruptcy Code section 109.[17]

---

[16] The Debtor's non-U.S. assets have been seized or frozen by Chinese courts and will be utilized to satisfy creditors' claims in accordance with the law of the PRC. The instant Chapter 11 Case deals solely with the Debtor's U.S. assets and repayment of creditors' claims therefrom. The Debtor's Plan will be amended to make clear that the Plan's release provisions will not impact PRC claims and assets.

[17] Section 109(a) of the Bankruptcy Code sets for the requirements for commencing a case under title 11 as follows: (a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United states, or a municipality, may be a debtor under this title. 11 U.S.C. § 109(a). *See In re Northshore Mainland Servs.*, 537 B.R. 192, 200 (Bankr. D. Del. 2015) ("Courts construing the 'property' requirement of § 109 to foreign corporations [and] individuals have determined that the eligibility requirement is satisfied by even a minimal amount of property located in the United States."). *Accord*, *GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.*), 317 B.R. 235, 250 (S.D.N.Y. 2004) (to qualify as a debtor under section 109," courts have required only nominal amounts of property

39. Indeed, even assuming that the PRC had a bankruptcy scheme that would provide the Debtor with an adequate means to address his financial difficulties—*which, as acknowledged by SLC, it does not*—the Debtor would have needed to commence a separate proceeding under chapter 15 of the Bankruptcy Code in order to address his U.S. assets. Because there is not, and cannot be, a main proceeding in the PRC to which a chapter 15 case relates, however, a chapter 11 filing to address the disposition of the Debtor's U.S. assets is necessary and proper. The principals of "comity" urged by SLC simply do not come into play under these circumstances.[18]

40. Indeed, the principals of comity urged by SLC are not applicable where there is no comprehensive procedure for the orderly marshalling and equitable distribution of a foreign debtor's assets. *See e.g., In re Suntech Power Holdings Co.,* 520 B.R. 399, 405-06, 419 (Bankr. S.D.N.Y. 2014) (citing to testimony that "China has different concepts of the rules of law and creditors' rights compared to those in the Cayman Islands and the United States; it is the last place that one would go."). The decisions cited in the Motion that address the principles of "comity" uniformly do so in the context of competing insolvency regimes, including in the context of recognition of a pending main foreign proceeding under chapter 15 of the Bankruptcy Code—a situation not present here. *See e.g., Northshore Mainland Servs,* 537 B.R. at 207 (Bankr. D. Del. 2015) (dismissing the chapter 11 cases of several Bahamian entities subject to

---

to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings.").

[18] *See* Motion ¶¶ 46-47. In this regard, SLC asserts as follows: "And the fact that Chinese law does not allow individuals to file for bankruptcy is no reason to disregard comity principles here. Comity is not limited to situations involving competing insolvency proceedings that afford the debtor relief identical to that available under the U.S. Bankruptcy Code." SLC's notions of "comity," however, go too far.

winding up proceedings in the Bahamas, but denying dismissal as to the Delaware incorporated debtor that was not the subject of the foreign bankruptcy proceeding); *In re Irish Bank Resolution Corp. Ltd.*, 2014 Bankr. LEXIS 1990, **40-41(Bankr. D. Del. April 30, 2014), *aff'd*, 538 B.R. 692 (D. Del. 2015) (granting recognition under chapter 15 of a pending Irish liquidation proceeding and finding no conflict with the Irish proceeding and the laws of the United States); *In re Maxwell Commun. Corp. PLC*, 93 F.3d 1036 (2d Cir. 1996) (case involved cooperative parallel bankruptcy proceedings in England and the United States; court found that the doctrine of international comity precluded application of the American avoidance law to transfers in which England's interest had primacy).

41. Further, the decisions cited by SLC cut against its argument for dismissal because, in contrast to this case, all of them involve a parallel insolvency proceeding. *See e.g.*, *Northshore Mainland*, 537 B.R. at 207-08 ("[t]he pendency of a foreign insolvency proceeding alters the balance by introducing considerations of comity into the mix."); *Arcapita Bank v. Bahrain Islamic Bank (In re Arcapita Bank)*,, 575 B.R. 229, 241 (Bankr. S.D.N.Y. 2017) (international comity decisions primarily emphasize the doctrine's bankruptcy significance in the context of parallel insolvency proceedings; questioning dismissal of an adversary action based on principals of comity where there is no parallel foreign proceeding, and hence no counterpart for obtaining relief under foreign law).

