# EXHIBIT 1

THIS SECURED PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. IT MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION OR AN EXEMPTION THEREFROM UNDER SAID ACT.

AMENDED AND RESTATED SECURED PROMISSORY NOTE

$2,687,628.99

October 18, 2019

FOR VALUE RECEIVED, the undersigned, Yueting Jia, an individual and resident of California ("**Issuer**"), HEREBY PROMISES TO PAY to the order of Pacific Technology Holding LLC, a Delaware limited liability company ("**Holder**"), the principal amount of $2,687,628.99 together with interest accrued on the unpaid principal amount of this secured promissory note (this "**Note**"), payable as provided herein.

## ARTICLE I
## TERMS OF PAYMENT

SECTION 1.01. Payments. Payment of the principal amount of this Note or, if less, the aggregate unpaid principal amount of this Note together with interest accrued on the unpaid principal amount shall be made on October 11th 2020(the "**Maturity Date**"). The principal and interest on this Note is payable in lawful money of the United States in immediately available funds at such place as Holder hereof may from time to time designate in writing to Issuer. Whenever any payment hereunder shall be stated to be due on a day other than a business day, such payment shall be made on the next succeeding business day, and such extension of time shall in such case be included in the computation of payment of interest.

SECTION 1.02. Prepayments. Issuer may, on any business day, prepay the then outstanding principal amount of this Note in whole or in part, together with accrued interest to the date of such prepayment on the principal amount prepaid without premium or penalty.

SECTION 1.03. Interest. Interest shall accrue on the outstanding principal amount of this Note at a rate per annum equal to 8.00%. Interest shall be payable in arrears as set forth in Section 1.01 above. Accrued interest shall be compounded annually.

SECTION 1.04. Computations. All computations of interest shall be made on the basis of a year of 365 or 366 days, as the case may be, for the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest is payable.

## ARTICLE II
## EVENTS OF DEFAULT

SECTION 2.01. Events of Default. The following shall constitute "**Events of Default**" under this Note:

1

(a) Issuer fails to pay timely any principal or interest under this Note on the date the same becomes due and payable, and such failure is not cured within ten (10) business days;

(b) Issuer, pursuant to or within the meaning of Title 11 of the United States Code, or any similar federal, state or foreign law for the relief of debtors or any arrangement, reorganization, assignment for the benefit of creditors or any other marshalling of the assets and liabilities of Issuer ("**Bankruptcy Law**"):

(i) commences a voluntary case or proceeding;

(ii) consents to the entry of an order for relief against him in an involuntary case or proceeding;

(iii) consents to the appointment of a receiver, trustee, assignee, liquidator, custodian or similar official under any Bankruptcy Law ("**Custodian**") of him or for all or any substantial portion of his property or assets;

(iv) makes a general assignment for the benefit of his creditors; or

(c) an involuntary case or proceeding is commenced against Issuer under any Bankruptcy Law and is not dismissed, bonded or discharged within sixty (60) days thereafter, or a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(i) is for relief against Issuer in an involuntary case or proceeding; or

(ii) appoints a Custodian of Issuer or for all or substantially all of his properties;

and in each case under this Section 2.01(c) the order or decree remains unstayed and in effect for sixty (60) days.

SECTION 2.02. Effect of Event of Default.

(a) If an Event of Default occurs the principal balance of and accrued interest on this Note shall become due and payable immediately without any declaration or other act on the part of Holder and interest shall thereafter accrue at a rate per annum equal to [     ] percent ([     ]%), compounded annually, or the maximum rate allowed by Law, whichever is less.

(b) If any Event of Default shall have occurred and be continuing, Holder may proceed to protect and enforce its rights either by suit in equity or by action at law, or both, whether for specific performance of any provision of this Note or in aid of the exercise of any power granted to Holder under this Note. In the event it becomes necessary for Holder to employ legal counsel or to take any other action to collect any sums due under this Note, to enforce any provisions of this Note, or to protect any of Holder's rights under this Note, Issuer agrees to pay to Holder, to the extent permitted by law, all costs (including reasonable attorneys' fees) of any such legal proceedings or actions, all of which shall be and become a part of the amount due under this Note.

ARTICLE III
SECURITY GRANT

(a) Issuer hereby grants, pledges, assigns, transfers, hypothecates and sets over to Holder a valid, continuing first priority security interest in all of Issuer's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Issuer, would accrue on such obligations, whether or not a claim is allowed against Issuer for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations under the Note are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any party of such payment is avoided or recovered directly or indirectly from Holder as a preference, fraudulent transfer or otherwise. "Collateral" shall include all of Issuer's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "**Collateral**"):

(i) all Accounts;

(ii) all Chattel Paper;

(iii) all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv) all Documents;

(v) all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software;

(vi) all Goods, including Inventory, Equipment and Fixtures;

(vii) all Instruments;

(viii) all Investment Property;

(ix) all Letter-of-Credit Rights and other Supporting Obligations;

(x) all Records;

(xi) all Commercial Tort Claims; and

(xii) all Proceeds and Accessions with respect to any of the foregoing Collateral.

