## IN THE  UNITED STATES BANKRUPTCY  COURT
## FOR  THE  DISTRICT  OF  DELAWARE

| | |
|---|---|
| In re:<br><br>YUETING JIA,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-12220 (KBO)<br><br>Re: Docket Nos. 94, 109 |

**CHONGQING STRATEGIC EMERGING INDUSTRY LEECO CLOUD SPECIAL EQUITY INVESTMENT FUND PARTNERSHIP'S OBJECTION TO DEBTOR'S MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) APPROVING VOTING AND TABLUATION PROCEDURES, (III) SETTING CONFIRMATION HEARING AND RELATED DEADLINES AND (IV) GRANTING RELATED RELIEF**

Chongqing Strategic Emerging Industry LeEco Cloud Special Equity Investment Fund Partnership ("Chongqing"), by and through the undersigned counsel, hereby submits this objection (the "Objection") to the *Debtor's Motion for an Order (I) Approving Disclosure Statement, (II) Approving Voting and Tabulation Procedures, (III) Setting Confirmation Hearing and Related Deadlines, and (IV) Granting Related Relief,* [Docket No. 109] (the "Disclosure Statement Motion") filed by the above-captioned debtor, Yueting Jia ("YT") in the above-captioned chapter 11 bankruptcy case.  In support of this Objection, Chongqing states as follows:

## BACKGROUND

### A.  Chongqing's Relationship with YT

1.      Chongqing is creditor of YT in the approximate amount of USD$150 million. Chongqing's claim arises out of that certain guaranty by YT pursuant to a Shares Purchase and Guaranty Agreement (the "Guaranty Agreement") between YT and Chongqing.  Pursuant to the Guaranty Agreement, YT guaranteed the obligation of LeTV Holdings (Beijing) Co., Ltd. ("LeTV") to purchase the shares of LeCloud Computing Co., Ltd. ("LeCloud") held by Chongqing and other obligations owed to Chongqing by LeTV pursuant to the Guaranty

Agreement.  On April 26, 2018, Chongqing sent a letter to LeTV copying YT to claim its rights and demand that LeTV fulfil its obligations under the Guaranty Agreement that have become due, including but not limited to making payments to Chongqing by May 25, 2018 to purchase its equity interests in LeCloud.  However, LeTV and YT defaulted on their obligations under the Guaranty Agreement.  To date, Chongqing has not received any payment it is entitled to under the Guaranty Agreement from either LeTV or YT.

2.      On March 29, 2019, the China International Economic and Trade Arbitration Commission ("CIETAC") issued an award requiring YT to undertake joint and several liabilities for an approximately USD$150 million award in favor of Chongqing against LeTV, and to pay Chongqing's attorney fees and 90 percent of the arbitration fees along with LeTV.

3.      To effectively seek recoveries from LeTV and YT, Chongqing submitted an application to the Third Intermediate People's Court in Beijing in the People's Republic of China ("Beijing Court") on June 14, 2019 to enforce its claims against LeTV and YT affirmed by CIETAC in its arbitral award.  As of the date of this Objection, the enforcement proceeding is still pending in front of the Beijing Court.

**B.  YT's Bankrutpcy Case**

4.      On October 14, 2019, YT commenced the above-captioned case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On the same date, YT filed the Confidential Offering Memorandum, Disclosure Statement and Consent Solicitation Statement [Docket No. 5] ("Offering Memorandum and Disclosure Statement") and the Debtor's Prepackaged Plan of Reorganization [Docket No. 4] (the "Plan").

5.        On October 20, 2019, YT field a motion [Docket No.38] (the "Combined Hearing Motion") that sought approval of a rapid confirmation timeline, which called for votes on the Plan to be due November 8, 2019 and a combined hearing on the adequacy of the Offering Memorandum and Disclosure Statement and confirmation of the Plan on December 16, 2019.

6.        On October 25, 2019, the Office of the United States Trustee appointed a Committee of Unsecured Creditors (the "Committee").  Chonqing did not attend the formation meeting and is not a member of the Committee.

