## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YUETING JIA,[1] | Case No. 19-12220-KBO |
| Debtor. | **Hearing Date:  December 18, 2019 at 10:00 a.m. (ET)** |
| | **Re:  D.I. 89, 111 & 112** |

**REPLY IN FURTHER SUPPORT OF SHANGHAI LAN CAI ASSET
MANAGEMENT CO, LTD.'S MOTION (I) TO DISMISS THE DEBTOR'S
CHAPTER 11 CASE OR, ALTERNATIVELY, (II) TO TRANSFER
<u>VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA</u>**

---

[1] The last four digits of the Debtor's federal tax identification number are 8972. The Debtor's mailing address is 91 Marguerite Drive, Rancho Palos Verdes, CA 90275.

{00027228. }

Shanghai Lan Cai Asset Management Co, Ltd. ("Shanghai Lan Cai") respectfully submits this reply in further support of its *Motion (I) to Dismiss the Debtor's Chapter 11 Case or, Alternatively, (II) to Transfer Venue to the Central District of California* [Dkt. No. 89] (the "Motion") and in response to (1) Yueting Jia's ("Jia" or the "Debtor") Opposition to the Motion (the "Opposition" or "Opp.") [Dkt. No. 112] and (2) the Official Committee of Unsecured Creditors' (the "Committee") Response to the Motion [Dkt. No. 111] (the "Committee Response"), and respectfully submits the following:

## PRELIMINARY STATEMENT

1.      This Chapter 11 case presents a number of problems that cannot be cured without disregarding core provisions of the Bankruptcy Code, fundamental principles of due process and international comity.  Because the problems are intractable, the case should be dismissed.

2.      The first problem is that Jia seeks to use this Court to discharge billions of dollars in debts, substantially all of which were incurred in China, are held by creditors located in China, and are governed by Chinese law, but at the same time submits *only* his U.S.-based assets to this Court for restructuring.  About *$1 billion* of Jia's assets are located in China.[2]  But Jia's Chapter 11 filing and proposed plan come with the following condition set forth in the Opposition: that this Chapter 11 case and his plan will *exclude* **"PRC claims"** and **"claims against non-U.S. assets,"** and that this Chapter 11 case will instead pursue a **"restructuring of his U.S. assets."**[3]

3.      Jia cannot as a condition to filing or in his plan exclude property of the estate from the purview of this Court or the reach of his creditors.  Certainly, Jia will not seek a similar limitation on the scope and effect of the releases, discharge and discharge injunction he seeks in

---

[2]      *See* Debtor's Amended Disclosure Statement [Dkt. No. 94] at 19 (estimating Jia's assets in China to be worth $1 billion USD).

[3]      Opp. ¶ 42 (emphasis added).

his plan.  His condition turns the Bankruptcy Code on its head.  In a Chapter 11 case, the debtor's

estate must be *worldwide*.  *See* 11 U.S.C. § 541(a) (debtor's estate includes property "*wherever

located*" (emphasis added)); *see also* 11 U.S.C. § 1334(e) (providing exclusive jurisdiction over

worldwide estate of the debtor).  The Debtor cites no authority allowing this Court to limit the

scope of the bankruptcy estate to U.S. assets, thereby reducing this Chapter 11 case to a "territorial"

proceeding.   And he cannot, because the *only* circumstance in which the Bankruptcy Code

sanctions such an arrangement—where the Chapter 11 case is filed following the recognition of a

foreign bankruptcy proceeding—does not apply here.[4]  There could not be a clearer showing of

"cause" to dismiss a Chapter 11 case than where, as here, the Debtor places conditions on the case

that conflict with the most basic provisions of the Code.

4.      The second problem is that Jia's bankruptcy filing places this Court in the middle

of foreign affairs.  One of the arms of the Chinese government has *directed* Jia to return to China

to deal with his debt issues *there*,[5] the highest court in China has placed him on an official list of

debt defaulters, and various Chinese courts have issued over 20 freezing orders against him and

the entities he controls.  None of this is disputed.

5.      Ignoring all this (and asking this Court to ignore it), Jia claims he seeks to avail

himself of the benefits of Chapter 11 "to eliminate uncertainty about the ownership of Faraday

[Future] with the goal of placing the company in a stronger position to obtain financing for future

competition competitive and strategic initiatives." *See* Opp. ¶ 1.  His tired refrain that this case is

all about saving Faraday cannot save *Jia* from the consequences of this bad faith filing.  This is

---

[4]      *See* 11 U.S.C. § 1528.

[5]      *See* Beijing Securities Regulatory Bureau Announcement Regarding Orders for Jia Yueting to Return to China to Fulfill Obligations (Dec. 25, 2017), a true and correct copy of which, along with its certified translation, is attached hereto as **Exhibit 1**.

not a Chapter 11 case of Faraday—the U.S. company—it is the Chapter 11 case of an individual Chinese citizen who has publicly stated (including at his recent Section 341 meeting) that he intends to return to China (after fleeing the country in 2017) if this Court approves his plan.[6]  That Jia is really requesting this Court's assistance to resolve his serious issues with the Chinese government and his Chinese creditor body is undeniable.  The purpose of Chapter 11 is to restructure debts with *all* property of a debtor's estate in an honest and transparent manner.  It clearly is not intended to be used to influence foreign governments or meddle in foreign affairs.

