# EXHIBIT 3

Next →
Adapting for China? Winning Brands Don't Seek …

Menu

Menu
Explore



Bilateral Relations    Policy & Regulations    Politics

# Trending Toward Reciprocity: Enforcement of US Judgments in China

Landmark cases provide glimmers of hope in the absence of a formal policy of bilateral legal reciprocity.

Qing Di and Karen King on September 6, 2019

Next →
Share
Tweet
Adapting for China? Winning Brands Don't Seek
Menu

Despite the heightened China-US frictions under the Trump administration, recent court decisions in China suggest an increase in deference and reciprocity between Chinese and US courts. Parties who have prevailed in the US courts in cases involving Chinese defendants may be able to enforce those judgments in China.

## Chinese legal requirement to enforce foreign judgment

China's legal system is based primarily on the model of civil law, in contrast to the United States' common law model. This means that, in China, the judgment of one court is not typically binding on other courts (including its lower courts). However, prior judgments serve as important reference for future judgments in similar matters, and courts try to avoid inconsistent judgments on the same or similar matters.

According to the applicable PRC laws and judicial interpretations, a foreign court's judgment must satisfy two requirements in order to be recognized and enforced in China: (a) it must be in compliance with the applicable bilateral treaty or international convention, or, if there is no such treaty or convention, the principle of reciprocity; and (b) it must not violate the primary principles of PRC laws or sovereignty, security, and social or public interests.

At the moment, China has not signed any bilateral treaty with the United States regarding reciprocity. Nor is there any applicable international convention joined by both China and the United States. As a result, whether or not there is a reciprocal relationship with respect to court judgments is the primary factor in determining whether a US judgment will be recognized and enforced in China.

The existing Chinese laws and regulations do not provide a uniform standard on how to determine the existence of a reciprocal relationship. It is generally believed that Chinese courts adopt a strict "*de facto* reciprocity" standard in

Case 19-12220-KBO    Doc 148-3    Filed 12/13/19    Page 4 of 8

Next
Adapting for China? Winning Brands Don't Seek

Menu

judicial practice, *i.e.*, Chinese courts will consider recognizing reciprocity between the two countries only if the requesting country has previously enforced Chinese judgments.

## 2009 Robinson Case

In August 2009, a federal district court in California enforced a civil judgment from the *Hubei High People's Court*, the first time that a US court ever enforced a Chinese judgment.

The case involved two Chinese companies, *Hubei Gezhouba Sanlian Indus. Co.* and *Hubei Pinghu Cruise Co., Ltd.*, which bought and operated helicopters manufactured by a California company *Robinson Helicopter Co.*. After one of the helicopters crashed into the Yangtze River killing three people, the Chinese companies sued Robinson for negligence, strict liability, and breach of implied warranty in the *California Superior Court*, but Robinson moved to dismiss the case, arguing that the Chinese courts should rule on the case. The California state court granted Robinson's motion. The Chinese companies then sued Robinson in the Hubei Court and the court ruled in their favor, granting a judgment against Robinson for approximately $900,000 plus interest.

Robinson failed to pay the Hubei judgment. On March 24, 2006, the Chinese companies then started a new action in California federal court to collect the judgment. Almost one year later, the court granted summary judgment in favor of Robinson on the grounds that the statute of limitations had expired before the Chinese lawsuit was filed. The Chinese companies appealed the judgment to a US appellate court, which ruled that the PRC action was not barred by the statute of limitations, and that "there was no basis for finding that enforcement of the PRC judgment would violate California's public policy against stale claims." In August 2009, judgment was issued in favor of the Chinese companies, enforcing the Hubei judgment. Robinson moved for a new trial, but that request was denied.

5345 : Wuhan Case
Adapting for China? Winning Brands Don't Seek ...

Next →

Menu

Almost five years after the federal district court ruled against Robinson, petitioner Liu Li filed a lawsuit in California state court alleging breach of an Equity Transfer Agreement and fraudulent misappropriation of $125,000 by respondents Tao Li and Tong Wu. The respondents did not show up and a default judgment was issued in favor of Liu Li. Thereafter, Liu Li sought to enforce the California judgment in the *Wuhan Intermediate People's Court, PRC*, where Tao Li and Tong Wu resided.

Two years later, The *Wuhan Intermediate Court* enforced the judgment of the California court on the grounds that there has been reciprocity between China and the United States, citing the Robinson case. This was the first time a Chinese court had enforced a US judgment, drawing wide attention at the time, including coverage on the website of China's *Supreme People's Court*.

---

 The Wuhan Case involved unique facts because there were many connections with China, all parties were Chinese citizens, and the respondents lived and owned real property in Wuhan.

