UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Yueting Jia, | ) ) ) | Case No. 19-12220-KBO |
| Debtor. | ) ) ) | |

**UNITED STATES TRUSTEE'S MOTION FOR AN ORDER
DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), through his counsel, moves the Court for entry of an order pursuant to 11 U.S.C. § 1104(a) directing the appointment of a chapter 11 trustee (the "Motion") and respectfully represents as follows:

**I. PRELIMINARY STATEMENT**

1. The appointment of a trustee under 11 U.S.C. § 1104 is required to take control of the estate of Yueting Jia (the "Debtor"), an individual chapter 11 petitioner who has failed to uphold his fiduciary duty to the estate by engaging in dishonest behavior, pre and post-petition, and who has demonstrated an inability to manage his estate as an individual debtor-in-possession. A chapter 11 trustee will be an independent and disinterested person who can investigate the Debtor's finances and administer the estate for the benefit of the creditors. The facts and circumstances that support the appointment of a trustee include the following:

- The Debtor has taken measures to frustrate creditors by voluntarily filing for bankruptcy in this Court where the Debtor's connection to the venue is an LLC formed by the Debtor only 87-days prior to filing the petition in the instant case;

- Three days prior to filing the petition in this case, the Debtor took steps to create a secured claim against his personal bankruptcy estate in favor of a

1

- company in which he has an interest, Pacific Technology Holding, LLC. It appears that four days post-petition, he then completed the transaction by providing a secured promissory note to the entity in the amount of $2,687,628[1];

- The Debtor obscures his financial affairs, by not disclosing the amounts and sources of income used to pay his day-to-day expenses, not fully disclosing the true value of his various assets, and incorrectly scheduling his secured debts;

- The Debtor has sought the Court's authorization to retain an individual to serve as his "CRO", apparently subject to his control, when what is needed is a true fiduciary to represent his bankruptcy estate;

- The Debtor has retained and received the services of other professionals in the present case without first seeking this Court's authorization as required by statute, and instead arranging for their payment through one or more other entities that he apparently controls;

- The Debtor has failed to make any significant progress in his Chapter 11 case to date, having initially filed this case as a so-called "pre-packaged bankruptcy", that has proven to be little more than an effort to obstruct the collection efforts of the most active creditors.[2]

2. Based on the Debtor's untrustworthiness, mismanagement of his financial affairs, and breach of his fiduciary responsibilities, the Court should direct the appointment of an independent disinterested person to serve as chapter 11 trustee under Section 1104(a)(1) of the Bankruptcy Code. Alternatively, the Court should appoint a chapter 11 trustee pursuant to Section 1104(a)(2) of the Bankruptcy Code because it is in the best interest of the creditors.

---

[1] As discussed in paragraph 16, herein, there appears to be multiple versions of this note, a couple of which bear earlier dates.

[2] Prior to petitioning for chapter 11 Bankruptcy, the Debtor initiated an out-of-court Exchange Offer and Prepackaged Plan (Dkt. 5 at 1). The Confidential Disclosure Statement, dated October 10, 2019, solicited votes on the Prepackaged Plan of Reorganization. Dkt. 5 at 1.

## II. JURISDICTION

3.     Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. §157-(b)(2), this Court has jurisdiction to hear this motion.

4.     Under 28 U.S.C. § 586, the U.S. Trustee is generally charged with overseeing the administration of chapter 11 cases filed in this District, and has standing to request the relief sought in this matter under § 307 of the Bankruptcy Code.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").  In addition, 11 U.S.C. § 1104(a) specifically authorizes the U.S. Trustee to seek the appointment of a chapter 11 trustee.

## III. BACKGROUND

*Procedural History*

5.     On October 14, 2019, the Debtor filed his chapter 11 petition. Dkt. No. 1.  On the same date, the Debtor filed a Chapter 11 Prepackaged Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan," Dkt. 4) along with an accompanying disclosure statement (the "Disclosure Statement," Dkt. 5) .[3]

---

[3] The U.S. Trustee appointed an Official Committee of Unsecured Creditors on October 25, 2019.

