Exhibits "A – C-3"

Exhibit "A"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF
CALIFORNIA

| | | |
|---|---|---|
| | Priority | ____ |
| | Send | ____ |
| | Enter | ____ |
| | Closed | ____ |
| | JS-5/JS-6 | ____ |
| | Scan Only | ____ |

AMENDED **CIVIL MINUTES - REDACTED**

**CASE NO.:  2:18-CV-10255 SJO (MRWx)**          **DATE: September 3, 2019**

**TITLE:  Shanghai Lan Cai Asset Management Co., Ltd. v. Jia Yueting**
========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                              Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                    Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PETITIONER'S APPLICATION FOR PRELIMINARY INJUNCTION** [Docket No. 55]; **ORDER DENYING PETITIONER'S EX PARTE APPLICATION AS MOOT** [Docket No. 72]

This matter comes before the Court on Petitioner Shanghai Lan Cai Asset Management Company Limited's ("SLCAM" or "Petitioner") Motion for Preliminary Injunction ("Motion"), filed August 1, 2019. Respondent Jia Yueting ("Respondent" or "Jia" or "Yueting") filed an Opposition to the Motion on August 13, 2019. Petitioner filed a Reply on August 20, 2019. The Court found this matter suitable for oral argument and vacated the hearing set for September 3, 2019. For the following reasons, the Court **GRANTS** the Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This action involves Petitioner's effort to confirm an arbitral award issued by the Beijing Arbitration Commission ("BAC"). (Petition To Enforce Foreign Arbitral Award ("Petition"), ECF No. 1.) The BAC determined that Respondent is liable to Petitioner on certain loans that had not been repaid. BAC ordered Petitioner to repay an amount totaling over 83,000.000.00 RMB (Chinese Currency). (Petition at 1.)

A detailed summary of the facts at issue in the arbitration is unnecessary for purposes of the instant Motion. At the outset of this litigation, this Court issued a temporary restraining order, "enjoining Respondent from transferring, concealing, reducing, encumbering, or otherwise making unavailable the Attachment Property until SLC's Petition is adjudicated, and a final judgment is reached in this action." (Order Granting Temporary Restraining Order at 5, ECF No. 11.) On March 26, 2019, this Court issued an order confirming the arbitration award. (Order Confirming Arbitral Award, ECF No. 31.) The Court subsequently entered a judgment against Jia. (Judgment, ECF No. 35.)

After this Court entered judgment in this matter, the central issue in this case has become enforcing the judgment against Respondent Jia. Petitioner contends that Respondent has not complied with this Court's judgment and has not displayed any intention to comply with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  __2:18-CV-10255 SJO (MRWx)__          DATE: __August 30, 2019__

judgment.  On May 1, 2019, Respondent filed a motion to alter this Court's judgment, arguing that this Court had employed an erroneous interest rate in calculating the judgment.  (*See* Motion To Alter Arbitral Award, ECF No. 41.)  This Court denied this motion on May 29, 2019. (*See* Order Denying Motion To Alter Judgment, ECF No. 49.)

Petitioner subsequently brought the instant Motion, seeking a preliminary injunction similar to the temporary restraining order that this Court had already issued in the instant case. (*See generally* Mot., ECF No. 55.)  Petitioner asks this Court to issue a preliminary injunction that prevents Respondent from transferring, concealing, reducing, encumbering, or otherwise making unavailable non-exempt assets up to the value of the judgment entered by this Court. (Mot. at 2.)  According to Petitioner, Jia has sought to avoid paying the judgment and has signaled no intention to satisfy his debt to Petitioner.

On August 29, 2019, Petitioner brought a second ex parte application for a temporary restraining order. (*See* Ex Parte Application, ECF No. 72.)  This application seeks to prevent Jia from taking any steps with respect to his beneficial interest in Faraday & Future Inc., pending a ruling on the instant Motion. (Ex Parte Application at 1.)  According to Petitioner, Jia plans to resign as CEO of Faraday & Future, thus hampering Petitioner's ability to collect on its judgment against Jia. (Ex Parte Application at 1.)

These proceedings followed.