42. SLC's argument boils down to the following: Because the PRC does not provide insolvency protections for individuals, an individual debtor with U.S. assets is left without options vis-à-vis the restructuring of his U.S. assets simply by virtue of the existence of

foreign creditors. This is not, and cannot be, the case.[19] The Debtor is entitled to restructure his U.S. holdings under the Bankruptcy Code and provide for the payment of the claims of his creditors from such assets.

43. There is no evidence that the Debtor is in any way using the chapter 11 restructuring process to avoid his obligations to or to alter the priorities of the claims against him. Rather, the Debtor filed under chapter 11 of the Bankruptcy Code and proposed the Plan as a means of satisfying the claims of his creditors. The Debtor fully intends to comply with all applicable laws in seeking approval of the Plan.[20]

44. SLC's attempt to "cherry pick" language from the cases cited in the Motion to support dismissal of the Debtor's chapter 11 case is unavailing. These cases involve, at their essence, attempts by foreign debtors to escape liabilities or alter creditor priorities—i.e., to use the U.S. bankruptcy laws to avoid or alter obligations to creditors in their home country. This is, however, not the case here. The Debtor needs (and is entitled to) a forum in which to restructure and address the repayment of creditor claims *from his U.S assets*.

---

[19] *See, e.g.*, *Frictionless World, LLC*, No. 19-18459 (Bankr. D. Colo.); *Tatung Company of America, Inc.*, No. 19-21521 (Bankr. C.D. Cal.); *Forever 21, Inc.*, No. 19-12122 (Bankr. D. Del.); *GCX Limited*, No. 19-12031 (Bankr. D. Del.); *Mad Dogg Athletics, Inc.*, No. 19-18730 (Bankr. C.D. Cal.); *Hollander Sleep Products, LLC* , No. 19-11608 (Bankr. S.D.N.Y); *Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); *Gymboree Group, Inc.*, No. 19-30258 (Bankr. E.D. Va.); *Nine West Holdings Inc.*, 18-10947 (Bankr. S.D.N.Y); *Gymboree Corporation*, No. 17-32986 (Bankr. E.D. Va.): *Pacific Andes International Holdings (BVI) Limited, No. 17-11021* (Bankr. S.D.N.Y.); *EMAS Chiyoda Subsea Limited*, No. 17-31146 (Bankr. S.D. Tex.); *ValuePart, Incorporated*, No. 16-34169 (Bankr. N.D. Tex.); *Pacific Andes International Holdings Limited (Bermuda)*, No. 16-11890 (Bankr. S.D.N.Y.); *China Fishery Group Limited Cayman*, No. 16-11895 (Bankr S.D.N.Y.)(U.S. debtors with all or mostly foreign creditors on list of creditors holding largest general unsecured claims).

[20] Moreover, contrary to SLC's allegations, the Debtor will provide translations of the Plan and Disclosure Statement in Chinese. The Debtor will take all reasonable steps to provide information to his creditors in a manner designed to reduce confusion and will work with the Committee to implement appropriate processes and procedures in this regard.

45. For example, in *Yukos Oil*, the debtor had no assets in, connections to, or business in the United States prior to commencing its chapter 11 case. *See In re Yukos Oil Co.*, 321 B.R. 396, 411 (Bankr. S.D. Tex. 2005). In addition, an officer of the company fled to the United States to file for chapter 11 protection to prevent the Russian government from nationalizing and selling off certain of the debtor's substantial assets following litigation that the company had lost and was appealing. *Id.* at 402. In essence, the bankruptcy filing was a litigation tactic to avoid a government edict. As the *Yukos Oil* court found, Yukos was not seeking a financial restructuring. *Id*. at 411. Moreover, the court determined that the debtor commenced its chapter 11 case with the intent of avoiding obligations and altering creditor priorities (i.e., its obligations to the government), which is not the case here. Here, the Debtor owns assets and has property interests in the United States, thereby affording this Court in rem jurisdiction over such assets and interests. There is a significant difference between the situation described in *Yukos Oil* and this case. Here, the Debtor commenced his Chapter 11 Case to restructure his financial affairs and intends to satisfy his obligations to his creditors from his U.S. assets (and has already filed a Plan providing for the treatment of such claims).