3

provided, that Collateral (and each defined term used in the definition of Collateral) shall not include any Excluded Property (as defined below) for so long as such property constitutes Excluded Property: and *provided, further*, that if and when any of the exclusions in the definition of Excluded Property cease to apply to such property, such property will automatically cease to be Excluded Property and will be deemed at all times from and after such date to constitute Collateral. "**Excluded Property**" means (i) any General Intangibles or other assets of Issuer (whether owned or held as licensee or lessee, or otherwise), to the extent that (A) such General Intangibles or other assets are not assignable or capable of being encumbered as a matter of law or under the terms of the license, lease or other agreement applicable thereto (but solely to the extent that any such restriction shall be enforceable under applicable law), without the consent of the licensor or lessor thereof or other applicable party thereto and (B) such consent has not been obtained; *provided, however*, that the foregoing exclusion shall not be construed to include, (1) any General Intangible or other asset which is an Account Receivable or a proceed of, or otherwise related to the enforcement or collection of, any Account Receivable, or Goods that are the subject of any Account Receivable; (2) any and all proceeds of any General Intangibles or other assets that are otherwise excluded to the extent that the assignment or encumbrance of such proceeds is not so restricted; and (3) immediately upon the ineffectiveness, lapse or termination of any such restriction or upon obtaining the consent of any such licensor, lessor or other applicable party's consent with respect to any such otherwise excluded General Intangibles or assets, such General Intangibles and other assets as well as any and all proceeds thereof that might have theretofore have been deemed Excluded Property; and (ii) any intent-to-use trademark applications for which an amendment to allege use or statement of use has not been filed under 15 U.S.C. § 1051(c) or 15 U.S.C. § 1051(d), respectively, or if filed, has not been deemed in conformance with 15 U.S.C. § 1051(a) or examined and accepted, respectively, by the United States Patent and Trademark Office; provided, however, that upon the filing and acceptance of any intent-to-use trademark application, such intent-to-use application shall immediately become and be included as "Collateral". Each category of Collateral set forth above shall have the meaning set forth in Division 9 of the California Uniform Commercial Code in effect on the date hereof (the "**UCC**"). **This security grant is subject in all respects to the Minute Order entered September 3, 2019 in Case No: 2:18-CV-10255 SJO (MRWx) in the United States District Court for the Central District of California.**

(b) Issuer agrees that from time to time, at the expense of Issuer, Issuer will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Holder may request, in order to perfect any security interest granted or purported to be granted hereby or to enable Holder to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, Issuer will: (i) execute (if necessary) and file such financing or continuation statements, or amendments thereto, (ii) execute and deliver, and cause to be executed and delivered, agreements establishing that Holder has control of Deposit Accounts and Investment Property of Issuer, and (iii) execute and deliver such further instruments and take such further action as Holder may reasonably request to effect the intent and purposes hereof, to perfect and continue perfected Holder's security interests in the Collateral. Issuer hereby authorizes Holder to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral (including any financing statement indicating that it covers "all assets" or "all personal property" of Issuer).

(c) Issuer shall:

    (i) permit Holder, upon reasonable prior notice to inspect Issuer's books and records, including computer files, and to make copies, and to test, inspect, and appraise the Collateral, in order to verify any matter relating to either Issuer or the Collateral.

    (ii) except as otherwise provided in this section, continue to collect, at his own expense, all amounts due or to become due to it under the Accounts. In connection with such collections, Issuer may take (and, upon the occurrence and during the continuance of an Event of Default at Holder's direction, shall take) such action as Issuer may deem necessary or advisable to enforce collection of amounts due or to become due under the Accounts; *provided*, however, that Holder shall have the right at any time, upon the occurrence and during the continuation of an Event of Default, upon written notice to Issuer of his intention to do so, to (a) notify the account debtors or obligors under any Accounts of the assignment of such Accounts to Holder and to direct such account debtors or obligors to make payment of all amounts due or to become due to Issuer thereunder directly to Holder, (b) notify each person maintaining a lockbox or similar arrangement to which account debtors or obligors under any Accounts have been directed to make payment to remit all amounts representing collections on checks and other payment items from time to time sent to or deposited in such lockbox or other arrangement directly to Holder, (c) enforce collection of any such Accounts at the expense of Issuer, and (d) adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Issuer might have done. After receipt by Issuer of the notice from Holder referred to in the proviso to the preceding sentence, (1) all amounts and proceeds (including checks and other Instruments) received by Issuer in respect of the Accounts shall be received in trust for the benefit of Holder hereunder, shall be segregated from other funds of Issuer and shall be forthwith paid over or delivered to Holder in the same form as so received (with any necessary endorsement), and (2) Issuer shall not, without the written consent of Holder, adjust, settle or compromise the amount or payment of any Account, or release wholly or partly any account debtor or obligor thereof, or allow any credit or discount thereon.