7.        On November 7, 2019, YT filed a notice [Docket No. 73] ("Termination Notice") terminating the November 8 voting deadline and representing that YT determined it is in the best interest of creditors "to pursue a more traditional process for confirmation of the Plan." Termination Notice ¶ 15.

8.        On November 8, 2019, YT filed a notice of withdrawal [Docket No. 77] regarding the Combined Hearing Motion.

9.        Pursuant to an order [Docket No. 87] entered on November 13, 2019, the general bar date for filing proofs of claim in the Bankruptcy Case is January 24, 2020, at 5:00 p.m. EST.

10.       On November 15, 2019, YT filed the Amended Disclosure Statement (the "Disclosure Statement")[1] with Respect to Debtor's Plan of Reorganization under Chapter 11 of the Bankruptcy Code [Docket No. 94].

11.       On November 25, 2019, YT hosted a meeting for certain creditors in Gardena, California.  Counsel attended the meeting as a representative of Chongqing.

12.       On November 27, 2019, YT filed a motion [Docket No. 104] (the "CRO Motion") seeking approval to retain a chief restructuring officer ("CRO") and a motion [Docket No. 105]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Disclosure Statement.

(the "Foreign Representative Motion") to appoint the CRO as YT's foreign representative in the British Virgin Islands and the Cayman Islands. The motions contemplate that the CRO would assist in freeing up assets currently "subject to certain limitations and prohibitions . . . including freezing injunctions" in the BVI against entities within Smart King's ownership structure. The motions also contemplate that the CRO will assist in formulating a liquidation analysis, among other things.

13.     On December 6, 2019, the Office of the United States Trustee held a meeting of creditors pursuant to Section 341 of the Bankruptcy Code. Counsel attended the meeting on behalf of Chongqing.

**C. The Plan**

14.     YT proposes that, to satisfy Debt Claims, YT place into a liquidating trust (the "Trust") his economic rights with respect to 40.8% of the equity in Smart King Limited ("Smart King") currently owned by FF Top Holding Ltd. Such interest consists of

    a.   147,048,823 Class B shares of Smart King (which represents 10% of Smart King's equity interest); and

    b.   preferred units in Pacific Technology Holding LLC, which entitle (i) a preferred distribution right of up to $815.7 million (after return of capital to management) in connection with 30.8% of Smart King's equity interest, (ii) a special distribution of 10% of the remaining amounts from Pacific Technology's 30.8% of Smart King's equity interest, and (iii) thereafter a distribution based on YT's 20% percentage interest of the units of Pacific Technology.

Disclosure Statement § I.A.[2]

15.     The Plan includes broad releases of by holders of Debt Claims against YT, his

wife, Wei Gan, and other third parties:

> from personal liability in every jurisdiction from any and all Claims
> . . . including any derivative Claims asserted or assertable on behalf
> of the Debtor . . . *provided, however*, that the Releasing Parties shall
> continue to dispose of the following assets through judicial
> authorities in the People's Republic of China to satisfy such
> Releasing Party's Claim through a mechanism that will be mutually
> agreed to by the parties: (x) assets that have already been
> collateralized by the Debtor or any other Person or Entity; (y) assets
> that have already been pledged by the Debtor or any other Person or
> Entity; and (z) assets or interests that the Debtor, his wife Wei Gan,
> or any other Person or Entity own that have been seized, attached,
> or frozen by Chinese judiciary authorities.

Plan § 11.4.

## D.  The Disclosure Statement

16.     The Disclosure Statement provides information regarding the Plan and the

proposed Trust, YT's background and liabilities, YT's interest in FF, assets of YT that are frozen

in the PRC, and certain related transactions between entities affiliated with YT, among other

things.  However, as discussed below, the Disclosure Statement lacks certain information

necessary for Chongqing and other creditors to properly evaluate whether to accept or reject the

Plan.  For example, information regarding the various interests and debts of the holding

companies through which FF Global and West Coast own FF is critical to understanding the

feasibility of the Plan and potential recoveries.  Likewise , information regarding freezing

injunctions and other restrictions on assets located in the British Virgin Islands or Cayman

Islands, whether the proposed Trust assets may be conveyed to the Trust, and explanations

---

[2] The Plan describes the proposed Trust assets differently, omitting the Pacific Technology-related interests.  Plan § 6.2.

regarding why YT is releasing and retaining various causes of action and their value, are all

critical to understanding the proposed Plan.