6.      Against this backdrop, it is unsurprising that *no* creditor has come forward to support the Debtor's Chapter 11 filing or his plan.  And while Jia's claim that the future of Faraday depends on confirmation of his plan is legally irrelevant, it is telling that Faraday has not come forward to validate that claim either.  On the other hand, a number of other creditors[7] have joined Shanghai Lan Cai's request to the dismiss the case.  While the Committee opposes the Motion, that is not because it supports Jia's restructuring.  Rather, the Committee seeks to keep the case going to pursue an investigation.  But the Committee acknowledges that its investigation has been stymied by Jia's lack of cooperation, and that absent cooperation on his part, the Committee too

---

[6]      *See*  贾跃亭债务处理小组：重组方案通过后，贾跃亭或将回国经营FF,   Soнu   (Nov.  26,  2019), http://www.sohu.com/a/356023513_100001551, a true and correct copy of which, together with its English translation and translation certificate, are attached hereto as **Exhibit 2**.  Given that the debtor does not speak fluent English, his responses at the Section 341 meeting were in Chinese and translated into English with a live interpreter.  The need for the translation of the audio recording of the meeting has resulted in a delay of the completion of the transcript. Shanghai Lan Cai would be pleased to provide to the Court any citations to the transcript supporting the references to the Section 341 meeting made herein following its receipt of the transcript.

[7]      Those creditors are Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership), O-Film Global (HK) Trading Limited, Nanchang O-Film Photoelectric Technology Co., Ltd., Beijing Haidian Technology Financial Capital Holding Group Co., Ltd. and Jinan Rui Si Le Enterprise Management Consulting Partnership.  *See* Joinders in Shanghai Lan Cai Asset Management Co, LTD.'S Motion (I) to Dismiss the Debtor's Chapter 1 Case or, Alternatively, (II) to Transfer Venue to the Central District of California [Dkt. Nos. 110, 121, 136, 138].

"will likely seek dismissal or conversion of this chapter 11 case."[8]   Based on Shanghai Lan Cai's

lengthy experience in trying to collect on its debt against Jia, and having seen the extensive efforts

undertaken by Jia to conceal his assets and disregard court orders, it has no comfort that his

cooperation will be forthcoming.   Instead, the investigation into Jia is most effectively and

appropriately left to government authorities, whether here in the U.S. or in China (or jointly).[9]

7.      For these reasons and those set forth in the Motion and below, the Court should

dismiss this Chapter 11 case.   Alternatively, in the event the Court does not dismiss the case, it

should transfer the case to the only proper venue—the Central District of California—where Jia

resides, where his two sets of lawyers are located, where his principal U.S. assets are located, and

where he recently held a meeting for creditors to solicit their support for his plan.

## ARGUMENT

**I.      The Case Should Be Dismissed Under Bankruptcy Code Sections 1112(b) and 305(a)**

**A.      Jia Seeks To Use The Chapter 11 Case In Contravention of Principles of Comity and the Bankruptcy Code Itself**

8.      Jia's proposal for pursuing a restructuring in this case, as set forth in his Opposition,

has no grounding in the Bankruptcy Code.   Essentially conceding that this Court would be unable

to administer his substantial assets in China (Motion ¶ 52),[10] he now claims that his plan will deal

only with "U.S. claims" or "claims against U.S. assets" and does not affect "PRC claims" or

"claims against Chinese assets."   Opp. ¶ 38.   In a mere footnote, he clarifies that "[t]he instant

---

[8]      *See* The Official Committee of Unsecured Creditors' Response to Shanghai Lan Cai Asset Management Co, Ltd.'s Motion (I) to Dismiss the Debtor's Chapter 11 Case or, Alternatively, (II) to Transfer Venue to the Central District of California [Dkt. No. 111] at 13.

[9]      *See* Motion ¶ 6 (citing probes conducted by Chinese authorities into business associates of Jia's).

[10]      Jia estimates that these assets in China are worth approximately $1 billion. *See* Debtor's Amended Disclosure Statement [Dkt. No. 94] at 19.   They include, among other things, homes and stock in various entities he controlled in China (including, among others, Leshi Information Technology Co. Ltd., Le Holding (Beijing) Co. Ltd and Beijing Baile Culture Media co., Ltd.). *Id.* at 18.

Chapter 11 Case deals *solely* with the Debtor's U.S. assets and repayment of creditors' claims therefrom.  The Debtor's Plan will be amended to make clear that the Plan's release provisions *will not impact PRC claims and* assets."  *See* Opp. at 19 n.16 (emphasis added).[11]  This proposal runs counter to the most basic statutory provisions of the Bankruptcy Code.