Although the Wuhan Case signaled a positive attitude of Chinese judicial authorities in finding reciprocity between China and the United States, it left some open questions. In particular, the Wuhan Case involved unique facts because there were many connections with China: all parties were Chinese citizens, and the respondents lived and owned real property in Wuhan. These Chinese connections may have made the *Wuhan Intermediate Court* more receptive to the judgment against the respondents.

The respondents of the Wuhan Case did not present a key argument—that there is no general judicial practice throughout the United States with respect to judgments from Chinese courts. In other words, one California federal court

Next →
Adapting for China? Winning Brands Don't Seek ...

Menu

decision cannot represent all US courts, particularly given the country's parallel states and federal court systems.

## 3.2. Shanghai Case

Most recently, the issue of enforcement of a US judgment was raised in a case before a Shanghai intermediate court. The case arose from a dispute between an Illinois company that sued a US individual over the individual's payment obligations under an agreement reached between them. The Illinois federal district court ordered the individual to pay $2 million, but the individual failed to comply.

Because the individual had assets in China, held a position in a Chinese company, and received payments from that company, the Illinois company applied to a Shanghai intermediate court for recognition and enforcement of the Illinois judgment, arguing that there has been reciprocity between China and the United States because most US states (including Illinois) have adopted the *Uniform Foreign-Country Money Judgments Recognition Act* (the "UFMJRA") and Chinese monetary judgments are usually enforced under that Act. US courts have also made several decisions that enforce Chinese judgements since the 2009 Robinson case.

In contrast, the individual argued that there is no established reciprocity between China and the United States because the United States does not have a general practice for enforcing Chinese judgements, and the judicial approach varies by state. The judgment of the Illinois court was on motion for summary judgment, a legal concept which is inconsistent with the basic principles of Chinese laws. Lastly, the individual argued that there is no need to recognize and enforce Illinois judgment in China, because the dispute has nothing to do with China.



The Shanghai court found that US court have enforced civil and commercial Chinese judgment multiple times, and

Next → Adapting for China? Winning Brands Don't Seek …

Menu

In September 2018, the Shanghai intermediate court issued a Written Civil Ruling recognizing and enforcing the Illinois judgment. The Shanghai court found that US courts have enforced civil and commercial Chinese judgments multiple times, and therefore, based on reciprocity, Chinese courts may enforce the Illinois judgment. Notably, the court did not try to identify the differences in legislative and judicial systems among various states in the United States, or between state and federal courts.

The Shanghai court further found that the Illinois judgment should be examined in accordance with the local laws and the summary judgment procedure was consistent with US laws. It did not give any special consideration to the presence (or absence) of the factual connection with China (*e.g.*, whether the parties have Chinese citizenship). Finally, the court determined that the Illinois judgment did not violate any basic principles of Chinese laws, nor did it violate China's state sovereignty, national security, or public interests.

This ruling is final and not appeal-able. Reportedly, it is the first time that a Chinese court has recognized and enforced a US federal court's judgment.

– – –

While China's economic development is shifting from capital imports to capital exports and there has been an increasing number of disputes arising from international trade and investment, Chinese courts are becoming more open to recognizing and enforcing foreign judgments. With respect to the United States, or other countries that have not entered into any relevant bilateral treaty with China or participated in any international convention, Chinese courts have nonetheless been willing to recognize a reciprocal relationship.

Next
Adapting for China? Winning Brands Don't Seek

Menu

The *Supreme People's Court* is preparing a judicial interpretation (which is a statutory source of law in China) that clearly defines specific issues regarding recognizing and enforcing foreign court judgments. The current draft of the judicial interpretation also loosely provides for the determination of a reciprocal relationship. For example, it does not strictly require that a requesting country should first enforce the judgment of a Chinese court. A Chinese court may decide that a reciprocal relationship exists between China and the requesting country if it deems that the judgment of a Chinese court will be recognized and enforced in the requesting country under the same circumstances according to laws of the requesting country.

There is reason to believe that the trend of Chinese courts recognizing and enforcing US judgments on the basis of reciprocity will continue. This is good news for US companies in commercial disputes against defendants that have assets in China. On the flip side, defendants in commercial disputes in the United States who have assets in China should treat the US litigation risk seriously.

*This article is not intended to provide legal advice, and no legal or business decision should be based on its content.

*Qing Di is a Partner in JunHe LLP's Shanghai office. His major practice areas are dispute resolution (commercial litigation and arbitration), competition law, employment law and enforcement of foreign judgments/arbitral awards in China.*

 *Karen R. King is Counsel at Paul, Weiss, Rifkind, Wharton & Garrison LLP. She has extensive experience handling a wide range of complex commercial litigation, including matters involving claims of securities fraud, breach of contract, violations of US economic sanctions or anti-money laundering laws, breach of fiduciary duty, ERISA violations, employment discrimination, and constitutional violations.*

Posted in: Bilateral Relations, Policy & Regulations, Politics, Top Story