6. On October 17, 2019, the Debtor filed his Schedules of Assets and Liabilities and Statement of Financial Affairs ("Statements and Schedules"). Dkt. 28. The assets disclosed in the Statements and Schedules include the following:

| a. | $6.5 million[4] of Bonds, Mutual Funds, or Publicly Traded Stocks |
| b. | 100% ownership of West Coast, LLC[5] |
| c. | an unquantified Interest in Pacific Technology Holding, LLC |
| d. | 100% ownership of Le Le Holdings, Ltd.[6] |
| c. | 100% ownership of Ford Field International Limited[7] |
| e. | 100% ownership of Champ Alliance Holdings Limited[8] |

7. The Summary of Schedules discloses secured claims aggregating $1,209,437,065.82 and unsecured claims totaling $2,564,019,294.73.

8. In January 2018, arbitration stemming from the Debtor's Chinese business affairs resulted in an $11-million award in favor of Shanghai Lan Cai Asset Management Co. Ltd. ("Shanghia Lan Cai"), a creditor in the instant case. Dkt. 89 at 13.

9. In April 2019, the District Court for the Central District of California reduced the arbitration award to judgment. *Shanghia Lan Cai Asset Management Co., Ltd., v. Jia Yueting*, Case No. 2:18-cv-10255 (C.D. Cal), at Dkt. 35.

---

[4] Dkt. No. 28 at 12 (page number references are to the page numbers of the docket entry unless otherwise noted)
[5] West Coast, LLC was formed on July 23, 2019. Page 126 of the Statements and Schedules discloses that on July 31, 2019, the Debtor entered into a nominee agreement with Lian Bossert, who is also listed as a creditor. Page 102 of the Disclosure Statement indicates that Bossert is the record holder of the shares, while: "YT retains the economic interest with respect to all of the membership interests of West Coast." The Debtor testified at his Section 341 Meeting of Creditors that Bossert is the daughter of one of the Debtor's entities' employees, Chaoying Deng.
[6] Dkt. 28 at 13
[7] Id.
[8] Id.

*The Debtor's Efforts to Frustrate Creditors Prior to Bankruptcy*

10.     The Debtor is a Chinese national who testified at his Section 341(a) Meeting of Creditors held on December 6, 2019, that he left China in July 2017 after the Chinese government froze hundreds-of-millions-of-dollars of the Debtor's assets and placed him on a restricted-flight list prohibiting his departure from China.

11.     After leaving China, the Debtor took up residence in California where he focused primarily on developing electric vehicles through Faraday&Future, Inc. ("Faraday"),[9] a company the Debtor formed and served as its Chief Executive Officer.[10]  Dkt. No. 94 at 26.[11]

12.     Within months of the judgment being entered in favor of Shanghai Lan Cai Asset Management Co., Ltd., and only 87-days prior to the petition date, the Debtor formed West Coast, LLC ("West Coast"), in the State of Delaware.[12]  The Debtor then transferred preferred-units of Pacific Technology Holding, LLC ("Pacific Technology"), Faraday's parent company, to West Coast.  The Debtor holds an unquantified interest in Pacific Technology (Dkt. 28 at 12), thereby making West Coast the Debtor's only apparent tie to the District of Delaware for purposes of venue.

---

[9] Faraday&Future, Inc., was incorporated in California in May 2014. California Secretary of State, *available at* https://businesssearch.sos.ca.gov/CBS/Detail (last visited Dec. 11, 2019).

[10] The Debtor's Statements and Schedules state the Debtor has been employed by Faraday since August 2017 (Dkt. 28 at 111) and list the Debtor as Faraday's "Chief Product User Officer" (Dkt. 28 at 97).  The Debtor's Amended Disclosure Statement, however, states the Debtor founded Faraday in 2014 and served as its Chief Executive Officer since Faraday's inception. Dkt. 95 at 26.