II.    DISCUSSION

To obtain a preliminary injunction, Petitioner, the moving party, must show:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005).  The Ninth Circuit also employs a sliding scale test whereby the existence of "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).  "These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." *Big Country Foods, Inc. v. Board of Educ. of the Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir.1989).  Overall, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Petitioner moves for a preliminary injunction under California Code Section 526, which authorizes courts to enter injunctions in numerous circumstances, including "[w]hen . . . a party to the action

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  2:18-CV-10255 SJO (MRWx)**          **DATE: August 30, 2019**

is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party . . . and tending to render the judgment ineffectual." Cal. Civ. Proc. Code § 526(a)(3). Although Respondent argues that this Court cannot issue a post-judgment preliminary injunction under Procedural Code Section 526, this is an incorrect statement of the law. Alongside Federal Rule of Civil Procedure 69(a), California Civil Procedure Code Section 526 vests this Court with broad authority to enforce a final judgment. "The execution of final judgments is governed by Federal Rule of Civil Procedure ("Rule") 69(a), which provides: 'A money judgment is enforced by a writ of execution, unless the court directs otherwise. **The procedure on execution-and in proceedings supplementary to and in aid of judgment or execution-must accord with the procedure of the state where the court is located,** but a federal statute governs to the extent it applies.' Fed. R. Civ. P. 69(a). . . .The [California Code of Civil Procedure] provides procedures for the assignment of assets, **issuance of restraining orders**, and issuance of turnover orders." *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, No. CV07-05808 SJO FFMX, 2009 WL 2213678, at *1 (C.D. Cal. July 9, 2009) (emphasis added).

    A.   Likelihood of Success on the Merits

The Court considers the preliminary injunction factors in turn. As a threshold matter, Petitioner is very likely to prevail on its action to enforce the judgment against Jia. This Court has already upheld the arbitral award issued by the BAC against Jia. Respondent must comply with the judgment issued by this Court. Petitioner's likelihood of success on the merits is very high.

    B.   Irreparable Harm

Petitioner will suffer irreparable harm in the absence of injunctive relief. As the Court held in its prior order on Petitioner's first Ex Parte Application, "Petitioner has made the threshold showing necessary to show irreparable harm in the absence of preliminary injunctive relief. **Respondent Jia's record of paying creditors is poor at best.**" (Order Granting Temporary Restraining Order at 4 (emphasis added).) The Court went on to note that Respondent is subject to other litigation in this district concerning his failure to pay creditors and that Respondent is on the Chinese government list of debt defaulters. (Order Granting Temporary Restraining Order at 4.)

These circumstances have not changed. In fact, since this Court's order on the first Ex Parte Application, Respondent has failed to comply with the judgment of this Court, confirming that Petitioner will suffer irreparable harm in the absence of an injunction. Aside from his lack of compliance with this Court's judgment, Respondent also has not posted a supersedeas bond to stay execution of the judgment. In these circumstances, there is little doubt that Petitioner will continue to suffer irreparable harm – including the loss of a judgment to which it is rightfully entitled – in the absence of preliminary injunctive relief.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   2:18-CV-10255 SJO (MRWx)**          **DATE:** **August 30, 2019**

---

    C.      Balance of Equities and the Public Interest

The Court next considers the balance of equities and the possible harm that a preliminary injunction will cause Jia. Although Jia has a property interest in the property that Petitioner seeks to enjoin, Petitioner has a final judgment against Jia.  Petitioner has the right to collect on this judgment.  This interest outweighs any interest that Respondent may have in his property.

    D.      Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and has no impact on nonparties, the public interest will be at most a neutral factor in the preliminary injunction analysis." *Smith*, 2012 WL 12883909, at \*6 (quoting *Stormans v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009)). Here, the preliminary injunction would only impact Petitioner and Respondent's interests and does not extend to non-parties. Therefore, this factor is neutral.

III.   RULING

The Court **GRANTS** Petitioner's Motion and issues a preliminary injunction, enjoining Respondent from taking any step to transfer, conceal, reduce, encumber, or otherwise make unavailable—either personally or through instructions to another—any non-exempt assets up to the value of this Court's judgment against Respondent.   The property that is subject to this injunction includes:

        1. Jia's beneficial interest in Faraday & Future Inc., of which the immediate owner is FF Top Holding Limited;

        2. Jia's beneficial interest in the property located at                      , of which the immediate owner is Ocean View Drive, Inc.;

        3. Jia's beneficial interest in the property located at                      , of which the immediate owner is Ocean View Drive, Inc.; and

        4. Jia's beneficial interest in the property located at                      , of which the immediate owner is Ocean View Drive, Inc.