46. Similarly, *In Spanish Cay Co.*, 161 B.R. 715, 726 (Bankr. S.D. Fla. 1993), the court determined that it could not prevent Bahamian citizens and governmental agencies from proceeding with their claims against the debtor's assets in the Bahamas. In making its determination, the court in *Spanish Cay* drew a distinction between its ability to exercise jurisdiction over U.S. assets, and the situation it faced—where the foreign debtor sought to restructure real property located in a foreign jurisdiction. *Id. Accord, Globo Comunicacoes*, 317

B.R. at 250, n.9 (bankruptcy courts have in rem jurisdiction over property of the estate wherever located and by whomever held, but recognizing that that a bankruptcy court may face issues with respect to jurisdiction and compliance with orders relative to non-U.S. assets). *See also In re Mak Petroleum, Inc.*, 424 B.R. 904, 905 (Bankr. M.D. Fla. 2010) (a bankruptcy proceeding will not provide jurisdiction over a foreign party that has no contacts with the United States; court dismissed action by chapter 7 trustee to recover a deposit made by the debtor to a Canadian church that had no contacts with the United States). These decisions do not address a circumstance where the debtor seeks bankruptcy protection to restructure his U.S. assets, as is the case here. Moreover, the Debtor is not asking this Court to exercise in rem jurisdiction over his assets located in the PRC which are subject to freeze orders from Chinese courts.

47. Other decisions cited by SLC in the Motion simply stand for the relatively noncontroversial proposition that a U.S. bankruptcy court will not relitigate the merits of a claim that has been resolved in a foreign proceeding. *See e.g., Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512 (2d Cir. 1975) (holding that a foreign arbitral award was a valid determination on its merits and the merits of the claim would not be reviewed by the bankruptcy court overseeing the U.S. bankruptcy proceeding; Japanese claimant, following confirmation of foreign arbitral award by judgment, was entitled to file a proof of claim against the debtor in the U.S. bankruptcy case). *See also Ackerman v. Levine*, 788 F.2d 830 (2d Cir. 1986) (partially recognizing foreign (German) default judgment); *Hilton v. Guyot*, 159 U.S. 113, 164 (1985) (addressing degree to which a foreign judgment is conclusive in a court of the United States). These decisions provide no basis whatsoever for this Court to decline to exercise jurisdiction over the Debtor's Chapter

11 Case based on notions of "deference" or "comity," especially where the PRC provides no bankruptcy alternative for an individual debtor.

48. Chapter 11 is a well-trodden path that has been used by countless debtors that have assets in the United States to reorganize their financial affairs. Indeed, chapter 11 presents the best available forum for the Debtor to restructure his financial affairs. SLC has failed to establish that considerations of comity provide any grounds for dismissal of the Chapter 11 Case.

**iv. SLC Has Failed to Establish That Dismissal of the Debtor's Bankruptcy Case Is in the Best Interests of the Debtor and All Creditors**

49. SLC also has failed to substantiate its contention that a dismissal of the Debtor's bankruptcy case is in the best interests of all creditors. Instead, if the Chapter 11 Case were dismissed, there would be no alternative available to the Debtor to restructure his U.S. assets and provide for the treatment of creditors' claims as contemplated by the Plan. Although this "free-for-all" alternative may well provide a benefit to SLC, because SLC would seek to enforce its lien, it would significantly impact the value of the Debtor's assets and would thus provide no guarantee that general unsecured creditors would be paid anything at all. *See* Transcript of Hearing at 15, *In re Scrub Island Dev. Grp. Ltd.*, Case No. 8:12-bk-15285 (MGW) (Bankr. M.D. Fla. Dec. 6, 2013) (refusing to dismiss chapter 11 cases in favor of foreign liquidation proceeding and finding that such proceeding "would be directly contrary to the interests of the [d]ebtor[s] and every creditor in th[e] case, other than [the debtors' major secured creditor]"). In light of the foregoing, it is obvious that SLC is only considering its own self-interests in complete disregard of the best interests of the other creditors of the Debtor's estate.

50. Further, dismissal would result in the disbandment of the Committee, thereby removing the one entity specifically tasked with safeguarding the interests of the Debtor's general unsecured creditors. As a result, individual general unsecured creditors would no longer have the benefit of the Committee's ability to investigate claims against and interests in the Debtor's property and assets and to negotiate with the Debtor with respect to the terms of the Plan on their behalf.

51. The Debtor and all his other creditors are clearly better off with this Court overseeing the restructuring of his U.S. assets. To this end, the Debtor seeks implementation of the Plan to provide for a fair and predictable mechanism for satisfying the claims of his creditors and maximizing the value of his assets. Based on SLC's inability to demonstrate that dismissal of the Debtor's Chapter 11 Case is in the best interests of the Debtor and all of the Debtor's creditors, SLC fails to satisfy the requirements of sections 1112(b) and 305(a)(1) of the Bankruptcy Code.