    (d) Issuer hereby irrevocably appoints Holder as Issuer's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Issuer and in the name of Issuer, Holder or otherwise, from time to time in Holder's discretion, to take any action and to execute any instrument that Holder may deem necessary or advisable to accomplish the purposes of this Note, including, without limitation:

    (i) to obtain and adjust insurance required to be maintained by Issuer;

    (ii) to ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

    (iii) to receive, endorse and collect any drafts or other Instruments, Documents, Chattel Paper and other documents in connection with clauses (i) and (ii) above;

    (iv) to file any claims or take any action or institute any proceedings that Holder may deem necessary for the collection of any of the Collateral or otherwise to enforce or protect the rights of Holder with respect to any of the Collateral;

        (v)    to pay or discharge liens levied or placed upon the Collateral, the legality or validity thereof and the amounts necessary to discharge the same to be determined by Holder in its reasonable discretion, any such payments made by Holder to become obligations of Issuer to Holder, due and payable immediately without demand;

        (vi)    to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications and notices in connection with Accounts and other documents relating to the Collateral; and

        (vii)    sell the Collateral at one or more public or private sales.

        (e)    The powers conferred on Holder hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the exercise of reasonable care in the custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, Holder shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral. Holder shall be deemed to have exercised reasonable care in the custody and preservation of Collateral in its possession if such Collateral is accorded treatment substantially equal to that which Holder accords its own property.

        (f)    In addition to all other rights and remedies provided for herein or otherwise available to it, Holder may exercise in respect of the Collateral, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral), and also may (i) require Issuer to, and Issuer hereby agrees that he will at his expense and upon request of Holder forthwith, assemble all or part of the Collateral as directed by Holder and make it available to Holder at a place to be designated by Holder that is reasonably convenient to both parties, (ii) subject to the rights of third parties, enter onto the property where any Collateral is located and take possession thereof with or without judicial process, (iii) prior to the disposition of the Collateral, store, process, repair or recondition the Collateral or otherwise prepare the Collateral for disposition in any manner to the extent Holder deems appropriate, (iv) subject to the rights of third parties, take possession of Issuer's premises or place custodians in exclusive control thereof, remain on such premises and use the same and any of Issuer's equipment for the purpose of completing any work in process, taking any actions described in the preceding clause (iii) and collecting any Obligation, (v) sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Holder's offices or elsewhere, for cash, on credit or for future delivery, at such time or times and at such price or prices and upon such other terms as Holder may deem commercially reasonable, (vi) exercise dominion and control over and refuse to permit further withdrawals from any Deposit Account maintained with Holder and provide instructions directing the disposition of funds in Deposit Accounts not maintained with Holder, and (vii) provide entitlement orders with respect to security entitlements and other Investment Property constituting a part of the Collateral and, without notice to Issuer, transfer to or register in the name of Holder or any of its nominees any or all of the Collateral constituting Investment Property. Holder may be the purchaser of any or all of the Collateral at any such sale and Holder, shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such public sale, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by Holder at such sale. Issuer hereby waives any claims against Holder arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at

6

a public sale, even if Holder accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Issuer shall be liable for the deficiency and the reasonable fees of any attorneys employed by Holder to collect such deficiency.

(d) Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Holder granted hereby shall automatically terminate without any further action on the part of Issuer or Holder, (ii) Issuer and its designees shall be authorized to file such terminations of such security interest as Issuer reasonably deems necessary, and Holder shall execute and deliver, at Issuer's expense, such further evidence of the termination or release of such security interest as Issuer may reasonably request.

## ARTICLE IV
## MISCELLANEOUS

SECTION 4.01. <u>Amendments and Waiver</u>. Any provision of this Note may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Issuer and Holder, or in the case of a waiver, by Holder. No failure or delay by Holder in exercising any right, power or privilege hereunder shall operate as a waiver nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

SECTION 4.02. <u>Remedies</u>. No remedy made available by any of the provisions of this Note is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Issuer hereby waives presentment for payment, demand, notice of dishonor, protest and notice of protest of this Note.

SECTION 4.03. <u>Assignment</u>. This Note shall be binding upon, inure to the benefit of and be enforceable by any successor in interest to Holder; *provided* that Holder shall not directly or indirectly assign any of its rights or obligations under this Note (including by way of security interest) without the prior written consent of Issuer. Any assignment or transfer in contradiction of this Section 4.03 shall be null and void.

SECTION 4.04. <u>Severability</u>. In case any particular provision of this Note shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of this Note or affecting the validity or enforceability of such provision in any other jurisdiction. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 4.05. <u>Governing Law</u>. This Note shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to any conflicts of laws principles thereof that would otherwise require the application of the law of any other jurisdiction.

SECTION 4.06. <u>Time of the Essence</u>. Time is of the essence with regard to this Note.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, Issuer has caused this Note to be duly executed and delivered thereunto duly authorized as of the date first above written.

ISSUER:

_____
YUETING JIA

Acknowledged and Agreed:

**HOLDER:**

**PACIFIC TECHNOLOGY HOLDING LLC**

By:_____
Name: Jin Jin
Title: President

*Signature Page to Secured Promissory Note*