## OBJECTIONS

17.     Section 1125(b) of the Bankruptcy Code requires debtors to solicit acceptance or

rejection of a plan only through a disclosure statement that has been approved by the court as

containing "adequate information." 11 U.S.C. § 1125(b).  Section 1125(a)(1) defines "adequate

information" as

> information of a kind, and in sufficient detail, as far as is reasonably
> practicable in light of the nature and history of the debtor and the
> condition of the debtor's books and records . . . that would enable
> such a hypothetical investor of the relevant class to make an
> informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

18.     The fundamental purpose of a disclosure statement "is to give the creditors the

information they need to decide whether to accept the plan."  *In re Monnier Bros.*, 755 F.2d

1336, 1342 (8th Cir. 1985); *see Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors

Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (noting that a debtor "has an affirmative duty to provide

creditors with a disclosure statement containing "adequate information" to "enable a creditor to

make 'an informed judgment' about the Plan"); *Oneida Motor Freight, Inc. v. United Jersey

Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (acknowledging that "[t]he importance of full disclosure

is underlaid by the reliance placed upon the disclosure statement by the creditors and the court"

and that, based upon such reliance, "we cannot overemphasize the debtor's obligation to provide

sufficient data to satisfy the Code standard of 'adequate information'"); *Gen. Elec. Cred. Corp.

v. Nardulli & Sons, Inc.*, 836 F.2d 184, 188 (3d Cir. 1988) (noting that § 1125(a)(1) "requires a

debtor . . . to submit a written disclosure statement containing adequate information to allow a reasonable holder to make an informed judgment about the plan").

19.    The Disclosure Statement does not contain adequate information for Chonqing to evaluate its potential recovery under the Plan and how to vote on the Plan.   Namely, the Disclosure Statement lacks information necessary for Chongqing to understand the feasibility of the Plan, the value of the Trust Assets, the value of various claims the Plan proposes to release and the claims YT will retain, and why YT believes the proposed releases benefit creditors.  The major deficiencies in the Disclosure Statement are discussed below.

### The Nature and Enforceability of YT's right to Transfer his Interest in West Coast to the Trust.

20.    The Disclosure Statement provides that YT has the right to direct FF Top to transfer shares of Smart King currently owned by FF Top to the Trust.  Disclosure Statement §§ I.A & II.C.2.d.  The Disclosure Statement contains no information regarding the agreement or other mechanism pursuant to which YT is entitled to direct that transfer and whether such transfer is enforceable.  For example, it is impossible to know whether FF Global Partners or any other party will consent to or has a legal basis to attempt to block any such transfer.  Further, the Foreign Representative Motion suggests that there exist several undisclosed legal hurdles relating to FF Top and FF Peak and the transfer of the Trust Assets – if there are no legal hurdles, then there should be no need to retain such professionals.  The operative documents must be disclosed in addition to a legal opinion that the Trust Assets may legally be transferred to the Trust under the applicable foreign laws.

### YT's Status as a Creditor of Smart King and Its Affiliates.

21.    The Disclosure Statement informs that YT is a creditor of Smart King, with Smart King having received $900 million in funding "from YT and other sources."  *Id.* § II.C.3.  The

Disclosure Statement should state all amounts owed to YT by Smart King, as well as all debts between YT and Smart King's affiliates. Smart King's debt structure is critically important to understand the value of its equity.

### YT's Relationships with Insiders Identified in the Disclosure Statement.

22. Section II.D.E of the Disclosure Statement addresses "Certain Relationships, Related Transactions, and Former Affiliates." However, neither this section, nor any other in the Disclosure Statement, discloses that Jiawei Wang, the managing partner of FF Global, who "has veto rights over FF Global's corporate actions," is YT's nephew. YT's relationships with other individuals and entities party to significant transactions are also undisclosed. These include: (a) Shaojie Chu, the purchaser of Success Pyramid; (b) the Funding Source who will contribute/lend funds to be used for administration of the Trust; (c) Evergrande, to whom Smart King is indebted $10 million pursuant to a loan in default, and which owns 32% of Smart King and agreed as part of a set of 2018 transactions for YT to have a call option with respect to the 470,588,235 fully paid redeemable preference shares of Smart King or all outstanding Smart King equity held by Season Smart (the "Call Option"); (d) BL Mobility Fundco, LLC, an entity that loaned FF $15.0 million in April 2019; and (e) the Trustee of the Trust proposed by the Plan.