9.      In every Chapter 11 case (with one inapplicable exception, explained below), the estate to be administered in the case is comprised of the debtor's property interests "*wherever located and by whomever held*."  11 U.S.C. § 541(a); *see also* 28 U.S.C. § 1334(e) (vesting the bankruptcy court with "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of the case").  The text of the Bankruptcy Code could not be clearer that Congress intended U.S. bankruptcy cases to have worldwide effect.  *See In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 250 (S.D.N.Y. 2004) ("Congress intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate." (citing *Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon),* 153 F.3d 991, 996 (9th Cir.1998)));[12] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.

---

[11]      That taxonomy of claims against "PRC" versus those against "U.S." assets is belied by Jia's own disclosures, which clearly outline that the vast majority of his debt is *unsecured* and therefore not "against" *any* asset at all—but rather against Jia, personally.  *See* Debtor's Schedules of Assets, Liabilities and Financial Affairs [Dkt. No. 28] at 20-71 (unsecured portion totaling approximately $3.4 billion out of $3.5 billion in total claims).  Moreover, as Shanghai Lan Cai notes, *all* of his claims arose in China (Motion ¶ 20), and, therefore, using Jia's terms, are "PRC claims." Finally, as a fundamental matter, the Bankruptcy Code is not intended to restructure "assets" —as Jia says he intends to do in the Opposition—but "debtor-creditor" relations.  *See Stern v. Marshall*, 564 U.S. 462, 516, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011) (noting that "from the beginning, the 'core' of federal bankruptcy proceedings has been 'the restructuring of debtor-creditor relations'" (citation omitted)).  Here, at bottom, Jia's proposed plan appears, by his own admission, not to restructure those relations but to "restructure the U.S. assets" in a back-door attempt to pursue a half-baked, *de facto* reorganization for Faraday Future—an entity that is not a debtor.  *See* Motion ¶ 19; *see also* Joinder by Shanghai Qichengyueming Investment Partnership Enterprise (Limited Partnership) in Motion [Dkt. No. 121].

[12]      *See also In re Gucci*, 309 B.R. 679, 683 (S.D.N.Y. 2004) (declaring that "Section 1334(e) ... embodies a Congressional determination that bankruptcy courts should determine rights in property of bankrupt estates regardless of where that property may be found"); *Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) (enforcing automatic stay against foreign receiver related to foreign assets of foreign debtor).

Ct. 1942, 147 L. Ed. 2d 1 (2000) ("Congress says in a statute what it means and means in a statute what it says there.") (citation and internal quotation marks omitted).

10.      Disregarding the definition of the scope of the estate in a Chapter 11 case, Jia remarkably says that he will unilaterally limit the effects of this Chapter 11 case to his U.S. assets, which he claims consist solely of his interests in Faraday Future. Unsurprisingly, Jia cites no authority allowing him to pursue this type of "territorial" Chapter 11 case, and there is none. Significantly, the Bankruptcy Code *does*, in one specified instance, allow a Chapter 11 case to be limited to U.S. assets. Under Section 1528, a Chapter 11 case for a foreign debtor filed after Chapter 15 recognition of the debtor's foreign main insolvency proceeding is generally "restricted to the assets of the debtor that are within the territorial jurisdiction of the United States." 11 U.S.C. § 1528. Here, Jia does not qualify for the local, territorial Chapter 11 proceeding under Section 1528, as he is not the subject of a foreign insolvency proceeding, let alone one that has been recognized under Chapter 15. And Section 1528 confirms that Congress carefully and deliberately decided the worldwide estate in a Chapter 11 case should only be modified in that one particular context. *See Delaware Cty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 221 (3d Cir. 2014) (applying the statutory canon *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") in statutory interpretation); *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 564 (3d Cir. 2003) (noting presumption "that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another" (citation omitted)). Allowing Jia to pursue this unauthorized and unprecedented territorial Chapter 11 case would contravene clear Congressional intent.

11.     That Jia does not have access to bankruptcy relief in China does not and cannot change the result.  To be sure, the Bankruptcy Code offers good faith debtors substantial flexibility in pursuing a restructuring to maximize value for creditors.  But there are limits—one of which, of course, is that bankruptcy courts lack the authority to grant relief that conflicts with the substantive provisions of the Code.  *See In re Morristown & Erie R. Co.*, 885 F.3d 98, 100 (3d Cir. 1989) (explaining that while section 105(a) authorizes the court "to fashion such orders as are required to further the substantive provisions of the Code," it does not give "the court the power to create substantive rights that would otherwise be unavailable under the Code"); *see also Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 984 (2017) (holding that bankruptcy courts may not approve a structured dismissal of a Chapter 11 case that deviates from the Code's priority rules, and concluding that Congress did not authorize a "rare case" exception to override those rules).  And there are numerous examples of foreign companies that have availed themselves of the unique benefits of Chapter 11, including companies that either do not have access to insolvency laws in their home jurisdiction or whose insolvency laws only provide for liquidation.  But in those cases, the debtors have not sought to limit the effects of the Chapter 11 case to U.S. assets, as Jia is proposing to do.[13]

12.     Further, the cases Jia cites (Opp. at 22 n. 19) in support of his "territorial" Chapter 11 do not support his position that he can unilaterally limit the estate to U.S. assets and, in any event, are inapposite.  They all involve debtors who are members of a *corporate* conglomerate—