[11] The Debtor currently holds an indirect equity interest in Faraday.  Faraday is wholly and indirectly owned by Smart King. Ltd.  Dkt. 5 at 12.  West Coast, LLC owns 6.6% of Smart King (Dkt. 28 at 13) and Pacific Technology holds 10% Smart King (Id.). The Debtor owns 100% of West Coast and holds an equity interest in Pacific Technology. Dkt. 28 at 13.

[12] The Debtor formed West Coast, LLC, in the State of Delaware on July 23, 2019.  Delaware Department of State: Division of Corporations, *available at* https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (last visited Dec. 11, 2019).

13. Meanwhile, to collect on its judgment, Shanghai Lan Cai began post-judgment discovery efforts against the Debtor. After the Debtor refused to cooperate in the post-judgment discovery, the District Court ordered him to appear for an examination on September 11, 2019. *Shanghia v. Yueting*, Case No. 2:18-10255 (C.D. Cal.) at Dkt. 63. Pursuant to a joint stipulation, the District Court continued the examination until October 17, 2019. *Id.* at Dkt. 82. The Debtor initiated the instant case before the scheduled examination could take place.

14. After ordering the Debtor to appear for examination, the District Court enjoined him from transferring, reducing, concealing, or otherwise encumbering his assets up to the value of the court's above-referenced judgment. *Shanghia v. Yueting*, Case No. 2:18-10255 (C.D. Cal.) at Dkt. 79.[13] A copy of this order is attached as Exhibit "A" hereto.

15. Despite the injunction order, on October 11, 2019, the Debtor filed a UCC-1 Financing Statement in favor of Pacific Technology with the California Secretary of State. The UCC-1 encumbered all of the Debtor's assets as of October 11, 2019, three-days before the date of petition in the instant case. A copy of this UCC-1 is attached as Exhibit "B" hereto.

***The Debtor's Fraudulent Transfer of Assets to An Insider Through A Secured Post-Petition Loan***

16. The United States Trustees has obtained copies of three distinct promissory notes memorializing the debt secured by the UCC-1 referenced in paragraph 15 above (*i.e.*, the "Loan"). The first promissory note, dated October 11, 2019, memorializes a loan in the amount of $2,677,629[14]; the second promissory note, dated October 13, 2019, memorializes a loan in the

---

[13] On April 7, 2019, the Federal District Court for the Central District of California, the court entered judgment against the Debtor in the amounts of $83,337,726, plus pre and post-judgment interest, and $32,510,958, plus post-judgment. Shanghia Lan Cai Asset Management Co., Ltd., v. Jia Yueting, Case No. 2:18-cv-10255 (C.D. Cal), at Dkt. 35.

[14] The United States Trustee obtained a copy of the promissory note dated October 11, 2019, from Debtor's counsel.

amount of $2,732,269 (Dkt. 141-1 at 2); and the third promissory note, dated October 18, 2019, four-days after the date of petition, memorializes a loan in the amount of $2,687,628.[15]  A copy of each promissory note is attached as Exhibit "C-1, 2, and 3" hereto.  The UCC-1 Financing Statement referenced in paragraph 15 above, which the Debtor filed pre-petition, secured the Loan.

17.    This Court has not authorized the Debtor or his estate to borrow funds from Pacific Technology, or any other entity subsequent to the filing of the Petition.

18.    The Debtor has disclosed that he has an unquantified interest in Pacific Technology (Dkt. 28 at 13), thereby making Pacific Technology an insider under 11 U.S.C. 101(31).   In his Amended Disclosure Statement, the Debtor further states he holds a "right to direct" Pacific Technology (Dkt. 94 at 10), that he holds 20% of Pacific Technology's preferred units through West Coast (Id. at 13 and 24), and that Pacific Technology is an affiliate ("Ultimately, the Debtor determined that obtaining financing from Pacific Technology, an affiliate of the Debtor…" Id. at 34).