Having granted the preliminary injunction, the Court **DENIES** Petitioner's second Ex Parte Application as Moot.

IT IS SO ORDERED.

**Exhibit "B"**

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

**19-7741340450**

**10/11/2019 16:27**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

82802720005    UCC 1 FILING

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

C. SEND ACKNOWLEDGMENT TO:

CT Fulfillment
555 Capitol Mall, Suite 1150
Sacramento, CA 95814
72078299-1
Account 60574850

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Jia | Yueting | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7 Marguerite Drive | Rancho Palos Verdes | CA | 90275 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| Pacific Technology Holding LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1209 Orange Street | Wilmington | DE | 19801 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets of Debtor, whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired, wherever the same may be located.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | | | ☐ being administered by a Decedent's Personal Representative |
| --- | --- | --- | --- |
| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: |
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien   ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor   ☐ Licensee/Licensor |
| 8. OPTIONAL FILER REFERENCE DATA: File with: California - Secretary of State | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

**Exhibit "C-1"**

THIS SECURED PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. IT MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION OR AN EXEMPTION THEREFROM UNDER SAID ACT.

## SECURED PROMISSORY NOTE

$2,677,629.00

October 11, 2019

FOR VALUE RECEIVED, the undersigned, Yueting Jia, an individual and resident of California ("**Issuer**"), HEREBY PROMISES TO PAY to the order of Pacific Technology Holding LLC, a Delaware limited liability company ("**Holder**"), the principal amount of $2,677,629.00 together with interest accrued on the unpaid principal amount of this secured promissory note (this "**Note**"), payable as provided herein.

## ARTICLE I
## TERMS OF PAYMENT

SECTION 1.01. Payments. Payment of the principal amount of this Note or, if less, the aggregate unpaid principal amount of this Note together with interest accrued on the unpaid principal amount shall be made on October 11th 2020(the "**Maturity Date**"). The principal and interest on this Note is payable in lawful money of the United States in immediately available funds at such place as Holder hereof may from time to time designate in writing to Issuer. Whenever any payment hereunder shall be stated to be due on a day other than a business day, such payment shall be made on the next succeeding business day, and such extension of time shall in such case be included in the computation of payment of interest.

SECTION 1.02. Prepayments. Issuer may, on any business day, prepay the then outstanding principal amount of this Note in whole or in part, together with accrued interest to the date of such prepayment on the principal amount prepaid without premium or penalty.

SECTION 1.03. Interest. Interest shall accrue on the outstanding principal amount of this Note at a rate per annum equal to 8.00%. Interest shall be payable in arrears as set forth in Section 1.01 above. Accrued interest shall be compounded annually.

SECTION 1.04. Computations. All computations of interest shall be made on the basis of a year of 365 or 366 days, as the case may be, for the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest is payable.

## ARTICLE II
## EVENTS OF DEFAULT

SECTION 2.01. Events of Default. The following shall constitute "**Events of Default**" under this Note:

1

## ARTICLE III
## SECURITY GRANT

(a) Issuer hereby grants, pledges, assigns, transfers, hypothecates and sets over to Holder a valid, continuing first priority security interest in all of Issuer's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Issuer, would accrue on such obligations, whether or not a claim is allowed against Issuer for such amounts in the related bankruptcy proceeding) (collectively, the **"Obligations"**), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations under the Note are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any party of such payment is avoided or recovered directly or indirectly from Holder as a preference, fraudulent transfer or otherwise. "Collateral" shall include all of Issuer's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the **"Collateral"**):

(i)     all Accounts;

(ii)    all Chattel Paper;

(iii)   all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)    all Documents;

(v)     all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software;

(vi)    all Goods, including Inventory, Equipment and Fixtures;

(vii)   all Instruments;

(viii)  all Investment Property;

(ix)    all Letter-of-Credit Rights and other Supporting Obligations;

(x)     all Records;

(xi)    all Commercial Tort Claims; and

(xii)   all Proceeds and Accessions with respect to any of the foregoing Collateral.

3

(i)    permit Holder, upon reasonable prior notice to inspect Issuer's books and records, including computer files, and to make copies, and to test, inspect, and appraise the Collateral, in order to verify any matter relating to either Issuer or the Collateral.