**D. <u>The Debtor's Choice of Forum in Delaware Is Entitled to Substantial Weight and Should Not Be Disturbed</u>**

52. SLC's final argument is that, if the Chapter 11 Case is not dismissed, this Court should transfer venue of the case to a bankruptcy court in California.

53. Given that venue in this Court is legally proper, the Debtor's choice of this forum is entitled to great weight. *See e.g., In re Restaurants Acquisition I, LLC,* 2016 Bankr. LEXIS 684, at *7 (Bankr. D. Del. Mar. 4, 2016) ("movant bears the burden of demonstrating that the factors strongly weigh in favor of a transfer as courts will generally grant substantial deference to a debtor's choice of forum"); *In re Ocean Properties of Delaware, Inc.*, 95 B.R.

304, 305 (Bankr. D. Del. 1988) (same). Therefore, a court considering a venue-transfer motion "should exercise its power to transfer cautiously, and the party moving for the transfer must show by a preponderance of the evidence that the case should be transferred." *CORCO*, 596 F.2d at 1241 (citations omitted); *accord*, *In re Fairfield Puerto Rico, Inc.*, 333 F. Supp. 1187, 1989 (D. Del. 1971) ("This Court should not freely abandon to any other district its duty to determine a matter clearly within its jurisdiction."); *In re Rehoboth Hospitality, LP*, 2011 2011 Bankr LEXIS 3992, at *10 (Bankr. D. Del. 2011) ("The burden of proof is on the moving party requesting transfer."). "A party seeking to have a case transferred pursuant to 1412, must 'overcome the presumption that the debtor is entitled to file and maintain his case in the venue in which he filed it.'" *Acor*, 510 B.R. at 592 (quoting In re Ginco, Inc., 70 B.R. 2, 4 (Bankr. D.N.M. 1986).

54. Given the strong presumption that a debtor's choice of forum should not be disturbed, courts rarely grant such relief.

**i. Convenience of the Parties Weighs in Favor of Retaining Venue in Delaware**

55. When a bankruptcy court is asked to transfer an entire bankruptcy case to another bankruptcy court, it must examine whether the transfer would be (a) in the interest of justice, or (b) the convenience of the parties. 28 U.S.C. § 1412. In considering the "convenience of the parties," courts have identified six factors, among others, to help guide their discretion. These six factors are:

a. the economic administration of the estate;

b. the location of the assets;

c. the proximity of creditors of every kind to the court;

d. the proximity of the debtor to the court;

e. the proximity of the witnesses necessary to the administration of the estate; and

f. the necessity for ancillary administration if liquidation should result.

*See*, *e.g.*, *CORCO*, 596 F.2d at 1247; *Restaurants Acquisition*, 2016 Bankr. LEXIS 684, at *7 (applying *CORCO* factors); *Innovative*, 358 B.R. at 125 (citing *CORCO* factors and other private and public interests that may be relevant). SLC has failed to meet its "heavy burden of proof . . . to demonstrate that the balance of convenience weighs in [its] favor." *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982).

56. Importantly, "if transfer of venue would merely shift the inconvenience from one party to another, the debtor's chose of forum should not be disturbed." *See Suntech Power*, 520 B.R. at 420. Consequently, SLC's request to transfer venue of the Debtor's bankruptcy case should be denied.

***a) The Economic Administration of the Estate and the Proximity of Creditors***

57. The economic and efficient administration of the estate is the most important factor when considering a motion to transfer venue. *CORCO*, 596 F.2d at 1247; *In re Caesars Ent. Op. Co.*, 2015 Bankr. LEXIS 314, at *22 (Bankr. D. Del. Feb. 2, 2015); *In re Industrial Pollution Control, Inc.*, 137 B.R. 176, 182 (Bankr. W.D. Pa. 1992). Despite the

importance of this factor, SLC makes little effort to explain why the economic administration of the estate would be improved if this case were transferred, other than to argue that the key players are either located in California or China and that the estate should not bear the cost of the Debtor and his professionals traveling to Delaware.