### YT's Call Option.

23. Section II.C.a describes YT's Call Option with respect to shares of Smart King held by Season Smart. The Call Option expires on December 31, 2023 and can be exercised in whole or in part. The price payable for the Option Shares ranges from $600,000,000 if exercised by the end of 2019, to $1,050,000,000 if exercised in the last period. *Id.* The Disclosure Statement does not explain if the Call Option will be extinguished or why it will not be contributed to the Trust. The Disclosure Statement also lacks information regarding the

projected impact of exercising the Call Option on the financial condition of Smart King, FF, and

other affiliates, as well as whether YT or others hold other call options with respect to shares of

Smart King and its affiliates.

**Information Regarding Smart King and FF Affiliates.**

24.     Section II.C of the Disclosure Statement includes information regarding FF's

corporate structure, ownership, governance, operations and indebtedness.  An organizational

chart for "Smart King and certain of its key affiliates" is provided in Section II.C.2.e.  Notably

that organizational chart reflects Smart King's structure "as of the date of this Disclosure

Statement, and before giving effect to any awards under the 2020 Equity Incentive Plan or any

other equity incentives or conversion of securities."  Disclosure Statement § II.C.2.e.

25.     The Disclosure Statement should contain, or be supplemented with detailed

information for each entity in Smart King's organizational structure (not just certain "key"

entities) regarding each entity's: (a) directors and executive officers, (b) indebtedness, (c)

specific ownership structure, (d) outstanding security interests (e.g. convertible securities) that

may change the ownership structure from present time through the latest possible termination of

the Trust, and (e) programs and initiatives that may impact its debt and equity structure.   The

bylaws for each entity should be provided, as well.

26.     For example, YT holds preferred units in Pacific Technology Holding LLC,

which entitle him certain distributions and which YT proposes to contribute to the Trust.  Yet,

there is no explanation in the Disclosure Statement of Pacific Technology's debt and equity

structure, including what "certain adjustments" and "return of capital to the management" related

to the preferred distribution rights are.  *See* Disclosure Statement § I.  The Disclosure Statement

should include information that makes clear the impact of the preferred distribution right on

Pacific Technology and any other entities.  Likewise, the Disclosure Statement should disclose all the above-identified information for each entity in Smart King's organizational structure.

**Analyses Regarding Dilution of Smart King Shares.**

27.      The Disclosure Statement describes a number of mechanisms pursuant to which the interest in Smart King proposed to be held by the Trust will likely be diluted.  These include the: (a) 2018 Equity Plan pursuant to which Smart King may grant up to 300,000 stock options for Class A ordinary shares employees, directors and consultants; (b) the 2020 Equity Incentive Plan pursuant to which Smart King's board of directors may grant equity awards; (c) the Short-Term Incentive Plan pursuant to which Smart King may grant 100,000,000 stock options for Class B ordinary shares to employees, directors and consultants; (d) the Series B Equity Financing; and (e) a Smart King IPO.  While the Disclosure Statement contains some broad projections and calculations based on assumptions, *see* §§ II.C.e.5 (2020 Equity Incentive Plan), VI (hypothetical scenarios for Smart King Value under different IPO prices and 2020 Equity Incentive Plan), there is no information regarding who prepared them and no detailed explanations regarding outcomes or different combinations with respect to the various programs or events.

**Limitations and Prohibitions on the Trust Assets.**

28.      The 2020 Creditor Trust Non-Binding Term Sheet (the "Term Sheet") attached as Exhibit B to the Disclosure Statement indicates that the Trust Assets are subject to "preliminary injunctions, freezing orders and/or similar orders" issued by courts in the British Virgin Islands and United States, Smart King's articles of association, and a December 31, 2018 restructuring agreement between Smart King, YT, and Season Smart.  The Foreign Representative Motion states the existence of "freezing injunctions [issued by British Virgin Island courts] against FF

Top and FF Peak that, among other things, restrain FF Top and FF Peak from disposing of,

dealing with, or diminishing the value of the entire issued share capital of FF Top and FF Peak."