---

[13]     Indeed, quite the opposite—debtors typically seek to take steps to ensure that the extraterritorial effects of their Chapter 11 cases are protected.  *See, e.g.*, Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code, (II) Permitting the Debtors to Modify the Automatic Stay in their Sole Discretion to Proceed with Litigation or Contested Matters Commenced Prepetition, (III) Approving the Form and Manner of Notice, and (IV) Granting Related Relief), *In re Seadrill Ltd.*, No. 17-60079 (Bankr. S.D. Tex. Sept. 13, 2017) ECF No. 91 (comfort order confirming that the automatic stay is worldwide); *In re Sobelmar Antwerp N.V.*, No. 15-20423, 2015 WL 1440829, (Bankr. D. Conn. Mar. 17, 2015) (same); *In re Xerium Technologies, Inc.*, No. 10-11031, 2010 WL 5851796 (Bankr. D. Del. Mar. 30, 2010) (same).

in which the debts arose in the U.S. and there was a significant U.S.-based creditor body,[14] in which the debtors were plainly U.S.-based entities whose debts arose to support their business operations here and whose foreign trade creditors were dwarfed by U.S. creditors,[15] and in which parties initially seeking to dismiss a Chapter 11 case on comity grounds never actually prosecuted their motions.[16]  If the result, under the unique and extraordinary circumstances of this case, is that Jia is not able to pursue bankruptcy relief (at least in the manner he would like), that cannot be reason to contort the Bankruptcy Code to allow him to do so.

13.     Jia's proposal for this Chapter 11 proceeding is not only inconsistent with the Bankruptcy Code, but also principles of international comity.  Importantly, nothing about Jia's "territorial" Chapter 11 proposal alters the fundamental characteristics of the debt claims at issue in this case.  Jia does not dispute that the claims at issue here arise from loan agreements entered into by parties in China—certain of which are state-owned—that are written in Chinese and that are otherwise governed by Chinese law and may contain Chinese choice-of-forum clauses.  These circumstances alone warrant dismissal. *See In re Yukos Oil Co.*, 321 B.R. 396, 411 (Bankr. S.D. Tex. 2005) (noting that the "underlying disputes appear to turn on construction of statutes enacted in a foreign language" and finding that the risk of "disagreement as to the translation of the language" weighed in favor of dismissal).

---

[14]     *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 405 (Bankr. S.D.N.Y. 2014) (granting Chapter 15 recognition to the Cayman proceedings where "[t]he Debtor's principal debt arises from a United States debt offering").

[15]     *See, e.g., In re Nine West Holdings Inc.*, No. 18-10947 (Bankr. S.D.N.Y. filed April 6, 2018); *In re Hollander Sleep Products, LLC*, No. 19-11608 (Bankr. S.D.N.Y. filed May 19, 2019), *In re Forever 21, Inc.*, No. 19-12122 (Bankr. D. Del. filed Sept. 19, 2019).

[16]     *See, e.g.*, Notice of Adjournment of Status Conference on Maybank's Motion for an Order Dismissing the Debtor's Chapter 11 Case Pursuant to Sections 305(a) and/or 1112(b) of the Bankruptcy Code, with Prejudice or, Alternatively, Lifting the Automatic Stay Pursuant to Section 362(d)(1) of the Bankruptcy Code, *In re China Fishery Group Ltd. (Cayman), et al.*, No. 16-11895 (Bankr. S.D.N.Y. 2016) ECF No. 618 (in the last docket entry concerning the motion to dismiss, movant for dismissal adjourned hearing on the motion without a further date).

14.     And Jia's contention that comity principles do not come into play here because of the absence of a parallel insolvency proceeding is refuted by the text of the Bankruptcy Code itself. Dismissal under Section 305(a) authorizes this Court to dismiss this case *either* if the interests of creditors and the debtor are served by such dismissal, *see* 11 U.S.C. §§ 305(a)(1), *or* if a foreign insolvency proceeding exists and that proceeding has been recognized under Chapter 15, *see* 11 305(a)(2).  Shanghai Lan Cai has moved for dismissal under Section 305(a)(1) (not (a)(2)), which on its face does not require the existence of a parallel foreign insolvency proceeding.[17]

**B.     Jia Has Failed to Demonstrate A Valid Restructuring Purpose or The Requisite Good Faith**

15.     A Chapter 11 case must be dismissed if it was not filed for a "valid restructuring purpose"—that is, either (i) to preserve the debtor's value as "a going concern" or (ii) to "maximize[e] the value of the debtor's estate"—or it was filed just for a "tactical litigation purpose."  *See In re Integrated Telecom Express*, 384 F.3d 108, 120, 128 (3d Cir. 2004) (ruling that the desire to take advantage of bankruptcy protections alone does not establish good faith). This good faith requirement "protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons .... available only to those debtors and creditors with clean hands."  *In re Rent-A-Wreck of Am., Inc.*, 580 B.R. 364, 373–74 (Bankr. D. Del. 2018).  Here, the