***The Debtor's Failure to Maintain Open and Honest Disclosures Regarding the Source of Income Used to Pay Personal Expenses, the Value of his Assets, and His Secured Debts.***

19.    In his Schedule I (D.E. 28 at pages 97-98) and in his Statement of Current Monthly Income (D.E. 10), the Debtor disclosed gross monthly income of $93,810.  In his Schedule J (D.E. 28 at pages 99-100), the debtor disclosed $7,680 of personal expenses, $42,000 for the support of his parents and children, and another $25,000 per month for the payment of lawyers, accountants, consultant and business entertainment.  The U.S. Trustee was provided

---

[15] The United States Trustee obtained a copy of the promissory note dated October 18, 2019, from a creditor after the Debtor's Section 341(a) meeting of creditors.

with six months of bank records for the accounts listed in the Schedules. These records contained no evidence of the payment of personal expenses.

20. At his Meeting of Creditors the Debtor testified that Pacific Technology or Faraday reimburses his expenses. Subsequent to the Meeting of Creditors the U.S. Trustee was provided with additional records. The additional records contain no evidence that regular monthly expenses such as telecommunications and utility expenses are paid by the Debtor. The additional payments total $14,218.49, or more than $2,300 per month for the six months preceding the Petition Date. Payment of personal expenses by Pacific Technology is income to the Debtor which he is required to disclose.

21. In his Statements and Schedules, the Debtor disclosed sole ownership of the entities listed in paragraph 6 above, including: 100% of Le Le Holdings, Ltd.; 100% of Ford Field International Limited; and 100% Champ Alliance Holdings Limited (Dkt. 28 at 12), but the Debtor attached no value to these assets.

22. In the Statements and Schedules, the Debtor listed the secured debt in favor of Pacific Technology as having arisen in 2018 when it was actually entered into 3 days prior to the Petition date herein, at the earliest. Dkt. 28 at 27. At the Meeting of Creditors, the Debtor testified that scheduling the loan as having been incurred in 2018 instead of 2019 was an inadvertent error.

### *The Debtor's Application to Retain A Chief Restructuring Officer*

23. On November 27, 2019, the Debtor filed a motion to retain PQBDN, LLC ("PQBDN") as a Chief Restructuring Officer *Nunc Pro Tunc* to November 17, 2019. Dkt. 104. On December 11, 2019, the U.S. Trustee objected to the PQBDN retention (D.E. 131) because the Debtor is an individual whose affairs are not managed by corporate officers. Further, the

U.S. Trustee argued that the retention of a financial professional is subject to the requirements of Sections 327 and 330, as well as the disclosure requirements of Federal Rule of Bankruptcy Procedure 2014.

*The Debtor Retained Professionals Without this Court's Authorization.*

24. At the Section 341 Meeting, the Debtor testified that he employed a team of approximately 8 to 9 professionals, including accountants, who have assisted the Debtor with post-petition matters relating to his bankruptcy case. As of December 10, 2019, no applications have been filed with the Court seeking retention of any of these professionals or disclosing any of their connections with the Debtor or his businesses.

*This Case Is Not a Pre-packaged Case*

25. This case was commenced on October 14, 2019. Also on that date, the Debtor filed his Plan and accompanying Disclosure Statement. A hearing on the Debtor's motion to schedule a combined hearing to consider, *inter alia*, approval of the Disclosure Statement and confirmation of the Plan (the "Scheduling Motion") was originally scheduled for November 5, 2019, but was subsequently rescheduled to November 15, 2019. On November 8, 2019, the Debtor withdrew the Scheduling Motion. On November 15, 2019, the Debtor filed an Amended Disclosure Statement relating to the Plan ("Amended Disclosure Statement D.E. 94) and noticed the hearing on the same for December 18, 2019. A motion to approve the Amended Disclosure Statement and to approve various solicitation procedures was filed on December 4, 2019.