(ii)    except as otherwise provided in this section, continue to collect, at his own expense, all amounts due or to become due to it under the Accounts. In connection with such collections, Issuer may take (and, upon the occurrence and during the continuance of an Event of Default at Holder's direction, shall take) such action as Issuer may deem necessary or advisable to enforce collection of amounts due or to become due under the Accounts; *provided*, however, that Holder shall have the right at any time, upon the occurrence and during the continuation of an Event of Default, upon written notice to Issuer of his intention to do so, to (a) notify the account debtors or obligors under any Accounts of the assignment of such Accounts to Holder and to direct such account debtors or obligors to make payment of all amounts due or to become due to Issuer thereunder directly to Holder, (b) notify each person maintaining a lockbox or similar arrangement to which account debtors or obligors under any Accounts have been directed to make payment to remit all amounts representing collections on checks and other payment items from time to time sent to or deposited in such lockbox or other arrangement directly to Holder, (c) enforce collection of any such Accounts at the expense of Issuer, and (d) adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Issuer might have done. After receipt by Issuer of the notice from Holder referred to in the proviso to the preceding sentence, (1) all amounts and proceeds (including checks and other Instruments) received by Issuer in respect of the Accounts shall be received in trust for the benefit of Holder hereunder, shall be segregated from other funds of Issuer and shall be forthwith paid over or delivered to Holder in the same form as so received (with any necessary endorsement), and (2) Issuer shall not, without the written consent of Holder, adjust, settle or compromise the amount or payment of any Account, or release wholly or partly any account debtor or obligor thereof, or allow any credit or discount thereon.

(d) Issuer hereby irrevocably appoints Holder as Issuer's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Issuer and in the name of Issuer, Holder or otherwise, from time to time in Holder's discretion, to take any action and to execute any instrument that Holder may deem necessary or advisable to accomplish the purposes of this Note, including, without limitation:

(i)    to obtain and adjust insurance required to be maintained by Issuer;

(ii)    to ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(iii)    to receive, endorse and collect any drafts or other Instruments, Documents, Chattel Paper and other documents in connection with clauses (i) and (ii) above;

(iv)    to file any claims or take any action or institute any proceedings that Holder may deem necessary for the collection of any of the Collateral or otherwise to enforce or protect the rights of Holder with respect to any of the Collateral;

a public sale, even if Holder accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Issuer shall be liable for the deficiency and the reasonable fees of any attorneys employed by Holder to collect such deficiency.

(d)    Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Holder granted hereby shall automatically terminate without any further action on the part of Issuer or Holder, (ii) Issuer and its designees shall be authorized to file such terminations of such security interest as Issuer reasonably deems necessary, and Holder shall execute and deliver, at Issuer's expense, such further evidence of the termination or release of such security interest as Issuer may reasonably request.

ARTICLE IV
MISCELLANEOUS

SECTION 4.01. Amendments and Waiver. Any provision of this Note may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Issuer and Holder, or in the case of a waiver, by Holder. No failure or delay by Holder in exercising any right, power or privilege hereunder shall operate as a waiver nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

SECTION 4.02. Remedies. No remedy made available by any of the provisions of this Note is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Issuer hereby waives presentment for payment, demand, notice of dishonor, protest and notice of protest of this Note.

SECTION 4.03. Assignment. This Note shall be binding upon, inure to the benefit of and be enforceable by any successor in interest to Holder; provided that Holder shall not directly or indirectly assign any of its rights or obligations under this Note (including by way of security interest) without the prior written consent of Issuer. Any assignment or transfer in contradiction of this Section 4.03 shall be null and void.

SECTION 4.04. Severability. In case any particular provision of this Note shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of this Note or affecting the validity or enforceability of such provision in any other jurisdiction. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 4.05. Governing Law. This Note shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to any conflicts of laws principles thereof that would otherwise require the application of the law of any other jurisdiction.

IN WITNESS WHEREOF, Issuer has caused this Note to be duly executed and delivered  thereunto duly authorized as of the date first above written.