58. In support, SLC points to the location of the Debtor's creditors and the professionals, and the relative amount of time that it takes to travel to this Court as compared to California. This analysis is misguided and irrelevant. The Debtor does not have thousands of small or unsophisticated creditors that cannot navigate their way to Delaware. The amounts at stake total billions of dollars. The creditors and professionals involved in this case will travel wherever necessary in order to advocate their respective positions, and Delaware is certainly just as convenient as California: The robust participation of creditors at the Committee formation meeting in Delaware is a testament to the ability of the creditor body to be actively involved in the Chapter 11 Case in its present venue. *See Caesars*, 2015 Bankr. LEXIS 314, at *23 ("in this day of law firms with multiple offices across the nation, convenient and accessible airports, electronic access to information and court dockets at every lawyer's fingertips, it is fair to say that both this [Delaware Bankruptcy] Court and the Illinois Court are convenient forums for purposes of the *CORCO* analysis.").

59. In a case of this size and complexity, involving sophisticated and well-represented creditors, there is no reason to transfer venue to a bankruptcy court in California on the basis of the either economic administration of the estate or proximity of creditors.

***b) Location of the Assets***

60. The Debtor's principal assets in the United States consist of his interests in two Delaware LLCs. Accordingly, this factor weighs in favor of the Debtor's selection of Delaware as appropriate venue for his Chapter 11 Case.

***c) Proximity of the Debtor and Witnesses Necessary to the Administration of the Estate***

61. As discussed in *CORCO*, the Court's consideration of the location of the Debtor should focus on the proximity to the Court chosen by the Debtor and his representatives who must appear in court. *CORCO*, 596 F.2d at 1248; *see also Restaurants Acquisition*, 2016 Bankr. LEXIS 684, at *11 ("Courts have noted the inquiry should focus primarily on the location of parties that must appear in court.").

62. Because the Debtor has selected Delaware as the appropriate forum for his Chapter 11 Case and he is willing and able to appear in this Court as and when necessary, this factor does not weigh in favor of a venue transfer to a California bankruptcy court. Indeed, virtually all other parties who may appear in this Court in connection with the Chapter 11 Case are located in China, not California. The Debtor's choice of Delaware should stand.

***d) Necessity for Ancillary Administration If Liquidation Should Result***

63. The final factor relates to the necessity for ancillary administration if liquidation should result. As the courts in *CORCO, Enron* and *Fairfield Puerto Rico* recognized, "anticipation of the failure of the [Chapter 11] proceeding is an illogical basis upon which to predicate a transfer." *CORCO*, 596 F.2d at 1248; *In re Enron Corp*, 274 B.R. 327, 349 (Bankr.

S.D.N.Y. 2002); *Fairfield Puerto Rico*, 333 F. Supp. at 1191. Indeed, "[t]his factor is often discounted by courts." *Enron*, 274 B.R. at 343, n.11. The Debtor's focus in this case is to move expeditiously to confirm the Plan that will maximize value for all constituents, and SLC offers no factual basis for this Court to contemplate the failure of the Debtor's Chapter 11 Case. *See Fairfield Puerto Rico*, 333 F. Supp. at 1191. SLC offers no reasons why ancillary administration of the case would be more favorable in California when the Debtor's principal assets are Delaware LLCs and governed by Delaware law. Accordingly, this factor does not favor transfer of venue.

**ii. Interest of Justice Is Not Served by Transferring Venue**

64. In determining whether a transfer would be "in the interest of justice," the Court should consider "whether transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *Enron*, 274 B.R. at 387. These factors have generally been discussed above and support keeping this case in Delaware. Additional concerns that would speak to the "interest of justice" include the importance of a debtor to the welfare and economic stability of a jurisdiction; they are not relevant here. *See CORCO*, 596 F.2d at 1248 (even though the importance of the debtor, a major supplier of petroleum to Puerto Rico, to the welfare and economic stability of Puerto Rico implicated "interest of justice" considerations, the court determined not to transfer venue to Puerto Rico).

65. As noted above, venue is legally proper in this Court and the Debtor is entitled to substantial deference as to his choice of forum. But even if the Court considered the

interests of justice and the convenience of the parties, there is no legitimate basis to transfer this case to California.

66. For all these reasons, the Debtor urges this Court to maintain venue of this Chapter 11 Case in Delaware.

**Conclusion**

WHEREFORE, the Debtor respectfully requests that the Court enter its order (a) denying the Motion; and (b) granting the Debtor such other and further relief as is just and proper.

Dated: December 5, 2019
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Richard M. Pachulski (CA Bar No. 90073)
Jeffrey W. Dulberg (CA Bar No. 181200)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (DE Bar No. 4042)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-4100
Fax: (302) 652-4400
Email: rpachulski@pszjlaw.com
jdulberg@pszjlaw.com
mpagay@pszjlaw.com
joneill@pszjlaw.com

Proposed Attorneys for Debtor and Debtor in Possession