Foreign Representative Motion ¶ 5.  YT proposes that the Foreign Representative would seek to

lift the restrictions "so that those assets may be included in the Debtor's chapter 11 case."  *Id.*

¶ 7.  The Foreign Representative Motion seeks for the proposed chief restructuring

officer/foreign representative to be authorized to represent the estate in the Cayman Islands, as

well, but there is no information therein or in the Trust Agreement regarding prohibitions or

limitations on Trust Assets imposed by Cayman Islands courts.  The Disclosure Statement should

provide information regarding the nature of all limitations and prohibitions on assets at holding

company levels that may impact whether YT may contribute the Trust Assets to the Trust and

how YT Plans to address those issues.  The foregoing issues highlight the need for full disclosure

regarding the management, interests, and indebtedness for all of Smart King's various affiliates

### Timing Information Regarding the FF Global Partnership Program.

29.     Section II.d of the Disclosure Statement describes the FF Global Partnership

Program, pursuant to which members of management and employees of FF have acquired or are

acquiring 40.8% of the interests that YT owned in Smart King.  The Disclosure Statement does

not inform whether and when the transactions related to the Partnership Program became fully

consummated.

### Explanations Regarding the Proposed Release.

30.     As noted above, the Plan proposes for holders of Debt Claims to grant YT, his

wife, Wei Gan, and others a broad release that encompasses "personal liability in every

jurisdiction" and "derivative Claims asserted or assertable on behalf of the Debtor." Plan § 11.4.

The release also includes a carve out for Releasing Parties to satisfy their claims through

authorities in the People's Republic of China and "a mechanism that will be mutually agreed to by the parties," with respect to "(x) assets that have already been collateralized by the Debtor or any other Person or Entity; (y) assets that have already been pledged by the Debtor or any other Person or Entity; and (z) assets or interests that the Debtor, his wife Wei Gan, or any other Person or Entity own that have been seized, attached, or frozen by Chinese judiciary authorities." *Id.*

31.      The Disclosure Statement informs of the existence of the proposed release, but it sheds no additional light on its terms.  There is no clarity regarding what a "mechanism to be mutually agreed upon" is or how the parties might agree upon it, or what YT means by "assets that have already been collateralized" or "pledged."  Nor is there an explanation as to why unsecured claims are subject to the release while secured claims are not; if the secured claims are fully satisfied by the Chinese assets then under the current Plan, YT would succeed in retaining the remaining assets to the detriment of unsecured creditors and in violation of the absolute priority rule.

32.      Without such information, Chongqing cannot determine whether it falls within the carve out, and if it does, how it can invoke and enforce the carve out.  Additionally, while the Plan proposes that creditors release Chapter 5 and other claims, the Disclosure Statement provides no information regarding the value of those claims and why it benefits the estate for creditors to release such claims.

### Information Regarding Retained Causes of Action.

33.      Section II.E of the Disclosure Statement addresses the Plan's provision in Article 8.3 for YT to retain certain causes of action that are not subject to releases in the Plan.  YT

should disclose what those causes of action are, their value, and why they will not be contributed to the Trust.

**Analyses Regarding Potential Recoveries and Liquidation Analysis.**

34.    The Disclosure Statement includes a chart of hypothetical recoveries positing that creditors may recover between 49.10% and 100.47%.  However, YT has not provided any analysis or information regarding how those figures were calculated and by whom.  Additionally, YT has not provided any liquidation analysis to support that recoveries pursuant to the Plan are at least as valuable as recoveries under a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**YT's and Wei Gan's Divorce Proceedings.**

35.    While Section III.D of the Disclosure Statement informs that YT will "make any payments to comply with any postpetition unfunded obligations on account of any Domestic Support Obligations,"  it does not disclose that YT and his wife Wei Gan commenced a divorce proceeding before the Chengdu Jinjiang District People's Court on October 11, 2019 (*see* Statement of Financial Affairs [Docket No. 28], at p. 125 of 126) or provide information regarding any demands made in or the status of that proceeding.