---

[17]     Jia's attempt to rely on Section 109 to argue that eligibility to file for bankruptcy justifies his distribution scheme is similarly unavailing, because it conflates the question of whether Jia met the debtor eligibility requirements to file the case with the question of whether the Court should exercise jurisdiction over the case *after* the filing.  Indeed, Jia's own authority explains that the analysis for Section 109 eligibility is not the same as that for dismissal and, in fact, that authority counsels in favor of dismissal here.  *See In re Northshore Mainland Services, Inc.*, 537 B.R. 192, 201 (Bankr. D. Del. 2015) (explaining that while "[t]he Debtor met the eligibility requirements of Bankruptcy Code § 109(a)[,] [w]hether the cases should be dismissed in favor of Bahamian proceedings is more appropriately decided pursuant to Bankruptcy Code §§ 305 and 1112"); *In re Globo Communicacoes e Participacoes S.A.*, 317 B.R. 235, 254-55 (S.D.N.Y. 2004) (explaining that the existence of U.S. assets defeated dismissal of the debtor's case on Section 109 grounds but this was a "strong candidate for abstention under the Bankruptcy Code" in light of the strong Brazilian nexus of the case).

Debtor has not met his burden to satisfy this good faith requirement.  *See SGL Carbon Corp*, 200

F.3d 154, 162 n.10 (3d Cir. 2016) (burden on the debtor to demonstrate good faith).

16.     The Debtor contends that he had a valid bankruptcy purpose for commencing this

case because of "the need to restructure his financial affairs to provide for the repayment of creditor

claims, which total in the billions, and to preserve the value of his principal asset—Faraday's

business."  Opp. ¶ 29.  However, Jia is doing nothing in this case to "restructure his financial

affairs," nor has he stated that he plans to do so.  He is not seeking to use any of the tools that the

Bankruptcy Code gives debtors to address their operational or financial problems, such as the right

to reject contracts or leases under Section 365 or sell assets free and clear of interests under Section

363.  The only ways in which Jia is using this bankruptcy case are (1) to obtain the benefits of the

automatic stay and (2) to pursue a discharge of creditor claims—in both cases, *only within the*

*territorial borders of the United States*.[18]  Neither of these are valid purposes for filing a Chapter

11 case because neither of them concern the only two cognizable objectives of Chapter 11

described above.

17.     And the manner in which Jia is selectively enforcing the stay and pursuing a

discharge underscores the absence of a legitimate, good faith restructuring purpose on his part.  As

noted, Jia has represented that he is not seeking to use this Chapter 11 case to protect his substantial

assets in China or relief from claims against him there.  No doubt, these Chapter 11 proceedings

cannot effectively address those matters.  *But Jia has told the Court he will not even try.*  For

example, Jia has made no attempt to enforce the worldwide automatic stay against creditors

pursuing enforcement actions in China who may be subject to U.S. jurisdiction.  Nor has he even

---

[18]     Jia points to a number of things the Debtor has purportedly done in the Chapter 11 case since the petition date, such as filing his plan, seeking to retain professionals, and meeting creditor representatives (Opp. ¶ 2), but none of that changes the analysis.  If a debtor could avoid dismissal by taking minimal procedural actions to "dress up" the case as a legitimate one, that would defeat the "valid restructuring purpose" inquiry required under Third Circuit law.

requested a "comfort order" from this Court that the automatic stay applies worldwide, which debtors frequently do in cases where, as here, the debtor has valuable assets outside the United States.[19]

18.     On the other hand, Jia has used resources of the estate in directing two sets of lawyers—PSZ&J and OMM—to threaten Shanghai Lan Cai with sanctions for purportedly violating the stay if it did not instruct *non-debtor parties* to not produce documents in response to subpoenas issued before the bankruptcy filing.  *See* Motion ¶ 36.  This establishes that Jia is seeking to use the automatic stay not for the purpose of obtaining "breathing space" from his collective body of creditors, but rather to obtain a tactical litigation advantage over *one* creditor— namely, Shanghai Lan Cai.  *See In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 128 (3d Cir. 2004) (noting that the "classic" bad faith petition is one where the debtor's goal is to use the automatic stay strategically and opportunistically, in that case to avoid posting an appeal bond in another court); *In re DCNC North Carolina I, LLC*, 407 B.R. 651, 658 (Bankr. E.D. Pa. 2009) (case "initiated solely to hinder or delay creditors" cannot have been filed in good faith).[20]

19.     And the argument that the bankruptcy filing was necessary to prevent Shanghai Lan Cai from pursuing a "fire sale" of Faraday that would "destroy the value of Faraday at the expense of all other creditors" (Opp. ¶ 5) borders on the frivolous.  That argument is belied by Jia's

---

[19]     *See supra* note 12.