26. The Amended Disclosure Statement is not materially different from the Disclosure Statement. Whereas the Disclosure Statement was self-styled as a prepackaged plan but otherwise had the appearance and form of a securities offering, the Amended Disclosure

Statement describes the procedures and requirements to confirm the Plan as a Chapter 11 plan and has reorganized the factual disclosures, but the bulk of the disclosures are essentially unchanged from those contained in the Disclosure Statement.

## ARGUMENT

### A. *The Appointment of a Trustee is Necessary under Section 1104 of the Bankruptcy Code*

27.     Under Section 1104(a), an order for the appointment of a chapter 11 trustee for cause is mandatory where the court finds (1) fraud, dishonesty, incompetence, or gross mismanagement of the debtor's affairs by current management, or (2) when the appointment is in the interest of the parties. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp.* (*In re W.R. Grace & Co.*), 285 B.R. 148, 158 (Bankr. D. Del. 2002).

28.     Although the Bankruptcy Code does not define "cause," the list of examples provided in Section 1104(a)(1) is non-exhaustive. *See In re Bellevue Place Associates,* 171 B.R. 615, 622-23 (Bankr. N.D. Ill. 1994). That is, cause for the appointment of a chapter 11 trustee can be something other than the examples listed in Section 1104(a)(1). *See* 11 U.S.C. § 102(3) ("includes" and "including" are not limiting). The court makes determinations of cause on a case-by-case basis, and such determinations are within the court's discretion. *See In re Sharon Steel Corp.*, 871 F. 2d. 1217, 1226 (3d Cir. 1989). However, if the court finds that cause does exist, the appointment of a chapter 11 trustee is mandatory. *Id.* at 1226.

29.     Further, under Third Circuit case law, a party moving for the appointment of a trustee under Section 1104(a) must establish the need for a trustee by clear and convincing evidence.[16] *See In re Marvel Entertainment Group, Inc.,* 140 F. 3d 463, 471 (3rd Cir. 1998); *see*

---

[16] The U.S. Trustee believes that the appropriate burden of proof should be a preponderance of the evidence. Although some courts have held that ground for the appointment of a trustee must

*also In re G-Holdings, Inc.*, 385 F. 3d 313, 320 (3d Cir. 2004). However, the Court is not required to hold a full evidentiary hearing. *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990).

### B. A Chapter 11 Trustee Should Be Appointed For Cause Under Section 1104(a)(1)

30. Cause exists to appoint a chapter 11 trustee under Section 1104(a)(1) of the Bankruptcy Code because the Debtor failed to uphold his fiduciary duties to the estate. Specifically, the Debtor has failed to maintain open and honest disclosure with the Court and creditors, and has taken or has proposed to take actions that could damage the estate or hinder its successful reorganization.

31. A debtor-in-possession's failure to fulfill its fiduciary duties may constitute cause to appoint a chapter 11 trustee. *See In re Marvel Entertainment Group, Inc.*, 140 F. 3d at 474 (if debtor-in-possession fails to discharge its fiduciary duties, '"Section 1104(a)(1) commands that the stewardship of the reorganization efforts must be turned over to an independent trustee."' (quoting *In re V. Savino Oil & Heating Co.,* 99 B.R. 518, 526).