ISSUER:

YUETING JIA

Acknowledged and Agreed:

HOLDER:

PACIFIC TECHNOLOGY HOLDING LLC

By: _____

Name: Jin Jin
Title: President

*Signature Page to Secured Promissory Note*

Exhibit "C-2"

THIS AMENDED AND RESTATED SECURED PROMISSORY NOTE HAS NOT BEEN
REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. IT MAY NOT BE
SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION OR AN EXEMPTION
THEREFROM UNDER SAID ACT.

## AMENDED AND RESTATED SECURED PROMISSORY NOTE

$2,732,629.00                                                    October 13, 2019

FOR VALUE RECEIVED, the undersigned, Yueting Jia, an individual and resident
of California ("**Issuer**"), HEREBY PROMISES TO PAY to the order of Pacific Technology
Holding LLC, a Delaware limited liability company ("**Holder**"), the principal amount of
$2,732,629.00 together with interest accrued on the unpaid principal amount of this secured
promissory note (this "**Note**"), payable as provided herein. This Note is issued in substitution for
and replacement of that certain Secured Promissory Note, dated as of October 11, 2019, issued by
the Issuer to the Holder in the aggregate principal amount of $2,677,629.00 (the "**Original Note**").
The Issuer hereby assumes and affirms the Original Note and all obligations arising in connection
therewith. The indebtedness evidenced by this Note is continuing indebtedness, the liens granted
herein are continuing liens, and nothing herein shall be deemed to constitute payment, settlement
or a novation of the Original Note or release or otherwise adversely affect any lien or security
interest securing such indebtedness.

### ARTICLE I
### TERMS OF PAYMENT

SECTION 1.01. <u>Payments</u>. Payment of the principal amount of this Note or, if
less, the aggregate unpaid principal amount of this Note together with interest accrued on the
unpaid principal amount shall be made on October 11, 2020 (the "**Maturity Date**"). The principal
and interest on this Note is payable in lawful money of the United States in immediately available
funds at such place as Holder hereof may from time to time designate in writing to Issuer.
Whenever any payment hereunder shall be stated to be due on a day other than a business day,
such payment shall be made on the next succeeding business day, and such extension of time shall
in such case be included in the computation of payment of interest.

SECTION 1.02. <u>Prepayments</u>. Issuer may, on any business day, prepay the then
outstanding principal amount of this Note in whole or in part, together with accrued interest to the
date of such prepayment on the principal amount prepaid without premium or penalty.

SECTION 1.03. <u>Interest</u>. Interest shall accrue on the outstanding principal amount
of this Note at a rate per annum equal to 8.00%. Interest shall be payable in arrears as set forth in
Section 1.01 above. Accrued interest shall be compounded annually.

SECTION 1.04. <u>Computations</u>. All computations of interest shall be made on the
basis of a year of 365 or 366 days, as the case may be, for the actual number of days (including the
first day but excluding the last day) occurring in the period for which such interest is payable. For

1

become a part of the amount due under this Note.

## ARTICLE III
## SECURITY GRANT

(a) Issuer hereby grants, pledges, assigns, transfers, hypothecates and sets over to Holder a valid, continuing first priority security interest in all of Issuer's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Issuer, would accrue on such obligations, whether or not a claim is allowed against Issuer for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations under the Note are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any party of such payment is avoided or recovered directly or indirectly from Holder as a preference, fraudulent transfer or otherwise. "Collateral" shall include all of Issuer's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "**Collateral**"):

(i)     all Accounts;

(ii)    all Chattel Paper;

(iii)   all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)    all Documents;

(v)     all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software;

(vi)    all Goods, including Inventory, Equipment and Fixtures;

(vii)   all Instruments;

(viii)  all Investment Property;

(ix)    all Letter-of-Credit Rights and other Supporting Obligations;

(x)     all Records;

(xi)    all Commercial Tort Claims; and

3

property" of Issuer).

        (c) Issuer shall:

           (i)     permit Holder, upon reasonable prior notice to inspect Issuer's books and records, including computer files, and to make copies, and to test, inspect, and appraise the Collateral, in order to verify any matter relating to either Issuer or the Collateral.