**Provision of Information in Chinese.**

36.    The Disclosure Statement contains extensive information regarding YT, Smart King, and its affiliates.  As discussed herein, the Disclosure Statement needs additional information to satisfy the standard for approval by the Bankruptcy Court.  Most, if not all, the holders of Debt Claims, including Chongqing, are Chinese.  The Disclosure Statement, any further amended version of or supplemental information to the Disclosure Statement, the Plan, and other important documents filed in the Bankruptcy Case should be filed and made readily

available in Chinese.  The Disclosure Statement in Chinese is apparently accessible through the

claims agent's website,[3] however it requires user registration.  User registration to access the

Chinese translations allows the host of the site to track who is accessing the documents – a

requirement that does not exist for the English versions of the pleadings.  Documents in Chinese

should be equally accessible to Chinese holders of Debt Claims as they are to their U.S. counsel

and counterparts.

## **CONCLUSION**

37.    For the reasons stated herein, Chongqing respectfully requests that the Court deny

the Disclosure Statement Motion until such time as YT remedies the deficiencies identified

herein.

38.    Chongqing reserves its rights to supplement this Objection as necessary.

Dated:  December 13, 2019                    **DORSEY & WHITNEY (DELAWARE) LLP**

By: /s/ Eric Lopez Schnabel
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue
Suite 1010
Wilmington, DE  19801
Telephone: (302) 425-7171
E-mail: glorioso.alessandra@dorsey.com

AND

---

[3] *See* https://dm.epiq11.com/case/yt1/info.

**DORSEY & WHITNEY LLP**

Eric Lopez Schnabel (DE Bar No. 3672)
51 West 52 Street
New York, NY 10019
Telephone:  (212) 415-9200
E-mail: schnabel.eric@dorsey.com

Siriu "Ray" Liu
Twin Towers (West), Suite 1503-1505
B12 Jianguomenwai Avenue
Chaoyang District, Beijing 100022
China
E-mail: liu.ray@dorsey.com

*Attorneys for Chongqing Strategic Emerging*
*Industry Leeco Cloud Special Equity Investment*
*Fund Partnership*

## <u>CERTIFICATE OF SERVICE</u>

I, Alessandra Glorioso, hereby certify that on December 13, 2019, I caused a copy of the foregoing document to be filed through the Court's Case Management/Electronic Case File ("CM/ECF") System and served on all parties who have electronically entered a notice of appearance through the notice of filing generated by the Court's CM/ECF System and also upon the parties included in the attached service list via the methods indicated.

Dated:  December 13, 2019                    **DORSEY & WHITNEY (DELAWARE) LLP**

<u>/s/ Alessandra Glorioso</u>
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail:  glorioso.alessandra@dorsey.com

*Attorneys for Chongqing Strategic Emerging*
*Industry Leeco Cloud Special Equity Investment*
*Fund Partnership.*

## Service List

| *Hand Delivery* | *FedEx* |
|---|---|
| Richard M. Pachulski | Jeffrey D. Prol |
| James E. O'Neill | Andrew D. Behlmann |
| Pachulski Stang Ziehl & Jones LLP | Jeremy D. Merkin |
| 919 North Market Street, 17th Floor | Lowenstein Sandler LLP |
| Wilmington, Delaware 19899-8705 | One Lowenstein Drive |
| | Roseland, New Jersey 07068 |
| | |
| David L. Buchbinder | Suzzanne Uhland, Esq. and Diana M. Perez |
| United States Trustee | O'Melveny & Myers LLP |
| 844 King Street, Suite 2207 | Times Square Tower, 7 |
| Lockbox 35 | Times Square |
| Wilmington, Delaware 19801 | New York, NY 10036 |
| | |
| Christopher M. Samis | |
| L. Katherine Good | |
| Aaron H. Stulman | |
| Potter Anderson & Corroon LLP | |
| 1313 N. Market Street, 6th Floor | |
| Wilmington, Delaware 19801-3700 | |