[20]     Further, Jia has not attempted – nor says he will attempt – to seek recognition of this Chapter 11 case in China.  Pursuant to Articles 281 and 282 of China's Civil Procedure Law, a party may seek recognition and enforcement of foreign court rulings and judgments before a competent Chinese court based on either a bilateral treaty or the principle of reciprocity.  *See* Qing Di and Karen King, Trending Toward Reciprocity: Enforcement of US Judgments in China, CHINA BUSINESS REVIEW (Sept. 6, 2019), https://www.chinabusinessreview.com/trending-toward-reciprocity-enforcement-of-us-judgments-in-china/, a true and correct copy of which is attached as **Exhibit 3**.  In the absence of a bilateral treaty between the U.S. and China, *de facto* reciprocity has been established by at least one Chinese bankruptcy case having been recognized in the United States. *See* Order Recognizing Foreign Main Proceeding, *In re Zhejiang Topoint Photovoltaic Co., Ltd.*, No. 14-24549 (JNP) (Bankr. D.N.J. Aug. 12, 2014), ECF No. 37.  Thus, while a potential path may exist for the seeking a Chinese court's recognition of rulings and judgments in the Chapter 11 proceeding, Jia has told this Court he will categorically not pursue that path.

concession that Shanghai Lan Cai's "$11 million judgment represent[s] only a fraction of the total claim pool" (*Id*. ¶ 35 (emphasis added)) and therefore it would have no basis to "seize control" of all his interests in Faraday (*Id*. ¶ 4), which Jia claims is worth approximately over $1 billion.[21] The argument is also dispelled by the timing of the Chapter 11 filing. Jia did not file the case on the eve of any foreclosure action or "fire sale", but rather on the eve of a court-supervised examination by Shanghai Lan Cai regarding Jia's assets and financial affairs. *See* Motion ¶ 35. The timing is further evidence that Jia did not have a good faith purpose in filing this case. *BEPCO v. 15375 Mem'l Corp. (In re 15375 Mem'l Corp.)*, 400 B.R. 420, 428 (D. Del. 2009) (debtors' petitions filed to stave off litigation on the eve of trial dismissed on bad faith grounds); *see also In re Ravick Corp.*, 106 B.R. 834, 844 (Bankr. D.N.J. 1989) ("Generally, where a debtor's reorganization effort involves essentially a two party dispute resolvable in [a non-bankruptcy] court, and the filing for relief under the Bankruptcy Code is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor, dismissal for 'cause' is warranted.").

20.    Similarly, Jia's contention that this Chapter 11 case is necessary to preserve the value of Faraday is both legally irrelevant and, in any event, factually unsupported. The debtor in this case is Jia, *not* Faraday. And Jia has failed to explain any connection between the proposed disposition of his minority equity stake in Faraday under his Chapter 11 plan and Faraday's ability to "obtain financing for future competitive and strategic initiatives." (Opp. ¶ 1); *see also In re 15375 Mem'l Corp.*, 589 F.2d 605, 620, 625 (3d Cir. 2009) (dismissal warranted where purported

---

[21]    *See* Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 28] at 13 (total of estimated values for interests in the parent company of Faraday Future). At the Section 341(a) meeting, Jia admitted that the estimated values assumed that the company could secure $850 million of financing, which financing is currently uncertain. In all events, it is normal – and, indeed, expected – for creditors to act in their self interest in the bankruptcy process. *See Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) ("Creditors are presumed to be acting in their own interests."). The important distinction between Jia's bad faith in filing his Chapter 11 case as a litigation tactic and Shanghai Lan Cai's interests in pursuing its claim against him is that, as Jia concedes, a debtor's bad faith filing can result in dismissal (Opp. at 12, 18 n. 15).

benefits supporting Chapter 11 filing "do not add or preserve value that would otherwise be unavailable to creditors outside of bankruptcy"). Tellingly, no one has come forward from or on behalf of Faraday to explain how or why Jia's Chapter 11 case has anything to do with Faraday's future prospects or ability to obtain new financing. The only "evidence" that the future of Faraday is riding on Jia's plan is his own speculative say-so.[22] Of course, if this case is dismissed, Jia remains free to offer his creditors a share of his equity interests in Faraday, which is precisely what he did before the filing, when he proposed his pre-bankruptcy exchange offer.

21.     When Jia's justifications for filing this Chapter 11 case fall away, as they must, the record reflects that Jia has simply "exchanged one set of issues for another and the expense of civil litigation for that of bankruptcy litigation," and that he has failed to establish that his "actions *need* to occur in a bankruptcy court." *In re Rent-a-Wreck of America, Inc.*, 580 B.R. 364, 384, 387 (Bankr. D. Del. 2018) (emphasis added) (dismissing case on bad faith grounds because debtors failed to demonstrate that the value of their purported key assets would increase through the bankruptcy process and because the nature of the dispute between the parties after the bankruptcy filing was the same as before the filing). Further, it should not be lost on the Court that Jia has publicly stated that he intends to return to his home country of China (from which he fled 2 years ago) if his Chapter 11 plan is confirmed, and he affirmed that plan at his recent Section 341(a) meeting. It is very clear, then, that Jia will seek to leverage any discharge from *this* Court to try and resolve his serious issues with Chinese authorities. As in *Yukos*, the Court should similarly reject Jia's attempt to use this Chapter 11 case to influence the actions of a foreign government. *See In re Yukos Oil Co.*, 321 B.R. 396, 411 (Bankr. S.D. Tex. 2005).