32. The fiduciary duties of a debtor-in-possession include maximizing the value of the estate assets for distribution to creditors;[17] maintaining open and honest disclosure to the

---

be established by "clear and convincing" evidence, those courts typically rely on decisions pre-dating *Grogan v. Garner*, 498 U.S. 279, 286 (1991). *See, e.g., In re G-I Holdings, Inc.,* 385 F. 3d 313 93d Cir. 2004) (relying on *In re Sharon Steel Corp.,* 871 F. 2d 1217 (3d Cir. 1989)). In *Grogan,* the Supreme Court ruled that when Congress does not specify the burden of proof in the Bankruptcy Code, the burden should generally be preponderance of the evidence: Congressional "silence is inconsistent with the view that Congress intended to require a special, heightened standard of proof." 489 U.S. at 286. Thus, the better view – and the one adopted in more recent cases – may be that *Grogan* applies and motions to appoint a trustee are governed by a preponderance of the evidence standard. *Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1934 (2016) and *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014). *See In re Keeley and Grabanski Land P'ship,* 455 B.R. 153 162-63 (8th Cir. B.A.P. 2011); *Tradex Corp. v. Morse,* 339 B.R. 823, 829-23 (D. Mass. 2006)

[17] See In re Mushroom Transportation Co., Inc. 382 F. 3d 325, 339 (3d Cir. 2004)

Court and creditors;[18] filing monthly operating reports;[19] refraining from actions that could damage the estate or hinder successful reorganization;[20] and being vigilant and attentive in advancing the estate's interest.[21]

33. The Debtor has violated his fiduciary duty by entering into a post-petition loan without first obtaining court approval therefor. The Debtor, four days after the Petition Date, signed a promissory note of approximately $2.7 million in favor of an insider entity, Pacific Technology Holding, LLC. The post-petition note is secured by the pre-petition UCC-1 recorded three days prior to the Petition Date. Moreover, at the time he granted the security interest in his personal assets to Pacific Technology Holding, LLC, the Debtor was under a Court Order to not encumber or transfer his assets.

34. The Debtor has failed to maintain open and honest disclosure of his financial affairs, as demonstrated by numerous examples set forth in the following paragraphs.

35. Although the Debtor purports to have extensive assets, there are no independent third-party valuations of any of his assets that he can provide to creditors or parties in interest. The Debtor does not propose to provide any third-party valuations until after his Plan is confirmed as set forth on page 135 of the Disclosure Statement ("The Trustee shall engage an independent valuation firm to conduct a valuation of the Trust Assets as of the date of their

---

[18] *See In re Marvel Entertainment Group, Inc.*, 140 F. 3d at 474. *See also Tradex Corp. v. Morse,* 339 B.R. at 833 ("One of the most fundamental and crucial duties of a debtor-in-possession upon the filing a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization.") (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 526).
[19] *See Matter of Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991).
[20] See In re Marvel Entertainment Group, Inc., 140 F. 3d at 471 (citing Petti v. New England Mort. Servs., 182 B.R. 64, 69(D. Me. 1995).
[21] *See In re Martin,* 91 F. 3d 389, 394 (3d Cir. 1996) (citing *In re Baird*, 112 F. 960, 960 (E.D. Pa. 1902)

contribution to the Trust"). The Debtor granted a UCC-1 security interest to his affiliate, Pacific Technology, three days prior to the Petition Date. He then listed the debt in his Schedules as having been incurred on October 11, 2018 instead of October 11, 2019.

36. The Debtor has misstated his income and expenses to the extent Schedule J evidences proposed payment of professionals such as attorneys, accountants and other consultants post-petition without first complying with the requirements and procedures of Bankruptcy Code Sections 327, 330 and 331, this also evidences an attempt to violate the Debtor's duties as a debtor-in-possession.

37. The Debtor testified that he has retained a "team" of 8 to 9 professionals, including accountants, without seeking authorization from this Court where applicable. The Debtor testified at his Section 341 meeting that he could not identify all of these persons. The Debtor testified that various professionals employed by one or more of his business entities had prepared portions of his Statements and Schedules. The Debtor further stated he did not directly pay these professionals for their services, but instead has offered them consideration in the form of loans, *i.e.,* deferred compensation. Thus far, the Court record reflects the Debtor has retained no professionals in this case other than counsel, the noticing agent and the proposed Chief Restructuring Officer.