           (ii)    except as otherwise provided in this section, continue to collect, at his own expense, all amounts due or to become due to it under the Accounts. In connection with such collections, Issuer may take (and, upon the occurrence and during the continuance of an Event of Default at Holder's direction, shall take) such action as Issuer may deem necessary or advisable to enforce collection of amounts due or to become due under the Accounts; *provided*, however, that Holder shall have the right at any time, upon the occurrence and during the continuation of an Event of Default, upon written notice to Issuer of his intention to do so, to (a) notify the account debtors or obligors under any Accounts of the assignment of such Accounts to Holder and to direct such account debtors or obligors to make payment of all amounts due or to become due to Issuer thereunder directly to Holder, (b) notify each person maintaining a lockbox or similar arrangement to which account debtors or obligors under any Accounts have been directed to make payment to remit all amounts representing collections on checks and other payment items from time to time sent to or deposited in such lockbox or other arrangement directly to Holder, (c) enforce collection of any such Accounts at the expense of Issuer, and (d) adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Issuer might have done. After receipt by Issuer of the notice from Holder referred to in the proviso to the preceding sentence, (1) all amounts and proceeds (including checks and other Instruments) received by Issuer in respect of the Accounts shall be received in trust for the benefit of Holder hereunder, shall be segregated from other funds of Issuer and shall be forthwith paid over or delivered to Holder in the same form as so received (with any necessary endorsement), and (2) Issuer shall not, without the written consent of Holder, adjust, settle or compromise the amount or payment of any Account, or release wholly or partly any account debtor or obligor thereof, or allow any credit or discount thereon.

           (d) Issuer hereby irrevocably appoints Holder as Issuer's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Issuer and in the name of Issuer, Holder or otherwise, from time to time in Holder's discretion, to take any action and to execute any instrument that Holder may deem necessary or advisable to accomplish the purposes of this Note, including, without limitation:

           (i)    to obtain and adjust insurance required to be maintained by Issuer;

           (ii)    to ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

           (iii)   to receive, endorse and collect any drafts or other Instruments, Documents, Chattel Paper and other documents in connection with clauses (i) and (ii) above;

the Collateral sold at any such public sale, to use and apply any of the Obligations as a credit on account of the purchase price for any Collateral payable by Holder at such sale. Issuer hereby waives any claims against Holder arising by reason of the fact that the price at which any Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale, even if Holder accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Issuer shall be liable for the deficiency and the reasonable fees of any attorneys employed by Holder to collect such deficiency.

(d)    Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Holder granted hereby shall automatically terminate without any further action on the part of Issuer or Holder, (ii) Issuer and its designees shall be authorized to file such terminations of such security interest as Issuer reasonably deems necessary, and Holder shall execute and deliver, at Issuer's expense, such further evidence of the termination or release of such security interest as Issuer may reasonably request.

## ARTICLE IV
## DIRECTION

SECTION 4.01. Direction. The Issuer hereby irrevocably directs Holder to pay $55,000 in respect of this Note solely to the Issuer's account specified below:

|  |  |
|---|---|
| Bank: | JP Morgan Chase |
| Account Name: | PQBDN LLC |
| Routing Number: | 021000021 |
| Account Number: | 573199632 |
| Swift Code: | CHASEUS33 |

By executing this Note, Holder hereby agrees to be bound by such direction and shall not distribute any funds to or for the benefit of the Issuer with respect to this Note to any other account unless instructed to do so in writing by the Issuer.

## ARTICLE V
## MISCELLANEOUS

SECTION 5.01. Amendments and Waiver. Any provision of this Note may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Issuer and Holder, or in the case of a waiver, by Holder. No failure or delay by Holder in exercising any right, power or privilege hereunder shall operate as a waiver nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

SECTION 5.02. Remedies. No remedy made available by any of the provisions of this Note is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Issuer hereby waives presentment for payment, demand, notice of

IN WITNESS WHEREOF, Issuer has caused this Note to be duly executed and delivered thereunto duly authorized as of the date first above written.

ISSUER:

_____
YUETING JIA

Acknowledged and Agreed:

HOLDER:

PACIFIC TECHNOLOGY HOLDING LLC

By:_____
Name:
Title:

*Signature Page to Secured Promissory Note*

Exhibit "C-3"

THIS SECURED PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. IT MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION OR AN EXEMPTION THEREFROM UNDER SAID ACT.

## AMENDED AND RESTATED SECURED PROMISSORY NOTE

$2,687,628.99

October 18, 2019

FOR VALUE RECEIVED, the undersigned, Yueting Jia, an individual and resident of California ("**Issuer**"), HEREBY PROMISES TO PAY to the order of Pacific Technology Holding LLC, a Delaware limited liability company ("**Holder**"), the principal amount of $2,687,628.99 together with interest accrued on the unpaid principal amount of this secured promissory note (this "**Note**"), payable as provided herein.