---

[22]     *See* Committee Response at 2 ("Jia *speculates* that the cloud of his personal debt . . . is preventing Faraday from securing additional financing." (emphasis added)).

22.     If all that were not enough, the bad faith underlying the Chapter 11 filing extends to the very source of funding for the case.  In pre-petition enforcement proceedings brought by Shanghai Lan Cai against Jia, the U.S. District Court for the Central District of California issued an order expressly *enjoined* Jia from "transfer[ring]", "encumber[ing]" or "otherwise mak[ing] unavailable—either personally or through instructions to another—any non-exempt assets up to the value of the Court's judgment."[23]  In violation of that order, Jia obtained a loan shortly before the bankruptcy filing from Pacific Technology Holding LLC ("Pacific Technology") for approximately $2.6 million, and pledged all his assets to secure the loan, as evidenced by the promissory note for the loan, the UCC Financing Statement filed in connection with the loan, and in his schedules.[24]  In further violation of the California federal court order, Jia transferred the loan proceeds to the lawyers representing him in this case, PSZ&J and OMM.[25]  That the funding for

---

[23]     *See* Amended Civil Minutes Order, *Shanghai Lan Cai Asset Management Co, Ltd. v. Jia Yueting*, Case No. 18-cv-10255 SJO (MRWx) (Sept. 3, 2019), ECF No.79, a true and correct copy of which is attached hereto as **Exhibit 4**; *see also* October 18, 2019 Amended and Restated Secured Promissory between Yueting Jia and Pacific Technology Holding LLC, a true and correct copy of which is attached hereto as **Exhibit 5**; *see also* Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 28], at 30.  Assets that are considered "exempt" under California state law include only modest sums such as, for example, a homestead exemption up to the amount of $175,000 depending on the circumstances, *see* Cal. Civ. Proc. § 704.730(a), or up to $2,300 in the aggregate equity in motor vehicles, *see id.* § 704.010(a).  Moreover, the Committee has apparently obtained approximately $500,000 in escrow to fund their activities in the case.  *See* Committee Response ¶¶ 9-10 (explaining over the past three weeks, the Committee received approximately $500,000 in escrow to fund its activities in the case).  It may be the case that such funds are similarly tainted because "[t]o the best of the Committee's knowledge, these funds originated from Pacific Technology Holding LLC."  *Id.*  The promissory note evidencing the loan states that the security interests provided by Jia are purportedly subject to the September 3, 2019 Order.  However, the Order's restrictions on Jia's encumbrance of assets contain no carve-outs beyond that for "exempt" assets, and Jia neither apprised the California federal court of the pledge of assets nor requested that the Court grant relief from the terms of the September 3, 2019 Order in order to provide that pledge.

[24]     *See* Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 28] at 27.  A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit 6**.  While Jia could have used those proceeds to pay down almost 25% of Shanghai Lan Cai's, he instead chose to fund his two lawyer teams instead. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 129 (3d Cir. 2004) ("To be filed in good faith, a petition must . . . seek to create or preserve some value that would otherwise be lost—not merely distributed to a different stakeholder—outside of bankruptcy.").

[25]     *See* Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtor and Debtor in Possession *Nunc Pro Tunc* to the Petition Date [Dkt. No. 18] at 6 n.3; Declaration of Suzanne Uhland in Support of the Application, Ex. B to the Application Pursuant to Section 327(e)

this bankruptcy case was obtained in violation of the order of a sister U.S. federal court confirms

that this case must be dismissed.  *See In re Eighty S. Lake, Inc.*, 63 B.R. 501, 504 (Bankr. C.D.

Cal. 1986), *aff'd*, 81 B.R. 580 (B.A.P. 9th Cir. 1987) ("This defiance of state court orders is itself

strong evidence of the debtor's bad faith in the transactions leading to the filing of this petition.");

*see also In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966) ("The conduct of bankruptcy

proceedings not only should be right but must seem right.") (Friendly, J.).

**II.   Delaware Venue Is Improper And If The Case Is Not Dismissed,
It Must Be Transferred to the Central District of California**

23.     Jia claims that venue is proper in Delaware because his "principal asset" in the U.S.

is located in the state.  In his opening Chapter 11 papers, Jia stated that his principal U.S. asset was

his interests in West Coast LLC.  *See* Chapter 11 Petition [Dkt. No. 1] at 2; *see* Prepackaged Plan

of Reorganization [Dkt. No. 4] at 17.  However, as pointed out in the Motion, West Coast LLC

was incorporated only 83 days prior to the petition date, so, per the requirements of 28 U.S.C. §

1408(1), it could not be the basis for venue in Delaware.[26]

24.     In his Opposition, Jia does an about-face, and now claims that his principal asset is

his interest in Pacific Technology (the same entity that made the pre-bankruptcy loan to Jia, in

violation of a California federal court order), which he says was formed in July 2018.  Opp. ¶ 12.

Jia's schedules cryptically state that his interests in Pacific Technology are "per agreement,"[27] but

citing confidentiality issues, Jia and his counsel have refused to disclose that agreement (which

---

of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain O'Melveny & Myers LLP, as Special Corporate, Litigation and International Counsel to the Debtor Nunc Pro Tunc to the Petition Date [Dkt. No. 90-4] ¶ 7.