38. The Debtor's proposed retention of a CRO is also problematic, as contrary to his fiduciary responsibilities. Clause 7.6 of the Consultancy Agreement with PQBDN provides that the Chief Restructuring Officer irretrievably destroy documents upon the Debtor's request: "…any information relating to the business of YT or the Group…". The pursuit of such authorization is entirely contrary to the Debtor's fiduciary duty of maintaining open and honest disclosure with the Court and creditors in this case. Also, by seeking an advance payment of

$200,000 for the Chief Restructuring Officer while the estate appears to be insolvent, the Debtor has failed to uphold the fiduciary duty of refraining from actions that could damage the estate or hinder a successful reorganization.  The Debtor's Statements and Schedules disclose cash assets in the amount of $110,634.  Dkt. 28 at 11-12.  Additionally, portions of this amount appear to be frozen abroad by various governmental entities, or have been claimed exempt by the Debtor.

39.     The U.S. Trustee opposes the Debtor's retention of the so-called "CRO" and asserts that a truly independent and disinterested person – a chapter 11 trustee – is required to take control of the Debtor's estate for the benefit of his creditors and other parties in interest.

40.     The facts described herein require the appointment of a chapter 11 trustee under Section 1104(a)(1) and also support the appointment of a chapter 11 trustee in the best interest of creditors pursuant to Section 1104(a)(2).

### C. A Chapter 11 Trustee Should Be Appointed Under Section 1104(a)(2)

41.     Section 1104(a)(2) mandates the appointment of a chapter 11 trustee "if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate…"  Courts have construed Section 1104(a)(2) as establishing a "flexible standard" for the appointment of a trustee.  *See, e.g., In re Sharon Steel Corp.,* 871 F. 2d at 1226; *see also In re Ionosphere Clubs, Inc.,* 113 B.R. at 168.  The statute gives the Court "particularly wide discretion" to appoint a trustee, even if no cause exists.  *In re Bellevue Place Associates*, 171 B.R. at 623; *accord In re Oklahoma Refining Co.*, 838 F. 2d 1133, 1136 (10th Cir. 1988); *In re Sharon Steel Corp.*, 871 F. 2d at 1226.

42.     Courts have considered the following factors in determining if the appointment of a chapter 11 trustee is in parties' best interest under Section 1102(a)(2): (a) the trustworthiness of the debtor; (b) the debtor's past and present performance and prospects for the debtor's

rehabilitation; (c) the confidence or lack thereof of the business community and of the creditors in the present management; and (d) the benefits derived by the appointment of the trustee, balanced against the cost of the appointment. *See In re Ionosphere Clubs, Inc.*, 113 B.R. at 168 (citing cases).

43. Here, the appointment of a chapter 11 trustee is in the best interest of the Debtor's estate and its creditors. As described above, the Debtor has consistently engaged in and untrustworthy behavior that, if left unchecked, will hinder the estate's successful reorganization and deny its creditors any possibility of recovery. His behavior took place pre-petition and this conduct has continued post-petition. Moreover, the Debtor commenced this case with the promise of a "pre-packaged" bankruptcy, yet the case is now more than two months old, there is a serious venue challenge, the most active creditor seeks dismissal of the case so it may continue its pre-petition collection efforts, and the case will only have its first hearing on December 18, 2019. The U.S. Trustee submits that the Debtor has made no meaningful progress in the case, and control of the estate needs to be placed in the hands of an independent trustee who will faithfully exercise the fiduciary responsibilities owed to all creditors, to the benefit of those creditors and all parties in interest.

WHEREFORE the U.S. Trustee requests that this Court issue an order granting this motion.

//

//

//

Dated: December 17, 2019
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
By: /s/_____
David Buchbinder, Esq.
Trial Attorney
Office of the United States Trustee
844 King Street, Ste. 2207
Wilmington, DE 19801
Office: (302) 573-6541
Fax: (302) 573-6497