## ARTICLE I
## TERMS OF PAYMENT

SECTION 1.01. Payments. Payment of the principal amount of this Note or, if less, the aggregate unpaid principal amount of this Note together with interest accrued on the unpaid principal amount shall be made on October 11th 2020(the "**Maturity Date**"). The principal and interest on this Note is payable in lawful money of the United States in immediately available funds at such place as Holder hereof may from time to time designate in writing to Issuer. Whenever any payment hereunder shall be stated to be due on a day other than a business day, such payment shall be made on the next succeeding business day, and such extension of time shall in such case be included in the computation of payment of interest.

SECTION 1.02. Prepayments. Issuer may, on any business day, prepay the then outstanding principal amount of this Note in whole or in part, together with accrued interest to the date of such prepayment on the principal amount prepaid without premium or penalty.

SECTION 1.03. Interest. Interest shall accrue on the outstanding principal amount of this Note at a rate per annum equal to 8.00%. Interest shall be payable in arrears as set forth in Section 1.01 above. Accrued interest shall be compounded annually.

SECTION 1.04. Computations. All computations of interest shall be made on the basis of a year of 365 or 366 days, as the case may be, for the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest is payable.

## ARTICLE II
## EVENTS OF DEFAULT

SECTION 2.01. Events of Default. The following shall constitute "**Events of Default**" under this Note:

1

## ARTICLE III
## SECURITY GRANT

(a) Issuer hereby grants, pledges, assigns, transfers, hypothecates and sets over to Holder a valid, continuing first priority security interest in all of Issuer's right, title and interest in the Collateral (as described below), in each case whether now or hereafter existing, whether tangible or intangible, whether now owned or hereafter acquired and wherever the same may be located, in order to secure prompt, full, faithful and timely payment and performance of the obligations under this Note, including without limitation all accrued and unpaid interest owing hereunder and any other obligations arising hereunder (including interest and other amounts that, but for the filing of a petition in bankruptcy with respect to Issuer, would accrue on such obligations, whether or not a claim is allowed against Issuer for such amounts in the related bankruptcy proceeding) (collectively, the "**Obligations**"), whether at stated maturity, acceleration or otherwise, together with all extensions or renewals thereof, whether voluntary or involuntary, direct or indirect, absolute or contingent, liquidated or unliquidated, whether or not jointly owned with others, and whether or not such Obligations under the Note are from time to time decreased or extinguished and later increased, created or incurred, and all or any portion of such Obligations that are paid, to the extent all or any party of such payment is avoided or recovered directly or indirectly from Holder as a preference, fraudulent transfer or otherwise. "Collateral" shall include all of Issuer's interests in all of the following types of personal property, wherever located and whether now owned or hereafter acquired (collectively, the "**Collateral**"):

(i)     all Accounts;

(ii)     all Chattel Paper;

(iii)     all Money and all Deposit Accounts, together with all amounts on deposit from time to time in such Deposit Accounts;

(iv)     all Documents;

(v)     all General Intangibles (including patents, trademarks, service marks, copyrights, and other intellectual property), Payment Intangibles and Software;

(vi)     all Goods, including Inventory, Equipment and Fixtures;

(vii)     all Instruments;

(viii)     all Investment Property;

(ix)     all Letter-of-Credit Rights and other Supporting Obligations;

(x)     all Records;

(xi)     all Commercial Tort Claims; and

(xii)     all Proceeds and Accessions with respect to any of the foregoing Collateral.

(i)    permit Holder, upon reasonable prior notice to inspect Issuer's books and records, including computer files, and to make copies, and to test, inspect, and appraise the Collateral, in order to verify any matter relating to either Issuer or the Collateral.