[26]     Jia testified at his Section 341 meeting that West Coast LLC was formed *after he consulted with restructuring attorneys*, creating a strong inference that the purpose of creating that entity was to manufacture venue in this District.

[27]     *See* Schedules of Assets and Liabilities and Statement of Financial Affairs [Dkt. No. 28] at 13.

was requested by the U.S. Trustee at the Section 341 meeting).  Based on Jia's failure to disclose

anything that proves and documents his interests in Pacific Technology, the Court cannot and

should not credit Jia's eleventh-hour contention that those interests are his principal U.S. asset.

Accordingly, the Court should find that Delaware venue is improper, which is a further ground for

dismissal of the case, pursuant to 28 U.S.C. § 1406 and Bankruptcy Rule 1014(a)(2).  *See In re*

*Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 806 (9th Cir. 1991).

25.    Even if the Court were to determine that Delaware venue is technically proper, there

is no question that this case (if not dismissed) should be transferred to the Central District of

California.   Jia's principal argument for keeping the case in Delaware is that his choice of forum

should be granted "great weight," *see* Opp. ¶ 53, but Judge Sonchi's recent decision in *In re*

*Highland Capital* rejects that view.[28]

26.    In *Highland Capital*, the Court granted a motion to transfer venue from this District,

where the debtor initially filed its case, to the Northern District of Texas.  Ruling from the bench,

Judge Sontchi held that pending related litigation in the Northern District of Texas was a factor in

finding that the "real gravitas of the case" was in Texas.   He also dispelled "the idea that there's

somehow a strong presumption of the debtor's choice of forum," because that presumption "really

does not reflect the modern Chapter 11 practice in the U.S. and internationally."   December 2,

2019 Hearing Transcript, *In re Highland Capital Management, L.P.*, No. 19-12239-CSS at 105:14-

23 (Bankr. D. Del. 2019) (a true and correct copy of which is attached hereto as **Exhibit 7**).  In

granting the transfer, the Court found that "a more general approach that would involve looking at

---

[28]    Moreover, of the four potential venue "hooks" provided for in 28 U.S.C. 1408, the location of the principal
assets is the least important hook where, as claimed here, "the ultimate goal is rehabilitation rather than liquidation."
*In re Caesars Entm't Operating Co. Inc.*, No. 15-10047 (KG), 2015 WL 495259, at *6 (Bankr. D. Del. Feb. 2, 2015)
(quoting *In re Enron Corp.*, 274 B.R. 327, 347 (Bankr. S.D.N.Y. 2002).

the facts and circumstances of a case and seeing whether it points to a specific jurisdiction might be a more helpful way of proceeding." Hr'g. Tr. at 107:18-21.

27.     The facts and circumstances overwhelmingly point to the Central District of California as the only proper venue for this case (if it is not dismissed).  That is the district where Jia resides, where his two sets of lawyers are located, and where Faraday—the company Jia claims is at the heart of this case—is located.  And, reflecting Jia's own view of where it is most "economic and efficient" for parties in interest to travel for this case, Jia chose a location in that district—namely, Faraday's California headquarters—to host two meetings with creditors and their representatives.  Opp ¶ 2(g), (h).[29]

## CONCLUSION

28.     For the reasons stated above, Shanghai Lan Cai respectfully requests that this Court enter an Order (1) dismissing this case or, alternatively, (2) transferring the venue of this case to the Central District of California (and allowing the Central District of California Bankruptcy Court to decide whether the case should be dismissed), and (3) granting Shanghai Lan Cai such other and further relief as this Court may deem just and proper.

---

[29]     It is undisputed that the "*most important*" factor in determining the proper venue is "the economic and efficient administration of the estate." Opp. ¶ 57; *In re Acor*, 510 B.R. 588, 593 (Bankr. W.D. Tenn. 2014) (emphasis added).  Cases are regularly transferred over the debtor's objection where the economic and efficient administration of the estate would be served by transfer.  *See In re Pubco Corp.*, 27 B.R. 139, 141 (Bankr. E.D. Penn. 1983) (transferring case where the location of the debtor and proximity of witnesses meant that the economic and efficient administration of the estate would best be served by transfer, despite the debtor's assets in the instant venue); *In re Highland Capital Management, L.P.*, No. 19-12239 (Sontchi, J.) (Bankr. D. Del. filed Dec. 2, 2019).

Dated:   December 13, 2019

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Zhao Liu*
Frederick B. Rosner (DE # 3995)
Zhao (Ruby) Liu (DE# 6436)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Tel.: (302) 777-1111
Email:  rosner@teamrosner.com
liu@teamrosner.com


-     and     -

**KOBRE & KIM LLP**

Daniel J. Saval, Esq.
Daniel.Saval@kobrekim.com
John Han, Esq.
john.han@kobrekim.com
Dong Ni (Donna) Xu, Esq.
Donna.Xu@kobrekim.com
800 Third Ave, Floor 6
New York, NY 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Counsel for Shanghai Lan Cai Asset Management Co, Ltd.*