(ii)    except as otherwise provided in this section, continue to collect, at his own expense, all amounts due or to become due to it under the Accounts. In connection with such collections, Issuer may take (and, upon the occurrence and during the continuance of an Event of Default at Holder's direction, shall take) such action as Issuer may deem necessary or advisable to enforce collection of amounts due or to become due under the Accounts; *provided*, however, that Holder shall have the right at any time, upon the occurrence and during the continuation of an Event of Default, upon written notice to Issuer of his intention to do so, to (a) notify the account debtors or obligors under any Accounts of the assignment of such Accounts to Holder and to direct such account debtors or obligors to make payment of all amounts due or to become due to Issuer thereunder directly to Holder, (b) notify each person maintaining a lockbox or similar arrangement to which account debtors or obligors under any Accounts have been directed to make payment to remit all amounts representing collections on checks and other payment items from time to time sent to or deposited in such lockbox or other arrangement directly to Holder, (c) enforce collection of any such Accounts at the expense of Issuer, and (d) adjust, settle or compromise the amount or payment thereof, in the same manner and to the same extent as Issuer might have done. After receipt by Issuer of the notice from Holder referred to in the proviso to the preceding sentence, (1) all amounts and proceeds (including checks and other Instruments) received by Issuer in respect of the Accounts shall be received in trust for the benefit of Holder hereunder, shall be segregated from other funds of Issuer and shall be forthwith paid over or delivered to Holder in the same form as so received (with any necessary endorsement), and (2) Issuer shall not, without the written consent of Holder, adjust, settle or compromise the amount or payment of any Account, or release wholly or partly any account debtor or obligor thereof, or allow any credit or discount thereon.

(d) Issuer hereby irrevocably appoints Holder as Issuer's attorney-in-fact, effective upon the occurrence and during the continuance of an Event of Default hereunder, with full authority in the place and stead of Issuer and in the name of Issuer, Holder or otherwise, from time to time in Holder's discretion, to take any action and to execute any instrument that Holder may deem necessary or advisable to accomplish the purposes of this Note, including, without limitation:

(i)    to obtain and adjust insurance required to be maintained by Issuer;

(ii)    to ask for, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

(iii)    to receive, endorse and collect any drafts or other Instruments, Documents, Chattel Paper and other documents in connection with clauses (i) and (ii) above;

(iv)    to file any claims or take any action or institute any proceedings that Holder may deem necessary for the collection of any of the Collateral or otherwise to enforce or protect the rights of Holder with respect to any of the Collateral;

5

a public sale, even if Holder accepts the first offer received and does not offer such Collateral to more than one offeree. If the proceeds of any sale or other disposition of the Collateral are insufficient to pay all the Obligations, Issuer shall be liable for the deficiency and the reasonable fees of any attorneys employed by Holder to collect such deficiency.

(d)     Upon the unconditional satisfaction of the Obligations in full, (i) the security interest in the Collateral in favor of Holder granted hereby shall automatically terminate without any further action on the part of Issuer or Holder, (ii) Issuer and its designees shall be authorized to file such terminations of such security interest as Issuer reasonably deems necessary, and Holder shall execute and deliver, at Issuer's expense, such further evidence of the termination or release of such security interest as Issuer may reasonably request.

ARTICLE IV
MISCELLANEOUS

SECTION 4.01. Amendments and Waiver. Any provision of this Note may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Issuer and Holder, or in the case of a waiver, by Holder. No failure or delay by Holder in exercising any right, power or privilege hereunder shall operate as a waiver nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege.

SECTION 4.02. Remedies. No remedy made available by any of the provisions of this Note is intended to be exclusive of any other remedy, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Issuer hereby waives presentment for payment, demand, notice of dishonor, protest and notice of protest of this Note.

SECTION 4.03. Assignment. This Note shall be binding upon, inure to the benefit of and be enforceable by any successor in interest to Holder; *provided* that Holder shall not directly or indirectly assign any of its rights or obligations under this Note (including by way of security interest) without the prior written consent of Issuer. Any assignment or transfer in contradiction of this Section 4.03 shall be null and void.

SECTION 4.04. Severability. In case any particular provision of this Note shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of this Note or affecting the validity or enforceability of such provision in any other jurisdiction. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this Note or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 4.05. Governing Law. This Note shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to any conflicts of laws principles thereof that would otherwise require the application of the law of any other jurisdiction.

IN WITNESS WHEREOF, Issuer has caused this Note to be duly executed and delivered thereunto duly authorized as of the date first above written.

ISSUER:

YUETING JIA

Acknowledged and Agreed:

HOLDER:

PACIFIC TECHNOLOGY HOLDING LLC

By:

Name: Jin Jin
Title: President

*Signature Page to Secured Promissory Note*